**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 11-374-JBC**

**JAMES T. SCATUORCHIO
RACING STABLE, LLC, et al.,**                                        **PLAINTIFFS,**

**V.**                      **AMENDED MEMORANDUM OPINION & ORDER**

**WALMAC STUD MANAGEMENT,
LLC, et al.,**                                                 **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court upon the defendants' second renewed motion to dismiss in favor of arbitration or mediation, R. 75, and the defendant's motion to stay any non-arbitrable claims pending completion of arbitration, R.76.  Because only a portion of the claims brought by the plaintiffs in this action will be submitted to arbitration, the motion to dismiss will be denied.  The court will deny the motion to stay non-arbitrable claims because the defendants have not furnished a sufficient basis for such a stay.

## I. BACKGROUND

This action originated in New Jersey state court, where the defendants moved to dismiss the case.  The defendants then removed the case to the District Court of New Jersey and renewed their motion.  Before ruling on the merits of the motion, the district court transferred the action here.  After a hearing on the renewed motion to dismiss, this court permitted the plaintiffs to file a second

1

amended complaint.  The defendants have now filed a second renewed motion to dismiss in favor of arbitration or mediation, as well as a motion to stay non-arbitrable claims.

The defendants seek to compel arbitration of certain claims arising from the ownership and management of the thoroughbred Stallion commonly known as "Ready's Image."  The plaintiffs, part owners of Ready's Image, claim wrongful conduct by the defendants during the transfer of ownership and management rights of Ready's Image.  The plaintiffs allege that the defendants fraudulently induced them to transfer ownership interests in Ready's Image to the defendants and that after the ownership and management interests were transferred, the defendants acted in violation of the relevant agreements, resulting in breach of contract and fiduciary duties, fraud, waste, and slander.

The parties executed several agreements, including a purchase agreement, stallion co-ownership agreement ("COA"), installment agreement, southern hemisphere co-ownership agreement ("southern hemisphere COA"), southern hemisphere lease agreement, and mare agreement.  The defendants assert that these valid agreements contain or incorporate binding arbitration or mediation provisions.  Because most of the claims supposedly fall within the scope of the arbitration or mediation provisions, they argue that those claims should be submitted to arbitration or mediation and that a stay should be imposed on the remaining claims.

II. **ANALYSIS**

2

### a. Choice of Law

The parties dispute whether New Jersey or Kentucky law should be applied in the event of a conflict. The court will apply Kentucky law because the controlling agreements between the parties and Kentucky's conflict-of-law rules lean in favor of applying Kentucky law. The purchase agreement, COA, and installment agreement all state that the agreements "shall be governed by, and construed in accordance with, the laws of the State of Kentucky." R.4-9, p.12, R.1-13, p.5. Additionally, applying Kentucky's conflict-of-law rules, which tend to display a strong preference for applying Kentucky law, *see Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 566 (6th Cir. 2001) (finding that courts sitting in diversity should apply the conflict-of-law rules of the forum state); *see also Wallace Hardware Co. Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000), Kentucky has the "most significant contacts" with the transaction at issue. *Saleba v. Schrand*, 300 S.W.3d 177, 180-81 (Ky. 2009). The purchase agreement and the COA describe the management and stud of Ready's Image as occurring in Lexington, Kentucky. Also, the defendants are citizens of Kentucky. The court finds these contacts with the forum state to be sufficient and not overridden by any overwhelming New Jersey interest to the contrary. *Wallace Hardware*, 223 F.3d at 391 (internal citations omitted).

### b. Arbitration vs. Mediation

The defendants move to dismiss for the purpose of compelling both arbitration and mediation. The distinction between binding arbitration provisions

3

and binding mediation provisions, however, is important.  The Federal Arbitration

Act ("FAA") governs and enforces "agreement[s] in writing to submit to

arbitration."  9 U.S.C. § 2.  Mediation, however, "is not within the FAA's scope"

because "the mediation process does not purport to adjudicate or resolve a case in

any way." *Advanced Bodycare Solutions, LLC. v. Thione Intnat'l, Inc.*, 524 F.3d

1235, 1240 (11th Cir. 2008).  For that reason, the "FAA remedies, including

mandatory stays and motions to compel, are not appropriately invoked to compel

mediation." *Id.*   In fact, "[t]he explicit terms of 9 U.S.C. § 3 refer to 'arbitration'

as opposed to the broader term 'dispute resolutions procedure.'" *Gate Precast Co.*

*v. Kenwood Towne Place, LLC, et al.*, 2009 U.S. Dist. LEXIS 100579 (S.D. Ohio,

2009).  For these reasons, mediation and arbitration are not treated similarly under

the FAA, despite some authority to the contrary.  *See*, *e.g.*, *Developers Sur. and*

*Indem. Co. v. Resurrection Baptist Church*, 759 F. Supp. 2d 665 (D. Md. 2010).

Finding that the mediation provisions at issue do not fall within the scope of the

court's authority to compel arbitration under the FAA, the court will analyze the

defendants' motion to dismiss only as it pertains to any valid arbitration provisions

found within the agreements in dispute.

### c. Arbitrable Claims

The FAA provides that "an agreement in writing to submit to arbitration an

existing controversy arising out of . . ." "a contract evidencing a transaction

involving commerce . . . " "shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract." 9

4

U.S.C. § 2.  In deciding whether to compel parties to arbitrate under the FAA, the court must undertake a four-prong analysis:

> "first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if the federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration."

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Kentucky contract law "governs in determining whether the arbitration clause itself was validly obtained," *Doctor's Assocs. V. Casarotto*, 517 U.S. 681, 686-87; *see also Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003), but in making determinations on the scope of arbitrable issues, "any doubts regarding arbitrability should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Only one agreement between the parties contains an arbitration provision. The COA of October 24, 2008, states that "any one of the disputants [meaning the co-owners or stallion manager] may require the other parties to submit the Dispute to arbitration if good faith negotiations among the parties do not resolve the Dispute." R. 4-9, p. 12.  The COA was signed by the co-owners of Ready's Image at that time, including the defendant, Walmac Stud Management, LLC, through its authorized agent, John T.L. Jones, III, and the plaintiff, James T. Scatuorchio, LLC, by its members James Scatuorchio, Kevin Scatuorchio, and Courtney Sullivan.  Despite the defendants' arguments that the COA arbitration

provision applies to other agreements between the parties, all disputes related to the purchase agreement, installment agreement, southern hemisphere agreements, and mare agreement and not falling under the scope of the COA are nonarbitrable.

First, the COA arbitration provision is not incorporated into the purchase agreement because it is pre-empted by a conflicting provision in the purchase agreement stating that "any dispute hereunder shall be resolved by exclusive jurisdiction of a court of competent jurisdiction in the Commonwealth of Kentucky." R.1-13, p.5. The purchase agreement attaches as an exhibit and makes a part of its agreement the COA, but both documents state that in the event of a conflict between the two agreements related to the purchase or ownership of Ready's Image, "the terms of the Purchase Agreement shall prevail." R.1-13, p.5; R.4-9, p.12.  The arbitration provision of the COA and the litigation provision of the purchase agreement conflict; therefore, the purchase agreement litigation provision prevails, and any claims arising out of the purchase agreement will not be submitted to arbitration.

Second, the installment agreement also incorporates the COA but is not controlled by its arbitration provision. The installment agreement includes a mediation and litigation provision that supersedes the COA arbitration provision because the COA is incorporated into the installment agreement "subject . . . to the additional terms and provisions contained in this [installment] [a]greement." R.1-4, p.2.  The mediation and litigation provision constitutes an additional provision of

the installment agreement. Consequently, the parties to the installment agreement are not bound to arbitrate claims arising from the installment agreement.

The southern hemisphere COA also fails to establish an agreement to arbitrate. It incorporates the original COA, but it also contains a mediation and litigation provision. No language in the agreement specifies whether the original COA or the southern hemisphere COA controls in the event of a conflict; the southern hemisphere COA states that it incorporates and is "subject" to the original COA, but it also provides that the southern hemisphere COA "constitutes the entire agreement between the parties . . . and supersedes all other prior agreements and understandings." No provision explicitly declares what happens in the event of a conflict. Based upon these conflicting provisions, the parties to the southern hemisphere COA have no clear agreement to arbitrate; therefore, any claims arising out of this agreement will not be submitted to arbitration.

Lastly, the southern hemisphere lease agreement and the mare agreement do not contain arbitration provisions. The southern hemisphere lease agreement contains a mediation and litigation provision and does not mention or incorporate the COA. The parties agree that the mare agreement does not contain an arbitration provision. Consequently, claims arising out of the southern hemisphere lease agreement and the mare agreement will not be submitted to arbitration.

In summary, only the original COA contains an arbitration provision. This provision, however, is in dispute. The plaintiffs argue that no valid agreement to arbitrate exists between the parties to the COA because the provision is one-sided,

ambiguous, and unspecific, and thus unenforceable.  The applicable terms of the arbitration provision are as follows:

> ". . . (b) the arbitration shall be held before a panel of three arbitrators, one designated by the Stallion Manager, one designated by a majority of the Co-Owners, and one selected by the first two arbitrators so designated; (c) the costs and fees of the arbitration, including attorneys' fees of the parties, shall be allocated by the arbitrators . . ."

R.4-9, p.12-13.

The plaintiffs claim that these terms are one-sided in favor of the defendants because the way the agreement defines "co-owners" would enable the defendant Walmac Stud to pick two of the arbitrators who could then allocate the costs and fees of arbitration to the plaintiffs.  The plaintiffs also contest the provision of the COA which states that "[n]o dispute shall be submitted to the arbitration and no action for the breach of any provision of this Agreement or in connection with Ready's Image or the operation hereof may be commenced more than two years after the event giving rise to such cause of action shall have occurred." R. 4-9, p.13.  They argue that this provision unreasonably limits the time in which claims can be brought, thus making the arbitration provision unconscionable.  None of these arguments will prevail.

"[A]bsent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001) (citations omitted).  An exception to this "fundamental rule" is the "doctrine of unconscionability," which is a narrow exception "directed against one-sided, oppressive and unfairly surprising contracts." *Id.*  Even though the

8

arbitration provision here may provide an advantage to a particular party, it is not unfairly one-sided, oppressive or unfairly surprising.  *Id.*  The plaintiffs were represented by counsel during the execution of the agreements and do not claim that they were confused by the provisions in dispute at the time of execution or that the provisions were hidden.  "An unconscionable contract . . . [is] 'one which no man in his sense, not under delusion, would make.'"  *Id* at 342 (internal citations omitted).  These facts do not rise to that level of unconscionability.

The plaintiffs also assert that they were fraudulently induced to enter into an agreement to arbitrate with the defendants, but they have not met their burden of setting forth a prima facie claim of fraud under Kentucky law by establishing the "six elements of fraud by clear and convincing evidence." *Bassett v. NCAA*, 428 F.Supp. 2d 675, 682 (E.D. Ky. 2006) (citing Kentucky law).  The plaintiffs argue that provisions in the purchase agreement, which provide that disputes will be litigated and that the purchase agreement will control in the event of a conflict between the purchase agreement and COA, fraudulently induced them to sign the COA.  However, they were aware of an arbitration provision in the COA and had an opportunity to read and examine both of these agreements before they executed the COA.  No statements other than the contractual language of the purchase agreement are offered as evidence to support a claim of fraud.  In the absence of a false material representation by the defendants, there is not "enough evidence to support a claim of fraudulent misrepresentation," *see Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 640 (Ky. Ct. App. 2003), and the

plaintiffs are held to the terms of the agreements that they executed, which include an agreement to arbitrate.

Finding that a valid agreement to arbitrate was executed between the parties to the COA, the court must next determine the scope of the arbitration agreement. Whether the plaintiffs' claims fall within the scope of the arbitration agreement is determined by asking whether "an action [for each claim] could be maintained without reference to the contract or relationship at issue." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). If so, the claims are outside the scope of the agreement. *Id.* "Even real torts can be covered by arbitration clauses 'if the allegations underlying the claims touch matters covered by the [agreement].'" *Id.* (internal citations omitted). The arbitration provision at issue is broadly inclusive, stating as follows:

> "If a disagreement exists among the Co-Owners or between one or more of the Co-Owners and the Stallion Manager concerning Ready's Image or relating to the relationships, rights, duties, or obligations hereunder (a "Dispute"), any one of the disputants may require the other parties to submit the Dispute to arbitration if good faith negotiations among the parties do not resolve the Dispute."

R.4-9, p.12

The plaintiffs bring fourteen claims against the defendants in their second amended verified complaint. Considering the expansive arbitration provision as well as the policy favoring arbitration as to doubts regarding the scope of an arbitration provision, all of the plaintiff's claims except counts 3, 6, and parts of 8 and 14 will be submitted to arbitration. *Id.* at 396 (referencing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Counts 1 and 4 specifically refer to breaches of the COA; thus, they are arbitrable claims.  Counts 3 and 6 refer to breaches of duties owed under the mare agreement, which contains no arbitration provision or provision incorporating the COA.  The parties agree that the mare agreement claims are not arbitrable; therefore, counts 3 and 6 will not be submitted to arbitration.   Counts 2, 5, 7, 9 through 13, and part of 8 and 14 are arbitrable because those claims could not be brought without reference to the COA or without discussing matters covered by the COA.

Specifically, counts 2 and 5 allege breaches of duties under only the southern hemisphere agreements, but the southern hemisphere COA incorporates the terms of the original COA.  The southern hemisphere co-owners agreed "to own, hold and operate their rights and interests under the Ready's Image 1/3 Purchase Agreement" subject to the COA, and the COA was made part of the southern hemisphere COA, "establish[ing] the relationships of the co-owners of interests in Ready's Image." R.4-11, p.1. Because an alleged breach of duty under the southern hemisphere agreements could involve a duty listed under the incorporated COA, counts 2 and 5 are under the scope of the COA arbitration provision and are thus arbitrable.

Count 7 alleges breach of fiduciary duties by Walmac Stud and the southern hemisphere defendants as "purported co-owners of Ready's Image."  The COA set forth the duties and responsibilities of the stallion manager, Walmac Stud; therefore count 7 could not be brought without reference to the prescribed relationships

11

under the COA.  In count 8, the plaintiffs allege fraudulent inducement by Walmac

Stud and Walmac Farm[1] of the plaintiffs' purchase of an ownership interest in

Ready's Image.  Specifically, the plaintiffs claim that Walmac Stud represented that

disputes would be litigated under the purchase agreement, "regardless of any

conflicting provisions in the as-of-then unseen COA," and that Walmac Stud and

Walmac Farm made misrepresentations and omissions that the plaintiffs relied on in

entering "into all of the agreements, including the agreement in the COA not to

litigate disputes in New Jersey." R.20, p.22.  The references to the COA bring

count 8 under the scope of the COA arbitration provision. But, to the extent that

this claim goes to the existence or enforceability of an agreement to arbitrate, it is

a question for the court to decide and will not be submitted to arbitration; *see

Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967); *see also

Granite Rock v. Int'l Brotherhood of Teamsters*, 130 S. Ct. 2847 (2010); in fact,

these issues have been addressed in the present opinion.

Count 9 falls under the scope of the COA arbitration provision because it

alleges failure to perform accountings under the "relevant agreements," including

"all but the Mare Agreements;" therefore, the claim touches on matters discussed

in the COA.  Similarly, counts 10 and 11, fraud and conversion, are arbitrable

claims because duties and rights implicated under the COA are implied in the

claims.  Count 10 states that the defendants breached their duties to provide

---

[1] The plaintiffs bring counts 8, 10, 11, and 12 against "the Walmacs." Finding no defendant named "the Walmacs" and no individual defendant(s) with the last name Walmac, the court assumes based upon an examination of the record that the plaintiffs are referring to both Walmac Stud Management, LLC, and Walmac Farm, LLC, when they use that designation.

accurate statements of information required under contractual and common law, which would include the record-keeping and reporting duties required under the COA.  Count 11 alleges that Walmac Stud, Walmac Farm, and Lincoln-Walmac deprived the plaintiffs of "their right to possess the books and records, and their rightful share of moneys and assets relating to and generated by Ready's Image," which are rights provided to the plaintiffs under the COA.

Counts 12 and 13 are statutory claims brought under New Jersey's Consumer Fraud Act and New Jersey RICO laws.  Count 12 alleges that the defendants violated the Consumer Fraud Act "in connection with the sale, purchase, marketing and management of Ready's Image." R.20, p.25.  Because the COA sets forth a marketing and management plan for Ready's Image, count 12 falls under the scope of the arbitration provision because an action for this claim could not be maintained without reference to the COA or relationships thereunder. Also, count 13 alleges that the defendant Jones "executed a scheme to defraud plaintiffs by depriving plaintiffs of the financial benefits of their ownership interests in Ready's Image" through statements, representations, or promises.  The COA sets forth the relationship between the plaintiffs and Walmac Stud, the stallion manager, including the allocation and distribution of monies. R.4-9, p. 4.  Even though count 13 does not specifically refer to the COA, the COA is inherently a part of the alleged scheme described by the plaintiffs; therefore, count 13 falls under the scope of the COA arbitration provision.

Lastly, count 14 seeks rescission or reformation of the arbitration provision in the COA on grounds of unconscionability and illegality as well as rescission of the COA and southern hemisphere agreements.  The portion of the claim disputing the existence or enforceability of an agreement to arbitrate is a question for the court to decide – and has been decided in the present opinion – and will not be submitted to arbitration; *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967); *see also Granite Rock v. Int'l Brotherhood of Teamsters*, 130 S. Ct. 2847 (2010).  However, to the extent that count 14 addresses the rescission of the COA and southern hemisphere agreements in their entirety, that portion of the claim will be submitted to arbitration because it refers to the COA and therefore falls under the scope of the COA arbitration provision.

In summary, all counts except counts 3, 6, and part of 8 and 14 fall under the scope of the COA arbitration provision.  But only two parties, the plaintiff James T. Scatuorchio, LLC, through its members James Scatuorchio, Kevin Scatuorchio, and Courtney Sullivan, and the defendant Walmac Stud Management, LLC, through its authorized agent John T.L. Jones, III, are signatories to the COA. The plaintiffs argue that because the other parties are not signatories to the COA, they cannot be bound by its arbitration provision. The court agrees only in part.

A non-signatory may be bound to an arbitration provision under one of five theories: incorporation by reference, assumption, agency, veil-piercing or alter ego, and estoppel.  *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003); *see also Olshan Foundation Repair and Waterproofing v. Otto*, 276 S.W.3d 827,

14

831 (Ky. App. 2009).  The defendants argue that the theory of estoppel applies here because the non-signatory parties undertook burdens and received benefits pursuant to their relationship with Ready's Image under the COA, which would place them within the scope of the COA provisions, including the arbitration provision, by estoppel.  For the individuals or agents who signed on behalf of the signatory plaintiff and defendant, including John T.L. Jones, III, James Scatuorchio, Kevin Scatuorchio, and Courtney Sullivan, the estoppel theory does apply because they received benefits and undertook burdens under the provisions of the COA as agents or members of the signatory parties.  Also, if the plaintiffs "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in [the] complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified." *Arnold*, 920 F.2d at 1281 (internal citations omitted).

The defendants have not shown, however, that the other non-signatory parties – including Bryan Sullivan, Saybrook Advertising, LLC, Walmarc Farm, LLC, Hengst Funding, LLC, Kerry T. Cauthen, Four Star Sales, LLC, and Lincoln-Walmac Associated Farms, Pty. Ltd. – are bound by the arbitration provision of the COA. Although such persons or entities have been so bound, *see Olshan Foundation Repair and Waterproofing*, 276 S.W.3d at 831 (Ky. App. 2009), that occurred only because those parties were "third party direct beneficiaries" to the contract pursuant to warranty covenants. *Id*.  Without a showing of direct benefits, such as a warranty covenant, the theory of estoppel does not bind the remaining non-

15

signatories to the COA arbitration provision.  Consequently, only James T. Scatuorchio, LLC, Walmac Stud Management, LLC, John T.L. Jones, III, James Scatuorchio, Kevin Scatuorchio, and Courtney Sullivan are bound to arbitrate the claims brought against them which fall under the scope of the COA arbitration provision.

No federal statutory claims have been filed by the plaintiffs in this action; thus, the court need not consider whether Congress intended any of the plaintiffs' claims to be nonarbitrable.

Even though not all of the claims asserted by the plaintiffs will be submitted to arbitration, the court, in its discretion, *see Stout*, 228 F.3d at 714 (6th Cir. 2000), will not issue a stay on nonarbitrable claims.  9 U.S.C. § 3 does not require a stay of proceedings as to claims that are not being arbitrated.  Furthermore, "[i]f nonarbitrable federal claims are stayed pending the arbitration of other federal or state claims, plaintiffs . . . face the unhappy choice of either [forgoing] arbitrable claims in order to obtain prompt consideration of the other claims or waiting . . . before their nonarbitrable claims will be heard by a federal court." *Chang v. Lin*, 824 F.2d 219, 222 (2nd Cir. 1987).  Despite the overlap between the arbitrable and nonarbitrable claims, "it is far from certain that the arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 222 (1985), and the defendants have not "ma[d]e out a clear case of hardship or inequity in being required to go

16

forward" with the nonarbitrable claims. *Landis v. North American Co.*, 299 U.S. 248, 255 (1936).  Accordingly,

**IT IS ORDERED** that the defendants' second renewed motion to dismiss in favor of arbitration or mediation, R. 75, is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion to stay any non-arbitrable claims pending completion of arbitration, R.76, is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiffs' claims in counts 1, 2, 4, 5, 7, 9 through 13, and part of counts 8 and 14 of the second amended verified complaint, as they pertain to the parties James T. Scatuorchio, LLC, Walmac Stud Management, LLC, John T.L. Jones, III, James Scatuorchio, Kevin Scatuorchio, and Courtney Sullivan, shall be submitted to arbitration in accordance with the arbitration provision provided in the stallion co-ownership agreement.

**IT IS FURTHER ORDERED** that all remaining claims in this action shall proceed in the ordinary course of litigation, as directed by the scheduling orders of this court.

**IT IS FURTHER ORDERED** that the defendants' renewed motion to dismiss in favor or arbitration or mediation, R.31, is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the parties shall file a joint written report as to the status of arbitrable claims on March 15, 2013, or within 10 days of the conclusion of arbitration, whichever occurs earlier.

**IT IS FURTHER ORDERED** that this document supersedes the memorandum opinion and order (R. 86) on the defendant's second renewed motion to dismiss in

favor of arbitration or mediation.


Signed on January 2, 2013

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY