## STALLION SERVICE AGREEMENT

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:**

DR. Linda Robbins - Cedar Point Farm
2153 Bethlehem Road, Paris, KY 40361
PHONE: (859) 987-2694

Stallion _Ready's Image_    Seller:
Mare _Thatkrazykat_
Share No. _FC005DL_
Control Reminder/Entered: Walmac Farm, LLC
✓ Access ✓ X ✓ M/S 3395 Paris Pike
Comment _____ Lexington, KY 40511
PHONE: (859) 299-0473
FAX:    (859) 299-1259

Seller is the owner of and agrees to sell to Buyer a nomination for the 2009 breeding season to the Thoroughbred Stallion,    **Ready's Image.**

1.

2. Buyer agrees to breed    **Thatkrazykat,**    by    **Dynaformer,**    out of    **Catchthecat,** a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days. Purchaser agrees not to breed mare to any other stallion during the breeding season.

3. Buyer hereby agrees to pay Seller    **9,010.00**    ("Stud Fee plus 6% KY sales tax") for such nomination, on the following basis (select one by initialing choice):

a. _____ LIVE FOAL BASIS: Payment of the Stud Fee shall be made no later than November 15, 2009, but shall be subject to refund if all of the following conditions are met: (i) the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the refund condition; (ii) the Mare continues to be owned solely by Buyer until foaling and is not transported to a public sale; and (iii) the Stud Fee is paid in full on a timely basis. If any of the foregoing conditions are not met, the Stud Fee is immediately owed on a no guaranty basis.

b. _X_ LIVE FOAL - DEFERRED PAYMENT BASIS: The Stud Fee shall be owed on a Live Foal basis, that is (i) unless the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the condition; and (ii) provided the Mare continues to be owned solely by Buyer until foaling and is not transported to a location other than that stated in the Mare Information Form. Payment of the Stud Fee, with interest thereon from November 15, 2009, at the rate of 7% per annum, shall not be due until the distribution of the proceeds from the sale of the Foal, but in any event no later than December 1, 2011, provided all of the following conditions are met:

(1) If the Buyer sells the Foal resulting from the breeding, unless otherwise agreed with Seller in writing, the Foal shall only be sold at a thoroughbred public auction in the United States and may not be transported outside the country. Buyer shall notify Seller of the sale in which the Foal is entered no later than 15 days prior to the commencement of the auction session. Buyer shall instruct the sales company in writing to pay the Stud Fee from proceeds of sale, and provide that such payment is prior and superior to all other payments of proceeds from the sale of the Foal except the payment of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer.

(2) No encumbrances shall be incurred on the Foal, or the proceeds from the Foal, that is superior to the security interest and rights of Seller as otherwise provided herein. Such impermissible encumbrances include, but are not limited to, security interests, statutory and common-law liens such as agister's liens, or agricultural liens, but shall not include the security interest of Seller granted herein. Buyer shall keep all expense payments associated with the Mare while pregnant with the Foal, and the Foal, current.

(3) Interest accrued on the Stud Fee, if not due sooner, shall be paid current by December 31, 2010.

(4) Notwithstanding the deferral of payment until sale, the Stud Fee shall be immediately payable upon the breach of any of the forgoing conditions, or the breach of any conditions in this agreement. Buyer acknowledges that the full Stud Fee, with interest, is owed regardless of whether the proceeds of sale are sufficient to pay the Stud Fee.

In either event, ALL PAYMENTS required herein are understood to include 6% Kentucky Sales Tax. In the event of any default of any condition of this Agreement, or delay in payment of the Stud Fee, the Stud Fee shall bear interest at the rate of 18% per annum until paid in full, with interest, and shall include all expenses, including legal costs and attorneys fees, incurred by Seller in the efforts to collect the Stud Fee, with interest.

4/21/2009    Page 1 of 3, Ref#2706 Thatkrazykat/Ready's Image



4. Buyer shall carry mortality insurance on the Foal in an amount equal to or greater than the Stud Fee owed and the interest owed, naming Seller as loss payee to the extent of the amount owed under this Agreement and shall furnish Seller proof of coverage.

5. Buyer shall have the right to convert the obligation to a Foal-Sharing with the Seller, wherein Buyer and Seller shall own the resulting Foal on a 50-50 basis as tenants in common, provided each of the following conditions are met:

    (1)  Buyer notifies Seller in writing by fax AND certified mail, to be received by Seller no later than thirty days following the birth of the Foal.

    (2)  The Foal is alive, standing and nursing at the time of the notification.

    (3)  Buyer is not in default or in breach of any terms of this agreement.

    (4)  Buyer shall, within five (5) days of the notification above, execute and deliver to Seller a Bill of Sale, in a form reasonably required by Seller, transferring 50% interest in the Foal to Seller, as tenant-in-common, and Buyer acknowledges that the co-ownership will not be treated as a partnership or joint venture. Buyer shall cause any registration of the Foal with the Jockey Club to reflect the co-ownership.

    (5)  Buyer shall pay all expenses relating to the care and upkeep of the Foal, including board, veterinary expenses, and sales preparation expenses and shall pay all registration ~~and Stallion / Foal nomination fees~~ or any other fees due or payable to any program or scheme on behalf of the buyer and seller, and agrees to hold harmless Seller from any claims for such expenses. Buyer shall keep the Foal free from all encumbrances, as that term is defined in Provision 3 above.

    (6)  Except as otherwise agreed between Buyer and Seller, Buyer agrees to enter the Foal in a recognized thoroughbred auction, so that the Foal shall be sold no later than its yearling year. Except as otherwise agreed between Buyer and Seller, neither Buyer nor Seller may place a reserve on the Foal, but may bid on the Foal for Buyer's and Seller's own account (that is, to purchase the entire Foal). The proceeds from the sale of the Foal, after deducting of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer, shall be split 50-50 between Buyer and Seller.

    (7)  Each party shall be responsible for insuring its own interest in the Foal, if insurance is desired by such party.

6. Buyer warrants and agrees that the Mare shall be healthy and in sound breeding condition, and shall provide a certification of such condition by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of the Stallion reserves the right to refuse to permit the breeding of any mare to the Stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to the Mare or the Stallion.

7. This contract shall not be assigned or transferred by Buyer. This contract is assignable by Seller for purposes of enforcement.

8. In the event the Stallion dies or is sold, or becomes unfit for service before servicing the Mare, any payment of the Stud Fee received on a Live-Foal basis shall be refunded to Buyer. Further, should the Mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded provided Buyer notifies the Seller in writing and provides a copy of a certificate from the attending veterinarian within ten days.

9. Buyer grants Seller a security interest in the Mare pregnant with the Foal, the Foal, all insurance policies relating to the Foal, all stallion service certificates and Jockey Club Foal registration certificates relating to the breeding or the Foal, and the proceeds and products of the Foal (all of the foregoing being the "Collateral"). Buyer appoints Seller as its attorney-in-fact to execute and file any and all financing statements and agricultural liens in any jurisdiction Seller believes to be appropriate to secure any obligation of Buyer to Seller, whether arising by the owing the Stud Fee or otherwise. Buyer authorizes Seller to retain the stallion service certificate and the Jockey Club Foal registration certificate relating to the breeding and the Foal, and authorizes and appoints Seller as its attorney-in-fact to obtain possession of the stallion service certificate from the manager of the Stallion issuing the certificate, and to obtain the Foal Registration certificate from the Jockey Club, and retain such documents until all obligations of Buyer to Seller are paid in full. In the event the Stud Fee is not timely paid, Seller may, without notice to Buyer, take possession of the Foal or other Collateral, and either retain the Collateral in lieu of the obligation, or re-sell the Collateral privately or publicly in a manner in its sole discretion it believes to be advisable, in which event the Seller shall credit the proceeds of sale, after expenses of sale and maintaining the Collateral, to Buyer's obligation to Seller. This right is in addition to all other rights to which the Buyer is entitled under law.

10. Buyer and/or signatory guarantor further warrants and agrees that the purchase of this stallion nomination is made for commercial purposes and not for personal, family, or household purposes.

11. In the event this agreement is executed by an agent on behalf of Buyer, or a representative or principal on behalf of Buyer if Buyer is an organization, the undersigned agent, representative or principal hereby unconditionally guarantees the full and prompt payment of the Stud Fee as well as the full and prompt performance by Buyer of any and all other obligations hereunder. The undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. The foregoing guaranty and warranty shall remain in effect regardless whether the agent, representative, or principal retains his or her status as such following the execution of this agreement.

12. This agreement shall be binding on the parties, and other obligors stated herein, and their assigns. The sole venue for enforcement of this agreement, or the resolution of any dispute concerning this agreement, its enforcement, or the performance of the parties, shall be the courts of Fayette County in the Commonwealth of Kentucky, and the parties and other obligors hereby submit to jurisdiction of such Courts. The parties and obligors expressly waive all rights to trial by jury with respect to any dispute concerning this agreement, its enforcement, or the performance of the parties.

04/22/2009 WED 10:48  FAX                                                    ☒004/005

13. The parties further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any assurances of whatever nature that are not contained and expressed in this agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

14. This contract shall be Voidable at the Seller's option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:   None

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, April 21,2009

BUYER:

_____     4-25-09
Signature                              Date

SELLER:  Walmac Farm, LLC, By:

_Jordan Krabel____     4/21/09
Signature                Date

___Linda A Robbins, DvM___
Print Name of Signator

___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___
SS# of Signator

Void After Monday, May 11, 2009
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

# WALMAC FARM, LLC

3395 Paris Pike Lexington, KY 40511   (859) 299-0473 tele.   (859) 299-1259 fax

## 2009 MARE INFORMATION FORM

*Please complete fully (type or print). Thank you.*

STALLION: __REDDY'S IMAGE__   SHARE NUMBER: _____

### MARE OWNER INFORMATION
*Please indicate this in the manner you would like it reported to The Jockey Club.*

Name __Linda A. Robb, S. DVM__
Address _____

Tele # (859) 229-7743
Fax # (859) 987-6060
Cell # _____
Email _____

### MARE IDENTIFICATION

Mare's Name __THATKRAZYKAT__
Dam __CATCH THE CAT__
Date of Birth __2003__

Sire __DYNAFORMER__
Dam's Sire __CRAFTY PROSPECTOR__
□ Dkb/br   ☑ Bay   □ Ch   □ Gray/Roan

> *Are there any security interests, liens, encumbrances, or adverse claims against this mare?*
> □ No □ Yes- *If yes, please list details on back of this form.*

### MARE STATUS

□ Maiden   □ In foal   ☑ Barren   □ Slipped   □ Not bred in 2008

□ Already foaled – 2009 foaling date _____/_____/2009 □ Filly □ Colt   □ Dkb/br   □ Bay   □ Ch   □ Gray/Roan

2008 stallion bred to __ARTIE SCHULLER__, 2008 Last Date Bred _____

2007 stallion bred to __ARTIE SCHULLER__ DOB ___/___/2008 □ Filly  ☑ Colt   Color __BAY__

*Is this Mare an IMPORT for the 2009 breeding season?*

□ Yes □ No If yes, Import Date: _____ Country of Origin: _____

### WALMAC WELCOMES YOU AS A BOARDER, PLEASE CALL FOR AVAILABILITY.

Mare's KY Boarding Farm __CEDAR POINT FARM__   Tele # _____

Farm Manager _____   Cell # _____

Boarding Farm Address __2153 BETHLEHEM RD, PARIS, KY 40561__

Mare's Veterinarian __LINDA A. ROBB-S DVM__ Tele # __229-7743__

> PLEASE NOTE: IT IS THE POLICY OF WALMAC FARM, LLC NOT TO RELEASE A
> STALLION SERVICE CERTIFICATE UNTIL AND UNLESS IT IS REQUESTED.

Signature _____   Date __4-25-09__

Date: 4-20-09                                    Contract # FC 007DP

## SEASON REQUEST FORM

☐ Entered In HFM

Mare: ThatKrazyKat

Sire: Dynaformer

Dam: Catchthecat

Dam Sire: Crafty Prospector

In Foal To: Open

2008 Foal: Artie Schiller

Stallion: Ready's Image                    2nd Mare deal

Contract Price: $8,500

Contract Terms: Deferred

Year Born: 2002    Color: Bay

Last Date Bred: _____

20  Foal: _____

☐ Entered In HFM

Mare Owner: Dr. Linda Robbins

Address: Cedar Point Farm
2153 Bethlehem Road
Paris, Ky 40361    email: _____

Phone: _____    Cell: 229-7743    Fax: _____

☐ Entered In HFM

Pay Commission: _____    Percent: _____    Dollar Amount: _____

Agent: _____

Address: _____
_____
_____    email: _____

Phone: _____    Cell: _____    Fax: _____

☑ Approved By ___ JH ___

☐ Denied

☐ Needs boarding farm contract

☐ Send Brochure

Special notes: _____
_____
_____

05/02/2009 SAT 11:42  FAX

# STALLION SERVICE AGREEMENT

FC0S6DP

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:**

DR. Linda Robbins - Cedar Point Farm

2153 Bethlehem Road, Paris, KY 40361

PHONE: (859) 987-2694
                227-7745

Stallion _R. I._
Mare _Reef_
Share No. _FC0S6_
% Ownership: 100.00%
Contract Returned/Entered:
✓ Access __ X __ M/S
Comments:

**Seller:**

Walmac Farm, LLC

3395 Pari's Pike

Lexington, KY 40511

PHONE: (859) 299-0473

FAX:    (859) 299-1259

Seller is the owner of and agrees to sell to Buyer a nomination for the 2009 breeding season to the Thoroughbred Stallion. __Ready's Image.__

1. Buyer agrees to breed _____ Reef, _____ by _____ Cape Town, _____ out of _____ Reiterate, a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion

2. during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days. Purchaser agrees not to breed mare to any other stallion during the breeding season.

Buyer hereby agrees to pay Seller _____ 9,010.00 _____ ("Stud Fee plus 6% KY sales tax") for such nomination,

3. on the following basis (select one by initialing choice):

   a. _____ LIVE FOAL BASIS: Payment of the Stud Fee shall be made no later than November 15, 2009, but shall be subject to refund if all of the following conditions are met: (i) the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the refund condition; (ii) the Mare continues to be owned solely by Buyer until foaling and is not transported to a public sale; and (iii) the Stud Fee is paid in full on a timely basis. If any of the foregoing conditions are not met, the Stud Fee is immediately owed on a no guaranty basis.

   b. _OL_ LIVE FOAL - DEFERRED PAYMENT BASIS: The Stud Fee shall be owed on a Live Foal basis, that is (i) unless the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the condition; and (ii) provided the Mare continues to be owned solely by Buyer until foaling and is not transported to a location other than that stated in the Mare Information Form. Payment of the Stud Fee, with interest thereon from November 15, 2009, at the rate of 7% per annum, shall not be due until the distribution of the proceeds from the sale of the Foal, but in any event no later than December 1, 2011, provided all of the following conditions are met:

   (1) If the Buyer sells the Foal resulting from the breeding, unless otherwise agreed with Seller in writing, the Foal shall only be sold at a thoroughbred public auction in the United States and may not be transported outside the country. Buyer shall notify Seller of the sale in which the Foal is entered no later than 15 days prior to the commencement of the auction session. Buyer shall instruct the sales company in writing to pay the Stud Fee from proceeds of sale, and provide that such payment is prior and superior to all other payments of proceeds from the sale of the Foal except the payment of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer.

   (2) No encumbrances shall be incurred on the Foal, or the proceeds from the Foal, that is superior to the security interest and rights of Seller as otherwise provided herein. Such impermissible encumbrances include, but are not limited to, security interests, statutory and common-law liens such as agister's liens, or agricultural liens, but shall not include the security interest of Seller granted herein. Buyer shall keep all expense payments associated with the Mare while pregnant with the Foal, and the Foal, current.

   (3) Interest accrued on the Stud Fee, if not due sooner, shall be paid current by December 31, 2010.

   (4) Notwithstanding the deferral of payment until sale, the Stud Fee shall be immediately payable upon the breach of any of the forgoing conditions, or the breach of any conditions in this agreement. Buyer acknowledges that the full Stud Fee, with interest, is owed regardless of whether the proceeds of sale are sufficient to pay the Stud Fee.

In either event, ALL PAYMENTS required herein are understood to include 6% Kentucky Sales Tax. In the event of any default of any condition of this Agreement, or delay in payment of the Stud Fee, the Stud Fee shall bear interest at the rate of 18% per annum until paid in full, with interest, and shall include all expenses, including legal costs and attorneys fees, incurred by Seller in the efforts to collect the Stud Fee, with interest.

5/2/2009

Walmac R 10280

05/02/2009 SAT 11:43  FAX                                                                                    ☒002/004

4. Buyer shall carry mortality insurance on the Foal in an amount equal to or greater than the Stud Fee owed and the interest owed, naming Seller as loss payee to the extent of the amount owed under this Agreement and shall furnish Seller proof of coverage.

5. Buyer shall have the right to convert the obligation to a Foal-Sharing with the Seller, wherein Buyer and Seller shall own the resulting Foal on a 50-50 basis as tenants in common, provided each of the following conditions are met:

   (1)   Buyer notifies Seller in writing by fax AND certified mail, to be received by Seller no later than thirty days following the birth of the Foal.

   (2)   The Foal is alive, standing and nursing at the time of the notification.

   (3)   Buyer is not in default or in breach of any terms of this agreement.

   (4)   Buyer shall, within five (5) days of the notification above, execute and deliver to Seller a Bill of Sale, in a form reasonably required by Seller, transferring 50% interest in the Foal to Seller, as tenant-in-common, and Buyer acknowledges that the co-ownership will not be treated as a partnership or joint venture. Buyer shall cause any registration of the Foal with the Jockey Club to reflect the co-ownership.

   (5)   Buyer shall pay all expenses relating to the care and upkeep of the Foal, including board, veterinary expenses, and sales preparation expenses and shall pay all registration and Breeders' Cup Nomination fees or any other fees due or payable to any program or scheme on behalf of the buyer and seller, and agrees to hold harmless Seller from any claims for such expenses. Buyer shall keep the Foal free from all encumbrances, as that term is defined in Provision 3 above.

   (6)   Except as otherwise agreed between Buyer and Seller, Buyer agrees to enter the Foal in a recognized thoroughbred auction, so that the Foal shall be sold no later than its yearling year. Except as otherwise agreed between Buyer and Seller, neither Buyer nor Seller may place a reserve on the Foal, but may bid on the Foal for Buyer's and Seller's own account (that is, to purchase the entire Foal). The proceeds from the sale of the Foal, after deducting the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer, shall be split 50-50 between Buyer and Seller.

   (7)   Each party shall be responsible for insuring its own interest in the Foal, if insurance is desired by such party.

6. Buyer warrants and agrees that the Mare shall be healthy and in sound breeding condition, and shall provide a certification of such condition by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of the Stallion reserves the right to refuse to permit the breeding of any mare to the Stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to the Mare or the Stallion.

7. This contract shall not be assigned or transferred by Buyer. This contract is assignable by Seller for purposes of enforcement.

8. In the event the Stallion dies or is sold, or becomes unfit for service before servicing the Mare, any payment of the Stud Fee received on a Live-Foal basis shall be refunded to Buyer. Further, should the Mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded provided Buyer notifies the Seller in writing and provides a copy of a certificate from the attending veterinarian within ten days.

9. Buyer grants Seller a security interest in the Mare pregnant with the Foal, the Foal, all insurance policies relating to the Foal, all stallion service certificates and Jockey Club Foal registration certificates relating to the breeding or the Foal, and the proceeds and products of the Foal (all of the foregoing being the "Collateral"). Buyer appoints Seller as its attorney-in-fact to execute and file any and all financing statements and agricultural liens in any jurisdiction Seller believes to be appropriate to secure any obligation of Buyer to Seller, whether arising by the owing the Stud Fee or otherwise. Buyer authorizes Seller to retain the stallion service certificate and the Jockey Club Foal registration certificate relating to the breeding and the Foal, and authorizes and appoints Seller as its attorney-in-fact to obtain possession of the stallion service certificate from the manager of the Stallion issuing the certificate, and to obtain the Foal Registration certificate from the Jockey Club, and retain such documents until all obligations of Buyer to Seller are paid in full. In the event the Stud Fee is not timely paid, Seller may, without notice to Buyer, take possession of the Foal or other Collateral, and either retain the Collateral in lieu of the obligation, or re-sell the Collateral privately or publicly in a manner in its sole discretion it believes to be advisable, in which event the Seller shall credit the proceeds of sale, after expenses of sale and maintaining the Collateral, to Buyer's obligation to Seller. This right is in addition to all other rights to which the Buyer is entitled under law.

10. Buyer and/or signatory guarantor further warrants and agrees that the purchase of this stallion nomination is made for commercial purposes and not for personal, family, or household purposes.

11. In the event this agreement is executed by an agent on behalf of Buyer, or a representative or principal on behalf of Buyer if Buyer is an organization, the undersigned agent, representative or principal hereby unconditionally guarantees the full and prompt payment of the Stud Fee as well as the full and prompt performance by Buyer of any and all other obligations hereunder. The undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. The foregoing guaranty and warranty shall remain in effect regardless whether the agent, representative, or principal retains his or her status as such following the execution of this agreement.

12. This agreement shall be binding on the parties, and other obligors stated herein, and their assigns. The sole venue for enforcement of this agreement, or the resolution of any dispute concerning this agreement, its enforcement, or the performance of the parties, shall be the courts of Fayette County in the Commonwealth of Kentucky, and the parties and other obligors hereby submit to jurisdiction of such Courts. The parties and obligors expressly waive all rights to trial by jury with respect to any dispute concerning this agreement, its enforcement, or the performance of the parties.

Walmac R 10281

13. The parties further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any assurances of whatever nature that are not contained and expressed in this agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

14. This contract shall be Voidable at the Seller's option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:   None

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, May 02,2009

BUYER:

_____   5 - 2 - 09
Signature                             Date

_____
Print Name of Signator

_____
SS# of Signator

SELLER: Walmac Farm, LLC, By:

_____   05 - 02 - 09
Signature                             Date

Void After Friday, May 22, 2009
PLEASE RETURN ORIGINAL, KEEPING ONE COPY

Walmac R 10282

25/07/2009 SAT 11:45  FAX                                                    Z004/004

# WALMAC FARM, LLC

3395 Paris Pike  Lexington, KY 40511   (859) 299-0473 tele.   (859) 299-1259 fax

## 2009 MARE INFORMATION FORM

*Please complete fully (type or print). Thank you.*                    57

STALLION: _Ready's Image_          SHARE NUMBER: ~~FC 056DP~~

### MARE OWNER INFORMATION
*Please indicate this in the manner you would like it reported to The Jockey Club.*

Name _Mr+Mrs F. Gill Aulicic_          Tele # _(859) 229-7743_
Address _2153 Bethlehem Rd_          Fax # _987-0060_
_Paris KY 40561_          Cell # ____
          Email ____

### MARE IDENTIFICATION

Mare's Name _Reef_          Sire _Cape Town_
Dam _Centerate_          Dam's Sire _Drone_
Date of Birth _2000_          ☑Dkb/br  ☐ Bay  ☐ Ch  ☐ Gray/Roan

---

*Are there any security interests, liens, encumbrances, or adverse claims against this mare?*
☐ No ☐ Yes- If yes, please list details on back of this form.

---

## MARE STATUS

☐ Maiden   ☐ In foal   ☐ Barren   ☐ Slipped   ☐ Not bred in 2008

☑ Already foaled – 2009 foaling date _4/3_/2009 ☑Filly ☐ Colt    ☑Dkb/br ☐ Bay ☐ Ch ☐ Gray/Roan

2008 stallion bred to _Chapel Royal_   2008 Last Date Bred ____

2007 stallion bred to _Artie Schiller_ DOB _/_/2008 ☑Filly ☐Colt  Color: _Dk B/br_

Is this Mare an IMPORT for the 2009 breeding season?

☐ Yes ☑No If yes, Import Date: ____ Country of Origin: ____

### WALMAC WELCOMES YOU AS A BOARDER, PLEASE CALL FOR AVAILABILITY.

Mare's KY Boarding Farm _Cedar Point Farm_          Tele # ____

Farm Manager _Gill Aulicic_          Cell # ____

Boarding Farm Address _2153 Bethlehem Rd, Paris, KY 40561_

Mare's Veterinarian _Linda A. Robb, DVM_ Tele # _229-7743_

---

PLEASE NOTE: IT IS THE POLICY OF WALMAC FARM, LLC NOT TO RELEASE A
STALLION SERVICE CERTIFICATE UNTIL AND UNLESS IT IS REQUESTED.

---

Signature ____          Date _5-2-09_

Walmac R 10283

Copyright Bloodstock Research Information Services, Inc., 2009

REITERATE, 1984, Drone- Tusi Bella by Better Bee.

```
                                          YRS  ST WN PL SH      EARNED     SR      SSI
1989  Western Squall,Dkbbr,f,Gone West      2  13  3  0  5     9,145 ( 87)   0.62
              North America Dirt Sprints       13  3  0  5     9,145 ( 87)
              North America Muddy/Sloppy        2  0  0  1       540 ( 74)
              DP = 10-9-11-0-0     DI =   4.45  CD =    0.97  AWD =  5.83
1990  Hoosie,Dkbbr,c,Stately Don            5  25  3  3  2    39,738 ( 95)   1.11
              North America Turf Record         2  0  1  0     8,400 ( 92)
              North America Dirt Sprints       21  3  2  2    30,913 ( 95)
              North America Dirt Routes         2  0  0  0       425 ( 65)
              North America Muddy/Sloppy        4  0  1  0     1,400 ( 82)
              DP = 4-5-15-0-6      DI =   1.22  CD =    0.03  AWD =  5.67
1991  Slipped
1992  Face Mask,B,c,Houston                 2  24  2  0  1     5,248 ( 72)   0.12
              North America Dirt Sprints       21  2  0  1     5,032 ( 72)
              North America Dirt Routes         3  0  0  0       186 ( 55)
              North America Muddy/Sloppy        1  0  0  0       186 ( 55)
              DP = 5-4-7-0-0       DI =   3.57  CD =    0.88  AWD =  5.75
1993  Troy Boy,B,c,Miswaki                  1   1  0  0  0         0 ( 65)   0.00
              North America Dirt Sprints        1  0  0  0         0 ( 65)
              North America Muddy/Sloppy        1  0  0  0         0 ( 65)
              DP = 9-8-14-1-0      DI =   3.00  CD =    0.78
1994  White Bronco,Ch,c,Houston             7  39  6  6  3   252,305 (106)   3.17
              North America 2 YO Record         5  1  1  1    31,725 ( 97)
              North America Turf Record         6  0  1  0     8,840 ( 94)
              North America Dirt Sprints       32  6  5  3   243,465 (106)
              North America Dirt Routes         1  0  0  0         0 ( 79)
              North America Muddy/Sloppy        1  0  0  0     1,560 ( 85)
              DP = 5-4-7-0-0       DI =   3.57  CD =    0.88  AWD =  6.25
        At 3 3rd Inverness Drive S. -L (73,725)
        At 4 2nd Potrero Grande Breeders' Cup Hcp. -G2 (130,700), 3rd Oakland
              Handicap -L (125,000)
1996  Salted With Fire,Dkbbr,f,Salt Lake    1   2  0  0  0       600 ( 56)   0.13
              North America Dirt Sprints        2  0  0  0       600 ( 56)
              DP = 2-4-4-0-0       DI =   4.00  CD =    0.80
        Sold at      Hip #  Sales Price   Sire Avg        Rank     Stud Fee
        KEENOV  1996   2266    $20,000   $60,484 wlg    (28/31)    $5,000
1997  Eishin Band O,Dkbbr,c,Chimes Band
        IN JAPAN                            3  12  1  2  0   118,949
              DP = 7-4-9-0-0       DI =   3.44  CD =    0.90  AWD =  8.00
        Sold at      Hip #  Sales Price   Sire Avg        Rank     Stud Fee
        FTKJUL  1998     45    $55,000   $24,143 ylg    ( 2/28)    $7,500
1998  Grandma Lu,Ch,f,Salt Lake            3  20  5  2  5   166,450 (100)   3.08
              North America 2 YO Record         7  2  0  1    52,420 (100)
              North America Turf Record         1  0  1  0     7,200 ( 95)
              North America Dirt Sprints       19  5  1  5   159,250 (100)
              North America Muddy/Sloppy        3  1  0  1    29,120 ( 89)
              DP = 2-4-4-0-0       DI =   4.00  CD =    0.80  AWD =  5.50
        Sold at      Hip #  Sales Price   Sire Avg        Rank     Stud Fee
        KEENOV  1998   1301   $115,000   $39,239 wlg    ( 1/23)    $7,500
        OBSFEB  2000   0023   $195,000   $80,596 2yo    ( 3/26)    $7,500
1999  Squire Boone,Ch,c,Boone's Mill       2   8  1  1  2    51,045 (100)   2.08
              North America 2 YO Record         4  1  1  2    49,685 (100)
              North America Turf Record         2  0  0  0       400 ( 87)
              North America Dirt Sprints        4  1  0  2    38,485 (100)
              North America Dirt Routes         2  0  1  0    12,160 ( 97)
              North America Muddy/Sloppy        1  0  0  0       960 ( 49)
              DP = 11-11-10-0-0    DI =   5.40  CD =    1.03  AWD =  7.00
        Sold at      Hip #  Sales Price   Sire Avg        Rank     Stud Fee
        KEENOV  1999   2094    $16,000   $9,017 wlg     ( 1/12)    $5,000
2000  Reef,Dk B/,f,Cape Town               3  11  2  2  1    78,825 ( 93)   2.82
```

Walmac R 10284

```
                North America 2 YO Record          2   0   0   1    3,970 ( 84)
                North America Turf Record           3   0   0   0      600 ( 76)
                North America Dirt Sprints          8   2   2   1   78,225 ( 93)
                North America Muddy/Sloppy          1   0   0   0        0 ( 68)
          DP = 8-4-10-0-0      DI =   3.40   CD =    0.91   AWD =  6.75
 2001  Florabama,B,f,Boundary                       1   9   0   0   2    3,700 ( 69)    0.14
                North America Turf Record           2   0   0   0      250 ( 57)
                North America Dirt Sprints          1   0   0   0        0 ( 57)
                North America Dirt Routes           6   0   0   2    3,450 ( 69)
                North America Muddy/Sloppy          2   0   0   1      950 ( 69)
          DP = 3-10-11-2-0      DI =   2.47   CD =    0.54
```

Walmac R 10285

Date: 5-04-09                     Contract # FC 057

# SEASON REQUEST FORM

Mare: Beef

☐ Entered In HFM

Sire: Cape Town

Dam: Reiterate

Dam Sire: Drone

In Foal To: _____

20  Foal: _____

Stallion: Ready's Image

Contract Price: $ 8,500

Contract Terms: Deferred

Year Born: 2000    Color: _____

Last Date Bred: _____

20  Foal: _____

2nd
Male

---

☐ Entered In HFM

Mare Owner: Dr. Linda Robbins

Address: Cedar Point Farm
2153 Bethlehem Rd.
Paris, Ky 40361     email: _____

Phone: 987-2694    Cell: _____    Fax: _____

---

☐ Entered In HFM

Pay Commission: _____    Percent: _____    Dollar Amount: _____

Agent: _____

Address: _____
_____

email: _____

Phone: _____    Cell: _____    Fax: _____

---

☐ Approved By _____

☐ Denied

☐ Needs boarding farm contract

☐ Send Brochure

---

Special notes: _____
_____
_____

Walmac R 10286

May 08 2009 7:01PM    NORTHTOWN AUTOMOTIVE    836 4600    p.3
From: unknown    Page: 2/5    Date: 5/7/2009 4:14:25 PM

## STALLION SERVICE AGREEMENT    FC 059 DP

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:**

Mr. David Strack
P.O. Box 1445, Buffalo, NY  14220
PHONE: 716-444-1610

Stallion _____
Mare _____
Share No. _____ FC 059
Contract Number 100.5028
_____ % Ownership _____
_____ Access _____ X _____ M/S
Comment _____

**Seller:**

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY  40511
PHONE: (859) 299-0473
FAX:    (859) 299-1259

1. Seller is the owner of and agrees to sell to Buyer a nomination for the 2009 breeding season to the Thoroughbred Stallion,    **Ready's Image.**

2. Buyer agrees to breed    **Golden Surprise,**    by    **Hurontario,**    out of    **Old Goldie,**
   a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days. Purchaser agrees not to breed mare to any other stallion during the breeding season.

3. Buyer hereby agrees to pay Seller    **11,660.00**    ("Stud Fee plus 6% KY sales tax") for such nomination, on the following basis (select one by initialing choice):

   a. _____ LIVE FOAL BASIS: Payment of the Stud Fee shall be made no later than November 15, 2009, but shall be subject to refund if all of the following conditions are met: (i) the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the refund condition; (ii) the Mare continues to be owned solely by Buyer until foaling and is not transported to a public sale; and (iii) the Stud Fee is paid in full on a timely basis. If any of the foregoing conditions are not met, the Stud Fee is immediately owed on a no guaranty basis.

   b. _____ LIVE FOAL - DEFERRED PAYMENT BASIS: The Stud Fee shall be owed on a Live Foal basis, that is (i) unless the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the condition; and (ii) provided the Mare continues to be owned solely by Buyer until foaling and is not transported to a location other than that stated in the Mare Information Form. Payment of the Stud Fee, with interest thereon from November 15, 2009, at the rate of 7% per annum, shall not be due until the distribution of the proceeds from the sale of the Foal, but in any event no later than December 1, 2011, provided all of the following conditions are met:

   (1)    If the Buyer sells the Foal resulting from the breeding, unless otherwise agreed with Seller in writing, the Foal shall only be sold at a thoroughbred public auction in the United States and may not be transported outside the country. Buyer shall notify Seller of the sale in which the Foal is entered no later than 15 days prior to the commencement of the auction session. Buyer shall instruct the sales company in writing to pay the Stud Fee from proceeds of sale, and provide that such payment is prior and superior to all other payments of proceeds from the sale of the Foal except the payment of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer.

   (2)    No encumbrances shall be incurred on the Foal, or the proceeds from the Foal, that is superior to the security interest and rights of Seller as otherwise provided herein. Such impermissible encumbrances include, but are not limited to, security interests, statutory and common-law liens such as agister's liens, or agricultural liens, but shall not include the security interest of Seller granted herein. Buyer shall keep all expense payments associated with the Mare while pregnant with the Foal, and the Foal, current.

   (3)    Interest accrued on the Stud Fee, if not due sooner, shall be paid current by December 31, 2010.

   (4)    Notwithstanding the deferral of payment until sale, the Stud Fee shall be immediately payable upon the breach of any of the forgoing conditions, or the breach of any conditions in this agreement. Buyer acknowledges that the full Stud Fee, with interest, is owed regardless of whether the proceeds of sale are sufficient to pay the Stud Fee.

In either event, ALL PAYMENTS required herein are understood to include 6% Kentucky Sales Tax. In the event of any default of any condition of this Agreement, or delay in payment of the Stud Fee, the Stud Fee shall bear interest at the rate of 18% per annum until paid in full, with interest, and shall include all expenses, including legal costs and attorneys fees, incurred by Seller in the efforts to collect the Stud Fee, with interest.



5/7/2009

Walmac R 10299

May 08 2009 7:01PM     NORTHTOWN AUTOMOTIVE       836 4600            p.4
                From: unknown   Page: 3/5   Date: 5/7/2009 4:14:25 PM

4. Buyer shall carry mortality insurance on the Foal in an amount equal to or greater than the Stud Fee owed and the interest owed, naming Seller as loss payee to the extent of the amount owed under this Agreement and shall furnish Seller proof of coverage.

5. Buyer shall have the right to convert the obligation to a Foal-Sharing with the Seller, wherein Buyer and Seller shall own the resulting Foal on a 50-50 basis as tenants in common, provided each of the following conditions are met:

    (1)  Buyer notifies Seller in writing by fax AND certified mail, to be received by Seller no later than thirty days following the birth of the Foal.

    (2)  The Foal is alive, standing and nursing at the time of the notification.

    (3)  Buyer is not in default or in breach of any terms of this agreement.

    (4)  Buyer shall, within five (5) days of the notification above, execute and deliver to Seller a Bill of Sale, in a form reasonably required by Seller, transferring 50% interest in the Foal to Seller, as tenant-in-common, and Buyer acknowledges that the co-ownership will not be treated as a partnership or joint venture. Buyer shall cause any registration of the Foal with the Jockey Club to reflect the co-ownership.

    (5)  Buyer shall pay all expenses relating to the care and upkeep of the Foal, including board, veterinary expenses, and sales preparation expenses and shall pay all registration and Breeders' Cup Nomination fees or any other fees due or payable to any program or scheme on behalf of the buyer and seller, and agrees to hold harmless Seller from any claims for such expenses. Buyer shall keep the Foal free from all encumbrances, as that term is defined in Provision 3 above.

    (6)  Except as otherwise agreed between Buyer and Seller, Buyer agrees to enter the Foal in a recognized thoroughbred auction, so that the Foal shall be sold no later than its yearling year. Except as otherwise agreed between Buyer and Seller, neither Buyer nor Seller may place a reserve on the Foal, but may bid on the Foal for Buyer's and Seller's own account (that is, to purchase the entire Foal). The proceeds from the sale of the Foal, after deducting of the sales commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer, shall be split 50-50 between Buyer and Seller.

    (7)  Each party shall be responsible for insuring its own interest in the Foal, if insurance is desired by such party.

6. Buyer warrants and agrees that the Mare shall be healthy and in sound breeding condition, and shall provide a certification of such condition by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of the Stallion reserves the right to refuse to permit the breeding of any mare to the Stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to the Mare or the Stallion.

7. This contract shall not be assigned or transferred by Buyer. This contract is assignable by Seller for purposes of enforcement.

8. In the event the Stallion dies or is sold, or becomes unfit for service before servicing the Mare, any payment of the Stud Fee received on a Live-Foal basis shall be refunded to Buyer. Further, should the Mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded provided Buyer notifies the Seller in writing and provides a copy of a certificate from the attending veterinarian within ten days.

9. Buyer grants Seller a security interest in the Mare pregnant with the Foal, the Foal, all insurance policies relating to the Foal, all stallion service certificates and Jockey Club Foal registration certificates relating to the breeding or the Foal, and the proceeds and products of the Foal (all of the foregoing being the "Collateral"). Buyer appoints Seller as its attorney-in-fact to execute and file any and all financing statements and agricultural liens in any jurisdiction Seller believes to be appropriate to secure any obligation of Buyer to Seller, whether arising by the owing the Stud Fee or otherwise. Buyer authorizes Seller to retain the stallion service certificate and the Jockey Club Foal registration certificate relating to the breeding and the Foal, and authorizes and appoints Seller as its attorney-in-fact to obtain possession of the stallion service certificate from the manager of the Stallion issuing the certificate, and to obtain the Foal Registration certificate from the Jockey Club, and retain such documents until all obligations of Buyer to Seller are paid in full. In the event the Stud Fee is not timely paid, Seller may, without notice to Buyer, take possession of the Foal or other Collateral, and either retain the Collateral in lieu of the obligation, or re-sell the Collateral privately or publicly in a manner in its sole discretion it believes to be advisable, in which event the Seller shall credit the proceeds of sale, after expenses of sale and maintaining the Collateral, to Buyer's obligation to Seller. This right is in addition to all other rights to which the Buyer is entitled under law.

10. Buyer and/or signatory guarantor further warrants and agrees that the purchase of this stallion nomination is made for commercial purposes and not for personal, family, or household purposes.

11. In the event this agreement is executed by an agent on behalf of Buyer, or a representative or principal on behalf of Buyer if Buyer is an organization, the undersigned agent, representative or principal hereby unconditionally guarantees the full and prompt payment of the Stud Fee as well as the full and prompt performance by Buyer of any and all other obligations hereunder. The undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. The foregoing guaranty and warranty shall remain in effect regardless whether the agent, representative, or principal retains his or her status as such following the execution of this agreement.

12. This agreement shall be binding on the parties, and other obligors stated herein, and their assigns. The sole venue for enforcement of this agreement, or the resolution of any dispute concerning this agreement, its enforcement, or the performance of the parties, shall be the courts of Fayette County in the Commonwealth of Kentucky, and the parties and other obligors hereby submit to jurisdiction of such Courts. The parties and obligors expressly waive all rights to trial by jury with respect to any dispute concerning this agreement, its enforcement, or the performance of the parties.



Page 2 of 3, Ref#2737 Golden Surprise/Ready's Image

Walmac R 10300

May 08 2009 7:03PM    NORTHTOWN AUTOMOTIVE        836 4600              p.5
                 From: unknown    Page: 4/5    Date: 5/7/2009 4:14:26 PM

13. The parties further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any assurances of whatever nature that are not contained and expressed in this agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

14. This contract shall be Voidable at the Seller's option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:   None

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, May 07,2009

BUYER:                                          SELLER:  Walmac Farm, LLC, By:

_____                _____  5-7-09
Signature                        Date           Signature                     Date

David Strack
Print Name of Signator

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
SS# of Signator


**Void After Wednesday, May 27, 2009**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

Page 3 of 3, Ref#2737 Golden Surprise/Ready's Image
Thursday, May 07, 2009

Walmac R 10301

Date: _5-07-09_                              Contract # _FC 059DP_

## SEASON REQUEST FORM

Mare: _Golden Surprise_          Stallion: _Ready's Image_

☐ Entered In HFM

Sire: _Aurontario_               Contract Price: _$ 11,000_

Dam: _Old Goldie_                Contract Terms: _Deferred_

Dam Sire: _Young Emperor_        Year Born: _1995_   Color: _Ch_

In Foal To: ~~F. Seattle Fitz~~ ~~Closing Argument~~    Last Date Bred: _____

20   Foal: _?_                   20 07 Foal: _F. Exchange Rate_

---

Mare Owner: _David Strack_

☐ Entered In HFM

Address: _P. O. Box 1445_
_Buffalo, NY 14220_
email: _____

Phone: _716·444-1610_  Cell: _____  Fax: _716· 614-3870_

---

Pay Commission: _____  Percent: _____  Dollar Amount: _____

Agent: _____

☐ Entered In HFM

Address: _____

_____

email: _____

Phone: _____  Cell: _____  Fax: _____

---

☐ Approved By _GJH_          ☐ Needs boarding farm contract

☐ Denied                      ☐ Send Brochure

---

Special notes: _____

_____

_____

Walmac R 10302

MS 001

## MARE SHARE AGREEMENT

THIS AGREEMENT made and entered into by and between **WALMAC STUD MANAGEMENT, LLC**, hereafter referred to as "First Party"; and ~~JOHNNY T.L. JONES,~~ III, 3395 Paris Pike, Lexington, KY 40511, hereinafter referred to as "Second Party." *Ready's Image Syndicate*

### WITNESSETH:

WHEREAS, First Party is the owner of the Thoroughbred mare **SHEZA WILD THING** by FOREST WILDCAT out of CONFIRMED AFFAIR , hereinafter referred to as the "Mare";

WHEREAS, Second Party is the owner of a 2009 breeding nomination to the Thoroughbred stallion **READY'S IMAGE**, hereinafter referred to as the "Stallion", which Stallion presently stands at Walmac Farm, LLC, 3395 Paris Pike, Lexington, KY 40511, and

WHEREAS, the parties hereto have agreed to breed the Mare to the Stallion in the 2009 breeding season pursuant to the terms and conditions hereof.

NOW, THEREFORE, for and in consideration of the premises hereof and the mutual promises and covenants hereinafter set forth, the parties do hereby agree, as follows:

1. BREEDING THE MARE. First Party will present and transport the Mare to Walmac for breeding to the Stallion in the 2009 breeding season and Second Party will provide the breeding nomination to the Stallion in such breeding season for such purposes; provided, however, if the physical condition of the Stallion or the Mare, upon competent veterinary advice, make such mating inappropriate, then such shall not occur.

2. SALE OF THE MARE; DISTRIBUTION OF PROCEEDS. In the event the Mare conceives on the cover of the Stallion, the parties agree that the Mare shall be entered for sale in the Keeneland November 2009 Sale. Prior to such sale, Second Party shall cause the stallion service certificate to be delivered to Keeneland and First Party shall deliver the Mare's Jockey Club certificate to Keeneland. The net proceeds of sale (i.e. the gross sales price less Keeneland's commission and/or entry fee and the consignor commission) shall be split on a 75/35 basis with 75% to the First Party, and 35% to the Second Party.

3. EXPENSES. It is further agreed that:

    a. ) Keeneland's commission and/or entry fee and Walmac's commission shall be borne equally by the parties.

    b. ) All board, sales preparation, veterinary, farrier, etc. and any and all other usual and ordinary expenses related to the Mare from and after the date hereof until sale, shall be borne by First Party.

    c. ) Any expenses directly related to the sale of the Mare such as advertising, entry fees, etc. shall be borne equally by the parties.

4. TERMINATION OF AGREEMENT. This agreement shall terminate ab initio upon the occurrence of any of the following events, and neither party shall have any further rights, duties or obligations with respect hereto:

    a. Either the Stallion or Mare dies or becomes unfit for breeding prior to the Mare conceiving a foal during the 2009 breeding season; or

    b. Prior to entering the sales ring at the Keeneland November 2009 Sale, the Mare dies, slips or aborts her 2009 foal in utero , or for any other reason is certified as not pregnant at such time; or

    c. First Party elects to terminate this Agreement, at its sole option, in the event the Stallion shall not be breeding sound for a period of seven (7) or more days during the 2009 breeding season and at the time of such election the Mare is certified not pregnant on any prior cover by the Stallion.

5. INSURANCE. Each party may insure its respective interest in the Stallion, the Mare, or any foal to be conceived against such risks and in such amounts as it may be deemed necessary or prudent. Any such . insurance shall be the sole responsibility of and shall inure to the sole benefit of the party procuring same.

Walmac R 10313

6.  WARRANTIES.  Each party hereby warrants and covenants to and with the other that it is fully authorized to enter into this Agreement and that this Agreement is not in violation of any agreement with any third party, that no security interests, liens, or encumbrances presently exist against its respective Stallion interest or in the Mare which will attach to the other party's interest in the proceeds of sale, that it will not permit or cause party's interest in the proceeds of sale whether by virtue of a blanket security agreement or otherwise.  Each party further warrants, covenants and agrees that it shall have no right, power or authority to sell, convey or encumber any interest created hereunder.

7.  NON-PARTNERSHIP ELECTION.  With respect to the Mare, the breeding of the Mare to the Stallion and the foal to be produced, the intent and purpose of this Agreement is not to create, and shall not be construed as creating, a partnership, joint venture, or any other relation whereby any party may be held liable for any act or omission of any other party.  If for Federal Tax purposes this Agreement, the relationship established hereby, and the operation hereunder are regarded as a partnership, then each party hereby elects not to be treated as a partnership and elects to be excluded from the application of all the provisions of Subchapter K, Chapter 1, Subtitle A of the Internal Revenue Code of 1986, as amended, and to make and file such elections as may be required or permitted by such law and to take all actions consistent therewith.  In making this election, each of the parties hereto states that the income derived by it from the operations of this Agreement can be adequately determined without the computation of partnership taxable income.

8.  CAPTIONS.  Paragraph titles or captions contained in this Agreement are inserted only as a matter of reference and convenience and in no way define, limit, extend or describe the scope of this Agreement, or the intent of any provision.

9.  BINDING EFFECT/GOVERNING LAW.  This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors and assigns, and shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky.  This Agreement may further be executed in several counterparts and upon such execution by all parties hereto shall be binding and of full force and effect as if all signatures were appended to one original document.  Facsimile signature(s) has full force and effect of original signature(s).

IN WITNESS WHEREOF, the parties have set their hands as of this the date, the 6th day of February, 2009.

By: _____

"First Party"

By: _____

Walmac Farm, LLC

"Second Party"

Phone:  (859) 299-0473

Fax:  (859) 299-1259

Walmac R 10314

## MARE SHARE AGREEMENT

THIS AGREEMENT made and entered into by and between **WALMAC STUD MANAGEMENT, LLC**, hereafter referred to as "First Party"; and ~~JOHNNY T.L. JONES, III~~, 3395 Paris Pike, Lexington, KY 40511, hereinafter referred to as "Second Party." *Ready's Image Syndicate*

### W I T N E S S E T H:

WHEREAS, First Party is the owner of the Thoroughbred mare **SHEZA WILD THING** by FOREST WILDCAT out of CONFIRMED AFFAIR , hereinafter referred to as the "Mare";

WHEREAS, Second Party is the owner of a 2009 breeding nomination to the Thoroughbred stallion **READY'S IMAGE**, hereinafter referred to as the "Stallion", which Stallion presently stands at Walmac Farm, LLC, 3395 Paris Pike, Lexington, KY 40511, and

WHEREAS, the parties hereto have agreed to breed the Mare to the Stallion in the 2009 breeding season pursuant to the terms and conditions hereof.

NOW, THEREFORE, for and in consideration of the premises hereof and the mutual promises and covenants hereinafter set forth, the parties do hereby agree, as follows:

1.  BREEDING THE MARE. First Party will present and transport the Mare to Walmac for breeding to the Stallion in the 2009 breeding season and Second Party will provide the breeding nomination to the Stallion in such breeding season for such purposes; provided, however, if the physical condition of the Stallion or the Mare, upon competent veterinary advice, make such mating inappropriate, then such shall not occur.

2.  SALE OF THE MARE; DISTRIBUTION OF PROCEEDS.   In the event the Mare conceives on the cover of the Stallion, the parties agree that the Mare shall be entered for sale in the Keeneland November 2009 Sale.  Prior to such sale, Second Party shall cause the stallion service certificate to be delivered to Keeneland and First Party shall deliver the Mare's Jockey Club certificate to Keeneland.   The net proceeds of sale (i.e. the gross sales price less Keeneland's commission and/or entry fee and the consignor commission) shall be split on a 75/35 basis with 75% to the First Party, and 35% to the Second Party.

3.  EXPENSES.  It is further agreed that:

     a. ) Keeneland's commission and/or entry fee and Walmac's commission shall be borne equally by the parties.

     b. ) All board, sales preparation, veterinary, farrier, etc. and any and all other usual and ordinary expenses related to the Mare from and after the date hereof until sale, shall be borne by First Party.

     c. ) Any expenses directly related to the sale of the Mare such as advertising, entry fees, etc. shall be borne equally by the parties.

4.  TERMINATION OF AGREEMENT.  This agreement shall terminate ab initio upon the occurrence of any of the following events, and neither party shall have any further rights, duties or obligations with respect hereto:

     a.  Either the Stallion or Mare dies or becomes unfit for breeding prior to the Mare conceiving a foal during the 2009 breeding season; or

     b.  Prior to entering the sales ring at the Keeneland November 2009 Sale, the Mare dies, slips or aborts her 2009 foal in utero , or for any other reason is certified as not pregnant at such time; or

     c.  First Party elects to terminate this Agreement, at its sole option, in the event the Stallion shall not be breeding sound for a period of seven (7) or more days during the 2009 breeding season and at the time of such election the Mare is certified not pregnant on any prior cover by the Stallion.

5.  INSURANCE.   Each party may insure its respective interest in the Stallion, the Mare, or any foal to be conceived against such risks and in such amounts as it may be deemed necessary or prudent.  Any such . insurance shall be the sole responsibility of and shall inure to the sole benefit of the party procuring same.

6.   WARRANTIES.   Each party hereby warrants and covenants to and with the other that it is fully authorized to enter into this Agreement and that this Agreement is not in violation of any agreement with any third party, that no security interests, liens, or encumbrances presently exist against its respective Stallion interest or in the Mare which will attach to the other party's interest in the proceeds of sale, that it will not permit or cause party's interest in the proceeds of sale whether by virtue of a blanket security agreement or otherwise.   Each party further warrants, covenants and agrees that it shall have no right, power or authority to sell, convey or encumber any interest created hereunder.

7.   NON-PARTNERSHIP ELECTION.   With respect to the Mare, the breeding of the Mare to the Stallion and the foal to be produced, the intent and purpose of this Agreement is not to create, and shall not be construed as creating, a partnership, joint venture, or any other relation whereby any party may be held liable for any act or omission of any other party.   If for Federal Tax purposes this Agreement, the relationship established hereby, and the operation hereunder are regarded as a partnership, then each party hereby elects not to be treated as a partnership and elects to be excluded from the application of all the provisions of Subchapter K, Chapter 1, Subtitle A of the Internal Revenue Code of 1986, as amended, and to make and file such elections as may be required or permitted by such law and to take all actions consistent therewith.   In making this election, each of the parties hereto states that the income derived by it from the operations of this Agreement can be adequately determined without the computation of partnership taxable income.

8.   CAPTIONS.   Paragraph titles or captions contained in this Agreement are inserted only as a matter of reference and convenience and in no way define, limit, extend or describe the scope of this Agreement, or the intent of any provision.

9.   BINDING EFFECT/GOVERNING LAW.   This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors and assigns, and shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky. This Agreement may further be executed in several counterparts and upon such execution by all parties hereto shall be binding and of full force and effect as if all signatures were appended to one original document. Facsimile signature(s) has full force and effect of original signature(s).

IN WITNESS WHEREOF, the parties have set their hands as of this the date, the 6th day of February, 2009.

By: _____

"First Party"


By: _____
     Walmac Farm, LLC
     "Second Party"
     Phone: (859) 299-0473
     Fax: (859) 299-1259

Walmac R 10316

Date: _3-10-09_                                    Contract # __ MS 001 __

## SEASON REQUEST FORM

Mare: Sheza Wild Thing                Stallion: Ready's Image

Entered
In HFM

Sire: Forest Wildcat                  Contract Price: _____
Dam: Confirmed Affair                 Contract Terms: mare share
Dam Sire: Affirmed                    Year Born: 1999   Color: bay
In Foal To: '09 StP filly             Last Date Bred: 3/6/08
2008 Foal: c. Jump Start              2007 Foal: f. Arch

Mare Owner: John T.L. Jones III

Entered
In HFM

Address: _____

_____

_____ email: _____

Phone: _____ Cell: _____ Fax: _____

Pay Commission: _____ Percent: _____ Dollar Amount: _____

Agent: _____

Entered
In HFM

Address: _____

_____

_____ email: _____

Phone: _____ Cell: _____ Fax: _____

☐ Approved By _____        ☐ Needs boarding farm contract

☐ Denied                             ☐ Send Brochure

Special notes: _____

_____

_____

Stallion *Ready's Image* 2
Mare *Sunset Thomas*
Share No. _____ M/S  002
Contract Returned/Entered:

**MARE SHARE AGREEMENT**

THIS AGREEMENT made and entered into by and between **WALMAC STUD MANAGEMENT, LLC**, hereinafter referred to as "First Party"; and **WALMAC FARM, LLC**, 3395 Paris Pike, Lexington, KY 40511, hereinafter referred to as "Second Party."

## W I T N E S S E T H :

WHEREAS, First Party is the owner of the Thoroughbred mare **SUNSET THOMAS** by DIXIE UNION out of WHAT IS NEXT , hereinafter referred to as the "Mare";

WHEREAS, Second Party is the owner of a 2009 breeding nomination to the Thoroughbred stallion **READY'S IMAGE**, hereinafter referred to as the "Stallion", which Stallion presently stands at Walmac Farm, LLC, 3395 Paris Pike, Lexington, KY 40511, and

WHEREAS, the parties hereto have agreed to breed the Mare to the Stallion in the 2009 breeding season pursuant to the terms and conditions hereof.

NOW, THEREFORE, for and in consideration of the premises hereof and the mutual promises and covenants hereinafter set forth, the parties do hereby agree, as follows:

1.  BREEDING THE MARE. First Party will present and transport the Mare to Walmac for breeding to the Stallion in the 2009 breeding season and Second Party will provide the breeding nomination to the Stallion in such breeding season for such purposes; provided, however, if the physical condition of the Stallion or the Mare, upon competent veterinary advice, make such mating inappropriate, then such shall not occur.

2.  SALE OF THE MARE; DISTRIBUTION OF PROCEEDS.    In the event the Mare conceives on the cover of the Stallion, the parties agree that the Mare shall be entered for sale in the Keeneland November 2009 Sale. Prior to such sale, Second Party shall cause the stallion service certificate to be delivered to Keeneland and First Party shall deliver the Mare's Jockey Club certificate to Keeneland.  The net proceeds of sale (i.e. the gross sales price less Keeneland's commission and/or entry fee and the consignor commission) shall be split on a 60/40 basis with 60% to the First Party, and 40% to the Second Party.

3.   EXPENSES.  It is further agreed that:

a. )  Keeneland's commission and/or entry fee and Walmac's commission shall be borne equally by the parties.

b. )  All board, sales preparation, veterinary, farrier, etc. and any and all other usual and ordinary expenses related to the Mare from and after the date hereof until sale, shall be borne by First Party.

c. )  Any expenses directly related to the sale of the Mare such as advertising, entry fees, etc. shall be borne equally by the parties.

4.   TERMINATION OF AGREEMENT.  This agreement shall terminate ab initio upon the occurrence of any of the following events, and neither party shall have any further rights, duties or obligations with respect hereto:

a.  Either the Stallion or Mare dies or becomes unfit for breeding prior to the Mare conceiving a foal during the 2009 breeding season; or

b.  Prior to entering the sales ring at the Keeneland November 2009 Sale, the Mare dies, slips or aborts her 2009 foal in utero , or for any other reason is certified as not pregnant at such time; or

c.  First Party elects to terminate this Agreement, at its sole option, in the event the Stallion shall not be breeding sound for a period of seven (7) or more days during the 2009 breeding season and at the time of such election the Mare is certified not pregnant on any prior cover by the Stallion.

5.   INSURANCE.    Each party may insure its respective interest in the Stallion, the Mare, or any foal to be conceived against such risks and in such amounts as it may be deemed necessary or prudent. Any such . insurance shall be the sole responsibility of and shall inure to the sole benefit of the party procuring same.

6.   WARRANTIES.  Each party hereby warrants and covenants to and with the other that it is fully authorized to enter into this Agreement and that this Agreement is not in violation of any agreement with any third party, that no security interests, liens, or encumbrances presently exist against its respective Stallion interest or in the Mare which will attach to the other party's interest in the proceeds of sale, that it will not permit or cause party's interest in the proceeds of sale whether by virtue of a blanket security agreement or otherwise.  Each party further warrants, covenants and agrees that it shall have no right, power or authority to sell, convey or encumber any interest created hereunder.

7.   NON-PARTNERSHIP ELECTION.  With respect to the Mare, the breeding of the Mare to the Stallion and the foal to be produced, the intent and purpose of this Agreement is not to create, and shall not be construed as creating, a partnership, joint venture, or any other relation whereby any party may be held liable for any act or omission of any other party.  If for Federal Tax purposes this Agreement, the relationship established hereby, and the operation hereunder are regarded as a partnership, then each party hereby elects not to be treated as a partnership and elects to be excluded from the application of all the provisions of Subchapter K, Chapter 1, Subtitle A of the Internal Revenue Code of 1986, as amended, and to make and file such elections as may be required or permitted by such law and to take all actions consistent therewith.  In making this election, each of the parties hereto states that the income derived by it from the operations of this Agreement can be adequately determined without the computation of partnership taxable income.

8.  CAPTIONS.   Paragraph titles or captions contained in this Agreement are inserted only as a matter of reference and convenience and in no way define, limit, extend or describe the scope of this Agreement, or the intent of any provision.

9.   BINDING EFFECT/GOVERNING LAW.   This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors and assigns, and shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky.  This Agreement may further be executed in several counterparts and upon such execution by all parties hereto shall be binding and of full force and effect as if all signatures were appended to one original document.  Facsimile signature(s) has full force and effect of original signature(s).

ADDENDUMS:  mare to sell at the 2009 Keeneland November Sale.


IN WITNESS WHEREOF, the parties have set their hands as of this the date, the 6th day of April, 2009.

By: _____

"First Party"


By: _____
      Walmac Farm, LLC
      "Second Party"
      Phone:  (859) 299-0473
      Fax:  (859) 299-1259

Walmac R 10319

Date: 4-06-09

Contract # M5002

# SEASON REQUEST FORM

√ Entered In HFM

Mare: Sunset Thomas

Sire: Dixie Union

Dam: What Is Next

Dam Sire: Devil's Bag

In Foal To: Hat Trick

20    Foal: _____

Stallion: Brady's Image

Contract Price: Mare Share

Contract Terms: 40/60 in JH's Favor

Year Born: 2002    Color: _____

Last Date Bred: 5-26-08

20    Foal: _____

Entered In HFM

Mare Owner: Walmac Farm, LLC

Address: _____

_____

_____ email: _____

Phone: _____ Cell: _____ Fax: _____

☐ Entered In HFM

Pay Commission: _____ Percent: _____ Dollar Amount: _____

Agent: _____

Address: _____

_____

_____ email: _____

Phone: _____ Cell: _____ Fax: _____

✓ Approved By _JH_

☐ Denied

☐ Needs boarding farm contract

☐ Send Brochure

Special notes: Sell Mare in Keeneland Nov. '09

_____

**John T. L. Jones, III**
*Managing Director*

Convert to
more share

**Walmac Farm, LLC**
3395 Paris Pike • Lexington, Kentucky, USA 40511
Telephone 859.299.0473 • Fax 859.299.1259

Walmac R 10356

Walmac R 10357

## STALLION SERVICE AGREEMENT

FC 027DP

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:**

Walmac Stud Management LLC
3395 Paris Pike, Lexington, KY 40511
PHONE: 299-0473

Stallion _____ R. I. _____
Mare _Gold In My Stars_
Share No. _F a 027_
Contract Returned/Entered: 100000
_✓_ Access _✓ X ✓_ M/S
Common

**Seller:**

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX:   (859) 299-1259

Seller is the owner of and agrees to sell to Buyer a nomination for the 2009 breeding season to the

1. Thoroughbred Stallion, _____ **Ready's Image.** _____

Buyer agrees to breed _____ **Gold In My Stars,** _____ by _____ **Forty Niner,** _____ out of _____ **Hangin On A Star,** _____

2. a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days. Purchaser agrees not to breed mare to any other stallion during the breeding season.

3. Buyer hereby agrees to pay Seller _____ **13,250.00** _____ ("Stud Fee plus 6% KY sales tax") for such nomination, on the following basis (select one by initialing choice):

    a. _____ LIVE FOAL BASIS: Payment of the Stud Fee shall be made no later than November 15, 2009, but shall be subject to refund if all of the following conditions are met: (i) the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the refund condition; (ii) the Mare continues to be owned solely by Buyer until foaling and is not transported to a public sale; and (iii) the Stud Fee is paid in full on a timely basis. If any of the foregoing conditions are not met, the Stud Fee is immediately owed on a no guaranty basis.

    b. _✗_ LIVE FOAL - DEFERRED PAYMENT BASIS: The Stud Fee shall be owed on a Live Foal basis, that is (i) unless the Mare[d]es, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the condition; and (ii) provided the Mare continues to be owned solely by Buyer until foaling and is not transported to a location other than that stated in the Mare Information Form. Payment of the Stud Fee, with interest thereon from November 15, 2009, at the rate of 7% per annum, shall not be due until the distribution of the proceeds from the sale of the Foal, but in any event no later than December 1, 2011, provided all of the following conditions are met:

    (1) If the Buyer sells the Foal resulting from the breeding, unless otherwise agreed with Seller in writing, the Foal shall only be sold at a thoroughbred public auction in the United States and may not be transported outside the country. Buyer shall notify Seller of the sale in which the Foal is entered no later than 15 days prior to the commencement of the auction session. Buyer shall instruct the sales company in writing to pay the Stud Fee from proceeds of sale, and provide that such payment is prior and superior to all other payments of proceeds from the sale of the Foal except the payment of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer.

    (2) No encumbrances shall be incurred on the Foal, or the proceeds from the Foal, that is superior to the security interest and rights of Seller as otherwise provided herein. Such impermissible encumbrances include, but are not limited to, security interests, statutory and common-law liens such as agister's liens, or agricultural liens, but shall not include the security interest of Seller granted herein. Buyer shall keep all expense payments associated with the Mare while pregnant with the Foal, and the Foal, current.

    (3) Interest accrued on the Stud Fee, if not due sooner, shall be paid current by December 31, 2010.

    (4) Notwithstanding the deferral of payment until sale, the Stud Fee shall be immediately payable upon the breach of any of the forgoing conditions, or the breach of any conditions in this agreement. Buyer acknowledges that the full Stud Fee, with interest, is owed regardless of whether the proceeds of sale are sufficient to pay the Stud Fee.

In either event, ALL PAYMENTS required herein are understood to include 6% Kentucky Sales Tax. In the event of any default of any condition of this Agreement, or delay in payment of the Stud Fee, the Stud Fee shall bear interest at the rate of 18% per annum until paid in full, with interest, and shall include all expenses, including legal costs and attorneys fees, incurred by Seller in the efforts to collect the Stud Fee, with interest.

4. Buyer shall carry mortality insurance on the Foal in an amount equal to or greater than the Stud Fee owed and the interest owed, naming Seller as loss payee to the extent of the amount owed under this Agreement and shall furnish Seller proof of coverage.

5. Buyer shall have the right to convert the obligation to a Foal-Sharing with the Seller, wherein Buyer and Seller shall own the resulting Foal on a 50-50 basis as tenants in common, provided each of the following conditions are met:

    (1)  Buyer notifies Seller in writing by fax AND certified mail, to be received by Seller no later than thirty days following the birth of the Foal.

    (2)  The Foal is alive, standing and nursing at the time of the notification.

    (3)  Buyer is not in default or in breach of any terms of this agreement.

    (4)  Buyer shall, within five (5) days of the notification above, execute and deliver to Seller a Bill of Sale, in a form reasonably required by Seller, transferring 50% interest in the Foal to Seller, as tenant-in-common, and Buyer acknowledges that the co-ownership will not be treated as a partnership or joint venture. Buyer shall cause any registration of the Foal with the Jockey Club to reflect the co-ownership.

    (5)  Buyer shall pay all expenses relating to the care and upkeep of the Foal, including board, veterinary expenses, and sales preparation expenses and shall pay all registration and Breeders' Cup Nomination fees or any other fees due or payable to any program or scheme on behalf of the buyer and seller, and agrees to hold harmless Seller from any claims for such expenses. Buyer shall keep the Foal free from all encumbrances, as that term is defined in Provision 3 above.

    (6)  Except as otherwise agreed between Buyer and Seller, Buyer agrees to enter the Foal in a recognized thoroughbred auction, so that the Foal shall be sold no later than its yearling year. Except as otherwise agreed between Buyer and Seller, neither Buyer nor Seller may place a reserve on the Foal, but may bid on the Foal for Buyer's and Seller's own account (that is, to purchase the entire Foal). The proceeds from the sale of the Foal, after deducting of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer, shall be split 50-50 between Buyer and Seller.

    (7)  Each party shall be responsible for insuring its own interest in the Foal, if insurance is desired by such party.

6. Buyer warrants and agrees that the Mare shall be healthy and in sound breeding condition, and shall provide a certification of such condition by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of the Stallion reserves the right to refuse to permit the breeding of any mare to the Stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to the Mare or the Stallion.

7. This contract shall not be assigned or transferred by Buyer. This contract is assignable by Seller for purposes of enforcement.

8. In the event the Stallion dies or is sold, or becomes unfit for service before servicing the Mare, any payment of the Stud Fee received on a Live-Foal basis shall be refunded to Buyer. Further, should the Mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded provided Buyer notifies the Seller in writing and provides a copy of a certificate from the attending veterinarian within ten days.

9. Buyer grants Seller a security interest in the Mare pregnant with the Foal, the Foal, all insurance policies relating to the Foal, all stallion service certificates and Jockey Club Foal registration certificates relating to the breeding or the Foal, and the proceeds and products of the Foal (all of the foregoing being the "Collateral"). Buyer appoints Seller as its attorney-in-fact to execute and file any and all financing statements and agricultural liens in any jurisdiction Seller believes to be appropriate to secure any obligation of Buyer to Seller, whether arising by the owing the Stud Fee or otherwise. Buyer authorizes Seller to retain the stallion service certificate and the Jockey Club Foal registration certificate relating to the breeding and the Foal, and authorizes and appoints Seller as its attorney-in-fact to obtain possession of the stallion service certificate from the manager of the Stallion issuing the certificate, and to obtain the Foal Registration certificate from the Jockey Club, and retain such documents until all obligations of Buyer to Seller are paid in full. In the event the Stud Fee is not timely paid, Seller may, without notice to Buyer, take possession of the Foal or other Collateral, and either retain the Collateral in lieu of the obligation, or re-sell the Collateral privately or publicly in a manner in its sole discretion it believes to be advisable, in which event the Seller shall credit the proceeds of sale, after expenses of sale and maintaining the Collateral, to Buyer's obligation to Seller. This right is in addition to all other rights to which the Buyer is entitled under law.

10. Buyer and/or signatory guarantor further warrants and agrees that the purchase of this stallion nomination is made for commercial purposes and not for personal, family, or household purposes.

11. In the event this agreement is executed by an agent on behalf of Buyer, or a representative or principal on behalf of Buyer if Buyer is an organization, the undersigned agent, representative or principal hereby unconditionally guarantees the full and prompt payment of the Stud Fee as well as the full and prompt performance by Buyer of any and all other obligations hereunder. The undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. The foregoing guaranty and warranty shall remain in effect regardless whether the agent, representative, or principal retains his or her status as such following the execution of this agreement.

12. This agreement shall be binding on the parties, and other obligors stated herein, and their assigns. The sole venue for enforcement of this agreement, or the resolution of any dispute concerning this agreement, its enforcement, or the performance of the parties, shall be the courts of Fayette County in the Commonwealth of Kentucky, and the parties and other obligors hereby submit to jurisdiction of such Courts. The parties and obligors expressly waive all rights to trial by jury with respect to any dispute concerning this agreement, its enforcement, or the performance of the parties.

13. The parties further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any assurances of whatever nature that are not contained and expressed in this agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

14. This contract shall be Voidable at the Seller's option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:   None

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, April 10,2009

BUYER:

_____          _____
Signature                        Date

_____
Print Name of Signator

SELLER:  Walmac Farm, LLC, By:

_Jordan Krabel_  _4/10/09_
Signature          Date

_____
SS# of Signator

**Void After Thursday, April 30, 2009**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

Date: 2-10-09

Contract # FC 027DP

## SEASON REQUEST FORM

✔
Entered
In HFM

Mare: Sold in My Stars

Sire: Forty Niner

Dam: Hangin On A Star

Dam Sire: Vice Regent

2009
In Foal To: Successful Appeal

20   Foal: _____

Stallion: Ready's Image

Contract Price: $12,500

Contract Terms: Deferred

Year Born: 1996   Color: Ch.

Last Date Bred: _____

20   Foal: _____

✔
Entered
In HFM

Mare Owner: Walmac Stud Mgmt

Address: _____

_____

_____ email: _____

Phone: _____ Cell: _____ Fax: _____

☐
Entered
In HFM

Pay Commission: _____ Percent: _____ Dollar Amount: _____

Agent: _____

Address: _____

_____

_____ email: _____

Phone: _____ Cell: _____ Fax: _____

☐ Approved By _____

☐ Denied

☐ Needs boarding farm contract

☐ Send Brochure

Special notes: _____

_____

_____

# STALLION SERVICE AGREEMENT

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:** STARFISH STABLE, LLC (LINDA A. ROBBINS

~~Dr. Linda Robbins - Cedar Point Farm~~

2153 Bethlehem Road

Paris, Kentucky 40361

Stallion _Ready's Image_

Mare _Reef_

Share No. _FC 006_

Contract Returned/Entered:

✓ Access ✓ X ✓ M/S

**Seller:**

Walmac Farm, LLC

3395 Paris Pike

Lexington, KY 40511

PHONE: (859) 299-0473

FAX: (859) 299-1259

1. Seller is the owner of and agrees to sell to Buyer a nomination for 2010 breeding season to the Thoroughbred Stallion, ___Ready's Image.___

2. Buyer agrees to breed ___Reef,___ by ___Cape Town,___ out of ___Reiterate,___ a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days. Purchaser agrees not to breed mare to any other stallion during the breeding season.

3. Buyer hereby agrees to pay Seller as follows for the aforesaid nomination:

   a. The sum of U.S. $ ___5,830.00___ on a Stand And Nurse basis, payable when the foal stands and nurses.

   Unless otherwise noted below, all payments on a Live-Foal basis are refundable if the mare bred does not produce as a result of the aforesaid breeding a single live foal that is able to stand and nurse in the year following breeding, provided that the Buyer furnishes Seller with a satisfactory veterinary certificate to that effect within 60 days of the date and said mare foals, dies, aborts or is determined to not be in foal. Buyer agrees to pay 1.5% per month interest charges on any delinquent fees required herein. Any amount payable on a Live-Foal basis which is more than 30 days delinquent shall thereafter be payable on a No-Guarantee basis. All payments on a No-Guarantee basis are not refundable in any case except as specifically herein provided. Payments and refunds must be made directly to principals named in this contract.

4. Buyer agrees that said mare shall be healthy and in sound breeding condition, this fact to be certified by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of said stallion reserves the right to refuse to permit the breeding of any mare to said stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to said mare or said stallion.

5. This contract shall not be assigned or transferred by Buyer. Further, if the Mare, or any interest therein, is sold, transported to a public sale (regardless of whether a sale is completed) or exported from the United States (with the exception of Canada), the Total Fee, if unpaid, shall immediately become due and payable and NO REFUND of said Total Fee shall be due from Walmac Farm LLC to the Purchaser, or to any subsequent purchaser, under any circumstances.

6. In the event said stallion should die, be sold, or become unfit for service before servicing said mare, any payment received on a live-foal basis shall be refunded to Buyer. Further, should said mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded.

7. In the event this contract is executed by an agent on behalf of Buyer, the undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. Such agent hereby unconditionally guarantees the full and prompt payment of the Total Fee as well as the full and prompt performance by the Purchaser of any and all other obligations hereunder.

8. It is agreed that payment in full is a condition of delivery of the service certificate by the Seller. Buyer grants Seller a security interest in such service certificate and any foal, in utero or born alive, as a result of aforesaid breeding in order to secure payment of amounts due or to become due hereunder or for boarding any horse owned by Buyer.

9. This agreement shall be binding upon the parties hereto, their heirs, personal representatives and successors, and shall be construed and governed in accordance with the laws of the state of Kentucky.

10. The parties hereto further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any verbal assurances of whatever nature that are not contained and expressed in this Agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

11. BINDING. This contract shall be Voidable at the sellers option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS: AR state bred deal

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, April 21, 2010

FOALING OF SAID MARE TO OCCUR IN STATE OR MARE OWNER CHOICE   ok

**BUYER:**

Signature

Date

**SELLER:** Walmac Farm, LLC, By:

_Marion Shiles Witt_

Signature

Date 4/21/2010

Void After Tuesday, May 11, 2010

PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

Walmac REF 3126

# WALMAC FARM, LLC

3395 Paris Pike, Lexington, KY 40511   (859) 299-0473 phone   (859) 299-1259 fax

## 2010 MARE INFORMATION FORM

*Please complete fully (type or print). Thank you.*

STALLION: _____     SHARE/CONTACT #: _____

### MARE OWNER INFORMATION
*Please indicate this in the manner you would like it reported to The Jockey Club.*

Name _____STARFISH STABLE, LLC_____     Tele # (859) 229-7743
Address __2153 BETHLEHEM RD__          Fax # _____987-6066_____
         ___PARIS, KY 40361___          Cell # _____
                                        Email _____

### MARE IDENTIFICATION

Mare's Name ____REEF____               Sire ___CAPE TOWN___
Dam ____REITERATE____                  Dam's Sire ___DEONE___
Date of Birth _____              ☑ Dkb/br  ☐ Bay  ☐ Ch  ☐ Gray/Roan

---

*Are there any security interests, liens, encumbrances, or adverse claims against this mare?*
☐ No ☐ Yes- If yes, please list details on back of this form.

---

## MARE STATUS

☐ Maiden   ☐ In foal   ☐ Barren   ☐ Slipped   ☐ Not bred in 2009

Already foaled – 2010 foaling date __4__ / __20__ /2010 ☐ Filly ☑ Colt   ☑ Dkb/br  ☐ Bay  ☐ Ch  ☐ Gray/Roan

2009 stallion bred to ___READY'S IMAGE___   2009 Last Date Bred _____

2008 stallion bred to ___CHAPEL ROYAL___   DOB ___ / /2009 ☑ Filly  ☐ Colt   Color __DK B/BC__

Is this Mare an IMPORT for the 2010 breeding season?

Yes ☐ No ☑ If yes, Import Date: _____ Country of Origin: _____

### WALMAC WELCOMES YOU AS A BOARDER, PLEASE CALL FOR AVAILABILITY.

Mare's KY Boarding Farm ___SAME___          Tele # ___229-7745___

Farm Manager _____               Cell # _____

Boarding Farm Address _____

Mare's Veterinarian __LINDA A. ROBBINS, DVM__   Tele # (859) 229-7743

---

PLEASE NOTE: IT IS THE POLICY OF WALMAC FARM, LLC NOT TO RELEASE A
STALLION SERVICE CERTIFICATE UNTIL AND UNLESS IT IS REQUESTED.

---

Signature _____               Date __5-4-10__

Walmac R 10695

Date: 4-20-10                                    Contract # FC 008

                                                     St-Bred-Ark

## SEASON REQUEST FORM

Mare: Reef                          Stallion: Ready's Image

☐          Sire: Cape Town                      Contract Price: $ 5,500          breed back
Entered
In HFM     Dam: Riterate                        Contract Terms: St N

Dam Sire: Drone                     Year Born: 2000   Color: dk bbr

In Foal To: Ready's Image           Last Date Bred: 5-3-09

2009 Foal: Chapel Royal             20  Foal: _____

Mare Owner: Dr. Linda Robbins

☐          Address: Cedar Point Farm
Entered
In HFM              2153 Bethlehem Rd.

                    Paris, Ky 40361  email: _____

Phone: 987-2694  Cell: 229-7743  Fax: _____

Pay Commission: _____  Percent: _____  Dollar Amount: _____

Agent: _____

☐          Address: _____
Entered
In HFM     _____

_____  email: _____

Phone: _____  Cell: _____  Fax: _____

☐ Approved By _____        ☐ Needs boarding farm contract

☐ Denied                             ☐ Send Brochure

Special notes: _____

## brisnet.com
Information is our business

REEF, 2000, Cape Town- Reiterate by Drone.

|  |  | YRS | ST | WN | PL | SH | EARNED | SR | SSI |
|---|---|---|---|---|---|---|---|---|---|
| 2006 Grief, Dkbbr, g, Gilded Time |  |  |  |  |  |  |  |  |  |
| In North America |  | 2 | 18 | 1 | 2 | 3 | 15,752 | ( 75) | 0.24 |
| North America 2 YO Record |  |  | 7 | 1 | 1 | 0 | 10,694 | ( 75) |  |
| North America Turf Record |  |  | 1 | 0 | 0 | 0 | 230 | ( 53) |  |
| North America Dirt Sprints |  |  | 15 | 1 | 2 | 3 | 15,152 | ( 75) |  |
| North America Dirt Routes |  |  | 1 | 0 | 0 | 0 | 170 | ( 64) |  |
| North America Muddy/Sloppy |  |  | 1 | 1 | 0 | 0 | 7,729 | ( 75) |  |
| North America All Weather Sprints |  |  | 1 | 0 | 0 | 0 | 200 | ( 24) |  |
| DP = 7-6-6-1-0 | DI = 4.00 |  | CD = 0.95 |  |  |  | AWD = 6.00 |  |  |

2008 Relief, Dk B/, f, Artie Schiller      Unraced
    DP = 3-2-7-2-0      Di = 1.55      CD = 0.43
    *SIRE:* 0.00 Spi, 0str, 0%2yo, 0%1st, 0%Mud/0sts, 0%Tf/0sts, AWD 0.00
    *DAM:* (w) 0.24 Dpi, 1 2yostr/1wnr, 100%Mud/1sts, 1 Tfstr/0wnr, 1 Rtestr/0wnr, AWD 6.00

| Sold at | Hip # | Sales Price | Sire Avg | Rank | Stud Fee |
|---|---|---|---|---|---|
| FTKJUL | 2009 | 211 | $50,000 | $28,717 ylg | (8/45) | $15,000 |

2009 Unnamed, Dk B/, f, Chapel Royal (Live Foal)
    DP = 5-5-6-0-0      DI = 4.33      CD = 0.94

Copyright 2010, Bloodstock Research Information Services

*uhn foal to R I* (handwritten)

JAN-29-2001 04:12 From:CASA FARM 1 LLC                To:859 299 1259        P.2/2

## LINDA A. ROBBINS, D.V.M.

EQUINE REPRODUCTION & PEDIATRICS
2153 BETHLEHEM ROAD
PARIS, KENTUCKY 40361
PHONE (859) 987-2694
FAX (859) 987-9749

*2010 R. 1.*
*FC015*
*B*

WALMAC FARM
299-1259

# CERTIFICATE
# OF REPRODUCTIVE STATUS

5-2-11
DATE

STARLIGUE
MARE

STARFISH STABLE, LLC
OWNER/AGENT

I have this day examined the mare listed above, and I have followed the customary standard veterinary clinical procedures in performing this examination. In accordance with the definitions set forth on the back of this page and based upon the last breeding date reported to me, it is my opinion:

☐ 1.  That said mare is pregnant.

☐ 2.  That said mare is not carrying twins, but this cannot be determined with absolute certainty by the examination performed by me.

☑ 3.  That said mare is not pregnant.

☐ 4.  That said mare has aborted.

☐ 5.  That said mare is suitable for mating.

Remarks:   BARREN  FOLLOWING  COVER  BY
REID'S IMAGE IN 2010

LINDA A. ROBBINS, D.V.M.

Walmac R 10730