# STALLION SERVICE AGREEMENT

FC 003DP

Stallion:

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:**

Kim Mancuso
157 Stone Road, Paris, KY 40361
PHONE: (859) 362-4424

Share No. _____
Contract Returned/Entered:
_____ Access _____ X _____ M/S
Commcat
% Ownership: 100.00%

**Seller:**

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX:   (859) 299-1259

1. Seller is the owner of and agrees to sell to Buyer a nomination for the 2009 breeding season to the Thoroughbred Stallion, _____ **Ready's Image.**

Buyer agrees to breed _____ **Hunting Valley,** by **Valley Crossing,** out of **Dynamic Star,**

2. a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days.  Purchaser agrees not to breed mare to any other stallion during the breeding season.

3. Buyer hereby agrees to pay Seller _____ **13,250.00** _____ ("Stud Fee plus 6% KY sales tax") for such nomination, on the following basis (select one by initialing choice):

    a. _____ LIVE FOAL BASIS: Payment of the Stud Fee shall be made no later than November 15, 2009, but shall be subject to refund if all of the following conditions are met: (i) the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the refund condition; (ii) the Mare continues to be owned solely by Buyer until foaling and is not transported to a public sale; and (iii) the Stud Fee is paid in full on a timely basis. If any of the foregoing conditions are not met, the Stud Fee is immediately owed on a no guaranty basis.

    b. _____ LIVE FOAL - DEFERRED PAYMENT BASIS: The Stud Fee shall be owed on a Live Foal basis, that is (i) unless the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the condition; and (ii) provided the Mare continues to be owned solely by Buyer until foaling and is not transported to a location other than that stated in the Mare Information Form. Payment of the Stud Fee, with interest thereon from November 15, 2009, at the rate of 7% per annum, shall not be due until the distribution of the proceeds from the sale of the Foal, but in any event no later than December 1, 2011, provided all of the following conditions are met:

    (1) If the Buyer sells the Foal resulting from the breeding, unless otherwise agreed with Seller in writing, the Foal shall only be sold at a thoroughbred public auction in the United States and may not be transported outside the country. Buyer shall notify Seller of the sale in which the Foal is entered no later than 15 days prior to the commencement of the auction session. Buyer shall instruct the sales company in writing to pay the Stud Fee from proceeds of sale, and provide that such payment is prior and superior to all other payments of proceeds from the sale of the Foal except the payment of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer.

    (2) No encumbrances shall be incurred on the Foal, or the proceeds from the Foal, that is superior to the security interest and rights of Seller as otherwise provided herein. Such impermissible encumbrances include, but are not limited to, security interests, statutory and common-law liens such as agister's liens, or agricultural liens, but shall not include the security interest of Seller granted herein. Buyer shall keep all expense payments associated with the Mare while pregnant with the Foal, and the Foal, current.

    (3) Interest accrued on the Stud Fee, if not due sooner, shall be paid current by December 31, 2010.

    (4) Notwithstanding the deferral of payment until sale, the Stud Fee shall be immediately payable upon the breach of any of the forgoing conditions, or the breach of any conditions in this agreement. Buyer acknowledges that the full Stud Fee, with interest, is owed regardless of whether the proceeds of sale are sufficient to pay the Stud Fee.

In either event, ALL PAYMENTS required herein are understood to include 6% Kentucky Sales Tax. In the event of any default of any condition of this Agreement, or delay in payment of the Stud Fee, the Stud Fee shall bear interest at the rate of 18% per annum until paid in full, with interest, and shall include all expenses, including legal costs and attorneys fees, incurred by Seller in the efforts to collect the Stud Fee, with interest.

Walmac R 10329

4. Buyer shall carry mortality insurance on the Foal in an amount equal to or greater than the Stud Fee owed and the interest owed, naming Seller as loss payee to the extent of the amount owed under this Agreement and shall furnish Seller proof of coverage.

5. Buyer shall have the right to convert the obligation to a Foal-Sharing with the Seller, wherein Buyer and Seller shall own the resulting Foal on a 50-50 basis as tenants in common, provided each of the following conditions are met:

    (1)    Buyer notifies Seller in writing by fax AND certified mail, to be received by Seller no later than thirty days following the birth of the Foal.

    (2)    The Foal is alive, standing and nursing at the time of the notification.

    (3)    Buyer is not in default or in breach of any terms of this agreement.

    (4)    Buyer shall, within five (5) days of the notification above, execute and deliver to Seller a Bill of Sale, in a form reasonably required by Seller, transferring 50% interest in the Foal to Seller, as tenant-in-common, and Buyer acknowledges that the co-ownership will not be treated as a partnership or joint venture. Buyer shall cause any registration of the Foal with the Jockey Club to reflect the co-ownership.

    (5)    Buyer shall pay all expenses relating to the care and upkeep of the Foal, including board, veterinary expenses, and sales preparation expenses, and agrees to hold harmless Seller from any claims for such expenses. Buyer shall keep the Foal free from all encumbrances, as that term is defined in Provision 3 above.

    (6)    Except as otherwise agreed between Buyer and Seller; Buyer agrees to enter the Foal in a recognized thoroughbred auction, so that the Foal shall be sold no later than its yearling year. Except as otherwise agreed between Buyer and Seller, neither Buyer nor Seller may place a reserve on the Foal, but may bid on the Foal for Buyer's and Seller's own account (that is, to purchase the entire Foal). The proceeds from the sale of the Foal, after deducting of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer, shall be split 50-50 between Buyer and Seller.

    (7)    Each party shall be responsible for insuring its own interest in the Foal, if insurance is desired by such party.

6. Buyer warrants and agrees that the Mare shall be healthy and in sound breeding condition, and shall provide a certification of such condition by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of the Stallion reserves the right to refuse to permit the breeding of any mare to the Stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to the Mare or the Stallion.

7. This contract shall not be assigned or transferred by Buyer. This contract is assignable by Seller for purposes of enforcement.

8. In the event the Stallion dies or is sold, or becomes unfit for service before servicing the Mare, any payment of the Stud Fee received on a Live-Foal basis shall be refunded to Buyer. Further, should the Mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded provided Buyer notifies the Seller in writing and provides a copy of a certificate from the attending veterinarian within ten days.

9. Buyer grants Seller a security interest in the Mare pregnant with the Foal, the Foal, all insurance policies relating to the Foal, all stallion service certificates and Jockey Club Foal registration certificates relating to the breeding or the Foal, and the proceeds and products of the Foal (all of the foregoing being the "Collateral"). Buyer appoints Seller as its attorney-in-fact to execute and file any and all financing statements and agricultural liens in any jurisdiction Seller believes to be appropriate to secure any obligation of Buyer to Seller, whether arising by the owing the Stud Fee or otherwise. Buyer authorizes Seller to retain the stallion service certificate and the Jockey Club Foal registration certificate relating to the breeding and the Foal, and authorizes and appoints Seller as its attorney-in-fact to obtain possession of the stallion service certificate from the manager of the Stallion issuing the certificate, and to obtain the Foal Registration certificate from the Jockey Club, and retain such documents until all obligations of Buyer to Seller are paid in full. In the event the Stud Fee is not timely paid, Seller may, without notice to Buyer, take possession of the Foal or other Collateral, and either retain the Collateral in lieu of the obligation, or re-sell the Collateral privately or publicly in a manner in its sole discretion it believes to be advisable, in which event the Seller shall credit the proceeds of sale, after expenses of sale and maintaining the Collateral, to Buyer's obligation to Seller. This right is in addition to all other rights to which the Buyer is entitled under law.

10. Buyer and/or signatory guarantor further warrants and agrees that the purchase of this stallion nomination is made for commercial purposes and not for personal, family, or household purposes.

11. In the event this agreement is executed by an agent on behalf of Buyer, or a representative or principal on behalf of Buyer if Buyer is an organization, the undersigned agent, representative or principal hereby unconditionally guarantees the full and prompt payment of the Stud Fee as well as the full and prompt performance by Buyer of any and all other obligations hereunder. The undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. The foregoing guaranty and warranty shall remain in effect regardless whether the agent, representative, or principal retains his or her status as such following the execution of this agreement.

12. This agreement shall be binding on the parties, and other obligors stated herein, and their assigns. The sole venue for enforcement of this agreement, or the resolution of any dispute concerning this agreement, its enforcement, or the performance of the parties, shall be the courts of Fayette County in the Commonwealth of Kentucky, and the parties and other obligors hereby submit to jurisdiction of such Courts. The parties and obligors expressly waive all rights to trial by jury with respect to any dispute concerning this agreement, its enforcement, or the performance of the parties.

13. The parties further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any assurances of whatever nature that are not contained and expressed in this agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

14. This contract shall be Voidable at the Seller's option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:   None

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, February 17, 2009

BUYER:

_Kim Mans_____  2-24-09
Signature                              Date

_Kim Mancuso_____
Print Name of Signator

_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_____
SS# of Signator

SELLER: Walmac Farm, LLC, By:

_Jordan Grabel_____
Signature                              Date

**Void After Monday, March 09, 2009**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

*FC 003*

# WALMAC FARM, LLC

**3395 Paris Pike**
**LEXINGTON, KENTUCKY  40511**
**(859) 299-0473**
**FAX (859) 299-1259**

*From . . Marcia Skiles Witt*

TO:        Rob & Crestwood Accounting Dept.

FAX:       255 8699

DATE:      12/21/10

RE:        Sale Expenses for Hunting Valley

Number of pages, including the cover sheet:

After your conversation with Johnny, here is what he said regarding the expenses:

After the sale company and consigner commissions, all expenses directly attributable to the sale of the horse while at the sale (e.g. e-rays, board at the sale) shall be borne by both parties, split 50/50.  This does not include Breeders's Cup nomination or KTDF fee.

I am glad that you were able to speak directly to Mr. Jones and work this out between the two of you.





*FC003 DP*

**Phoenix Hill Farm**
157 Stone Road
Paris, KY 40361

_____BILL OF SALE_____

Phoenix Hill Farm sells one ___50% Share or Ownership of___

described as ___2010 bay Colt by Readys Image out of Hunting Valley___

registration number ___Not issued yet___ and registered by the name of

___Not named yet___ with the horse

registry of ___Jockey Club___.

This horse is sold "as is" for the amount of $ ___0 50% interest___

To be paid in full when ~~the horse exchanges ownership, or on this date of~~

___When foal is sold at TB sale.___

Signed ___Marcia Shiles Witt___ Date ___3/17/10___
(buyer)        *Walmac Farm*

Signed ___Kim Mancuso___ Date ___3-17-10___
Phoenix Hill Farm

Additional
Notes/comments___ ___Pope McLean Consignor - Crestwood - Hunting Valley___  *Crestwood*

_____ _____
_____ _____
_____ _____
_____

___for 576 7670 Kim___
___255-8619___  *Wade @ 852-3770*

# Phoenix Hill Farm
## 157 Stone Rd.
## Paris, KY 40361

3-14-10

To whom it May Concern:

This Letter is sent regarding the recently foaled Colt, by Ready's Image, out of Hunting Valley. As he was foaled on 2-15-2010, I am Sending you proper notification, within the 30 day time frame, to execute my right to Convert our Contractual agreement to a foal Share. It is my understanding, we will now own the above said foal on a 50-50 basis. I will execute and deliver a bill of sale to your office, within 5 days of the date of this Letter. Should you have any questions, please feel free to Call.

Sincerely,

Kim Mancuso

859-362-4424, 859-576-7670

Walmac R 10334

# 2009 MARE INFORMATION FORM

*Please complete fully (type or print). Thank you.*

STALLION: _Readys Image_        SHARE NUMBER: _FC 003DP_

## MARE OWNER INFORMATION
*Please indicate this in the manner you would like it reported to The Jockey Club.*

Name _Kim Mancuso_                    Tele # _859-576-7670_
Address _157 Stone Rd_                Fax # _859 362 - 4434_
_Paris, KY 40361_                     Cell # _same_
                                      Email _alymaine@hotmail.com_

## MARE IDENTIFICATION

Mare's Name _Hunting Valley_         Sire _Valley Crossing_
Dam _Dynamic Star_                   Dam's Sire _Silent Screen_
Date of Birth _1998_                 □ Dkb/br  ☒ Bay  □ Ch  □ Gray/Roan

**Are there any security interests, liens, encumbrances, or adverse claims against this mare?**
**□ No □ Yes- If yes, please list details on back of this form.**

## MARE STATUS

□ Maiden      □ In foal     ☒ Barren     □ Slipped     □ Not bred in 2008

□ Already foaled – 2009 foaling date ____/____/2009 □ Filly □ Colt      □ Dkb/br  □ Bay  □ Ch  □ Gray/Roan

2008 stallion bred to _Real Quiet_          2008 Last Date Bred _5/22_

2007 stallion bred to _Not for Love_   DOB ___/___/2008 ☒ Filly  □ Colt   Color _Unkn-_    I did not own mare at that time,

**Is this Mare an IMPORT for the 2009 breeding season?**

□ Yes ☒ No If yes, Import Date: _____ Country of Origin: _____

## WALMAC WELCOMES YOU AS A BOARDER, PLEASE CALL FOR AVAILABILITY.

Mare's KY Boarding Farm _Phoenix Hill_          Tele # _859-576-7670_

Farm Manager _Kim Mancuso_               Cell # _"      "      "_

Boarding Farm Address _157 Stone Rd, Paris, KY 40361_

Mare's Veterinarian _Tina Cassar/Haguards_   Tele # _859-255-8741_

**PLEASE NOTE: IT IS THE POLICY OF WALMAC FARM, LLC NOT TO RELEASE A**
**STALLION SERVICE CERTIFICATE UNTIL AND UNLESS IT IS REQUESTED.**

Signature _Kim Mancuso_                    Date _2-_

Walmac R 10335

Date: 2/13/09                                    Contract # FC 630 FC 003 DP

## SEASON REQUEST FORM

Mare: HUNTING VALLEY                 Stallion: Ready's Image

☐ Entered In HFM

Sire: VALLEY CROSSING                Contract Price: $12,500

Dam: DYNAMIC STAR                    Contract Terms: PcP/DEF

Dam Sire: SILENT SCREEN              Year Born: 1998    Color: Dk b.

In Foal To: BARREN                   Last Date Bred: _____

20  Foal: _____             20  Foal: _____

---

☐ Entered In HFM

Mare Owner: KIM MANCUSO

Address: 157 STONE ROAD

PARIS, KY

40361                                email: _____

Phone: 362-4424   Cell: _____   Fax: _____

---

Pay Commission: _____  Percent: _____  Dollar Amount: _____

☐ Entered In HFM

Agent: CRESTWOOD IF @ REQUESTED

Address: _____

_____

_____  email: _____

Phone: _____  Cell: _____  Fax: _____

---

☐ Approved By _____        ☐ Needs boarding farm contract

☐ Denied                            ☐ Send Brochure

---

Special notes: C/O CRESTWOOD FARM

_____

_____

OK

*9 R.I.*
*FC022 DP*
*F/S*



THE JOCKEY CLUB
**INTERACTIVE** ™
**REGISTRATION**

▫ Rule Book
▫ Help Desk
▫ Contact Us
▫ Log Off

**Home** | **Customer Profile** | **Registration Center** | **Mares Bred** | **Live Foal** | **Application** | **Naming** | **Registration Status** | **No Foal** | **Corrections**
**Fees Payment** | **eService Certificate** | **Transfer Ownership** | **Death Report** | **Gelding Report** | **Change Address** | **Import** | **Export**

☑ Registration Status Help

Interactive Registration™
## Registration Status

Please enter the horse's name or dam's name and foal's year of birth below.

*foal died*

Search Criteria   ⦿ exact match   ◯ starting with (at least 5 letters)

Horse's Name

Dam's Name       roses prospect

Foal's Year Of Birth    2010    *Ready's Image*

[ Search ]

Home  Thoroughbred Connect  Customer Profile  Registration Center  Registration Status  Mares Bred  Live Foal  No Foal  Application  Naming

Corrections  Fee Payment  eService Certificate  Transfer Ownership  Death Report  Gelding Report  Change Address  Import  Export

Proprietary to and Copyright © 2012 The Jockey Club. All rights reserved.
Republication or redissemination of the contents of this screen are expressly prohibited without the written
consent of The Jockey Club. Use (including viewing) of the material contained herein constitutes acceptance of these
terms. For more information please refer to the Terms of Use agreement you have already agreed to. Privacy Notice

Walmac R 10345



THE JOCKEY CLUB
**INTERACTIVE**
**REGISTRATION** ™

- Rule Book
- Help Desk
- Contact Us
- Log Off

Home | Customer Profile | Registration Center | Mares Bred | Live Foal | Application | Naming | Registration Status | No Foal | Corrections
Fees Payment | eService Certificate | Transfer Ownership | Death Report | Gelding Report | Change Address | Import | Export

### Search Results

Horse reported dead before registration was completed  *2010 RI Roses prospect*

[ Registration Status ]

Home  Thoroughbred Connect  Customer Profile  Registration Center  Registration Status  Mares Bred  Live Foal  No Foal  Application  Naming

Corrections  Fee Payment  eService Certificate  Transfer Ownership  Death Report  Gelding Report  Change Address  Import  Export

Proprietary to and Copyright © 2012 The Jockey Club. All rights reserved.
Republication or redissemination of the contents of this screen are expressly prohibited without the written
consent of The Jockey Club. Use (including viewing) of the material contained herein constitutes acceptance of these
terms. For more information please refer to the Terms of Use agreement you have already agreed to. Privacy Notice

S t a l l i o n s   /   S a l e s   A g e n c y   /   P a r t n e r s h i p s   /   I n s u r a n c e

*R. 1,*
*FC 022*

April 9, 2010

Walmac Farm                                    via fax: (859) 299-1259
3395 Paris Pike                                and certified mail
Lexington, KY  40511

To Walmac Farm,

     We are letting you know that our mare Roses Prospect had a bay filly by Ready's Image on 3/26/10.

     Per the Stallion Service Agreement you asked that we notify you if we wanted to convert the contract to a foal sharing with you. Please accept this as such notice to you and send to us whatever additional paperwork you might require.

Sincerely,

Michael Lischin

Michael Lischin

Offices:
189 Johnnycake Hollow
Pine Plains, NY 12567

Telephone: (518) 398-5666
Fax: (518) 398-5143
e-mail: mail@dutchessviewsfarm.com
Website: www.dutchessviewsfarm.com

Mailing Address:
P.O. Box 656
Pine Plains, NY 12567

04/21/2010  15:46    5183985143            DUTCHESS VIEWS FARM                    PAGE  02/02
. Apr. 19, 2010  5:51PM    Walmac Farms                      No. 0751   P. 2

# BILL OF SALE

Per Section 5, Item 4 of the 2009 Stallion Service Agreement to breed the mare _ROSES PROSPECT_ to the stallion _Readys Image_, I, _Dutchess Views Farm Inc_ hereby transfer 50% ownership of the resulting foal to Walmac Farm, LLC, as tenant in common. I acknowledge that the co-ownership will not be treated as a partnership or joint venture. I shall also cause the registration of the foal with the Jockey Club to reflect the co-ownership.

In addition to the above, I also agree to abide by all other terms of the Stallion Service Agreement.


_Dutchess Views Farm Inc_
_by Michael Lischin_                                    Date: _4/20/10_
Contract Holder


_Marcia Shiba Witt_                                     Date: _4/10/10_
Walmac Farm, LLC.



2010 Mare's produce:

_3/26/10_ date of birth

_BAY_ color

_filly_ sex

Walmac R 10348

04/21/2010  15:46    5183985143         DUTCHESS VIEWS FARM                    PAGE  01/02
Apr. 19. 2010  5:01PM    Walmac Farms                                    No. 0751   P. 1

# WALMAC FARM, LLC

### 3385 Paris Pike
### LEXINGTON, KENTUCKY 40511
### (859) 299-0473
### FAX (859) 299-1259

TO From .. Marcia Skiles Witt

FR TO:        Dutchess Views Farm

FAX:        518 398 5143  .  859 299 1259

DATE:        4/19/10  4/21/10

RE:        Roses Prospect

Number of pages, including the cover sheet:  2

Regarding your desire to convert your stallion service contract to a foal sharing agreement, please fill in the blanks on the following Bill Of Sale and return via fax to 859-299-1259.

Thank you.

Marcia,
    Following is signed agreement. Please confirm receipt by faxing this cover pg back to me. Thanks.  Michael Lchin

X Confirm    / MSW 4/22
                Contract was converted 4/12
                per your letter

Walmac R 10349

03/05/2009  09:06  5183385143  DUTCHESS VIEWS FARM  PAGE  03/07
0002/006

## STALLION SERVICE AGREEMENT

FC 022 DP

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:**

Dutchess Views Farm, LLC
P.O. Box 656, Pine Plains, NY 12567
PHONE: (518) 398-5666

Communication interval
Access ___ X ___ M/S
Comment ___
% Ownership: 100.00%

**Seller:**

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX: (859) 299-1259

1. Seller is the owner of and agrees to sell to Buyer a nomination for the 2009 breeding season to the Thoroughbred Stallion, __Ready's Image__.

2. Buyer agrees to breed __Roses Prospect__, by __Allen's Prospect__, out of __Roses For Ayle__, a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days. Purchaser agrees not to breed mare to any other stallion during the breeding season.

3. Buyer hereby agrees to pay Seller __11,130.00__ ("Stud Fee plus 6% KY sales tax") for such nomination, on the following basis (select one by initialing choice):

a. _____ LIVE FOAL BASIS: Payment of the Stud Fee shall be made no later than November 15, 2009, but shall be subject to refund if all of the following conditions are met: (i) the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the refund condition; (ii) the Mare continues to be owned solely by Buyer until foaling and is not transported to a public sale; and (iii) the Stud Fee is paid in full on a timely basis. If any of the foregoing conditions are not met, the Stud Fee is immediately owed on a no guaranty basis.

b. _YL_ LIVE FOAL - DEFERRED PAYMENT BASIS: The Stud Fee shall be owed on a Live Foal basis, that is (i) unless the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the condition; and (ii) provided the Mare continues to be owned solely by Buyer until foaling and is not transported to a location other than that stated in the Mare Information Form. Payment of the Stud Fee, with interest thereon from November 15, 2009, at the rate of 7% per annum, shall not be due until the distribution of the proceeds from the sale of the Foal, but in any event no later than December 1, 2011, provided all of the following conditions are met:

(1) If the Buyer sells the Foal resulting from the breeding, unless otherwise agreed with Seller in writing, the Foal shall only be sold at a thoroughbred public auction in the United States and may not be transported outside the country. Buyer shall notify Seller of the sale in which the Foal is entered no later than 15 days prior to the commencement of the auction session. Buyer shall instruct the sales company in writing to pay the Stud Fee from proceeds of sale, and provide that such payment is prior and superior to all other payments of proceeds from the sale of the Foal except the payment of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer.

(2) No encumbrances shall be incurred on the Foal, or the proceeds from the Foal, that is superior to the security interest and rights of Seller as otherwise provided herein. Such impermissible encumbrances include, but are not limited to, security interests, statutory and common-law liens such as agister's liens, or agricultural liens, but shall not include the security interest of Seller granted herein. Buyer shall keep all expense payments associated with the Mare while pregnant with the Foal, and the Foal, current.

(3) Interest accrued on the Stud Fee, if not due sooner, shall be paid current by December 31, 2010.

(4) Notwithstanding the deferral of payment until sale, the Stud Fee shall be immediately payable upon the breach of any of the forgoing conditions, or the breach of any conditions in this agreement. Buyer acknowledges that the full Stud Fee, with interest, is owed regardless of whether the proceeds of sale are sufficient to pay the Stud Fee.

In either event, ALL PAYMENTS required herein are understood to include 6% Kentucky Sales Tax. In the event of any default of any condition of this Agreement, or delay in payment of the Stud Fee, the Stud Fee shall bear interest at the rate of 18% per annum until paid in full, with interest, and shall include all expenses, including legal costs and attorneys fees, incurred by Seller in the efforts to collect the Stud Fee, with interest.

*Converted to a foal share 4/9/10*

3/4/2009

Page 1 of 3. Ref#2572 Roses Prospect/Ready's Image

Walmac R 10350

03/05/2009   09:06   5193505143   DUTCHESS VIEWS FARM   PAGE   04/07
⊠003/006

4. Buyer shall carry mortality insurance on the Foal in an amount equal to or greater than the Stud Fee owed and the interest owed, naming Seller as loss payee to the extent of the amount owed under this Agreement and shall furnish Seller proof of coverage.

5. Buyer shall have the right to convert the obligation to a Foal-Sharing with the Seller, wherein Buyer and Seller shall own the resulting Foal on a 50-50 basis as tenants in common, provided each of the following conditions are met:

   (1)  Buyer notifies Seller in writing by fax AND certified mail, to be received by Seller no later than thirty days following the birth of the Foal.

   (2)  The Foal is alive, standing and nursing at the time of the notification.

   (3)  Buyer is not in default or in breach of any terms of this agreement.

   (4)  Buyer shall, within five (5) days of the notification above, execute and deliver to Seller a Bill of Sale, in a form reasonably required by Seller, transferring 50% interest in the Foal to Seller, as tenant-in-common, and Buyer acknowledges that the co-ownership will not be treated as a partnership or joint venture. Buyer shall cause any registration of the Foal with the Jockey Club to reflect the co-ownership.

   (5)  Buyer shall pay all expenses relating to the care and upkeep of the Foal, including board, veterinary expenses, and sales preparation expenses, and agrees to hold harmless Seller from any claims for such expenses. Buyer shall keep the Foal free from all encumbrances, as that term is defined in Provision 9 above.

   (6)  Except as otherwise agreed between Buyer and Seller, Buyer agrees to enter the Foal in a recognized thoroughbred auction, so that the Foal shall be sold no later than its yearling year. Except as otherwise agreed between Buyer and Seller, neither Buyer nor Seller may place a reserve on the Foal, but may bid on the Foal for Buyer's and Seller's own account (that is, to purchase the entire Foal). The proceeds from the sale of the Foal, after deducting of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer, shall be split 50-50 between Buyer and Seller.

   (7)  Each party shall be responsible for insuring its own interest in the Foal, if insurance is desired by such party.

6. Buyer warrants and agrees that the Mare shall be healthy and in sound breeding condition, and shall provide a certification of such condition by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of the Stallion reserves the right to refuse to permit the breeding of any mare to the Stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to the Mare or the Stallion.

7. This contract shall not be assigned or transferred by Buyer. This contract is assignable by Seller for purposes of enforcement.

8. In the event the Stallion dies or is sold, or becomes unfit for service before servicing the Mare, any payment of the Stud Fee received on a Live-Foal basis shall be refunded to Buyer. Further, should the Mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded provided Buyer notifies the Seller in writing and provides a copy of a certificate from the attending veterinarian within ten days.

9. Buyer grants Seller a security interest in the Mare pregnant with the Foal, the Foal, all insurance policies relating to the Foal, all stallion service certificates and Jockey Club Foal registration certificates relating to the breeding or the Foal, and the proceeds and products of the Foal (all of the foregoing being the "Collateral"). Buyer appoints Seller as its attorney-in-fact to execute and file any and all financing statements and agricultural liens in any jurisdiction Seller believes to be appropriate to secure any obligation of Buyer to Seller, whether arising by the owing the Stud Fee or otherwise. Buyer authorizes Seller to retain the stallion service certificate and the Jockey Club Foal registration certificate relating to the breeding and the Foal, and authorizes and appoints Seller as its attorney-in-fact to obtain possession of the stallion service certificate from the manager of the Stallion issuing the certificate, and to obtain the Foal Registration certificate from the Jockey Club, and retain such documents until all obligations of Buyer to Seller are paid in full. In the event the Stud Fee is not timely paid, Seller may, without notice to Buyer, take possession of the Foal or other Collateral, and either retain the Collateral in lieu of the obligation, or re-sell the Collateral privately or publicly in a manner in its sole discretion it believes to be advisable, in which event the Seller shall credit the proceeds of sale, after expenses of sale and maintaining the Collateral, to Buyer's obligation to Seller. This right is in addition to all other rights to which the Buyer is entitled under law.

10. Buyer and/or signatory guarantor further warrants and agrees that the purchase of this stallion nomination is made for commercial purposes and not for personal, family, or household purposes.

11. In the event this agreement is executed by an agent on behalf of Buyer, or a representative or principal on behalf of Buyer if Buyer is an organization, the undersigned agent, representative or principal hereby unconditionally guarantees the full and prompt payment of the Stud Fee as well as the full and prompt performance by Buyer of any and all other obligations hereunder. The undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. The foregoing guaranty and warranty shall remain in effect regardless whether the agent, representative, or principal retains his or her status as such following the execution of this agreement.

12. This agreement shall be binding on the parties, and other obligors stated herein, and their assigns. The sole venue for enforcement of this agreement, or the resolution of any dispute concerning this agreement, its enforcement, or the performance of the parties, shall be the courts of Fayette County in the Commonwealth of Kentucky, and the parties and other obligors hereby submit to jurisdiction of such Courts. The parties and obligors expressly waive all rights to trial by jury with respect to any dispute concerning this agreement, its enforcement, or the performance of the parties.

03/05/2009  09:05  5183985149

13. The parties further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any assurances of whatever nature that are not contained and expressed in this agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

14. This contract shall be Voidable at the Seller's option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:    State Bred Deal. Mare to foal in NY

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, March 04,2009

BUYER: Dutchess Views Farm  Inc          SELLER: Walmac Farm, LLC, By:

by Michael Lischin  Pres  3/4/09         Jordan Krabel  3/5/09
    Signature             Date               Signature          Date

Michael Lischin
Print Name of Signator

104.40  8863
SS# of Signator

**Void After Tuesday, March 24, 2009**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

Page 3 of 3, Ref#2672 Roses Prospect/Ready's Image
Wednesday, March 04, 2009
Walmac R 10352.

03/05/2009  09:06   5183385143                DUTCHESS VIEWS FARM                    PAGE  07/07



# State-Bred Agreement

Buyer agrees to register the resulting foal(s) with a state-breeders' association other than the state of Kentucky and agrees to qualify the foal, with the appropriate state-bred association, as foaled in that state. In addition, the foal shall be registered as a state-bred of such state and, therefore, qualify for breeders' and/or owners' awards relative to foals deemed bred and foaled in such state.

Breeder shall furnish proof of state bred registration before the stallion service certificate will be released. If breeder enters the mare in foal in a sale or fails to register the foal in the state-bred program, the stud fee shall revert back to the advertised stud fee listed in The Blood-Horse Stallion Directory for 2009.

*Michael Luschin* Pres.

DUTCHESS VIEWS FARM, ~~LLC~~ *Inc*

Name of Mare: ROSES PROSPECT

*Please sign and return along with service agreement.*

3395 Paris Pike • Lexington, Kentucky, USA 40511 • Telephone 859.299.0473 • Fax 859.299.1259 • walmac@walmac.com • www.walmac.com

Walmac R 10353

03/05/2009  09:05  5183985143                    DUTCHESS VIEWS FARM                    PAGE  05/07

# 2009 MARE INFORMATION FORM

*Please complete fully (type or print). Thank you.*

FC022DP

STALLION: Ready's Image                    SHARE NUMBER: FC022DP

## MARE OWNER INFORMATION
*Please indicate this in the manner you would like it reported to The Jockey Club.*

Name Dutchess Views Farm Inc        Tele # 518 398 5666
Address PO Box 656                  Fax # 518 398 5143
Pine Plains, NY 12567               Cell # —
                                    Email mail at Dutchessviewsfarm.com

## MARE IDENTIFICATION

Mare's Name Roses Prospect          Sire Allens Prospect
Dam Roses For Avie                  Dam's Sire Lord Avie
Date of Birth 4/15/96               ☒ Dkb/br    ☐ Bay    ☐ Ch    ☐ Gray/Roan

*Are there any security interests, liens, encumbrances, or adverse claims against this mare?*
☒ No ☐ Yes- If yes, please list details on back of this form.

## MARE STATUS

☐ Maiden     ☒ In foal     ☐ Barren     ☐ Slipped     ☐ Not bred in 2008

☐ Already foaled – 2009 foaling date ___/___/2009 ☐ Filly ☐ Colt    ☐ Dkb/br ☐ Bay ☐ Ch ☐ Gray/Roan

2008 stallion bred to  Anasheed          2008 Last Date Bred  4/12/08

2007 stallion bred to  Skip Away    DOB 1/30/2008 ☒ Filly  ☐ Colt    Color gr/Ro

Is this Mare an IMPORT for the 2009 breeding season?

☐ Yes ☒ No If yes, Import Date: _____ Country of Origin: _____

## WALMAC WELCOMES YOU AS A BOARDER, PLEASE CALL FOR AVAILABILITY.

Mare's KY Boarding Farm Richland Hills        Tele # 859 - 846 - 5202
Farm Manager Terry Nickels                    Cell # 859 - 509 - 7035
Boarding Farm Address 3107 Old Frankfort Pike Versailles Ky
Mare's Veterinarian Dr. Mike Beyer            Tele # 859 - 873 - 5509

PLEASE NOTE: IT IS THE POLICY OF WALMAC FARM, LLC NOT TO RELEASE A
STALLION SERVICE CERTIFICATE UNTIL AND UNLESS IT IS REQUESTED.

Signature Michael Lischin                    Date 3/4/09

Walmac R 10354

Date: 2/26/09

State Bred
NY

Contract # FC 022 DP

## SEASON REQUEST FORM

Mare: ROSES PROSPECT

Sire: ALLEN'S PROSPECT

Entered In HFM

Dam: ROSES FER AULE

Dam Sire: LORD AULE

In Foal To: FUSA ANASHEED

20    Foal: _____

Stallion: KEADY'S IMAGE

Contract Price: $10,500

Contract Terms: POP NY BRED

Year Born: 1996   Color: dkbay

Last Date Bred: MARCH (Ave)

20    Foal: _____

Mare Owner: DUTCHESS VIEWS FARM, INC.

Entered In HFM

Address: P.O. Box 656
PINE PLAINS, NY
12567

email: maile@duchessviewsfarm.com

Phone: 518-398-5666   Cell: _____   Fax: 518-398-5143

Pay Commission: _____   Percent: _____   Dollar Amount: _____

Agent: _____

Entered In HFM

Address: _____

email: _____

Phone: _____   Cell: _____   Fax: _____

☐ Approved By _____

☐ Denied

☐ Needs boarding farm contract

☐ Send Brochure

Special notes: MICHAEL LISCHIN

Please Fax ,

Walmac R 10355

*09 R.I.*
*FC030 DP*

## BILL OF SALE

Per Section 5, Item 4 of the 2009 Stallion Service Agreement to breed the mare _Golden Playgirl_ to the stallion _Ready's Image_, I, _Christine A. Hansen_ hereby transfer 50% ownership of the resulting foal to Walmac Farm, LLC, as tenant in common. I acknowledge that the co-ownership will not be treated as a partnership or joint venture. I shall also cause the registration of the foal with the Jockey Club to reflect the co-ownership.

In addition to the above, I also agree to abide by all other terms of the Stallion Service Agreement.

_____
Contract Holder          Date: _5 - 4 - 10_

_____
Walmac Farm, LLC          Date: _5/10/10_

2010 Mare's produce:

_4-19-10_ date of birth

_bay_ color

_Filly_ sex

Walmac R 10362

## STALLION SERVICE AGREEMENT

FC 030 DP

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:**

Ms. Christine Hansen - Montessori Farm
PO Box 4335, Lexington, KY 40544
PHONE: 576-4205

Contract Returned Entered:
___ ✓ Access ✓ X ✓ M/S
Comment _____

% Ownership: 100.00%

**Seller:**

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX: (859) 299-1259

Seller is the owner of and agrees to sell to Buyer a nomination for the 2009 breeding season to the Thoroughbred Stallion,    **Ready's Image.**

1. Buyer agrees to breed    **Golden Playgirl,**    by    **Tiger Ridge,**    out of    **Golden Spell,**
a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion

2. during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days. Purchaser agrees not to breed mare to any other stallion during the breeding season.

Buyer hereby agrees to pay Seller    **13,250.00**    ("Stud Fee plus 6% KY sales tax") for such nomination,

3. on the following basis (select one by initialing choice):

   a. _____ LIVE FOAL BASIS: Payment of the Stud Fee shall be made no later than November 15, 2009, but shall be subject to refund if all of the following conditions are met: (i) the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the refund condition; (ii) the Mare continues to be owned solely by Buyer until foaling and is not transported to a public sale; and (iii) the Stud Fee is paid in full on a timely basis. If any of the foregoing conditions are not met, the Stud Fee is immediately owed on a no guaranty basis.

   b. _____ LIVE FOAL - DEFERRED PAYMENT BASIS: The Stud Fee shall be owed on a Live Foal basis, that is (i) unless the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the condition; and (ii) provided the Mare continues to be owned solely by Buyer until foaling and is not transported to a location other than that stated in the Mare Information Form. Payment of the Stud Fee, with interest thereon from November 15, 2009, at the rate of 7% per annum, shall not be due until the distribution of the proceeds from the sale of the Foal, but in any event no later than December 1, 2011, provided all of the following conditions are met:

    (1) If the Buyer sells the Foal resulting from the breeding, unless otherwise agreed with Seller in writing, the Foal shall only be sold at a thoroughbred public auction in the United States and may not be transported outside the country. Buyer shall notify Seller of the sale in which the Foal is entered no later than 15 days prior to the commencement of the auction session. Buyer shall instruct the sales company in writing to pay the Stud Fee from proceeds of sale, and provide that such payment is prior and superior to all other payments of proceeds from the sale of the Foal except the payment of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer.

    (2) No encumbrances shall be incurred on the Foal, or the proceeds from the Foal, that is superior to the security interest and rights of Seller as otherwise provided herein. Such impermissible encumbrances include, but are not limited to, security interests, statutory and common-law liens such as agister's liens, or agricultural liens, but shall not include the security interest of Seller granted herein. Buyer shall keep all expense payments associated with the Mare while pregnant with the Foal, and the Foal, current.

    (3) Interest accrued on the Stud Fee, if not due sooner, shall be paid current by December 31, 2010.

    (4) Notwithstanding the deferral of payment until sale, the Stud Fee shall be immediately payable upon the breach of any of the forgoing conditions, or the breach of any conditions in this agreement. Buyer acknowledges that the full Stud Fee, with interest, is owed regardless of whether the proceeds of sale are sufficient to pay the Stud Fee.

In either event, ALL PAYMENTS required herein are understood to include 6% Kentucky Sales Tax. In the event of any default of any condition of this Agreement, or delay in payment of the Stud Fee, the Stud Fee shall bear interest at the rate of 18% per annum until paid in full, with interest, and shall include all expenses, including legal costs and attorneys fees, incurred by Seller in the efforts to collect the Stud Fee, with interest.

_Converted to a foal share 5/10/10 per_

4. Buyer shall carry mortality insurance on the Foal in an amount equal to or greater than the Stud Fee owed and the interest owed, naming Seller as loss payee to the extent of the amount owed under this Agreement and shall furnish Seller proof of coverage.

5. Buyer shall have the right to convert the obligation to a Foal-Sharing with the Seller, wherein Buyer and Seller shall own the resulting Foal on a 50-50 basis as tenants in common, provided each of the following conditions are met:

  (1) Buyer notifies Seller in writing by fax AND certified mail, to be received by Seller no later than thirty days following the birth of the Foal.

  (2) The Foal is alive, standing and nursing at the time of the notification.

  (3) Buyer is not in default or in breach of any terms of this agreement.

  (4) Buyer shall, within five (5) days of the notification above, execute and deliver to Seller a Bill of Sale, in a form reasonably required by Seller, transferring 50% interest in the Foal to Seller, as tenant-in-common, and Buyer acknowledges that the co-ownership will not be treated as a partnership or joint venture. Buyer shall cause any registration of the Foal with the Jockey Club to reflect the co-ownership.

  (5) Buyer shall pay all expenses relating to the care and upkeep of the Foal, including board, veterinary expenses, and sales preparation expenses, and agrees to hold harmless Seller from any claims for such expenses. Buyer shall keep the Foal free from all encumbrances, as that term is defined in Provision 3 above.

  (6) Except as otherwise agreed between Buyer and Seller; Buyer agrees to enter the Foal in a recognized thoroughbred auction, so that the Foal shall be sold no later than its yearling year. Except as otherwise agreed between Buyer and Seller, neither Buyer nor Seller may place a reserve on the Foal, but may bid on the Foal for Buyer's and Seller's own account (that is, to purchase the entire Foal). The proceeds from the sale of the Foal, after deducting of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer, shall be split 50-50 between Buyer and Seller.

  (7) Each party shall be responsible for insuring its own interest in the Foal, if insurance is desired by such party.

6. Buyer warrants and agrees that the Mare shall be healthy and in sound breeding condition, and shall provide a certification of such condition by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of the Stallion reserves the right to refuse to permit the breeding of any mare to the Stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to the Mare or the Stallion.

7. This contract shall not be assigned or transferred by Buyer. This contract is assignable by Seller for purposes of enforcement.

8. In the event the Stallion dies or is sold, or becomes unfit for service before servicing the Mare, any payment of the Stud Fee received on a Live-Foal basis shall be refunded to Buyer. Further, should the Mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded provided Buyer notifies the Seller in writing and provides a copy of a certificate from the attending veterinarian within ten days.

9. Buyer grants Seller a security interest in the Mare pregnant with the Foal, the Foal, all insurance policies relating to the Foal, all stallion service certificates and Jockey Club Foal registration certificates relating to the breeding or the Foal, and the proceeds and products of the Foal (all of the foregoing being the "Collateral"). Buyer appoints Seller as its attorney-in-fact to execute and file any and all financing statements and agricultural liens in any jurisdiction Seller believes to be appropriate to secure any obligation of Buyer to Seller, whether arising by the owing the Stud Fee or otherwise. Buyer authorizes Seller to retain the stallion service certificate and the Jockey Club Foal registration certificate relating to the breeding and the Foal, and authorizes and appoints Seller as its attorney-in-fact to obtain possession of the stallion service certificate from the manager of the Stallion issuing the certificate, and to obtain the Foal Registration certificate from the Jockey Club, and retain such documents until all obligations of Buyer to Seller are paid in full. In the event the Stud Fee is not timely paid, Seller may, without notice to Buyer, take possession of the Foal or other Collateral, and either retain the Collateral in lieu of the obligation, or re-sell the Collateral privately or publicly in a manner in its sole discretion it believes to be advisable, in which event the Seller shall credit the proceeds of sale, after expenses of sale and maintaining the Collateral, to Buyer's obligation to Seller. This right is in addition to all other rights to which the Buyer is entitled under law.

10. Buyer and/or signatory guarantor further warrants and agrees that the purchase of this stallion nomination is made for commercial purposes and not for personal, family, or household purposes.

11. In the event this agreement is executed by an agent on behalf of Buyer, or a representative or principal on behalf of Buyer if Buyer is an organization, the undersigned agent, representative or principal hereby unconditionally guarantees the full and prompt payment of the Stud Fee as well as the full and prompt performance by Buyer of any and all other obligations hereunder. The undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. The foregoing guaranty and warranty shall remain in effect regardless whether the agent, representative, or principal retains his or her status as such following the execution of this agreement.

12. This agreement shall be binding on the parties, and other obligors stated herein, and their assigns. The sole venue for enforcement of this agreement, or the resolution of any dispute concerning this agreement, its enforcement, or the performance of the parties, shall be the courts of Fayette County in the Commonwealth of Kentucky, and the parties and other obligors hereby submit to jurisdiction of such Courts. The parties and obligors expressly waive all rights to trial by jury with respect to any dispute concerning this agreement, its enforcement, or the performance of the parties.

13. The parties further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any assurances of whatever nature that are not contained and expressed in this agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

14. This contract shall be Voidable at the Seller's option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:   None

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, February 17, 2009

BUYER: _____ 3-5-09
Signature                        Date

Christine A. Hansen
Print Name of Signator

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
SS# of Signator

SELLER: Walmac Farm, LLC, By:
Jordan Krabel  4/10/09
Signature                  Date

**Void After Monday, March 09, 2009**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

# 2009 MARE INFORMATION FORM

*Please complete fully (type or print). Thank you.*

STALLION: *Ready's Image*          SHARE NUMBER: FC 030DP

## MARE OWNER INFORMATION
*Please indicate this in the manner you would like it reported to The Jockey Club.*

Name *Christine A. Hansen*          Tele # 859-576-4205
Address *PO Box 4335*          Fax # 873-5783
*Lex. KY 40544*          Cell #
          Email

## MARE IDENTIFICATION

Mare's Name *Golden Playgirl*          Sire *Tiger Ridge*
Dam *Golden Spell*          Dam's Sire *Private Account*
Date of Birth *2003*          □ Dkb/br   □ Bay   ☑ Ch   □ Gray/Roan

---

*Are there any security interests, liens, encumbrances, or adverse claims against this mare?*
□ No □ Yes- If yes, please list details on buck of this form.

---

## MARE STATUS

□ Maiden   ☑ In foal   □ Barren   □ Slipped   □ Not bred in 2008

□ Already foaled – 2009 foaling date 4/05/2009 □ Filly ☑ Colt   □ Dkb/br  □ Bay  □ Ch  ☑ Gray/Roan

2008 stallion bred to *Value Plus*   2008 Last Date Bred *4-17-08*

2007 stallion bred to *N/A - Maiden*   DOB __/__/2008 □ Filly   □ Colt   Color

Is this Mare an IMPORT for the 2009 breeding season?

□ Yes ☑ No If yes, Import Date: _____ Country of Origin: _____

### WALMAC WELCOMES YOU AS A BOARDER, PLEASE CALL FOR AVAILABILITY.

Mare's KY Boarding Farm *Montessori Farm*   Tele # 859-576-4205
Farm Manager *Christine Hansen*   Cell #
Boarding Farm Address *PO Box 4335 Lex. KY 40544*
Mare's Veterinarian *Lauren Welch*   Tele # 621-6175

---

PLEASE NOTE: IT IS THE POLICY OF WALMAC FARM, LLC NOT TO RELEASE A
STALLION SERVICE CERTIFICATE UNTIL AND UNLESS IT IS REQUESTED.

---

Signature _____   Date 4-7-09

Walmac R 10366

Date: 2/10/09                                    Contract # _FC030DP_

## SEASON REQUEST FORM

Mare: GOLDEN PLAYGIRL           Stallion: READY'S IMAGE

☒ Sire: TIGER RIDGE             Contract Price: $12,500
Entered
In HFM  Dam: GOLDEN SPELL       Contract Terms: POP

Dam Sire: PRIVATE ACCOUNT       Year Born: 2003  Color: Ch.

In Foal To: VALUE PLUS          Last Date Bred: Apr 17th

20   Foal: _____       20   Foal: _____

---

Mare Owner: MONTESSORI FARM  (CHRISTINE A HANSEN)

☒ Address: P.O. Box 4385
Entered
In HFM           LEXINGTON, KY

                                email: _____

Phone: 576-4205   Cell: _____   Fax: _____

---

Pay Commission: ✓      Percent: 2.5    Dollar Amount: 312.50

Agent: ANGLO - AMERICAN THOROUGHBREDS, LLC

☐ Address: _____
Entered
In HFM   _____

                                email: _____

Phone: _____   Cell: _____   Fax: _____

---

☐ Approved By _SJH_             ☐ Needs boarding farm contract

☐ Denied                        ☐ Send Brochure

Special notes: PER SJH NO TO SONG.

Walmac R 10367

FC050DP

May 11, 2010

Walmac Farm LLC
3395 Paris Pike
Lexington, KY 40511

To Whom It May Concern

RE: 2010 Foal By Ready's Image Out of Bound to Blush

This letter is to advise you that the above mentioned filly was born April 19, 2010.
Per paragraph 5 of the Stallion Service Agreement between Walmac and myself (Nicky
Kearns) I have the option to convert this to a foal share. I am writing to to let you know
that this is what I would like to do.

I have attached a bill of sale as per the service agreement (let me know if this is how you
needed it - I wasn't sure.  I have included two signed copies, if you could send me back a
signed copy for my records also.

Thank you.


Sincerely,

Nicky Kearns

Walmac R 10368