May 11, 2010

Walmac Farm LLC
3395 Paris Pike
Lexington, KY 40511

To Whom It May Concern

RE: 2010 Foal By Ready's Image Out of Bound to Blush

This letter is to advise you that the above mentioned filly was born April 19, 2010.
Per paragraph 5 of the Stallion Service Agreement between Walmac and myself (Nicky
Kearns) I have the option to convert this to a foal share. I am writing to to let you know
that this is what I would like to do.

I have attached a bill of sale as per the service agreement (let me know if this is how you
needed it - I wasn't sure.  I have included two signed copies, if you could send me back a
signed copy for my records also.

Thank you.


Sincerely,


Nicky Kearns

Walmac R 10368

Bill of Sale

This bill of sale hereby transfers a 50% interest, as tenants in common, of the 2010 Thoroughbred filly out by Ready's Image out of Bound to Blush to Walmac Farm LLC in lieu of payment of the stud fee for this mating, as per the Stallion Service Agreement between Nicky Kearns of 318 Mt. Sterling Rd, Paris, KY 40361 and Walmac Farm LLC .

Signed by buyer                    Signed by seller
Nicky Kearns                       Walmac Farm LLC


_____          _____
                                                    5/18/10

Walmac R 10369

# STALLION SERVICE AGREEMENT

FC CSO DP

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows.

**BUYER:**

Nicky Kearns
318 Mt. Sterling Rd, Paris, KY 40361
PHONE: (859) 362-7621

Mare
Share No.
Contract Returned Entered
Access N Y M/F
Comment
% Ownership: 100.00%

**Seller:**

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX:    (859) 299-1259

Seller is the owner of and agrees to sell to Buyer a nomination for the 2009 breeding season to the
Thoroughbred Stallion, _____ **Ready's Image,** _____

1. Buyer agrees to breed      **Bound To Blush,**      by      **Boundary,**      out of      **BLush,**
a Thoroughbred mare to the stallion during the breeding season.  The Purchaser agrees to present the Mare for breeding to the Stallion
2. during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant.  If the Mare dies or
becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending
veterinarian within ten days.  Purchaser agrees not to breed mare to any other stallion during the breeding season.

Buyer hereby agrees to pay Seller      **10,070.00**      ("Stud Fee plus 6% KY sales tax") for such nomination,
3. on the following basis (select one by initialing choice):

   a. _____ LIVE FOAL BASIS: Payment of the Stud Fee shall be made no later than November 15, 2009, but shall be subject to
   refund if all of the following conditions are met: (i) the Mare dies, aborts, or does not give birth to a single live foal that stands and
   nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of
   the event giving rise to the refund condition; (ii) the Mare continues to be owned solely by Buyer until foaling and is not
   transported to a public sale; and (iii) the Stud Fee is paid in full on a timely basis. If any of the foregoing conditions are not met,
   the Stud Fee is immediately owed on a no guaranty basis.

   b. _____ LIVE FOAL - DEFERRED PAYMENT BASIS: The Stud Fee shall be owed on a Live Foal basis, that is (i) unless the
   Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate
   from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the condition; and (ii) provided
   the Mare continues to be owned solely by Buyer until foaling and is not transported to a location other than that stated in the Mare
   Information Form. Payment of the Stud Fee, with interest thereon from November 15, 2009, at the rate of 7% per annum, shall not
   be due until the distribution of the proceeds from the sale of the Foal, but in any event no later than December 1, 2011, provided
   all of the following conditions are met:

   (1)   If the Buyer sells the Foal resulting from the breeding, unless otherwise agreed with Seller in writing, the Foal shall
   only be sold at a thoroughbred public auction in the United States and may not be transported outside the country.
   Buyer shall notify Seller of the sale in which the Foal is entered no later than 15 days prior to the commencement of
   the auction session. Buyer shall instruct the sales company in writing to pay the Stud Fee from proceeds of sale, and
   provide that such payment is prior and superior to all other payments of proceeds from the sale of the Foal except
   the payment of the sales company's commission, and the reasonable commission (not to exceed 5% of the
   purchase price) of the consigning agent, if unaffiliated with Buyer.

   (2)   No encumbrances shall be incurred on the Foal, or the proceeds from the Foal, that is superior to the security
   interest and rights of Seller as otherwise provided herein. Such impermissible encumbrances include, but are not
   limited to, security interests, statutory and common-law liens such as agister's liens, or agricultural liens, but shall
   not include the security interest of Seller granted herein. Buyer shall keep all expense payments associated with the
   Mare while pregnant with the Foal, and the Foal, current.

   (3)   Interest accrued on the Stud Fee, if not due sooner, shall be paid current by December 31, 2010.

   (4)   Notwithstanding the deferral of payment until sale, the Stud Fee shall be immediately payable upon the breach of
   any of the forgoing conditions, or the breach of any conditions in this agreement. Buyer acknowledges that the full
   Stud Fee, with interest, is owed regardless of whether the proceeds of sale are sufficient to pay the Stud Fee.

In either event, ALL PAYMENTS required herein are understood to include 6% Kentucky Sales Tax. In the event of any default of any
condition of this Agreement, or delay in payment of the Stud Fee, the Stud Fee shall bear interest at the rate of 18% per annum until paid
in full, with interest, and shall include all expenses, including legal costs and attorneys fees, incurred by Seller in the efforts to collect the
Stud Fee, with interest.

*Converted to a foal Share*

3/28/2009

4. Buyer shall carry mortality insurance on the Foal in an amount equal to or greater than the Stud Fee owed and the interest owed, naming Seller as loss payee to the extent of the amount owed under this Agreement and shall furnish Seller proof of coverage.

5. Buyer shall have the right to convert the obligation to a Foal-Sharing with the Seller, wherein Buyer and Seller shall own the resulting Foal on a 50-50 basis as tenants in common, provided each of the following conditions are met:

    (1) Buyer notifies Seller in writing by fax AND certified mail, to be received by Seller no later than thirty days following the birth of the Foal.

    (2) The Foal is alive, standing and nursing at the time of the notification.

    (3) Buyer is not in default or in breach of any terms of this agreement.

    (4) Buyer shall, within five (5) days of the notification above, execute and deliver to Seller a Bill of Sale, in a form reasonably required by Seller, transferring 50% interest in the Foal to Seller, as tenant-in-common, and Buyer acknowledges that the co-ownership will not be treated as a partnership or joint venture. Buyer shall cause any registration of the Foal with the Jockey Club to reflect the co-ownership.

    (5) Buyer shall pay all expenses relating to the care and upkeep of the Foal, including board, veterinary expenses, and sales preparation expenses and shall pay all registration and Breeders' Cup Nomination fees or any other fees due or payable to any program or scheme on behalf of the buyer and seller, and agrees to hold harmless Seller from any claims for such expenses. Buyer shall keep the Foal free from all encumbrances, as that term is defined in Provision 3 above.

    (6) Except as otherwise agreed between Buyer and Seller; Buyer agrees to enter the Foal in a recognized thoroughbred auction, so that the Foal shall be sold no later than its yearling year. Except as otherwise agreed between Buyer and Seller, neither Buyer nor Seller may place a reserve on the Foal, but may bid on the Foal for Buyer's and Seller's own account (that is, to purchase the entire Foal). The proceeds from the sale of the Foal, after deducting of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer, shall be split 50-50 between Buyer and Seller.

    (7) Each party shall be responsible for insuring its own interest in the Foal, if insurance is desired by such party.

6. Buyer warrants and agrees that the Mare shall be healthy and in sound breeding condition, and shall provide a certification of such condition by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of the Stallion reserves the right to refuse to permit the breeding of any mare to the Stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to the Mare or the Stallion.

7. This contract shall not be assigned or transferred by Buyer. This contract is assignable by Seller for purposes of enforcement.

8. In the event the Stallion dies or is sold, or becomes unfit for service before servicing the Mare, any payment of the Stud Fee received on a Live-Foal basis shall be refunded to Buyer. Further, should the Mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded provided Buyer notifies the Seller in writing and provides a copy of a certificate from the attending veterinarian within ten days.

9. Buyer grants Seller a security interest in the Mare pregnant with the Foal, the Foal, all insurance policies relating to the Foal, all stallion service certificates and Jockey Club Foal registration certificates relating to the breeding or the Foal, and the proceeds and products of the Foal (all of the foregoing being the "Collateral"). Buyer appoints Seller as its attorney-in-fact to execute and file any and all financing statements and agricultural liens in any jurisdiction Seller believes to be appropriate to secure any obligation of Buyer to Seller, whether arising by the owing the Stud Fee or otherwise. Buyer authorizes Seller to retain the stallion service certificate and the Jockey Club Foal registration certificate relating to the breeding and the Foal, and authorizes and appoints Seller as its attorney-in-fact to obtain possession of the stallion service certificate from the manager of the Stallion issuing the certificate, and to obtain the Foal Registration certificate from the Jockey Club, and retain such documents until all obligations of Buyer to Seller are paid in full. In the event the Stud Fee is not timely paid, Seller may, without notice to Buyer, take possession of the Foal or other Collateral, and either retain the Collateral in lieu of the obligation, or re-sell the Collateral privately or publicly in a manner in its sole discretion it believes to be advisable, in which event the Seller shall credit the proceeds of sale, after expenses of sale and maintaining the Collateral, to Buyer's obligation to Seller. This right is in addition to all other rights to which the Buyer is entitled under law.

10. Buyer and/or signatory guarantor further warrants and agrees that the purchase of this stallion nomination is made for commercial purposes and not for personal, family, or household purposes.

11. In the event this agreement is executed by an agent on behalf of Buyer, or a representative or principal on behalf of Buyer if Buyer is an organization, the undersigned agent, representative or principal hereby unconditionally guarantees the full and prompt payment of the Stud Fee as well as the full and prompt performance by Buyer of any and all other obligations hereunder. The undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. The foregoing guaranty and warranty shall remain in effect regardless whether the agent, representative, or principal retains his or her status as such following the execution of this agreement.

12. This agreement shall be binding on the parties, and other obligors stated herein, and their assigns. The sole venue for enforcement of this agreement, or the resolution of any dispute concerning this agreement, its enforcement, or the performance of the parties, shall be the courts of Fayette County in the Commonwealth of Kentucky, and the parties and other obligors hereby submit to jurisdiction of such Courts. The parties and obligors expressly waive all rights to trial by jury with respect to any dispute concerning this agreement, its enforcement, or the performance of the parties.

13. The parties further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any assurances of whatever nature that are not contained and expressed in this agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

14. This contract shall be Voidable at the Seller's option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:    None

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, March 28, 2009

BUYER:

_____            _____
Signature                                   Date

_____
Print Name of Signator

NICKY KEARNS

_____
SS# of Signator

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

SELLER: Walmac Farm, LLC, By:

_____            _____
Signature                                   Date


**Void After Friday, April 17, 2009**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

# WALMAC FARM, LLC

3395 Paris Pike  Lexington, KY 40511  (859) 299-0473 tele.  (859) 299-1259 fax

## 2009 MARE INFORMATION FORM

*Please complete fully (type or print). Thank you.*

**STALLION:** Woody's Image     **SHARE NUMBER:** FC 050DP

**MARE OWNER INFORMATION**
*Please indicate this in the manner you would like it reported to The Jockey Club.*

Name NICKY KEARNS    Tele # 859-362-7621
Address 318 Mt Sterling Rd    Fax # 859-362-7621
Paris, KY 40361    Cell # 859-509-7778
     Email NKearns353@aol.com

**MARE IDENTIFICATION**

Mare's Name Bound to Blush    Sire Boundary
Dam Blush    Dam's Sire Sir Gaylord
Date of Birth 1997    ☐ Dkb/br   ☒ Bay   ☐ Ch   ☐ Gray/Roan

> *Are there any security interests, liens, encumbrances, or adverse claims against this mare?*
> ☒ No ☐ Yes- If yes, please list details on back of this form.

## MARE STATUS

☐ Maiden    ☐ In foal    ☐ Barren    ☐ Slipped    ☐ Not bred in 2008

☒ Already foaled – 2009 foaling date 2/27/2009 ☒ Filly ☐ Colt    ☐ Dkb/br ☒ Bay ☐ Ch ☐ Gray/Roan

2008 stallion bred to Sun King    2008 Last Date Bred 3/17/08

2007 stallion bred to Not Bred    DOB ___/___/2008 ☐ Filly ☐ Colt Color _____

Is this Mare an IMPORT for the 2009 breeding season?

☐ Yes ☒ No if yes, Import Date: _____ Country of Origin: _____

### WALMAC WELCOMES YOU AS A BOARDER, PLEASE CALL FOR AVAILABILITY.

Mare's KY Boarding Farm OAKWOOD HILLS FARM    Tele # 859-362-7621

Farm Manager NICKY KEARNS    Cell # 859-509-7778

Boarding Farm Address 318 Mt Sterling Rd, Paris, KY 40361

Mare's Veterinarian Dr Scott Kendall    Tele # 859-983-4601

> PLEASE NOTE: IT IS THE POLICY OF WALMAC FARM, LLC NOT TO RELEASE A
> STALLION SERVICE CERTIFICATE UNTIL AND UNLESS IT IS REQUESTED.

Signature _Kearns_      Date 3/28/09

Walmac R 10373

Date: 3-27-09                                        Contract # FC 050 DP

## SEASON REQUEST FORM

Entered In HFM

Mare: Bound do Blush

Sire: Boundary

Dam: Blush

Dam Sire: Sir Gaylord

2009
~~In Foal To:~~ Sun King

2008 Foal: No report

Stallion: Ready's Image

Contract Price: $ ~~12,500~~ / 9,500

Contract Terms: Deferred / 2nd mare rate

Year Born: 1997   Color: ____

~~Last Date Bred:~~ foaled 2-27-09

2007 Foal: C. aptitude

---

Entered In HFM

Mare Owner: Dicky Kearns

Address: 318 Mt. Sterling Rd.
Paris, Ky 40361

email: ____

Phone: 859-362-7621   Cell: ____   Fax: 859-362-7621

---

Entered In HFM

Pay Commission: ____   Percent: ____   Dollar Amount: ____

Agent: ____

Address: ____

email: ____

Phone: ____   Cell: ____   Fax: ____

---

4 Approved By ____

☐ Denied

☐ Needs boarding farm contract

☐ Send Brochure

---

Special notes: ____

Walmac R 10374



# Fasig-Tipton

HARRY L LANDRY BLOODSTOCK LLC, AGENT     (4413)
PO BOX 433
SARATOGA SPRINGS NY  12866-043

EASTERN FALL YEARLING SALE
10/05/11
M11B      96

11/03/11

(CONSTANCIA FARM LLC)    (102136)
(WALMAC FARM LLC)    (5489)

BY SALE:
  HIP NO 357    DKB.C. READY'S IMAGE-THIEVE THIS                1,500.00
                                                                           1,500.00
CHARGES :
  MINIMUM COMMISSION HIP NO(S) 357                     500.00
  ENTRY FEE HIP NO(S) 357                              500.00    -1,000.00
                                                                    500.00
DISBURSEMENTS :
  HARRY LANDRY AGENT COMMISSION HIP NO 357             500.00      -500.00
                                                                         0

*FC055 DP converted to FS*

Fasig-Tipton Co., Inc.
2400 Newtown Pike
Lexington, KY 40511
Phone: 859.255.1555
Fax: 859.254.0794
www.fasigtipton.com

Walmac R 10375

NOV-03-2011 10:28 AM  HARRY L LANDRY   518 695 6737          P.01

HARRY L. LANDRY BLOODSTOCK, LLC
PO BOX 433
SARATOGA SPRINGS, NY  12866

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/3/2011 | 2011 EF 4 |

**Bill To**

Constancia Farm & Walmac Farm
c/o Constancia Farm
750 Bob White Lane
Winchester, KY
40391

| | Terms |
|--|-------|
| | Deducted from Proceeds |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Hip # 357 Purchased by Webb Carroll PO Box 224 St. Matthews, SC 29135-0224 | | | |
| Agent's Minimum Commission $500    Hip #357 | 1 | 500.00 | 500.00 |
| Care and Presentation $85.00/day | 6 | 85.00 | 510.00 |
| Halter & Nameplate furnished by owner | | | |
| Stall Card | 1 | 30.00 | 30.00 |
| Nightwatchman | 5 | 10.00 | 50.00 |

*only → per Walmac*

It's been a pleasure working with you!

| | |
|--|--|
| **Total** | $1,090.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $1,090.00 |

Make Checks Payable to Harry L. Landry Bloodstock
LLC.

Walmac R 10376

**Marcia Skiles**

$\mathcal{R}.1.$

$2009 \ FC055 \ DP$

| | |
|---|---|
| From: | "Brouse, Glenna" <gbrouse@jockeyclub.com> |
| To: | <mskiles@walmac.com> |
| Sent: | Monday, February 28, 2011 8:36 AM |
| Subject: | 2010 by Ready's Image--Thieve This |

Marcia,

We received the email from Scot Schoeman at Constancia Farm requesting the Certificate of Foal Registration for the 2010 out of Thieve this be sent to Walmac, however, this foal either has been or is consigned to an OBS sale and the Certificate of Foal Registration will be sent to OBS unless we receive a release from OBS.

Regards,
Glenna Brouse
TJC Registration Services

Walmac R 10377
3/16/2011

*oy R.I.*
*FC 055 DP*

**Constancia Farm, LLC**
**750 Bobwhite Lane**
**Winchester, KY 40391**
**859.983.0380/1**
**859.577.1219**
**constanciafarm@att.net**

5/6/2010

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY 40511

To Whom It May Concern:

Re: Converting Stallion Service agreement to a Foal-Sharing agreement

**Ready's Image x Thieve This**
The resulting foal of the mating above was born on **5/6/2010** - alive, standing and
nursing at the date of this letter. A certified copy of this fax has been mailed to
you within the stated 30 days of the foal being born.

Included the bill of sale as required by the contract. Please sign and return the 2nd
copy to the address above.

If you have any questions please contact Scott Schoeman at 859.983.0380.

Sincerely,

Maggie Schoeman

# BILL OF SALE

THIS BILL of SALE & AGREEMENT ("Agreement") is made and entered into this 6th day of ___MAY___, 2010 by *Constancia Farm, LLC* ("Seller") and *Walmac Farm, LLC* ("Buyer").

## WITNESSETH:

**WHEREAS,** Seller owns the Thoroughbred mare, *Thieve This* and Buyer owns the Stallion season to *Ready's Image*. The resulting foal of this mating, hereafter referred to as (the"FOAL"), and

**WHEREAS,** Seller desires to convert the Stallion Service Agreement on the **FOAL** to include Buyer and Buyer desires to be included in the part ownership of the **FOAL**, at terms and conditions hereinafter set forth.

**NOW, THEREFORE,** in consideration of the mutual covenants and promises contained herein, Seller and Buyer to hereby covenant, represent and warrant as follows:

Sale and Purchase. Seller hereby conveys 50% of the **FOAL** to Buyer and Buyer hereby acquires 50% of the **FOAL** from Seller, as tenant-in-common, and Seller acknowledges that the co-ownership will not be treated as a partnership or joint venture. Seller shall cause registration of the **FOAL** with the Jockey Club to reflect the co-ownership.

Seller's Other Warranties. Seller shall pay all expenses relating to the care and upkeep of the **FOAL**, including board, veterinary expenses and sales preparation expenses. Seller shall pay all registration fees and or any other fees due to any program or scheme and agrees to hold harmless Buyer from any claims for such expenses. Seller and Buyer agree to keep the **FOAL** free from all encumbrances. Except as otherwise agreed between Seller and Buyer, Seller agrees to enter the **FOAL** in a recognized Thoroughbred auction, so that the **FOAL** shall be sold no later than its Yearling year. Except as otherwise agreed between Seller and Buyer, neither Seller nor Buyer may place a reserve on the **FOAL**, but may bid on the **FOAL** for Seller's and or Buyer's own account (that is, to purchase the entire **FOAL**). The proceeds from the sale of the **FOAL**, after deduction of the sales company fees, commissions, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, shall be split 50-50 between Seller and Buyer.

Risk of Loss. The parties agree that the risk of loss for the **FOAL** will be the responsibility of each individual party as they see fit. Each part shall be responsible for insuring its own interest in the **FOAL**, if insurance is desired by such party.

1

Walmac R 10379

Miscellaneous. (a) Governing Law. This Agreement shall be binding on the parties and covered by, and construed in accordance with, the laws of the State of Kentucky. (b) Integration and Modification. Both parties acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon ant assurances of whatever nature that is not contained and expressed in this agreement. The parties hereby agree the terms and conditions of this Agreement represent therefore understanding and agreement, and that any modification shall not be valid unless in writing signed by both Seller and Buyer.

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement, as of the date last written below.

("Seller")

DATE: 5/6/10

WITNESS:

DATE: 5/7/2010

("Buyer")

DATE: 5/12/10

WITNESS:

DATE: 5-13-10

2

Walmac R 10380

## STALLION SERVICE AGREEMENT

FC DSS DP

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:**

Constancia Farm
750 Bobwhite Lane, Winchester, KY 40391
PHONE: (859) 737-5069

Stallion _____ R.I. _____
Mare _Thieve This_
Share No. _FC055_
Contract % Ownership: 100.00%
Return/Entered:
_____ Access _✓_ X _✓_ M/S
Comment

**Seller:**

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX:  (859) 299-1259

Seller is the owner of and agrees to sell to Buyer a nomination for the 2009 breeding season to the
Thoroughbred Stallion, **Ready's Image.**

1. Buyer agrees to breed ____ Thieve This, ____ by ____ Cat Thief, ____ out of ____ Champagne Sunset,

2. a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days. Purchaser agrees not to breed mare to any other stallion during the breeding season.

Buyer hereby agrees to pay Seller ____ 13,250.00 ____ ("Stud Fee plus 6% KY sales tax") for such nomination,

3. on the following basis (select one by initialing choice):

   a. _____ LIVE FOAL BASIS: Payment of the Stud Fee shall be made no later than November 15, 2009, but shall be subject to refund if all of the following conditions are met: (i) the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the refund condition; (ii) the Mare continues to be owned solely by Buyer until foaling and is not transported to a public sale; and (iii) the Stud Fee is paid in full on a timely basis. If any of the foregoing conditions are not met, the Stud Fee is immediately owed on a no guaranty basis.

   b. _X_ LIVE FOAL - DEFERRED PAYMENT BASIS: The Stud Fee shall be owed on a Live Foal basis, that is (i) unless the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the condition; and (ii) provided the Mare continues to be owned solely by Buyer until foaling and is not transported to a location other than that stated in the Mare Information Form. Payment of the Stud Fee, with interest thereon from November 15, 2009, at the rate of 7% per annum, shall not be due until the distribution of the proceeds from the sale of the Foal, but in any event no later than December 1, 2011, provided all of the following conditions are met:

      (1) If the Buyer sells the Foal resulting from the breeding, unless otherwise agreed with Seller in writing, the Foal shall only be sold at a thoroughbred public auction in the United States and may not be transported outside the country. Buyer shall notify Seller of the sale in which the Foal is entered no later than 15 days prior to the commencement of the auction session. Buyer shall instruct the sales company in writing to pay the Stud Fee from proceeds of sale, and provide that such payment is prior and superior to all other payments of proceeds from the sale of the Foal except the payment of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer.

      (2) No encumbrances shall be incurred on the Foal, or the proceeds from the Foal, that is superior to the security interest and rights of Seller as otherwise provided herein. Such impermissible encumbrances include, but are not limited to, security interests, statutory and common law liens such as agister's liens, or agricultural liens, but shall not include the security interest of Seller granted herein. Buyer shall keep all expense payments associated with the Mare while pregnant with the Foal, and the Foal, current.

      (3) Interest accrued on the Stud Fee, if not due sooner, shall be paid current by December 31, 2010.

      (4) Notwithstanding the deferral of payment until sale, the Stud Fee shall be immediately payable upon the breach of any of the forgoing conditions, or the breach of any conditions in this agreement. Buyer acknowledges that the full Stud Fee, with interest, is owed regardless of whether the proceeds of sale are sufficient to pay the Stud Fee.

In either event, ALL PAYMENTS required herein are understood to include 6% Kentucky Sales Tax. In the event of any default of any condition of this Agreement, or delay in payment of the Stud Fee, the Stud Fee shall bear interest at the rate of 18% per annum until paid in full, with interest, and shall include all expenses, including legal costs and attorneys fees, incurred by Seller in the efforts to collect the Stud Fee, with interest.

4. Buyer shall carry mortality insurance on the Foal in an amount equal to or greater than the Stud Fee owed and the interest owed, naming Seller as loss payee to the extent of the amount owed under this Agreement and shall furnish Seller proof of coverage.

5. Buyer shall have the right to convert the obligation to a Foal-Sharing with the Seller, wherein Buyer and Seller shall own the resulting Foal on a 50-50 basis as tenants in common, provided each of the following conditions are met:

   (1)   Buyer notifies Seller in writing by fax AND certified mail, to be received by Seller no later than thirty days following the birth of the Foal.

   (2)   The Foal is alive, standing and nursing at the time of the notification.

   (3)   Buyer is not in default or in breach of any terms of this agreement.

   (4)   Buyer shall, within five (5) days of the notification above, execute and deliver to Seller a Bill of Sale, in a form reasonably required by Seller, transferring 50% interest in the Foal to Seller, as tenant-in-common, and Buyer acknowledges that the co-ownership will not be treated as a partnership or joint venture. Buyer shall cause any registration of the Foal with the Jockey Club to reflect the co-ownership.

   (5)   Buyer shall pay all expenses relating to the care and upkeep of the Foal, including board, veterinary expenses, and sales preparation expenses and shall pay all registration and Breeders' Cup Nomination fees or any other fees due or payable to any program or scheme on behalf of the buyer and seller, and agrees to hold harmless Seller from any claims for such expenses. Buyer shall keep the Foal free from all encumbrances, as that term is defined in Provision 3 above.

   (6)   Except as otherwise agreed between Buyer and Seller; Buyer agrees to enter the Foal in a recognized thoroughbred auction, so that the Foal shall be sold no later than its yearling year. Except as otherwise agreed between Buyer and Seller, neither Buyer nor Seller may place a reserve on the Foal, but may bid on the Foal for Buyer's and Seller's own account (that is, to purchase the entire Foal). The proceeds from the sale of the Foal, after deducting of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer, shall be split 50-50 between Buyer and Seller.

   (7)   Each party shall be responsible for insuring its own interest in the Foal, if insurance is desired by such party.

6. Buyer warrants and agrees that the Mare shall be healthy and in sound breeding condition, and shall provide a certification of such condition by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of the Stallion reserves the right to refuse to permit the breeding of any mare to the Stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to the Mare or the Stallion.

7. This contract shall not be assigned or transferred by Buyer. This contract is assignable by Seller for purposes of enforcement.

8. In the event the Stallion dies or is sold, or becomes unfit for service before servicing the Mare, any payment of the Stud Fee received on a Live-Foal basis shall be refunded to Buyer. Further, should the Mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded provided Buyer notifies the Seller in writing and provides a copy of a certificate from the attending veterinarian within ten days.

9. Buyer grants Seller a security interest in the Mare pregnant with the Foal, the Foal, all insurance policies relating to the Foal, all stallion service certificates and Jockey Club Foal registration certificates relating to the breeding or the Foal, and the proceeds and products of the Foal (all of the foregoing being the "Collateral"). Buyer appoints Seller as its attorney-in-fact to execute and file any and all financing statements and agricultural liens in any jurisdiction Seller believes to be appropriate to secure any obligation of Buyer to Seller, whether arising by the owing the Stud Fee or otherwise. Buyer authorizes Seller to retain the stallion service certificate and the Jockey Club Foal registration certificate relating to the breeding and the Foal, and authorizes and appoints Seller as its attorney-in-fact to obtain possession of the stallion service certificate from the manager of the Stallion issuing the certificate, and to obtain the Foal Registration certificate from the Jockey Club, and retain such documents until all obligations of Buyer to Seller are paid in full. In the event the Stud Fee is not timely paid, Seller may, without notice to Buyer, take possession of the Foal or other Collateral, and either retain the Collateral in lieu of the obligation, or re-sell the Collateral privately or publicly in a manner in its sole discretion it believes to be advisable, in which event the Seller shall credit the proceeds of sale, after expenses of sale and maintaining the Collateral, to Buyer's obligation to Seller. This right is in addition to all other rights to which the Buyer is entitled under law.

10. Buyer and/or signatory guarantor further warrants and agrees that the purchase of this stallion nomination is made for commercial purposes and not for personal, family, or household purposes.

11. In the event this agreement is executed by an agent on behalf of Buyer, or a representative or principal on behalf of Buyer if Buyer is an organization, the undersigned agent, representative or principal hereby unconditionally guarantees the full and prompt payment of the Stud Fee as well as the full and prompt performance by Buyer of any and all other obligations hereunder. The undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. The foregoing guaranty and warranty shall remain in effect regardless whether the agent, representative, or principal retains his or her status as such following the execution of this agreement.

12. This agreement shall be binding on the parties, and other obligors stated herein, and their assigns. The sole venue for enforcement of this agreement, or the resolution of any dispute concerning this agreement, its enforcement, or the performance of the parties, shall be the courts of Fayette County in the Commonwealth of Kentucky, and the parties and other obligors hereby submit to jurisdiction of such Courts. The parties and obligors expressly waive all rights to trial by jury with respect to any dispute concerning this agreement, its enforcement, or the performance of the parties.

13. The parties further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any assurances of whatever nature that are not contained and expressed in this agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

14. This contract shall be Voidable at the Seller's option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:   None

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, May 18,2009

BUYER:                                                    SELLER:  Walmac Farm, LLC, By:

Signature                         Date                    Signature                         Date

Print Name of Signator

SS# of Signator

**Void After Sunday, June 07, 2009**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

# 2009 MARE INFORMATION FORM

*Please complete fully (type or print). Thank you.*

STALLION: _READY'S IMAGE_   SHARE NUMBER: _FC055 DP_

## MARE OWNER INFORMATION
*Please indicate this in the manner you would like it reported to The Jockey Club.*

Name _____   ConsLancla Farm, LLC
Address _____   750 Bobwhite Lane
                  Winchester, KY 40391
                  USA

Tele # _983 - 0380_
Fax # _402 - 1258_
Cell # _983 - 0380 / 1_
Email _constnccfarm @ att . net_

## MARE IDENTIFICATION

Mare's Name _THIEVE THIS_   Sire _CAT THIEF_
Dam _CHAMPAGNE SUNSET_     Dam's Sire _GULCH_
Date of Birth _Jan 2005_   □ Dkb/br   □ Bay   ☑ Ch   □ Gray/Roan

**Are there any security interests, liens, encumbrances, or adverse claims against this mare?**
□ No □ Yes- If yes, please list details on back of this form.

## MARE STATUS

☑ Maiden   □ In foal   □ Barren   □ Slipped   □ Not bred in 2007

□ Already foaled – 2009 foaling date ____ / ____ /2009 □ Filly □ Colt     □ Dkb/br   □ Bay   □ Ch   □ Gray/Roan

2008 stallion bred to _____ 2008 Last Date Bred _____

2007 stallion bred to _____ DOB ___ / ___ /2008 □ Filly   □ Colt   Color _____

**Is this Mare an IMPORT for the 2009 breeding season?**
□ Yes ☑ No If yes, Import Date: _____ Country of Origin: _____

### WALMAC WELCOMES YOU AS A BOARDER, PLEASE CALL FOR AVAILABILITY.

Mare's KY Boarding Farm _AS ABOVE_     Tele # _AS ABOVE_

Farm Manager _Scott Schaman_           Cell # _____

Boarding Farm Address _____

Mare's Veterinarian _John Arvyx_       Tele # _351 - 9492_

**PLEASE NOTE: IT IS THE POLICY OF WALMAC FARM, LLC NOT TO RELEASE A STALLION SERVICE CERTIFICATE UNTIL AND UNLESS IT IS REQUESTED.**

Signature _____     Date _5/18/09_

Walmac R 10384

Date: _5·18·09_                              Contract # _FC 055_

## SEASON REQUEST FORM

| | | |
|---|---|---|
| Mare: _Shine This_ | | Stallion: _Ready's Image_ |
| ☐ Entered In HFM | Sire: _Cat Thief_ | Contract Price: _$12,500_ |
| | Dam: _Champagne Sunset_ | Contract Terms: _Deferred_ |
| | Dam Sire: _Gulch_ | Year Born: _2005_  Color: _____ |
| | In Foal To: _Maiden_ | Last Date Bred: _____ |
| | 20  Foal: _____ | 20  Foal: _____ |

Mare Owner: _Scott Schachman_

☐ Entered In HFM

Address: _Constance Farm_
_750 Bel White Lane_
_Winchester, Ky 40391_ email: _____

Phone: _737-5069_  Cell: _983 0380_  Fax: _463-1258_

Pay Commission: _____  Percent: _____  Dollar Amount: _____

Agent: _____

☐ Entered In HFM

Address: _____
_____
_____

email: _____

Phone: _____  Cell: _____  Fax: _____

☐ Approved By _____          ☐ Needs boarding farm contract

☐ Denied                       ☐ Send Brochure

Special notes: _9-30-09 Scott requested a conversion of this contract to a M/S but g TH said No. Scott wanted to enter them in FT M/S in Dec._

Walmac R 10385

Date: 5-18-09                                    Contract # FC 055 DP

## SEASON REQUEST FORM

*Entered In HFM*

Mare: Thieve This

Sire: Cat Thief

Dam: Champagne Sunset

Dam Sire: Gulch

In Foal To: Maiden

20   Foal: _____

Stallion: Ready's Image

Contract Price: $12,500

Contract Terms: Deferred

Year Born: 2005   Color: _____

Last Date Bred: _____

20   Foal: _____

*Entered In HFM*

Mare Owner: Scott Schoeman

Address: Constancia Farm

750 Bobwhite Lane

Winchester, Ky 40391   email: _____

Phone: 737-5069   Cell: 983-0380   Fax: 402-1258

*Entered In HFM*

Pay Commission: _____   Percent: _____   Dollar Amount: _____

Agent: _____

Address: _____

_____

email: _____

Phone: _____   Cell: _____   Fax: _____

☐ Approved By _____         ☐ Needs boarding farm contract

☐ Denied                              ☐ Send Brochure

Special notes: _____

_____

_____

Walmac R 10386

c 14 10 03:54p       Whispering Oaks Farm LLC                8599885943              p.1

Apr. 13. 2010  2:22PM   Walmac Farms                         No. 0544   P. 1

## BILL OF SALE

Per Section 5, Item 4 of the 2009 Stallion Service Agreement to breed the mare
_Nightcaruffian_ to the stallion _Ready's Image_ , I,
_____ hereby transfer 50% ownership of the resulting
foal to Walmac Farm, LLC, as tenant in common. I acknowledge that the co-
ownership will not be treated as a partnership or joint venture. I shall also cause
the registration of the foal with the Jockey Club to reflect the co-ownership. .

In addition to the above, I also agree to abide by all other terms of the Stallion
Service Agreement.


_____              Date: ᄂ- 13 - 10
Contract Holder


_Marcia Sheila Witt_                 Date: 4/13/10
Walmac Farm, LLC



2010 Mare's produce:

_____ date of birth

_BАУ_____ color

_Filly___ sex

Walmac R 10387

Apr 17 2009 16:34     WHISPERING OAKS          859.988.5943          p. 1

04/17/2009 FRI 16:32  FAX                                            ☒001/004

Stallion
## STALLION SERVICE AGREEMENT                                    FC023DP

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:**

Mr. Keith Crupper - Whispering Oaks Farm
425 Hume Bedford Road, Paris, KY 40512
PHONE: (859) 983-0748

Contract Returned / Interest:
_____ Access __X__ M/S
Comment _____
% Ownership: 100.00%

**Seller:**

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX:    (859) 299-1259

1. Seller is the owner of and agrees to sell to Buyer a nomination for the 2009 breeding season to the Thoroughbred Stallion, **Ready's Image.**

2. Buyer agrees to breed **Mightbearuffian,** by **Don's Choice,** out of **Talanta,** a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days. Purchaser agrees not to breed mare to any other stallion during the breeding season.

3. Buyer hereby agrees to pay Seller _____**13,250.00**_____ ("Stud Fee plus 6% KY sales tax") for such nomination, on the following basis (select one by initialing choice):

   a. _____ LIVE FOAL BASIS: Payment of the Stud Fee shall be made no later than November 15, 2009, but shall be subject to refund if all of the following conditions are met: (i) the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the refund condition; (ii) the Mare continues to be owned solely by Buyer until foaling and is not transported to a public sale; and (iii) the Stud Fee is paid in full on a timely basis. If any of the foregoing conditions are not met, the Stud Fee is immediately owed on a no guaranty basis.

   b. _____ LIVE FOAL - DEFERRED PAYMENT BASIS: The Stud Fee shall be owed on a Live Foal basis, that is (i) unless the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the condition; and (ii) provided the Mare continues to be owned solely by Buyer until foaling and is not transported to a location other than that stated in the Mare Information Form. Payment of the Stud Fee, with interest thereon from November 15, 2009, at the rate of 7% per annum, shall not be due until the distribution of the proceeds from the sale of the Foal, but in any event no later than December 1, 2011, provided all of the following conditions are met:

   (1) If the Buyer sells the Foal resulting from the breeding, unless otherwise agreed with Seller in writing, the Foal shall only be sold at a thoroughbred public auction in the United States and may not be transported outside the country. Buyer shall notify Seller of the sale in which the Foal is entered no later than 15 days prior to the commencement of the auction session. Buyer shall instruct the sales company in writing to pay the Stud Fee from proceeds of sale, and provide that such payment is prior and superior to all other payments of proceeds from the sale of the Foal except the payment of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer.

   (2) No encumbrances shall be incurred on the Foal, or the proceeds from the Foal, that is superior to the security interest and rights of Seller as otherwise provided herein. Such impermissible encumbrances include, but are not limited to, security interests, statutory and common-law liens such as agister's liens, or agricultural liens, but shall not include the security interest of Seller granted herein. Buyer shall keep all expense payments associated with the Mare while pregnant with the Foal, and the Foal, current.

   (3) Interest accrued on the Stud Fee, if not due sooner, shall be paid current by December 31, 2010.

   (4) Notwithstanding the deferral of payment until sale, the Stud Fee shall be immediately payable upon the breach of any of the forgoing conditions, or the breach of any conditions in this agreement. Buyer acknowledges that the full Stud Fee, with interest, is owed regardless of whether the proceeds of sale are sufficient to pay the Stud Fee.

In either event, ALL PAYMENTS required herein are understood to include 6% Kentucky Sales Tax. In the event of any default of any condition of this Agreement, or delay in payment of the Stud Fee, the Stud Fee shall bear interest at the rate of 18% per annum until paid in full, with interest, and shall include all expenses, including legal costs and attorneys fees, incurred by Seller in the efforts to collect the Stud Fee, with interest.

4/17/2009                                    Page 1 of 3, Ref#2702 Mightbearuffian/Ready's Image

Walmac R 10388

Apr 17 2009 16:34     WHISPERING OAKS          859.988.5943          p.2

04/17/2009 FRI 15:33  FAX                                            ☑002/004

4. Buyer shall carry mortality insurance on the Foal in an amount equal to or greater than the Stud Fee owed and the interest owed, naming Seller as loss payee to the extent of the amount owed under this Agreement and shall furnish Seller proof of coverage.

5. Buyer shall have the right to convert the obligation to a Foal-Sharing with the Seller, wherein Buyer and Seller shall own the resulting Foal on a 50-50 basis as tenants in common, provided each of the following conditions are met:

   (1)   Buyer notifies Seller in writing by fax AND certified mail, to be received by Seller no later than thirty days following the birth of the Foal.

   (2)   The Foal is alive, standing and nursing at the time of the notification.

   (3)   Buyer is not in default or in breach of any terms of this agreement.

   (4)   Buyer shall, within five (5) days of the notification above, execute and deliver to Seller a Bill of Sale, in a form reasonably required by Seller, transferring 50% interest in the Foal to Seller, as tenant-in-common, and Buyer acknowledges that the co-ownership will not be treated as a partnership or joint venture. Buyer shall cause any registration of the Foal with the Jockey Club to reflect the co-ownership.

   (5)   Buyer shall pay all expenses relating to the care and upkeep of the Foal, including board, veterinary expenses, and sales preparation expenses and shall pay all registration and Breeders' Cup Nomination fees or any other fees due or payable to any program or scheme on behalf of the buyer and seller, and agrees to hold harmless Seller from any claims for such expenses. Buyer shall keep the Foal free from all encumbrances, as that term is defined in Provision 3 above.

   (6)   Except as otherwise agreed between Buyer and Seller, Buyer agrees to enter the Foal in a recognized thoroughbred auction, so that the Foal shall be sold no later than its yearling year. Except as otherwise agreed between Buyer and Seller, neither Buyer nor Seller may place a reserve on the Foal, but may bid on the Foal for Buyer's and Seller's own account (that is, to purchase the entire Foal). The proceeds from the sale of the Foal, after deducting of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer, shall be split 50-50 between Buyer and Seller.

   (7)   Each party shall be responsible for insuring its own interest in the Foal, if insurance is desired by such party.

6. Buyer warrants and agrees that the Mare shall be healthy and in sound breeding condition, and shall provide a certification of such condition by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of the Stallion reserves the right to refuse to permit the breeding of any mare to the Stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to the Mare or the Stallion.

7. This contract shall not be assigned or transferred by Buyer. This contract is assignable by Seller for purposes of enforcement.

8. In the event the Stallion dies or is sold, or becomes unfit for service before servicing the Mare, any payment of the Stud Fee received on a Live-Foal basis shall be refunded to Buyer. Further, should the Mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded provided Buyer notifies the Seller in writing and provides a copy of a certificate from the attending veterinarian within ten days.

9. Buyer grants Seller a security interest in the Mare pregnant with the Foal, the Foal, all insurance policies relating to the Foal, all stallion service certificates and Jockey Club Foal registration certificates relating to the breeding or the Foal, and the proceeds and products of the Foal (all of the foregoing being the "Collateral"). Buyer appoints Seller as its attorney-in-fact to execute and file any and all financing statements and agricultural liens in any jurisdiction Seller believes to be appropriate to secure any obligation of Buyer to Seller, whether arising by the owing the Stud Fee or otherwise. Buyer authorizes Seller to retain the stallion service certificate and the Jockey Club Foal registration certificate relating to the breeding and the Foal, and authorizes and appoints Seller as its attorney-in-fact to obtain possession of the stallion service certificate from the manager of the Stallion issuing the certificate, and to obtain the Foal Registration certificate from the Jockey Club, and retain such documents until all obligations of Buyer to Seller are paid in full. In the event the Stud Fee is not timely paid, Seller may, without notice to Buyer, take possession of the Foal or other Collateral, and either retain the Collateral in lieu of the obligation, or re-sell the Collateral privately or publicly in a manner in its sole discretion it believes to be advisable, in which event the Seller shall credit the proceeds of sale, after expenses of sale and maintaining the Collateral, to Buyer's obligation to Seller. This right is in addition to all other rights to which the Buyer is entitled under law.

10. Buyer and/or signatory guarantor further warrants and agrees that the purchase of this stallion nomination is made for commercial purposes and not for personal, family, or household purposes.

11. In the event this agreement is executed by an agent on behalf of Buyer, or a representative or principal on behalf of Buyer if Buyer is an organization, the undersigned agent, representative or principal hereby unconditionally guarantees the full and prompt payment of the Stud Fee as well as the full and prompt performance by Buyer of any and all other obligations hereunder. The undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. The foregoing guaranty and warranty shall remain in effect regardless whether the agent, representative, or principal retains his or her status as such following the execution of this agreement.

12. This agreement shall be binding on the parties, and other obligors stated herein, and their assigns. The sole venue for enforcement of this agreement, or the resolution of any dispute concerning this agreement, its enforcement, or the performance of the parties, shall be the courts of Fayette County in the Commonwealth of Kentucky, and the parties and other obligors hereby submit to jurisdiction of such Courts. The parties and obligors expressly waive all rights to trial by jury with respect to any dispute concerning this agreement, its enforcement, or the performance of the parties.

Page 2 of 3, Ref#2702 Mightbearuffian/Ready's Image

Walmac R 10389

13. The parties further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any assurances of whatever nature that are not contained and expressed in this agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

14. This contract shall be Voidable at the Seller's option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:   None

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, April 17, 2009

BUYER:                                          SELLER: Walmac Farm, LLC, By:

_Signature_         4-17-09 _Date_              _Signature_ Jordan Krabel      4-17-09 _Date_

Keith Cruppel
Print Name of Signator

405 11 9653
SS# of Signator

**Void After Thursday, May 07, 2009**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

Page 3 of 3. Ref#2702 Mightbearuffian/Ready's Image
Friday, April 17, 2009

Walmac R 10390

Apr 17 2009 16:35     WHISPERING OAKS          859.988.5943          p.4

04/17/2009 FRI 16:34  FAX                                            ☑004/004

# WALMAC FARM, LLC

3395 Paris Pike  Lexington, KY 40511   (859) 299-0473 tele.   (859) 299-1259 fax

## 2009 MARE INFORMATION FORM

*Please complete fully (type or print). Thank you.*

STALLION: _Ready's Image_          SHARE NUMBER: _FC 023 DP_

**MARE OWNER INFORMATION**
Please indicate this in the manner you would like it reported to The Jockey Club.

Name ~~Fred~~ Rachael Styles Crupper          Tele # _____
Address 425 Hume Bedford          Fax # _____
_Paris KY 40361_          Cell # _943.0744_
          Email _____

### MARE IDENTIFICATION

Mare's Name _mighty bear ruffian_          Sire _____
Dam _Talanta_          Dam's Sire _____
Date of Birth _____          ☐ Dkb/br   ☐ Bay   ☐ Ch   ☐ Gray/Roan

┌──────────────────────────────────────────────────────────────────────┐
│ *Are there any security interests, liens, encumbrances, or adverse claims against this mare?* │
│ ☐ No ☐ Yes- If yes, please list details on back of this form. │
└──────────────────────────────────────────────────────────────────────┘

## MARE STATUS

☐ Maiden     ☐ In foal     ☐ Barren     ☐ Slipped     ☐ Not bred in 2008

☐ Already foaled – 2009 foaling date _4_ / _9_ /2009 ☐ Filly ☐ Colt     ☐ Dkb/br   ☐ Bay   ☐ Ch   ☐ Gray/Roan

2008 stallion bred to _E DUbie_ _____ 2008 Last Date Bred _____

2007 stallion bred to _____ DOB _/ /2008_ ☐ Filly   ☐ Colt   Color _____

*Is this Mare an IMPORT for the 2009 breeding season?*

☐ Yes ☐ No If yes, Import Date: _____ Country of Origin: _____

### WALMAC WELCOMES YOU AS A BOARDER, PLEASE CALL FOR AVAILABILITY.

Mare's KY Boarding Farm _Whispering oaks_          Tele # _____

Farm Manager _Keith Crupper_          Cell # _943 0744_

Boarding Farm Address _425 Hume Bedford_

Mare's Veterinarian _____          Tele # _____

┌──────────────────────────────────────────────────────────────────────┐
│ **PLEASE NOTE: IT IS THE POLICY OF WALMAC FARM, LLC NOT TO RELEASE A** │
│ **STALLION SERVICE CERTIFICATE UNTIL AND UNLESS IT IS REQUESTED.** │
└──────────────────────────────────────────────────────────────────────┘

Signature _____          Date _4-17-09_

Walmac R 10391

Date: 4-17-09                                    Contract # FC 023 DP

## SEASON REQUEST FORM

Mare: Nightbearuffian                 Stallion: Ready's Image
✗  Sire: Din's Choice                  Contract Price: #12,500
Entered  Dam: Dalanta                  Contract Terms: Deferred / FS
In HFM
Dam Sire: Buckfinder                   Year Born: 1992   Color: dkbbr
        '09
In Foal To: E. Dubai                   Last Date Bred: on 4-11

20   Foal: _____             20   Foal: _____

---

Mare Owner: Keith Crupper
✗  Address: Whispering Oaks Farm
Entered         425 Hume-Bedford Rd.
In FHM          Paris, Ky 40361   email: _____

Phone: _____  Cell: 983-0748   Fax: 988-5943

---

Pay Commission: _____  Percent: _____  Dollar Amount: _____

Agent: _____

☐  Address: _____
Entered
In HFM          _____

_____   email: _____

Phone: _____  Cell: _____  Fax: _____

---

☐ Approved By _____        ☐ Needs boarding farm contract

☐ Denied                              ☐ Send Brochure

---

Special notes: _____

_____

_____

Walmac R 10392

