Date: 11-14-08

Contract # FS 003

# SEASON REQUEST FORM

Mare: _Casero_          Stallion: _Ready's Image_

☐ Entered In HFM

Sire: _Came Home_        Contract Price: _Foal Share_

Dam: _Sky Ninski_        Contract Terms: _____

Dam Sire: _Nijinsky II_   Year Born: _2005_   Color: _Ch_

In Foal To: _Maiden_     Last Date Bred: _____

2007 Foal: _____   2006 Foal: _____

Mare Owner: _John A.L. Jones, Jr._

☐ Entered In HFM

Address: _____

_____

email: _____

Phone: _____   Cell: _____   Fax: _____

Pay Commission: _____   Percent: _____   Dollar Amount: _____

Agent: _____

☐ Entered In HFM

Address: _____

_____

email: _____

Phone: _____   Cell: _____   Fax: _____

☐ Approved By _____        ☐ Needs boarding farm contract

☐ Denied                          ☐ Send Brochure

Special notes: _Per J III, Big J gets his expenses first then it is 50/50._

Walmac R 10024

## 2009 Walmac Farm Foal Sharing Agreement

THIS AGREEMENT is made and entered into November 18, 2008 by and between the Seller and Buyer with respective mailing addresses as follows:

**FIRST PARTY**

Hardeman, LLC - Attn: Connie
3395 Paris Pike, Lexington, KY 40511
PHONE: (859) 299-0473

*Cancel per*
*C. Kh...... 100.00%*
*% Ownership:*

**SECOND PARTY:**

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX:     (859) 299-1259

WITNESSETH: That whereas, First Party owns the throuughbred mare, Casero (also sometimes referred to as 'the mare') and desires to breed said mare to the stallion Ready's Image (also sometimes referred to as 'the stallion') for the 2009 season, in order to become an owner of 0.00% of the foal resulting from the 2009 mating and described below, and

WHEREAS, Second Party owns a breeding season for the 2009 in the stallion Ready's Imageand sesires to breed Casero on the said season in order to become an owner of 100.00% of the foal resulting from the 2009 mating, and

WHEREAS, both parties to this agreement desire to enter into written binding contract setting forth the terms and conditions of their agreement herein.

NOW, THEREFORE, for and in consideration of the mutual promises and covenants of the parties, it is mutually agreed as follows:

1. Second Party owns a season in the stallion Ready's Image and agrees to furnish said stallion season at no cost to the First Party during the breeding season for 2009 so that the First Party can breed the mare Casero to Ready's Image. Second Party warrants that it has good right and full power to furnish said stallion season to First Party and that said stallion season is free of all liens, encumbrances or charges of any kind whatsoever.

2. First Party owns the thoroughbred mare Casero and agrees to breed Casero to Ready's Image during the breeding season of 2009. It is mutually understood that any live foal produced from the described mating shall be owned on a 0/100 basis between First and Second Party, respectively. Each party agrees that it shall be soley responsible for insuring their respective interests in said foal.

3. First Party agrees that the mare shall be healthy and in sound breeding condition and free of contagious diseases, and First Party shall furnish a veterinary certificate to that effect dated no more than five (5) days prior to the proposed date of breeding.

4. If the mare should die, before producing a live foal, this contract shall thereafter be null and void. It is further agreed that if prior to the mare being bred, the stallion should die or become unfit to be bred, or if Walmac Farm is completely closed down for breeding for a period longer than two (2) consecutive weeks while the mare is able to be bred, then this agreement thereafter shall, at the option of either party, be null and void.

5. The parties shall own said foal as tenants in common of a chattel in undivided one-half (1/2) shares. The parties agree not to sell or transfer all or any part of their interest in the foal except as provided in paragraph 7. Each party waives his right to demand partition of the foal under the laws of any state or jurisdiction.

6. All board, upkeep, veterinarian and all other expenses of the mare shall be borne by the First Party. All board, upkeep, veterinarian and other expenses of the resulting foal including Breeders' Cup Nomination fee, European Breeders' Fund Nomination fee, Jockey Club Registration fee, and all costs relating to sales preparation shall be borne by the First Party.

7. The parties agree that said foal shall be sold at public auction by Four Star Sales as a weanling of Casero at Keeneland November unless it is otherwise mutually agreed upon in writing by both parties. The parties agree that the foal will be delivered to Walmac Farm for sales preparation upon weaning or in any event not less than 45 days prior to sale unless otherwise agreed to in writing by both parties. The parties further agree that all sale expenses, advertising expenses and any other necessary and related expenses, shall be borne by the First Party and that either of them separately without notice to the other may bid on the subject foal whenever it shall be offered for sale. The proceeds due the sale company, consignor and to Second Party will be liened and deducted from the sale proceeds.

INITIAL HERE

_____   _____
1st Party              2nd Party

WALMAC 10025
REP#2145

## 2009 Walmac Farm Foal Sharing Agreement

Page 2 of agreement dated November 18, 2008

**FIRST PARTY**

Hardeman, LLC - Attn: Connie
3395 Paris Pike, Lexington, KY 40511
PHONE: (859) 299-0473

% Ownership: 100.00%

**SECOND PARTY:**

Walmac Farm LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX:    (859) 299-1259

8. The Parties agree that First Party and Second Party shall both be listed equally as the breeders of said foal with the Jockey Club and that any breeder's awards concerning said foal shall be divided equally between the parties.

9. The parties do not intend this Agreement to create, and this Agreement shall not be considered as creating a joint venture, partnership or other relationship whereby any party shall be held liable for the omissions or commissions of any other party; but, if for federal tax purposes this agreement or the relationship established hereby and the operation, hereunder, are regarded as a partnership as the term is defined in the Internal Revenue Code of 1984, then the parties hereto hereby elect not be treated as a partnership and to be excluded from the application of all the provisions of Sub-chapter K, Chapter 1, Subtitle A, of the Internal Revenue Code of 1984. In making this election, each party acknowledges that the income derived by each party by reason of his ownership of a fractional interest in the foal can be adequately determined without the necessity for any computation of partnership taxable income, and all parties agree not to give any notices or take any other action inconsistent with the election hereby made.

10. This agreement may not be assigned by either party hereto.   This Agreement shall be binding upon the heirs, administrators, and executors of First Party and the members of Second Party.  Facsimile signatures shall have full force and effect of original signature.  This agreement may not be altered or amended without written consent of both parties hereto, and this agreement shall be governed by the laws of the Commonwealth of Kentucky.

IN TESTIMONY WHEREOF, witness the signatures of the parties hereto.

_____
Date

_____11/18/08_____
Date

**FIRST PARTY**

_____

_Jordan Krabel_
SECOND PARTY
Walmac Farm, LLC

**Void After Monday, December 08, 2008**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

REF#2145

Date 11/18/2008

## 2009 Walmac Farm
## Foal Sharing Agreement Summary

Contract Reference #:     2145

1. Stallion:        **Ready's Image**

2. Mare:           **Casero**

3. First Party:     Hardeman, LLC - Attn: Connie
                    3395 Paris Pike, Lexington, KY 40511
                    PHONE: (859) 299-0473                    % Ownership: 100.00%

4. Percentages of Foal Proceeds:      **1st Party: 0.00%      2nd Party: 100.00%**

5. Percentages of Breeders' Awards:   **1st Party: 0.00%      2nd Party: 100.00%**

6. Sales Prep:                        **Standard - Walmac Farm**

7. Sales Agent:                       **Standard - Four Star Sales**

8. Sales Options:                     **Standard - Keeneland November**

9. 2nd Party Expenses:                **Standard - liened and deducted from the sale proceeds**

10. Special Comments:                 **per Jill, Big Johnny is to receive his expenses back first, then it is a 50/50 foal share.**

Prepared by: _____        Approved by: _____        Walmac R 10027

# STALLION SERVICE AGREEMENT                    FC053

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:**

Mr. Guy Mogge
1815 Clifton Road, Versailles, KY  40383
PHONE: 859-621-1499

Ce _____ nereot: _____
_____ √ _____ X √ M/S
Common _____
% Ownership:  100.00%

**Seller:**

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY  40511
PHONE:  (859) 299-0473
FAX:     (859) 299-1259

1. Seller is the owner of and agrees to sell to Buyer a nomination for the 2009 breeding season to the Thoroughbred Stallion,   **Ready's Image.**

2. Buyer agrees to breed   **Very Special Chick,**   by   **Defrere,**   out of   **Spartan Gal,**   a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days.  Purchaser agrees not to breed mare to any other stallion during the breeding season.

3. Buyer hereby agrees to pay Seller   **13,250.00**   ("Stud Fee plus 6% KY sales tax") for such nomination,   payable from proceeds. See addendum on the following basis (select one by initialing choice):

   a. __X__  LIVE FOAL BASIS: Payment of the Stud Fee shall be made ~~no later than November 15, 2009,~~ but shall be subject to refund if all of the following conditions are met: (i) the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the refund condition; (ii) the Mare continues to be owned solely by Buyer until foaling and is not transported to a public sale; and (iii) the Stud Fee is paid in full on a timely basis. If any of the foregoing conditions are not met, the Stud Fee is immediately owed on a no guaranty basis.

   b. _____  LIVE FOAL - DEFERRED PAYMENT BASIS: The Stud Fee shall be owed on a Live Foal basis, that is (i) unless the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the condition; and (ii) provided the Mare continues to be owned solely by Buyer until foaling and is not transported to a location other than that stated in the Mare Information Form. Payment of the Stud Fee, with interest thereon from November 15, 2009, at the rate of 7% per annum, shall not be due until the distribution of the proceeds from the sale of the Foal, but in any event no later than December 1, 2011, provided all of the following conditions are met:

   (1) If the Buyer sells the Foal resulting from the breeding, unless otherwise agreed with Seller in writing, the Foal shall only be sold at a thoroughbred public auction in the United States and may not be transported outside the country. Buyer shall notify Seller of the sale in which the Foal is entered no later than 15 days prior to the commencement of the auction session. Buyer shall instruct the sales company in writing to pay the Stud Fee from proceeds of sale, and provide that such payment is prior and superior to all other payments of proceeds from the sale of the Foal except the payment of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer.

   (2) No encumbrances shall be incurred on the Foal, or the proceeds from the Foal, that is superior to the security interest and rights of Seller as otherwise provided herein. Such impermissible encumbrances include, but are not limited to, security interests, statutory and common-law liens such as agister's liens, or agricultural liens, but shall not include the security interest of Seller granted herein. Buyer shall keep all expense payments associated with the Mare while pregnant with the Foal, and the Foal, current.

   (3) Interest accrued on the Stud Fee, if not due sooner, shall be paid current by December 31, 2010.

   (4) Notwithstanding the deferral of payment until sale, the Stud Fee shall be immediately payable upon the breach of any of the forgoing conditions, or the breach of any conditions in this agreement. Buyer acknowledges that the full Stud Fee, with interest, is owed regardless of whether the proceeds of sale are sufficient to pay the Stud Fee.

In either event, ALL PAYMENTS required herein are understood to include 6% Kentucky Sales Tax. In the event of any default of any condition of this Agreement, or delay in payment of the Stud Fee, the Stud Fee shall bear interest at the rate of 18% per annum until paid in full, with interest, and shall include all expenses, including legal costs and attorneys fees, incurred by Seller in the efforts to collect the Stud Fee, with interest.

4. Buyer shall carry mortality insurance on the Foal in an amount equal to or greater than the Stud Fee owed and the interest owed, naming Seller as loss payee to the extent of the amount owed under this Agreement and shall furnish Seller proof of coverage.

5. Buyer shall have the right to convert the obligation to a Foal-Sharing with the Seller, wherein Buyer and Seller shall own the resulting Foal on a 50-50 basis as tenants in common, provided each of the following conditions are met:

    (1)    Buyer notifies Seller in writing by fax AND certified mail, to be received by Seller no later than thirty days following the birth of the Foal.

    (2)    The Foal is alive, standing and nursing at the time of the notification.

    (3)    Buyer is not in default or in breach of any terms of this agreement.

    (4)    Buyer shall, within five (5) days of the notification above, execute and deliver to Seller a Bill of Sale, in a form reasonably required by Seller, transferring 50% interest in the Foal to Seller, as tenant-in-common, and Buyer acknowledges that the co-ownership will not be treated as a partnership or joint venture. Buyer shall cause any registration of the Foal with the Jockey Club to reflect the co-ownership.

    (5)    Buyer shall pay all expenses relating to the care and upkeep of the Foal, including board, veterinary expenses, and sales preparation expenses and shall pay all registration and Breeders' Cup Nomination fees or any other fees due or payable to any program or scheme on behalf of the buyer and seller, and agrees to hold harmless Seller from any claims for such expenses. Buyer shall keep the Foal free from all encumbrances, as that term is defined in Provision 3 above.

    (6)    Except as otherwise agreed between Buyer and Seller; Buyer agrees to enter the Foal in a recognized thoroughbred auction, so that the Foal shall be sold no later than its yearling year. Except as otherwise agreed between Buyer and Seller, neither Buyer nor Seller may place a reserve on the Foal, but may bid on the Foal for Buyer's and Seller's own account (that is, to purchase the entire Foal). The proceeds from the sale of the Foal, after deducting of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer, shall be split 50-50 between Buyer and Seller.

    (7)    Each party shall be responsible for insuring its own interest in the Foal, if insurance is desired by such party.

6. Buyer warrants and agrees that the Mare shall be healthy and in sound breeding condition, and shall provide a certification of such condition by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of the Stallion reserves the right to refuse to permit the breeding of any mare to the Stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to the Mare or the Stallion.

7. This contract shall not be assigned or transferred by Buyer. This contract is assignable by Seller for purposes of enforcement.

8. In the event the Stallion dies or is sold, or becomes unfit for service before servicing the Mare, any payment of the Stud Fee received on a Live-Foal basis shall be refunded to Buyer. Further, should the Mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded provided Buyer notifies the Seller in writing and provides a copy of a certificate from the attending veterinarian within ten days.

9. Buyer grants Seller a security interest in the Mare pregnant with the Foal, the Foal, all insurance policies relating to the Foal, all stallion service certificates and Jockey Club Foal registration certificates relating to the breeding or the Foal, and the proceeds and products of the Foal (all of the foregoing being the "Collateral"). Buyer appoints Seller as its attorney-in-fact to execute and file any and all financing statements and agricultural liens in any jurisdiction Seller believes to be appropriate to secure any obligation of Buyer to Seller, whether arising by the owing the Stud Fee or otherwise. Buyer authorizes Seller to retain the stallion service certificate and the Jockey Club Foal registration certificate relating to the breeding and the Foal, and authorizes and appoints Seller as its attorney-in-fact to obtain possession of the stallion service certificate from the manager of the Stallion issuing the certificate, and to obtain the Foal Registration certificate from the Jockey Club, and retain such documents until all obligations of Buyer to Seller are paid in full. In the event the Stud Fee is not timely paid, Seller may, without notice to Buyer, take possession of the Foal or other Collateral, and either retain the Collateral in lieu of the obligation, or re-sell the Collateral privately or publicly in a manner in its sole discretion it believes to be advisable, in which event the Seller shall credit the proceeds of sale, after expenses of sale and maintaining the Collateral, to Buyer's obligation to Seller. This right is in addition to all other rights to which the Buyer is entitled under law.

10. Buyer and/or signatory guarantor further warrants and agrees that the purchase of this stallion nomination is made for commercial purposes and not for personal, family, or household purposes.

11. In the event this agreement is executed by an agent on behalf of Buyer, or a representative or principal on behalf of Buyer if Buyer is an organization, the undersigned agent, representative or principal hereby unconditionally guarantees the full and prompt payment of the Stud Fee as well as the full and prompt performance by Buyer of any and all other obligations hereunder. The undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. The foregoing guaranty and warranty shall remain in effect regardless whether the agent, representative, or principal retains his or her status as such following the execution of this agreement.

12. This agreement shall be binding on the parties, and other obligors stated herein, and their assigns. The sole venue for enforcement of this agreement, or the resolution of any dispute concerning this agreement, its enforcement, or the performance of the parties, shall be the courts of Fayette County in the Commonwealth of Kentucky, and the parties and other obligors hereby submit to jurisdiction of such Courts. The parties and obligors expressly waive all rights to trial by jury with respect to any dispute concerning this agreement, its enforcement, or the performance of the parties.

13. The parties further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any assurances of whatever nature that are not contained and expressed in this agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

14. This contract shall be Voidable at the Seller's option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:   Pay Out Of Proceeds. Mogge's to receive first $12,500. Walmac to receive second $12,500. Mogge's to receive anything over the above amounts. Interest to be incured on the first $12,500.

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, April 03,2009

BUYER:

_____

Signature                              Date

_____

Print Name of Signator

_____

SS# of Signator

SELLER:  Walmac Farm, LLC, By:

_____

Signature                              Date

**Void After Thursday, April 30, 2009**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

Date: 4-02-09

Contract # FC 0538
3

## SEASON REQUEST FORM

☐ Entered In HFM

Mare: Very Special Chick

Sire: Deprere

Dam: Spartan Gal

Dam Sire: Pentelicus

In Foal To: _____

2008 Foal: _____

Stallion: Brady's Image

Contract Price: See below

Contract Terms: _____

Year Born: 2001   Color: _____

Last Date Bred: _____

2007 Foal: Barren

---

☐ Entered In HFM

Mare Owner: Guy and Julie Magge

Address: _____

_____

_____ email: _____

Phone: _____ Cell: _____ Fax: _____

---

☐ Entered In HFM

Pay Commission: _____ Percent: _____ Dollar Amount: _____

Agent: _____

Address: _____

_____

_____ email: _____

Phone: _____ Cell: _____ Fax: _____

---

☑ Approved By  G M

☐ Denied

☐ Needs boarding farm contract

☐ Send Brochure

---

Special notes: Pay Out of proceeds. Julie is to receive first $12,500. Walmac the second $12,500 with interest accruing on Julie's $12,500.

Walmac R 10324

# STALLION SERVICE AGREEMENT   FC 054

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:**

Dr. Jeff Weinberg
241 Carterbrook Lane, Lexington, KY 40511
PHONE: (859) 421-5544

Mare
Comp
_____ _____ _____ X ___ M/S
Comment _____
% Ownership: 100.00%

**Seller:**

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX:   (859) 299-1259

1. Seller is the owner of and agrees to sell to Buyer a nomination for the 2009 breeding season to the
Thoroughbred Stallion,    **Ready's Image.**

2. Buyer agrees to breed    **Klohho,**    by    **Trempolino,**    out of    **DINTEL,**
a Thoroughbred mare to the stallion during the breeding season.  The Purchaser agrees to present the Mare for breeding to the Stallion
during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant.  If the Mare dies or
becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending
veterinarian within ten days.  Purchaser agrees not to breed mare to any other stallion during the breeding season.

3. Buyer hereby agrees to pay Seller    **13,250.00**    ("Stud Fee plus 6% KY sales tax") for such nomination,
on the following basis (select one by initialing choice):    *payable out of proceeds.  See Addendum*

a. __X__ LIVE FOAL BASIS: Payment of the Stud Fee shall be made ~~no later than November 15, 2009,~~ but shall be subject to
refund if all of the following conditions are met: (i) the Mare dies, aborts, or does not give birth to a single live foal that stands and
nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of
the event giving rise to the refund condition; (ii) the Mare continues to be owned solely by Buyer until foaling and is not
transported to a public sale; and (iii) the Stud Fee is paid in full on a timely basis. If any of the foregoing conditions are not met,
the Stud Fee is immediately owed on a no guaranty basis.

b. _____ LIVE FOAL - DEFERRED PAYMENT BASIS:  The Stud Fee shall be owed on a Live Foal basis, that is (i) unless the
Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate
from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the condition; and (ii) provided
the Mare continues to be owned solely by Buyer until foaling and is not transported to a location other than that stated in the Mare
Information Form. Payment of the Stud Fee, with interest thereon from November 15, 2009, at the rate of 7% per annum, shall not
be due until the distribution of the proceeds from the sale of the Foal, but in any event no later than December 1, 2011, provided
all of the following conditions are met:

(1)   If the Buyer sells the Foal resulting from the breeding, unless otherwise agreed with Seller in writing, the Foal shall
only be sold at a thoroughbred public auction in the United States and may not be transported outside the country.
Buyer shall notify Seller of the sale in which the Foal is entered no later than 15 days prior to the commencement of
the auction session. Buyer shall instruct the sales company in writing to pay the Stud Fee from proceeds of sale, and
provide that such payment is prior and superior to all other payments of proceeds from the sale of the Foal except
the payment of the sales company's commission, and the reasonable commission (not to exceed 5% of the
purchase price) of the consigning agent, if unaffiliated with Buyer.

(2)   No encumbrances shall be incurred on the Foal, or the proceeds from the Foal, that is superior to the security
interest and rights of Seller as otherwise provided herein. Such impermissible encumbrances include, but are not
limited to, security interests, statutory and common-law liens such as agister's liens, or agricultural liens, but shall
not include the security interest of Seller granted herein. Buyer shall keep all expense payments associated with the
Mare while pregnant with the Foal, and the Foal, current.

(3)   Interest accrued on the Stud Fee, if not due sooner, shall be paid current by December 31, 2010.

(4)   Notwithstanding the deferral of payment until sale, the Stud Fee shall be immediately payable upon the breach of
any of the forgoing conditions, or the breach of any conditions in this agreement. Buyer acknowledges that the full
Stud Fee, with interest, is owed regardless of whether the proceeds of sale are sufficient to pay the ~~Stud~~ Fee.

In either event, ALL PAYMENTS required herein are understood to include 6% Kentucky Sales Tax. In the event of any default of any
condition of this Agreement, or delay in payment of the Stud Fee, the Stud Fee shall bear interest at the rate of 18% per annum until paid
in full, with interest, and shall include all expenses, including legal costs and attorneys fees, incurred by Seller in the efforts to collect the
Stud Fee, with interest.

4. Buyer shall carry mortality insurance on the Foal in an amount equal to or greater than the Stud Fee owed and the interest owed, naming Seller as loss payee to the extent of the amount owed under this Agreement and shall furnish Seller proof of coverage.

5. Buyer shall have the right to convert the obligation to a Foal-Sharing with the Seller, wherein Buyer and Seller shall own the resulting Foal on a 50-50 basis as tenants in-common, provided each of the following conditions are met:

    (1)    Buyer notifies Seller in writing by fax AND certified mail, to be received by Seller no later than thirty days following the birth of the Foal.

    (2)    The Foal is alive, standing and nursing at the time of the notification.

    (3)    Buyer is not in default or in breach of any terms of this agreement.

    (4)    Buyer shall, within five (5) days of the notification above, execute and deliver to Seller a Bill of Sale, in a form reasonably required by Seller, transferring 50% interest in the Foal to Seller, as tenant-in-common, and Buyer acknowledges that the co-ownership will not be treated as a partnership or joint venture. Buyer shall cause any registration of the Foal with the Jockey Club to reflect the co-ownership.

    (5)    Buyer shall pay all expenses relating to the care and upkeep of the Foal, including board, veterinary expenses, and sales preparation expenses and shall pay all registration and Breeders' Cup Nomination fees or any other fees due or payable to any program or scheme on behalf of the buyer and seller, and agrees to hold harmless Seller from any claims for such expenses. Buyer shall keep the Foal free from all encumbrances, as that term is defined in Provision 3 above.

    (6)    Except as otherwise agreed between Buyer and Seller; Buyer agrees to enter the Foal in a recognized thoroughbred auction, so that the Foal shall be sold no later than its yearling year. Except as otherwise agreed between Buyer and Seller, neither Buyer nor Seller may place a reserve on the Foal, but may bid on the Foal for Buyer's and Seller's own account (that is, to purchase the entire Foal). The proceeds from the sale of the Foal, after deducting of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer, shall be split 50-50 between Buyer and Seller.

    (7)    Each party shall be responsible for insuring its own interest in the Foal, if insurance is desired by such party.

6. Buyer warrants and agrees that the Mare shall be healthy and in sound breeding condition, and shall provide a certification of such condition by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of the Stallion reserves the right to refuse to permit the breeding of any mare to the Stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to the Mare or the Stallion.

7. This contract shall not be assigned or transferred by Buyer. This contract is assignable by Seller for purposes of enforcement.

8. In the event the Stallion dies or is sold, or becomes unfit for service before servicing the Mare, any payment of the Stud Fee received on a Live-Foal basis shall be refunded to Buyer. Further, should the Mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded provided Buyer notifies the Seller in writing and provides a copy of a certificate from the attending veterinarian within ten days.

9. Buyer grants Seller a security interest in the Mare pregnant with the Foal, the Foal, all insurance policies relating to the Foal, all stallion service certificates and Jockey Club Foal registration certificates relating to the breeding or the Foal, and the proceeds and products of the Foal (all of the foregoing being the "Collateral"). Buyer appoints Seller as its attorney-in-fact to execute and file any and all financing statements and agricultural liens in any jurisdiction Seller believes to be appropriate to secure any obligation of Buyer to Seller, whether arising by the owing the Stud Fee or otherwise. Buyer authorizes Seller to retain the stallion service certificate and the Jockey Club Foal registration certificate relating to the breeding and the Foal, and authorizes and appoints Seller as its attorney-in-fact to obtain possession of the stallion service certificate from the manager of the Stallion issuing the certificate, and to obtain the Foal Registration certificate from the Jockey Club, and retain such documents until all obligations of Buyer to Seller are paid in full. In the event the Stud Fee is not timely paid, Seller may, without notice to Buyer, take possession of the Foal or other Collateral, and either retain the Collateral in lieu of the obligation, or re-sell the Collateral privately or publicly in a manner in its sole discretion it believes to be advisable, in which event the Seller shall credit the proceeds of sale, after expenses of sale and maintaining the Collateral, to Buyer's obligation to Seller. This right is in addition to all other rights to which the Buyer is entitled under law.

10. Buyer and/or signatory guarantor further warrants and agrees that the purchase of this stallion nomination is made for commercial purposes and not for personal, family, or household purposes.

11. In the event this agreement is executed by an agent on behalf of Buyer, or a representative or principal on behalf of Buyer if Buyer is an organization, the undersigned agent, representative or principal hereby unconditionally guarantees the full and prompt payment of the Stud Fee as well as the full and prompt performance by Buyer of any and all other obligations hereunder. The undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. The foregoing guaranty and warranty shall remain in effect regardless whether the agent, representative, or principal retains his or her status as such following the execution of this agreement.

12. This agreement shall be binding on the parties, and other obligors stated herein, and their assigns. The sole venue for enforcement of this agreement, or the resolution of any dispute concerning this agreement, its enforcement, or the performance of the parties, shall be the courts of Fayette County in the Commonwealth of Kentucky, and the parties and other obligors hereby submit to jurisdiction of such Courts. The parties and obligors expressly waive all rights to trial by jury with respect to any dispute concerning this agreement, its enforcement, or the performance of the parties.

Walmac R 10326

13. The parties further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any assurances of whatever nature that are not contained and expressed in this agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

14. This contract shall be Voidable at the Seller's option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:   Payable out of proceeds of the resulting foal. Plan is to sell the resulting foal as a yearling of 2011. First $10,000 to Jeff, second $12,500 to Walmac, residual amount to Jeff. No Stud fee will be owed period on this contract.

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, April 03, 2009

BUYER:

_Jeffry Weinberg_   4/10/09
Signature            Date

_Jeffrey Weinberg_
Print Name of Signator

_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_
SS# of Signator

SELLER: Walmac Farm, LLC, By:

_Jordan Mabel_   4/6/09
Signature            Date

**Void After Sunday, April 26, 2009**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

Date: 4-02-09                                    Contract # FC054

# SEASON REQUEST FORM

Mare: Klohho                          Stallion: Ready's Image

☐ Entered In HFM
Sire: Trempolino                      Contract Price: See below
Dam: Dintel                           Contract Terms: POP

Dam Sire: Bates Motel                 Year Born: '97     Color: bay

In Foal To: barren                    Last Date Bred: N/a

2008 Foal: f. Powerscourt             2007 Foal: f. Powerscourt

---

Mare Owner: Jeff Weinberg

☐ Entered In HFM
Address: 241 Carterbrook Lane
         Lexington   40511

                                      email:

Phone:                    Cell: 859-421-5544  Fax:

---

Pay Commission:              Percent:         Dollar Amount:

Agent:

☐ Entered In HFM
Address:

                                      email:

Phone:                    Cell:              Fax:

---

☐ Approved By                         ☐ Needs boarding farm contract

☐ Denied                              ☐ Send Brochure

---

Special notes: 1ST $10,000 to Jeff, next $12,500 to
Walmac, residual to Jeff

Walmac R 10328

## STALLION SERVICE AGREEMENT ~FC 051 DP~

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:**

Ted Berge
1009 High St, Paris, KY 40361
PHONE:

Stallion ~R.I.~
Mare ~Gold Fashioned~
Share No. ~FC 051~
Contract Ownership: 100.00%
~✓~ Access ~✓ X ✓ M/S~
Comment _____

**Seller:**

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX: (859) 299-1259

Seller is the owner of and agrees to sell to Buyer a nomination for the 2009 breeding season to the
Thoroughbred Stallion, **Ready's Image.**

1.

2. Buyer agrees to breed **Gold Fashioned,** by **Seeking The Gold,** out of **Rigamajig,**
a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days. Purchaser agrees not to breed Mare to any other stallion during the breeding season.

3. Buyer hereby agrees to pay Seller **13,250.00** ("Stud Fee plus 6% KY sales tax") for such nomination, on the following basis (select one by initialing choice): ~out of proceeds. See addendum.~

a. ~XX~ LIVE FOAL BASIS: Payment of the Stud Fee shall be made no later than ~November 15, 2009~, but shall be subject to refund if all of the following conditions are met: (i) the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the refund condition; (ii) the Mare continues to be owned solely by Buyer until foaling and is not transported to a public sale; and (iii) the Stud Fee is paid in full on a timely basis. If any of the foregoing conditions are not met, the Stud Fee is immediately owed on a no guaranty basis.

b. _____ LIVE FOAL - DEFERRED PAYMENT BASIS: The Stud Fee shall be owed on a Live Foal basis, that is (i) unless the Mare dies, aborts, or does not give birth to a single live foal that stands and nurses, and Buyer provides Seller with a certificate from a qualified veterinarian so certifying within 60 days of the happening of the event giving rise to the condition; and (ii) provided the Mare continues to be owned solely by Buyer until foaling and is not transported to a location other than that stated in the Mare Information Form. Payment of the Stud Fee, with interest thereon from November 15, 2009, at the rate of 7% per annum, shall not be due until the distribution of the proceeds from the sale of the Foal, but in any event no later than December 1, 2011, provided all of the following conditions are met:

(1) If the Buyer sells the Foal resulting from the breeding, unless otherwise agreed with Seller in writing, the Foal shall only be sold at a thoroughbred public auction in the United States and may not be transported outside the country. Buyer shall notify Seller of the sale in which the Foal is entered no later than 15 days prior to the commencement of the auction session. Buyer shall instruct the sales company in writing to pay the Stud Fee from proceeds of sale, and provide that such payment is prior and superior to all other payments of proceeds from the sale of the Foal except the payment of the sales company's commission, and the reasonable commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer.

(2) No encumbrances shall be incurred on the Foal, or the proceeds from the Foal, that is superior to the security interest and rights of Seller as otherwise provided herein. Such impermissible encumbrances include, but are not limited to, security interests, statutory and common-law liens such as agister's liens, or agricultural liens, but shall not include the security interest of Seller granted herein. Buyer shall keep all expense payments associated with the Mare while pregnant with the Foal, and the Foal, current.

(3) Interest accrued on the Stud Fee, if not due sooner, shall be paid current by December 31, 2010.

(4) Notwithstanding the deferral of payment until sale, the Stud Fee shall be immediately payable upon the breach of any of the forgoing conditions, or the breach of any conditions in this agreement. Buyer acknowledges that the full Stud Fee, with interest, is owed regardless of whether the proceeds of sale are sufficient to pay the Stud Fee.

In either event, ALL PAYMENTS required herein are understood to include 6% Kentucky Sales Tax. In the event of any default of any condition of this Agreement, or delay in payment of the Stud Fee, the Stud Fee shall bear interest at the rate of 18% per annum until paid in full, with interest, and shall include all expenses, including legal costs and attorneys fees, incurred by Seller in the efforts to collect the Stud Fee, with interest.

3/31/2009

Page 1 of 3, Ref#2655 Gold Fashioned/Ready's Image

Walmac R 10393

4. Buyer shall carry mortality insurance on the Foal in an amount equal to or greater than the Stud Fee owed and the interest owed, naming Seller as loss payee to the extent of the amount owed under this Agreement and shall furnish Seller proof of coverage.

5. Buyer shall have the right to convert the obligation to a Foal-Sharing with the Seller, wherein Buyer and Seller shall own the resulting Foal on a 50-50 basis as tenants in common, provided each of the following conditions are met:

    (1)   Buyer notifies Seller in writing by fax AND certified mail, to be received by Seller no later than thirty days following the birth of the Foal.

    (2)   The Foal is alive, standing and nursing at the time of the notification.

    (3)   Buyer is not in default or in breach of any terms of this agreement.

    (4)   Buyer shall, within five (5) days of the notification above, execute and deliver to Seller a Bill of Sale, in a form reasonably required by Seller, transferring 50% interest in the Foal to Seller, as tenant-in-common, and Buyer acknowledges that the co-ownership will not be treated as a partnership or joint venture. Buyer shall cause any registration of the Foal with the Jockey Club to reflect the co-ownership.

    (5)   Buyer shall pay all expenses relating to the care and upkeep of the Foal, including board, veterinary expenses, and sales preparation expenses and shall pay all registration and Breeders' Cup Nomination fees or any other fees due or payable to any program or scheme on behalf of the buyer and seller, and agrees to hold harmless Seller from any claims for such expenses. Buyer shall keep the Foal free from all encumbrances, as that term is defined in Provision 3 above.

    (6)   Except as otherwise agreed between Buyer and Seller; Buyer agrees to enter the Foal in a recognized thoroughbred auction, so that the Foal shall be sold no later than its yearling year. Except as otherwise agreed between Buyer and Seller, neither Buyer nor Seller may place a reserve on the Foal, but may bid on the Foal for Buyer's and Seller's own account (that is, to purchase the entire Foal). The proceeds from the sale of the Foal, after deducting of the sales company's commission, and the associated commission (not to exceed 5% of the purchase price) of the consigning agent, if unaffiliated with Buyer, shall be split 50-50 between Buyer and Seller.

    (7)   Each party shall be responsible for insuring its own interest in the Foal, if insurance is desired by such party.

6. Buyer warrants and agrees that the Mare shall be healthy and in sound breeding condition, and shall provide a certification of such condition by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of the Stallion reserves the right to refuse to permit the breeding of any mare to the Stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to the Mare or the Stallion.

7. This contract shall not be assigned or transferred by Buyer. This contract is assignable by Seller for purposes of enforcement.

8. In the event the Stallion dies or is sold, or becomes unfit for service before servicing the Mare, any payment of the Stud Fee received on a Live-Foal basis shall be refunded to Buyer. Further, should the Mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded provided Buyer notifies the Seller in writing and provides a copy of a certificate from the attending veterinarian within ten days.

9. Buyer grants Seller a security interest in the Mare pregnant with the Foal, the Foal, all insurance policies relating to the Foal, all stallion service certificates and Jockey Club Foal registration certificates relating to the breeding or the Foal, and the proceeds and products of the Foal (all of the foregoing being the "Collateral"). Buyer appoints Seller as its attorney-in-fact to execute and file any and all financing statements and agricultural liens in any jurisdiction Seller believes to be appropriate to secure any obligation of Buyer to Seller, whether arising by the owing Stud Fee or otherwise. Buyer authorizes Seller to retain the stallion service certificate and the Jockey Club Foal registration certificate relating to the breeding and the Foal, and authorizes and appoints Seller as its attorney-in-fact to obtain possession of the stallion service certificate from the manager of the Stallion issuing the certificate, and to obtain the Foal Registration certificate from the Jockey Club, and retain such documents until all obligations of Buyer to Seller are paid in full. In the event the Stud Fee is not timely paid, Seller may, without notice to Buyer, take possession of the Foal or other Collateral, and either retain the Collateral in lieu of the obligation, or re-sell the Collateral privately or publicly in a manner in its sole discretion it believes to be advisable, in which event the Seller shall credit the proceeds of sale, after expenses of sale and maintaining the Collateral, to Buyer's obligation to Seller. This right is in addition to all other rights to which the Buyer is entitled under law.

10. Buyer and/or signatory guarantor further warrants and agrees that the purchase of this stallion nomination is made for commercial purposes and not for personal, family, or household purposes.

11. In the event this agreement is executed by an agent on behalf of Buyer, or a representative or principal on behalf of Buyer if Buyer is an organization, the undersigned agent, representative or principal hereby unconditionally guarantees the full and prompt payment of the Stud Fee as well as the full and prompt performance by Buyer of any and all other obligations hereunder. The undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. The foregoing guaranty and warranty shall remain in effect regardless whether the agent, representative, or principal retains his or her status as such following the execution of this agreement.

12. This agreement shall be binding on the parties, and other obligors stated herein, and their assigns. The sole venue for enforcement of this agreement, or the resolution of any dispute concerning this agreement, its enforcement, or the performance of the parties, shall be the courts of Fayette County in the Commonwealth of Kentucky, and the parties and other obligors hereby submit to jurisdiction of such Courts. The parties and obligors expressly waive all rights to trial by jury with respect to any dispute concerning this agreement, its enforcement, or the performance of the parties.

Walmac R 10394

13. The parties further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any assurances of whatever nature that are not contained and expressed in this agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

14. This contract shall be Voidable at the Seller's option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

✳ ADDENDUMS:   First $12,500 of sale proceeds to Mare owner. Second $12,500 of sale proceeds to Walmac. Remainder or sale proceeds to mare owner.

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, March 31,2009

BUYER:

_Ted Berge_   4-16-09
Signature            Date

_Ted Berge_
Print Name of Signator

_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_
SS# of Signator

SELLER: Walmac Farm, LLC, By:

_Jordan Krabel_   3/31/09
Signature            Date

**Void After Monday, April 20, 2009**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

Page 3 of 3, Ref#2655 Gold Fashioned/Ready's Image
Tuesday, March 31, 2009

Walmac R 10395

CHASE.                    Fax:8592312208          Apr  3 2009  10:16      P. 02

# WALMAC FARM, LLC

3395 Paris Pike Lexington, KY 40511   (859) 299-0473 tele.   (859) 299-1269 fax

## 2009 MARE INFORMATION FORM

*Please complete fully (type or print). Thank you.*

STALLION: Ready's Image          SHARE NUMBER: FC053DP

### MARE OWNER INFORMATION
*Please indicate this in the manner you would like it reported to The Jockey Club.*

Ted and Stacy Berge, and
Name  Bill and Pam Maley          Tele # 859·294·9336
Address 2700 Russell Cave Road    Fax # 859·294·7847
        Lexington, KY 40511       Cell # 859·619·0029
                                  Email bill@dunfordfarm.com

### MARE IDENTIFICATION

Mare's Name Gold Fashioned        Sire  Seeking the Gold
Dam  Rigamajig                    Dam's Sire Majestic Light
Date of Birth  4/26/98            □ Dkb/br  ☒Bay  □ Ch  □ Gray/Roan

Are there any security interests, liens, encumbrances, or adverse claims against this mare?
☒ No □ Yes- If yes, please list details on back of this form.

### MARE STATUS

□ Maiden     ☒In foal     □ Barren     □ Slipped     □ Not bred in 2008

☒Already foaled – 2009 foaling date  3/10/2009 ☒Filly □ Colt    □ Dkb/br ☒Bay  □ Ch  □ Gray/Roan

2008 stallion bred to A.P. Warrior          2008 Last Date Bred  3/26/08

2007 stallion bred to Posse (not pregnant) DOB __/__/2008 □ Filly   □ Colt   Color _____

Is this Mare an IMPORT for the 2009 breeding season?

□ Yes ☒No If yes, Import Date: _____ Country of Origin: _____

### WALMAC WELCOMES YOU AS A BOARDER, PLEASE CALL FOR AVAILABILITY.

Mare's KY Boarding Farm Dunford Farm          Tele # 858·294·9336

Farm Manager William H. Maley                 Cell # 859·619·0029

Boarding Farm Address 2700 Russell Cave Road, Lexington, KY 40511

Mare's Veterinarian Dr. Dave Fishback         Tele # 859·255·8741

PLEASE NOTE: IT IS THE POLICY OF WALMAC FARM, LLC NOT TO RELEASE A
STALLION SERVICE CERTIFICATE UNTIL AND UNLESS IT IS REQUESTED.

Signature Pamela Daley                        Date  4/06/09

**Jordan Krabel**

| | |
|---|---|
| **From:** | <jones@walmac.com> |
| **To:** | <jkrabel@walmac.com> |
| **Sent:** | Monday, March 30, 2009 5:42 PM |
| **Attach:** | Gold Fashioned Pedigree.doc.zip |
| **Subject:** | Fw: Seeking the Gold Mare |

Send Ted Berge at chase bank a contract for ready's image for this mare. It is POP but with one tweak. He gets the first 12,500 the foal brings then we get the next 12,500 then he gets the rest.

Sent via BlackBerry from T-Mobile

**From:** ted.j.berge@chase.com
**Date:** Mon, 30 Mar 2009 15:53:26 -0400
**To:** <jones@walmac.com>
**Subject:** Seeking the Gold Mare

Johnny:
I'm attaching the pedigree of the mare I was talking about.
She has had a stakes placed winner.
Let me know if what you can do on either Ready's Image or Salute the Sarge.  Like everybody would like to pay less longer out.
Ted Berge
Chase Equine Financial Services
859 231 2246 O
859 231 2208 F
859 333 2246 C
ted.j.berge@chase.com

This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by JPMorgan Chase & Co., its subsidiaries and affiliates, as applicable, for any loss or damage arising in any way from its use. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

No virus found in this incoming message.
Checked by AVG.
Version: 7.5.557 / Virus Database: 270.11.30/2026 - Release Date: 3/27/2009 7:13 AM

Date: 3-31-09          Contract # FC 053 OP

## SEASON REQUEST FORM

Mare: Gold Fashioned          Stallion: Ready's Image

☐ Entered In HFM
Sire: Seeking the Gold          Contract Price: 1st $12,500 to Ted +

Dam: Rigamajig          Contract Terms: POF    2nd $12,500 to US

Dam Sire: Majestic Light          Year Born: '96    Color: bay

In Foal To: _____          Last Date Bred: _____

2009 Foal: Slipped          2007 Foal: _____

---

☐ Entered In HFM
Mare Owner: Ted Berge

Address: _____

email: ted.j.berge@chase.com

Phone: 231-2246    Cell: 333-2246    Fax: 231-2208

---

☐ Entered In HFM
Pay Commission: _____    Percent: _____    Dollar Amount: _____

Agent: _____

Address: _____

email: _____

Phone: _____    Cell: _____    Fax: _____

---

✓ Approved By _____          ☐ Needs boarding farm contract

☐ Denied          ☐ Send Brochure

---

Special notes: _____

Stallion _Ready's Image_
Mare _Holly's Wager_
Share No. _MS 001_
Contract Returned/Entered:
____ Access ✓ X ✓ M

## MARE SHARE AGREEMENT

THIS AGREEMENT made and entered into by and between **Clovertowne Farm**, 9 Windmill Common, Belleville, IL 62223, hereafter referred to as "First Party"; and **WALMAC FARM, LLC, AGENT**, 3395 Paris Pike, Lexington, KY 40511, hereinafter referred to as "Second Party."

### W I T N E S S E T H:

WHEREAS, First Party is the owner of the Thoroughbred mare **Holly's Wager**, by **Valid Wager**, out of **Holly Bugs**, hereinafter referred to as the "Mare";

WHEREAS, Second Party is the owner of a 2010 breeding nomination to the Thoroughbred stallion **Ready's Image**, by **More Than Ready**, out of **Clever Phrase**, hereinafter referred to as the "Stallion", which Stallion presently stands at Walmac Farm, LLC, 3395 Paris Pike, Lexington, KY 40511, and

WHEREAS, the parties hereto have agreed to breed the Mare to the Stallion in the 2010 breeding season pursuant to the terms and conditions hereof.

NOW, THEREFORE, for and in consideration of the premises hereof and the mutual promises and covenants hereinafter set forth, the parties do hereby agree, as follows:

1. BREEDING THE MARE. First Party will present and transport the Mare to Walmac for breeding to the Stallion in the 2010 breeding season and Second Party will provide the breeding nomination to the Stallion in such breeding season for such purposes; provided, however, if the physical condition of the Stallion or the Mare, upon competent veterinary advice, make such mating inappropriate, then such shall not occur.

2. SALE OF THE MARE; DISTRIBUTION OF PROCEEDS.   In the event the Mare conceives on the cover of the Stallion, the parties agree that the Mare shall be entered for sale in the Keeneland November 2010 Sale. Prior to such sale, Second Party shall cause the stallion service certificate to be delivered to Keeneland and First Party shall deliver the Mare's Jockey Club certificate to Keeneland. The net proceeds of sale (i.e. the gross sales price less Keeneland's commission and/or entry fee and the consignor commission) shall be split on a 50/50 basis.

3. EXPENSES. It is further agreed that:

   a. ) Keeneland's commission and/or entry fee and Walmac's commission shall be borne equally by the parties.

   b. ) All board, sales preparation, veterinary, farrier, etc. and any and all other usual and ordinary expenses related to the Mare from and after the date hereof until sale, shall be borne by First Party.

   c. ) Any expenses directly related to the sale of the Mare such as advertising, entry fees, etc. shall be borne equally by the parties.

4. TERMINATION OF AGREEMENT. This agreement shall terminate ab initio upon the occurrence of any of the following events, and neither party shall have any further rights, duties or obligations with respect hereto:

   a. Either the Stallion or Mare dies or becomes unfit for breeding prior to the Mare conceiving a foal during the 2010 breeding season; or

   b. Prior to entering the sales ring at the Keeneland November 2010 Sale, the Mare dies, slips or aborts her 2010 foal in utero , or for any other reason is certified as not pregnant at such time; or

   c. First Party elects to terminate this Agreement, at its sole option, in the event the Stallion shall not be breeding sound for a period of seven (7) or more days during the 2010 breeding season and at the time of such election the Mare is certified not pregnant on any prior cover by the Stallion.

5. INSURANCE. Each party may insure its respective interest in the Stallion, the Mare, or any foal to be conceived against such risks and in such amounts as it may be deemed necessary or prudent. Any such . insurance shall be the sole responsibility of and shall inure to the sole benefit of the party procuring same.

6.   WARRANTIES.   Each party hereby warrants and covenants to and with the other that it is fully authorized to enter into this Agreement and that this Agreement is not in violation of any agreement with any third party, that no security interests, liens, or encumbrances presently exist against its respective Stallion interest or in the Mare which will attach to the other party's interest in the proceeds of sale, that it will not permit or cause party's interest in the proceeds of sale whether by virtue of a blanket security agreement or otherwise.   Each party further warrants, covenants and agrees that it shall have no right, power or authority to sell, convey or encumber any interest created hereunder.

7.   NON-PARTNERSHIP ELECTION.   With respect to the Mare, the breeding of the Mare to the Stallion and the foal to be produced, the intent and purpose of this Agreement is not to create, and shall not be construed as creating, a partnership, joint venture, or any other relation whereby any party may be held liable for any act or omission of any other party.   If for Federal Tax purposes this Agreement, the relationship established hereby, and the operation hereunder are regarded as a partnership, then each party hereby elects not to be treated as a partnership and elects to be excluded from the application of all the provisions of Subchapter K, Chapter 1, Subtitle A of the Internal Revenue Code of 1986, as amended, and to make and file such elections as may be required or permitted by such law and to take all actions consistent therewith.   In making this election, each of the parties hereto states that the income derived by it from the operations of this Agreement can be adequately determined without the computation of partnership taxable income.

8.   CAPTIONS.   Paragraph titles or captions contained in this Agreement are inserted only as a matter of reference and convenience and in no way define, limit, extend or describe the scope of this Agreement, or the intent of any provision.

9.   BINDING EFFECT/GOVERNING LAW.   This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors and assigns, and shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky.   This Agreement may further be executed in several counterparts and upon such execution by all parties hereto shall be binding and of full force and effect as if all signatures were appended to one original document.   Facsimile signature(s) has full force and effect of original signature(s).

IN WITNESS WHEREOF, the parties have set their hands as of this the date, the * day of *,2010.

By: _____

"First Party"


By: _____
          Walmac Farm, LLC
          "Second Party"
          Phone:  (859) 299-0473
          Fax:  (859) 299-1259

# WALMAC FARM, LLC

3395 Paris Pike, Lexington, KY 40511 (859) 299-0473 phone (859) 299-1259 fax

## 2010 MARE INFORMATION FORM

*Please complete fully (type or print). Thank you.*

STALLION: *Ready's Image*      SHARE/CONTACT #: _____

### MARE OWNER INFORMATION
*Please indicate this in the manner you would like it reported to The Jockey Club.*

Name *Clovertowne Farm*     Tele # *618-233-3112*
Address *9 Winfield Place*     Fax # _____
     *Belleville, IL 62223*     Cell # *618-541-2630*
     Email *TJSpiv@Yahoo.com*

### MARE IDENTIFICATION

Mare's Name *Holly's Wager*     Sire *Valid Wager*
Dam *Holly Bugs*     Dam's Sire *Fit To Fight*
Date of Birth _____     ☒ Dkb/br   ☐ Bay   ☐ Ch   ☐ Gray/Roan

---

*Are there any security interests, liens, encumbrances, or adverse claims against this mare?*
☐ *No* ☐ *Yes- If yes, please list details on back of this form.*

---

### MARE STATUS

☐ Maiden    ☐ In foal    ☐ Barren    ☐ Slipped    ☒ Not bred in ~~2008~~ 2009

☐ Already foaled – 2010 foaling date ____/____/2010 ☐ Filly ☐ Colt    ☐ Dkb/br   ☐ Bay   ☐ Ch   ☐ Gray/Roan

2009 stallion bred to _____ 2009 Last Date Bred _____

2008 stallion bred to *Five Star Day* DOB *5/6/2009* ☒ Filly ☐ Colt   Color _____

#### Is this Mare an IMPORT for the 2010 breeding season?

☐ Yes ☒ No If yes, Import Date: _____ Country of Origin: _____

## WALMAC WELCOMES YOU AS A BOARDER, PLEASE CALL FOR AVAILABILITY.

✗ Mare's KY Boarding Farm *Yellowwood Farm*    Tele # *859-299-1066*
✗ Farm Manager *Mary Jo Kuehn*    Cell # *618-210-9004*
After-1-20-10 *Oakleigh Farm Paul Sutton*
Boarding Farm Address *7271 Russel Cave Lexington ky 621-1116 (859)*

Mare's Veterinarian *Michael Beyer (Equine Health)* Tele # *859-873-5509*

---

PLEASE NOTE: IT IS THE POLICY OF WALMAC FARM, LLC NOT TO RELEASE A
STALLION SERVICE CERTIFICATE UNTIL AND UNLESS IT IS REQUESTED.

---

Signature _____      Date *1-8-2010*

Walmac R 10926

Date: _12-21-09_        Contract # _MS001_

# SEASON REQUEST FORM

Mare: _Holly's Wager_

☐ Entered In HFM

Sire: _Valid Wager_

Dam: _Holly Bugs_

Dam Sire: _Fit to Fight_

In Foal To: _Open_

2009 Foal: _F. Five Star Day_

Stallion: _Ready's Image_

Contract Price: _Mare Share_

Contract Terms: _50|50_

Year Born: _1999_   Color: _DKBBR_

Last Date Bred: _____

2008 Foal: _Barren_

---

☐ Entered In HFM

Mare Owner: _Clovertowne Farm_      (Tim Spivey)

Address: _9 Windfield Place_

_Billerville, FL 62223-7007_

email: _TJSPiV @ yAhoo.com_

Phone: _618-233-2112_   Cell: _618-541-2630_   Fax: _____

---

☐ Entered In HFM

Pay Commission: _____   Percent: _____   Dollar Amount: _____

Agent: _____

Address: _____

email: _____

Phone: _____   Cell: _____   Fax: _____

---

☑ Approved By _JH_

☐ Denied

☐ Needs boarding farm contract

☐ Send Brochure

---

Special notes: _boards @ Yellowwood Fm_

View My Reports

Page 1 of 5

*[handwritten:]*
Jim Spivey
9 Windfield
Belleville, IL
62223-7007
618-233-2112
618-541-2030 - cell

e-mail:
TJSPIV@yahoo.com

782 For Holly's Wager 1999
On 09-Dec-2009 (c) Copyright 2009 Bloodstock Research Information Services, Inc. All Rights Reserved.

Holly's Wager
Dark Bay or Brown Mare Foaled April 16, 1999 In Florida

*[handwritten:]* 12-09-09 M/S He gets 1st 5,000 + we split everything thereafter 50/50 PI to I be

| | | | |
|---|---|---|---|
| **Valid Wager** | Valid Appeal | In Reality | Intentionally (Intent -- My Recipe) |
| | | | My Dear Girl (Rough'n Tumble -- Iltis) |
| | | Desert Trial | Moslem Chief (*Alibhai -- Up The Hill) |
| | | | Scotch Verdict (Alsab -- Glen Arvis) |
| | Bid Gal | Bold Bidder | Bold Ruler (*Nasrullah -- Miss Disco) |
| | | | High Bid (To Market -- Stepping Stone) |
| | | Nowmepache | Hangover (Apache -- Corn Likker) |
| | | | Fool-Me-Not (Tom Fool -- *Cuadrilla) |
| **Holly Bugs** | Fit To Fight | Chieftain | Bold Ruler (*Nasrullah -- Miss Disco) |
| | | | Pocahontas (Roman -- How) |
| | | Hasty Queen 2nd | One Count (Count Fleet -- Ace Card) |
| | | | Queen Hopeful (Roman -- Playful) |
| | Statuesque (FR) | Gay Mecene | *Vaguely Noble (Vienna (GB) -- Noble Lassie (GB)) |
| | | | Gay Missile (Sir Gaylord -- Missy Baba) |
| | | Delta Queen (FR) | Satingo (IRE) (Petingo (GB) -- Saquebute (GB)) |
| | | | Dellie Douglass (Mongo -- Secret Step) |

4SB x 4SC Bold Ruler
5SB x 5SC *Nasrullah
5MB x 5MC Miss Disco
5SC x 5SC Roman

Roman Dosage    DP = 5-5-5-0-1         DI = 3.57         CD = 0.81

SIRE STATISTICS: By VALID WAGER (1992), Black type winner, $306,020. Sire of 10 crops, 4?? foals, 378 starters, 18 black type winners, 293 winners, $17,701,910. Sire of 48 producing daughters, 93 foals, 73? BSPI, 3 black type winners, 38 winners, including J Be K ($440,200, Woody Stephens Breeders' C?p [G2] etc.), Sheyenne Girl (to 2, 2009, $42,545, Princess Margaret S. [O], etc.), Tacky Cat (to 3, 2009, $36,540, Cincinnati Trophy S. [O]), Codio (to 5, 2009, $133,575, 2nd Journal H. [O], etc.), Hello From Heaven (to 4, 2009, $105,141, 2nd O.B.S. Championship S. (C & G) [OR]).

| | | | | |
|---|---|---|---|---|
| 2008  Mares: | 7 | $487,000 | $69,585 Avg | $10,000 Median |
| 2009  Mares: | 2 | $5,500 | $2,750 Avg | $2,750 Median |

*[handwritten:]* boards @ Yellowwood Fm.

**1ST DAM**
Holly Bugs, DKBBR, 1991, 2 wins at 3, PI at 2, earned $14,893 in 20 starts in NA/US. (On turf, Unpl at 2 3, earned $153 in 2 starts.) (AWD=7.25)
   KEESEP 1992 Yearling Sale, $30,000. Buyer: Biggs, Kaaren And Hays.
   OBSOCT 1999 Broodmare Sale, $135,000. Buyer: Arnold, Doug:Agent. Covered by: Valid Expectations.
   KEENOV 2006 Broodmare Sale, $20,000. Not Sold (RNA). Covered by: Harlan's Holiday.
   KEEJAN 2008 Broodmare Sale, $1,500. Buyer: C. F. Newman. Covered by: State City.
   1996 BELLE'S APPEAL (f, Valid Appeal). 3 wins at 2 3, earned $101,566 in 7 starts in NA/US. (SSI=6.10)   *[handwritten:]* TRUE
      (AWD=6.00)
      Old Hat S. [L].   *[handwritten:]* Dam = C+
      FTFFEB 1998 Two-Year Old Sale, $70,000. Not Sold (RNA).
      KEENOV 2000 Broodmare Sale, $430,000. Buyer: Stronach, F. Covered by: Boston Harbor.   *[handwritten:]* Bo = C+
      KEENOV 2007 Broodmare Sale, $14,000. Not Sold (RNA). Covered by: Alphabet Soup.   *[handwritten:]* HT = D
   2001 Harbour Gate (g, Boston Harbor). 1 win at 3, PI at 2 4, earned $36,975 in 9 starts in NA/US.   *[handwritten:]* RI = A++
      (SSI=1.45) (AWD=7.00)
      ADNMAR 2003 Two-Year Old Sale, $120,000. Buyer: Mc Donnell, Francis.   *[handwritten:]* STS = B+
   2002 King Hoss (g, El Prado (IRE)). 4 wins at 4 5, PI at 3 7, Unpl at 6, earned $68,436 in 18 starts in US.
      (On turf, 2 wins at 4 5, PI at 3 7, Unpl at 6, earned $35,236 in 15 starts.) (SSI=1.50) (AWD=10.25)   *[handwritten:]* SAAP = A+
      2009 in US 2 0 1 0 $2,200  23-May-2009 FAI07 Clm Fin:5th
      Owner: The Fields Stable   *[handwritten:]* SA = F
      Trainer: Voss Thomas H
      ADNMAR 2004 Two-Year Old Sale, $175,000. Not Sold (RNA).
   2003 R Lil Belle (f, Touch Gold). Unpl at 3, earned $347 in 6 starts in US. (SSI=0.02)   *[handwritten:]* TN = B

*[handwritten:]* Walmac R 10928

Date: _4-22-10_                                    Contract #_F S 005_

## SEASON REQUEST FORM

Mare: _An Annika Moment_        Stallion: _Ready's Image_

☐ Entered In HFM

Sire: _Meeks_                    Contract Price: _Final Share_

Dam: _Maybe We May_              Contract Terms: _70/30 Aug's Tower_

Dam Sire: _Minnaki_             Year Born: _2001_   Color: _____

In Foal To: _Pactus Ridge_       Last Date Bred: _5-3-09_

20 _09_ Foal: _C. Burdine_       20 _08_ Foal: _F. Lion Heart_

---

Mare Owner: _Fr. Cigar_

☐ Entered In HFM

Address: _____

_____

_____

email: _____

Phone: _____   Cell: _____   Fax: _____

---

Pay Commission: _____   Percent: _____   Dollar Amount: _____

Agent: _____

☐ Entered In HFM

Address: _____

_____

_____

email: _____

Phone: _____   Cell: _____   Fax: _____

---

☒ Approved By _J III_           ☐ Needs boarding farm contract

☐ Denied                         ☐ Send Brochure

---

Special notes: _Per G III, guy gets first #7,500 then we split 50/50 until We get out stud fee._