# 2010 Walmac Farm
## Foal Sharing Agreement Summary

Contract Reference #:      3155

1. Stallion:      **Ready's Image**

2. Mare:      **An Annika Moment**

3. First Party:      La Ciega LLC
                     1815 Clifton Road
                     Versailles, Kentucky  40383

Stallion *Ready's Image*
Mare *An Annika Moment*
Share No. *F S 005*
Contract Returned/Entered:
   ✓ Access ✓  X  ✓ M/S
Comment _____

4. Percentages of Foal Proceeds:      **1st Party: 70.00%**      **2nd Party: 30.00%**

5. Percentages of Breeders' Awards:      **1st Party: 50.00%**      **2nd Party: 50.00%**

6. Sales Prep:      **Guy Moggee**

7. Sales Agent:      **Four Star Sales**

8. Sales Options:      **Keeneland or Fasig Tipton sale**

9. 2nd Party Expenses:      **Standard - liened and deducted from the sale proceeds**

10. Special Comments:      **None**

Prepared by:

Approved by:

Walmac R 10959

## 2010 Walmac Farm Foal Sharing Agreement

THIS AGREEMENT is made and entered into Wednesday, April 28, 2010 by and between Walmac Farm, LLC and Mare Owner with respective mailing addresses as follows:

**FIRST PARTY**

La Ciega LLC
1815 Clifton Road
Versailles, Kentucky 40383

**SECOND PARTY:**

Walmac Farm LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX:    (859) 299-1259

WHEREAS, Mare owner owns the thoroughbred mare, An Annika Moment ('the Mare') and desires to breed the mare to the stallion Ready's Image ('the Stallion') for the 2010, in order to become an owner of 70.00% of the resulting foal,

WHEREAS, Walmac Farm, LLC ('Walmac') owns a 2010 ('Season') in the stallion Ready's Image and desires to breed the Mare on the Season in order to become an owner of 30.00% of the resulting foal.

WHEREAS, both parties desire to enter into this binding contract setting forth the terms and conditions of their agreement.

NOW, THEREFORE, for and in consideration of the mutual promises and covenants of the parties, it is mutually agreed as follows:

1. Walmac agrees to furnish the Season at no cost to the Mare Owner during the breeding season for 2010 so that the Mare Owner can breed the Mare to the Stallion. Walmac warrants that it has good right and full power to furnish the Season to Mare Owner and that the Season is free of all liens, encumbrances or charges of any kind whatsoever.

2. Mare Owner agrees to breed the Mare to the Stallion during the breeding season of 2010. It is mutually understood that any live foal (the 'Foal') produced from the mating shall be owned on a 70.00%/30.00% between Mare Owner and Walmac, respectively. Each party shall be solely responsible for insuring that party's respective interest in the Foal.

3. Mare Owner agrees that the mare shall be healthy and in sound breeding condition and free of contagious diseases, and Mare Owner shall furnish a veterinary certificate to that effect dated no more than five (5) days prior to the proposed date of breeding. Mare Owner warrants that the mare is not subject to any lien, security interest, or other encumbrance or claim of any nature that could in any way affect the rights of Walmac under this Agreement, and agrees that in the event any claim is made that may affect Walmac's rights under this Agreement, that it will defend, hold harmless, and indemnify Walmac against all such claims and for all costs (including attorneys fees) and liabilities incurred by Walmac.

4. If the Mare should die before producing a live foal, this contract shall terminate. If prior to the Mare being bred, the stallion should die or become unfit to be bred, or if Walmac Farm is completely closed down for breeding for a period longer than two (2) consecutive weeks while the Mare is able to be bred, then this agreement thereafter shall, at the option of either party, be terminated.

5. The parties shall own the Foal as tenants in common of a chattel in undivided one-half (1/2) shares. The parties agree not to sell or transfer all or any part of their interest in the foal except as provided in paragraph 7. Each party waives that party's right to demand partition of the foal under the laws of any state.

6. All board, upkeep, veterinarian and all other expenses of the Mare shall be borne by the Mare Owner. All board, upkeep, veterinarian and other expenses of the Foal, including Breeders' Cup Nomination fee, European Breeders' Fund Nomination fee, Jockey Club Registration fee, and all costs relating to sales preparation shall be borne by the Mare Owner, except that any reasonable and customary commission due on the sale of the Foal, whether to a consignor or a sales company, shall be borne equally by the Parties.

7. The parties agree that the Foal shall be sold at public auction as a weanling or a yearling of the mare at a Keeneland or Fasig Tipton sale unless it is otherwise mutually agreed upon in writing by both parties. Unless otherwise mutually agreed in writing, Four Star Sales shall be the consignor and the Foal will be delivered to Walmac Farm LLC for sales preparation upon weaning (if to be sold as a weanling) or in any event not less than 45 days prior to sale. Consignor shall be entitled to its usual and customary commission and preparation charges. If another consignor is used by agreement, Mare Owner shall procure a written acknowledgement from such consignor that one-half of the sales proceeds, less commissions due the sales company and the consignor, shall be remitted to Walmac. The parties further agree that all sales expenses, advertising expenses and any other necessary and related expenses, shall be borne by the Mare Owner, regardless of which consignor is used. No party may place a reserve on the Foal unless agreed to in writing by the other party. Either party may bid on the Foal whenever it shall be offered for sale, but in the event that the bid is accepted,

the party bidding shall be deemed the purchaser of the entire Foal, shall sign the ticket as purchaser and not as a buy-back, and shall be responsible for payment to the Sales Company. The proceeds due the sale company, consignor and to Walmac will be liened and deducted from the sale proceeds.

8. The Parties agree that Mare Owner and Walmac shall both be listed equally as the breeders of the Foal with the Jockey Club and that any breeder's awards concerning the Foal shall be divided equally between the parties.

9. The parties do not intend this Agreement to create, and this Agreement shall not be considered as creating a joint venture, partnership or other relationship whereby any party shall be held liable for the omissions or commissions of any other party; but, if for federal tax purposes this agreement or the relationship established hereby and the operation, hereunder, are regarded as a partnership as the term is defined in the Internal Revenue Code, then the parties hereto hereby elect not be treated as a partnership and to be excluded from the application of all the provisions of Sub-chapter K, Chapter 1, Subtitle A, of the Internal Revenue Code of 19&4. In making this election, each party acknowledges that the income derived by each party by reason of his ownership of a fractional interest in the foal can be adequately determined without the necessity for any computation of partnership taxable income, and all parties agree not to give any notices or take any other action inconsistent with the election hereby made.

10. This agreement may not be assigned by either party. This Agreement shall be binding upon the heirs, administrators, and executors of Mare Owner and the members of Walmac. Facsimile signatures shall have full force and effect of original signature. This agreement may not be altered or amended without written consent of both parties hereto, and this agreement shall be governed by the laws of the laws of the Commonwealth of Kentucky. The sole venue for any dispute arising out of this Agreement or otherwise with regard to the relationship of the parties shall be the Courts of Fayette County, Kentucky, and the parties submit to the jurisdiction of such Courts and waive right to trial by jury.

**ADDENDUMS:** None

IN TESTIMONY WHEREOF, witness the signatures of the parties hereto.

_4/28/10_

Date

_La Ciega LLC by Julie J. Wagg_

MARE OWNER

_4/28/10_

Date

_Marcia Shelia Witt_

Walmac Farm, LLC

**Void After Tuesday, May 18, 2010**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

Date 4/28/2010

Date: 4-28-10                                    Contract # F5 005

## SEASON REQUEST FORM

Mare: An Annika Moment           Stallion: Ready's Image

☐ Entered In HFM

Sire: Menke                      Contract Price: Foal Share

Dam: Maybe Un May                Contract Terms: 70/30 Guy's Favor

Dam Sire: Miswaki                Year Born: 2001   Color: ____

In Foal To: Cactus Ridge         Last Date Bred: 5-3-09

2009 Foal: C. Bandini            2008 Foal: F. Lion Heart

---

☐ Entered In HFM

Mare Owner: La Ciega

Address: ____

email: ____

Phone: ____   Cell: ____   Fax: ____

---

☐ Entered In HFM

Pay Commission: ____   Percent: ____   Dollar Amount: ____

Agent: ____

Address: ____

email: ____

Phone: ____   Cell: ____   Fax: ____

---

☑ Approved By J TH            ☐ Needs boarding farm contract

☐ Denied                      ☐ Send Brochure

---

Special notes: ____

## 2010 Walmac Farm
## Foal Sharing Agreement Summary

Contract Reference #:    3171

1. Stallion:          **Ready's Image**

2. Mare:              **Very Special Chick**

3. First Party:       La Ciega LLC
                      1815 Clifton Road
                      Versailles, Kentucky 40383

4. Percentages of Foal Proceeds:          **1st Party: 50.00%       2nd Party: 50.00%**

5. Percentages of Breeders' Awards:       **1st Party: 50.00%       2nd Party: 50.00%**

6. Sales Prep:                            **Gug Mogge**

7. Sales Agent:                           **Four Star Sales**

8. Sales Options:                         **Keeneland or Fasig Tipton sale**

9. 2nd Party Expenses:                    **Standard - liened and deducted from the sale proceeds**

10. Special Comments:                     **La Ciega to receive first $7,500; thereafter proceeds split 50/50 until stud fee paid**

Prepared by:                          Approved by:

# 2010 Walmac Farm Foal Sharing Agreement

THIS AGREEMENT is made and entered into Tuesday, May 11, 2010 by and between Walmac Farm, LLC and Mare Owner with respective mailing addresses as follows:

FIRST PARTY

La Ciega LLC
1815 Clifton Road
Versailles, Kentucky 40383

SECOND PARTY:

Walmac Farm LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX:     (859) 299-1259

WHEREAS, Mare owner owns the thoroughbred mare, Very Special Chick ('the Mare') and desires to breed the mare to the stallion Ready's Image ('the Stallion') for the 2010, in order to become an owner of 50.00% of the resulting foal,

WHEREAS, Walmac Farm, LLC ('Walmac') owns a 2010 ('Season') in the stallion Ready's Image and desires to breed the Mare on the Season in order to become an owner of 50.00% of the resulting foal.

WHEREAS, both parties desire to enter into this binding contract setting forth the terms and conditions of their agreement.

NOW, THEREFORE, for and in consideration of the mutual promises and covenants of the parties, it is mutually agreed as follows:

1. Walmac agrees to furnish the Season at no cost to the Mare Owner during the breeding season for 2010 so that the Mare Owner can breed the Mare to the Stallion. Walmac warrants that it has good right and full power to furnish the Season to Mare Owner and that the Season is free of all liens, encumbrances or charges of any kind whatsoever.

2. Mare Owner agrees to breed the Mare to the Stallion during the breeding season of 2010. It is mutually understood that any live foal (the 'Foal') produced from the mating shall be owned on a 50.00%/50.00% between Mare Owner and Walmac, respectively. Each party shall be solely responsible for insuring that party's respective interest in the Foal.

3. Mare Owner agrees that the mare shall be healthy and in sound breeding condition and free of contagious diseases, and Mare Owner shall furnish a veterinary certificate to that effect dated no more than five (5) days prior to the proposed date of breeding. Mare Owner warrants that the mare is not subject to any lien, security interest, or other encumbrance or claim of any nature that could in any way affect the rights of Walmac under this Agreement, and agrees that in the event any claim is made that may affect Walmac's rights under this Agreement, that it will defend, hold harmless, and indemnify Walmac against all such claims and for all costs (including attorneys fees) and liabilities incurred by Walmac.

4. If the Mare should die before producing a live foal, this contract shall terminate. If prior to the Mare being bred, the stallion should die or become unfit to be bred, or if Walmac Farm is completely closed down for breeding for a period longer than two (2) consecutive weeks while the Mare is able to be bred, then this agreement thereafter shall, at the option of either party, be terminated.

5. The parties shall own the Foal as tenants in common of a chattel in undivided one-half (1/2) shares. The parties agree not to sell or transfer all or any part of their interest in the foal except as provided in paragraph 7. Each party waives that party's right to demand partition of the foal under the laws of any state.

6. All board, upkeep, veterinarian and all other expenses of the Mare shall be borne by the Mare Owner. All board, upkeep, veterinarian and other expenses of the Foal, including Breeders' Cup Nomination fee, European Breeders' Fund Nomination fee, Jockey Club Registration fee, and all costs relating to sales preparation shall be borne by the Mare Owner, except that any reasonable and customary commission due on the sale of the Foal, whether to a consignor or a sales company, shall be borne equally by the Parties.

7. The parties agree that the Foal shall be sold at public auction as a weanling or a yearling of the mare at a Keeneland or Fasig Tipton sale unless it is otherwise mutually agreed upon in writing by both parties. Unless otherwise mutually agreed in writing, Four Star Sales  shall be the consignor and the Foal will be delivered to Walmac Farm LLC for sales preparation upon weaning (if to be sold as a weanling) or in any event not less than 45 days prior to sale. Consignor shall be entitled to its usual and customary commission and preparation charges. If another consignor is used by agreement, Mare Owner shall procure a written acknowledgement from such consignor that one-half of the sales proceeds, less commissions due the sales company and the consignor, shall be remitted to Walmac. The parties further agree that all sales expenses, advertising expenses and any other necessary and related expenses, shall be borne by the Mare Owner, regardless of which consignor is used. No party may place a reserve on the Foal unless agreed to in writing by the other party. Either party may bid on the Foal whenever it shall be offered for sale, but in the event that the bid is accepted,

the party bidding shall be deemed the purchaser of the entire Foal, shall sign the ticket as purchaser and not as a buy-back, and shall be responsible for payment to the Sales Company. The proceeds due the sale company, consignor and to Walmac will be liened and deducted from the sale proceeds.

8. The Parties agree that Mare Owner and Walmac shall both be listed equally as the breeders of the Foal with the Jockey Club and that any breeder's awards concerning the Foal shall be divided equally between the parties.

9. The parties do not intend this Agreement to create, and this Agreement shall not be considered as creating a joint venture, partnership or other relationship whereby any party shall be held liable for the omissions or commissions of any other party; but, if for federal tax purposes this agreement or the relationship established hereby and the operation, hereunder, are regarded as a partnership as the term is defined in the Internal Revenue Code, then the parties hereto hereby elect not be treated as a partnership and to be excluded from the application of all the provisions of Sub-chapter K, Chapter 1, Subtitle A, of the Internal Revenue Code of 1984. In making this election, each party acknowledges that the income derived by each party by reason of his ownership of a fractional interest in the foal can be adequately determined without the necessity for any computation of partnership taxable income, and all parties agree not to give any notices or take any other action inconsistent with the election hereby made.

10. This agreement may not be assigned by either party. This Agreement shall be binding upon the heirs, administrators, and executors of Mare Owner and the members of Walmac. Facsimile signatures shall have full force and effect of original signature. This agreement may not be altered or amended without written consent of both parties hereto, and this agreement shall be governed by the laws of the laws of the Commonwealth of Kentucky. The sole venue for any dispute arising out of this Agreement or otherwise with regard to the relationship of the parties shall be the Courts of Fayette County, Kentucky, and the parties submit to the jurisdiction of such Courts and waive trial by jury.

ADDENDUMS:   La Ciega to receive first $7,500; thereafter proceeds split 50/50 until stud fee paid

IN TESTIMONY WHEREOF, witness the signatures of the parties hereto.

_____
Date

_____
Date                              5/11/10

MARE OWNER

_Marcia Shiela Nitt_

Walmac Farm, LLC

**Void After Monday, May 31, 2010**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

Date 5/11/2010

Date: _5-10-10_                                    Contract # _F5006_

## SEASON REQUEST FORM

Mare: _Very Special Chic_          Stallion: _Ready's Image_

☐ Entered In HFM

Sire: _Deprere_                    Contract Price: _Foal Share_

Dam: _Spartan Gal_                 Contract Terms: 1st $7500 to Guy then
                                   split until we get fee

Dam Sire: _Pentelicus_            Year Born: _2001_  Color: _Bay_

In Foal To: _Ready's Image_       Last Date Bred: _4-11-09_

20  Foal: _____              20  Foal: _____

---

Mare Owner: _Guy Moggy_

☐ Entered In HFM

Address: _1815 Clifton Rd._
         _Versailles, Ky 40383_
                              email: _____

Phone: _621-1499_  Cell: _____  Fax: _____

---

Pay Commission: _____  Percent: _____  Dollar Amount: _____

Agent: _____

☐ Entered In HFM

Address: _____
         _____

                              email: _____

Phone: _____  Cell: _____  Fax: _____

---

☑ Approved By _G III_          ☐ Needs boarding farm contract

☐ Denied                       ☐ Send Brochure

---

Special notes: _Mare bred 5-08_ /

Walmac R 10966

## 2011 Walmac Farm
## Foal Sharing Agreement Summary

Contract Reference #:      3316

1. Stallion:       **Ready's Image**

2. Mare:           **Centerpiece**

3. First Party:    Alan Frye
                   2671 Ferguson Pike
                   Lexington, Kentucky  40511

Stallion _Ready's Image_
Mare _Centerpiece_
Share No. _Foxce_
Contract Returned/Entered:
_✓_ Access _✓ X ✓_ M/S
Comment _____

4. Percentages of Foal Proceeds:      **1st Party: 50.00%**     **2nd Party: 50.00%**

5. Percentages of Breeders' Awards:   **1st Party: 50.00%**     **2nd Party: 50.00%**

6. Sales Prep:                        **Walmac Farm or as otherwise agreed upon**

7. Sales Agent:                       **Four Star or consignor mutually agreed upon**

8. Sales Options:                     **Keeneland or Fasig Tipton**

9. 2nd Party Expenses:                **Standard - liened and deducted from the sale proceeds**

10. Special Comments:                 **Mare owner to receive 1st $5,000 of sale proceeds; remainder will be split 50/50**

Prepared by:                          Approved by:

Walmac R 11394

## 2011 Walmac Farm Foal Sharing Agreement

THIS AGREEMENT is made and entered into Thursday, January 27, 2011 by and between Walmac Farm, LLC and Mare Owner with respective mailing addresses as follows:

FIRST PARTY

Alan Frye
2671 Ferguson Pike
Lexington, Kentucky 40511

SECOND PARTY:

Walmac Farm LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX:     (859) 299-1259

WHEREAS, Mare owner owns the thoroughbred mare, Centerpiece ('the Mare') and desires to breed the mare to the stallion Ready's Image ('the Stallion') for the 2011, in order to become an owner of 50.00% of the resulting foal,

WHEREAS, Walmac Farm, LLC ('Walmac') owns a 2011 ('Season') in the stallion Ready's Image and desires to breed the Mare on the Season in order to become an owner of 50.00% of the resulting foal.

WHEREAS, both parties desire to enter into this binding contract setting forth the tems and conditions of their agreement.

NOW, THEREFORE, for and in consideration of the mutual promises and covenants of the parties, it is mutually agreed as follows:

1. Walmac agrees to furnish the Season at no cost to the Mare Owner during the breeding season for 2011 so that the Mare Owner can breed the Mare to the Stallion. Walmac warrants that it has good right and full power to furnish the Season to Mare Owner and that the Season is free of all liens, encumbrances or charges of any kind whatsoever.

2. Mare Owner agrees to breed the Mare to the Stallion during the breeding season of 2011. It is mutually understood that any live foal (the 'Foal') produced from the mating shall be owned on a 50.00%/50.00% between Mare Owner and Walmac, respectively. Each party shall be solely responsible for insuring that party's respective interest in the Foal.

3. Mare Owner agrees that the mare shall be healthy and in sound breeding condition and free of contagious diseases, and Mare Owner shall furnish a veterinary certificate to that effect dated no more than five (5) days prior to the proposed date of breeding. Mare Owner warrants that the mare is not subject to any lien, security interest, or other encumbrance or claim of any nature that could in any way affect the rights of Walmac under this Agreement, and agrees that in the event any claim is made that may affect Walmac's rights under this Agreement, that it will defend, hold harmless, and indemnify Walmac against all such claims and for alt costs (including attorneys fees) and liabilities incurred by Walmac.

4. If the Mare should die before producing a live foal, this contract shall terminate. If prior to the Mare being bred, the stallion should die or become unfit to be bred, or if Walmac Farm is completely closed downfor breeding for a period longer than two (2) consecutive weeks while the Mare is able to be bred, then this agreement thereafter shall, at the option of either party, be terminated.

5. The parties shall own the Foal as tenants in common of a chattel in undivided one-half (1/2) shares.  The parties agree not to sell or transfer all or any part of their interest in the foal except as provided in paragraph 7. Each party waives that party's right to demand partition of the foal under the laws of any state.

6. All board, upkeep, veterinarian and all other expenses of the Mare shall be borne by the Mare Owner.  All board, upkeep, veterinarian and other expenses of the Foal, including Breeders' Cup Nomination fee, European Breeders' Fund Nomination fee, Jockey Club Registration fee, and all costs relating to sales preparation shall be borne by the Mare Owner, except that any reasonable and customary commission due on the sale of the Foal, whether to a consignor or a sales company, shall be borne equally by the Parties.

7. The parties agree that the Foal shall be sold at public auction as a weanling or a yearling of the mare at a Keeneland or Fasig Tipton unless it is otherwise mutually agreed upon in writing by both parties. Unless otherwise mutually agreed in writing, Four Star or consignor mutually agreed upon  shall be the consignor and the Foal will be delivered to Walmac Farm LLC for sales preparation upon weaning (if to be sold as a weanling) or in any event not less than 45 days prior to sale. Consignor shall be entitled to its usual and customary commission and preparation charges. If another consignor is used by agreement, Mare Owner shall procure a written acknowledgement from such consignor that one-half of the sales proceeds, less commissions due the sales company and the consignor, shall be remitted to Walmac. The parties further agree that all sales expenses, advertising expenses and any other necessary and related expenses, shall be borne by the Mare Owner, regardless of which consignor is used. No party may place a reserve on the Foal unless agreed to in writing by the other party. Either party may bid on the Foal whenever it shall be offered for sale, but in the event

that the bid is accepted, the party bidding shall be deemed the purchaser of the entire Foal, shall sign the ticket as purchaser and not as a buy-back, and shall be responsible for payment to the Sales Company. The proceeds due the sale company, consignor and to Walmac will be liened and deducted from the sale proceeds.

8. The Parties agree that Mare Owner and Walmac shall both be listed equally as the breeders of the Foal with the Jockey Club and that any breeder's awards concerning the Foal shall be divided equally between the parties.

9. The parties do not intend this Agreement to create, and this Agreement shall not be considered as creating a joint venture, partnership or other relationship whereby any party shall be held liable for the omissions or commissions of any other party; but, if for federal tax purposes this agreement or the relationship established hereby and the operation, hereunder, are regarded as a partnership as the term is defined in the Internal Revenue Code, then the parties hereto hereby elect not be treated as a partnership and to be excluded from the application of all the provisions of Sub-chapter K, Chapter 1, Subtitle A, of the Internal Revenue Code of 1984. In making this election, each party acknowledges that the income derived by each party by reason of his ownership of a fractional interest in the foal can be adequately determined without the necessity for any computation of partnership taxable income, and all parties agree not to give any notices or take any other action inconsistent with the election hereby made.

10. This agreement may not be assigned by either party. This Agreement shall be binding upon the heirs, administrators, and executors of Mare Owner and the members of Walmac. Facsimile signatures shall have full force and effect of original signature. This agreement may not be altered or amended without written consent of both parties hereto, and this agreement shall be governed by the laws of the Commonwealth of Kentucky. The sole venue for any dispute arising out of this Agreement or otherwise with regard to the relationship of the parties shall be the Courts of Fayette County, Kentucky, and the parties submit to the jurisdiction of such Courts and waive right to trial by jury.

ADDENDUMS:   Mare owner to receive 1st $5,000 of sale proceeds; remainder will be split 50/50

IN TESTIMONY WHEREOF, witness the signatures of the parties hereto.

_____2/6/11_____          _____
Date                                      MARE OWNER

_____1/27/11_____         _____
Date                                      Walmac Farm, LLC

**Void After Wednesday, February 16, 2011**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

Date 1/27/2011

Date: 1-26-11                                              Contract # FS002

## SEASON REQUEST FORM

Mare: Centerpiece                    Stallion: Ready's Image

☐ Entered In HFM

Sire: Bertrando                      Contract Price: Foal Share

Dam: Sable Flower                    Contract Terms: first $5,000 of sale to alan + split 50/5

Dam Sire: River Special              Year Born: 2001    Color: remaining

In Foal To: _____         Last Date Bred: _____

20  Foal: _____           20  Foal: _____

---

Mare Owner: Alan K. Frye

☐ Entered In HFM

Address: 2671 Ferguson Pike
Lexington, Ky 40511

email: _____

Phone: _____   Cell: 333-7190   Fax: _____

---

Pay Commission: _____   Percent: _____   Dollar Amount: _____

Agent: _____

☐ Entered In HFM

Address: _____
_____
_____

email: _____

Phone: _____   Cell: _____   Fax: _____

---

☑ Approved By _____          ☐ Needs boarding farm contract

☐ Denied                        ☐ Send Brochure

---

Special notes: ____ Sale prep - as agreed upon
Consign - "

*Alan K. Frye*

| Search | Save | Cancel | Delete | Mare Info Sheet | Breeding Shed Form | Mare Info Audit Log |

Created by: Sheri
on 11/24/2009 4:37 PM

Mare Name  Centerpiece                    Band/Tag #

Farm  Walmac                   Season/Year  2010      ▾    New

Mare Info   Breeding Dates   Foaling Info   Teasing Results

Starting Status  Not Bred      ▾                Previous Season

                                               Bred To

                                               Standing Farm

                                               Last Date Bred

Booked To  Freddy's Image                ☒       Foaling Info

Share Owner                    ✎    Share #      Color

Confirmed By                   On         ▾      Sex

Standing Farm  Walmac                            Foaling Date

Contact  Sheri                 Phone  (859) 299-0473

Final Status         ▾          Breeding Requirements

Last Exam                       Maidens jumped, Clean regular uterine culture on all covers except first hip
                                foalings and doubles. Halter I.D. - Imports: requirements as stated by USDA
Last Date Bred        ▾         in Frankfort, KY.

<< Mare Info Comments

Saved Documents
**mare info**
Empty

⊞ Add  ⊟ Remove

1-17-11
Per Peter, JH will give
this mare to Alan K. Frye at Salt
+ FIS per to R.I. At
We take 1st $5,000 + we
FIS remaining proceeds XI...

Walmac R 11398

## STALLION SERVICE AGREEMENT

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

BUYER:

Hardeman, LLC - Attn: Connie
3395 Paris Pike
Lexington, Kentucky 40511

Stallion _Ready's Image_
Mare _Grand Journey_
Share No. _19_
Contract Returned/Entered
   ✓ Access ✓ X ✓ M/s
Comm r:

Seller:

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX:    (859) 299-1259

1. Seller is the owner of and agrees to sell to Buyer a nomination for the 2011 breeding season to the
   Thoroughbred Stallion, __Ready's Image.__

2. Buyer agrees to breed    __Grand Journey,__    by    __Grand Slam,__    out of    __Journey North,__
   a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days. Purchaser agrees not to breed mare to any other stallion during the breeding season.

3. Buyer hereby agrees to pay Seller as follows for the aforesaid nomination:
   a. The sum of U.S. $    __3,180.00__    on a Stand And Nurse basis, payable when the foal stands and nurses.
   Unless otherwise noted below, all payments on a Live-Foal basis are refundable if the mare bred does not produce as a result of the aforesaid breeding a single live foal that is able to stand and nurse in the year following breeding, provided that the Buyer furnishes Seller with a satisfactory veterinary certificate to that effect within 60 days of the date and said mare foals, dies, aborts or is determined to not be in foal. Buyer agrees to pay 1.5% per month interest charges on any delinquent fees required herein. Any amount payable on a Live-Foal basis which is more than 30 days delinquent shall thereafter be payable on a No-Guarantee basis. All payments on a No-Guarantee basis are not refundable in any case except as specifically herein provided. Payments and refunds must be made directly to principals named in this contract.

4. Buyer agrees that said mare shall be healthy and in sound breeding condition, this fact to be certified by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of said stallion reserves the right to refuse to permit the breeding of any mare to said stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to said mare or said stallion.

5. This contract shall not be assigned or transferred by Buyer. Further, if the Mare, or any interest therein, is sold, transported to a public sale (regardless of whether a sale is completed) or exported from the United States (with the exception of Canada), the Total Fee, if unpaid, shall immediately become due and payable and NO REFUND of said Total Fee shall be due from Walmac Farm LLC to the Purchaser, or to any subsequent purchaser, under any circumstances.

6. In the event said stallion should die, be sold, or become unfit for service before servicing said mare, any payment received on a live-foal basis shall be refunded to Buyer. Further, should said mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded.

7. In the event this contract is executed by an agent on behalf of Buyer, the undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. Such agent hereby unconditionally guarantees the full and prompt payment of the Total Fee as well as the full and prompt performance by the Purchaser of any and all other obligations hereunder.

8. It is agreed that payment in full is a condition of delivery of the service certificate by the Seller. Buyer grants Seller a security interest in such service certificate and any foal, in utero or born alive, as a result of aforesaid breeding in order to secure payment of amounts due or to become due hereunder or for boarding any horse owned by Buyer.

9. This agreement shall be binding upon the parties hereto, their heirs, personal representatives and successors, and shall be construed and governed in accordance with the laws of the state of Kentucky.

10. The parties hereto further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any verbal assurances of whatever nature that are not contained and expressed in this Agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

11. BINDING. This contract shall be Voidable at the sellers option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:    None

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, June 06,2011

BUYER:

_Signature_    Date 6-6-11

SELLER: Walmac Farm, LLC, By:

_Marcia Skiles Witt_
Signature    Date 6/6/2011

**Void After Sunday, June 26, 2011**
PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

Walmac 13514

This Agreement dated June 3, 2011 by and between Walmac Stud Management, LLC. (hereafter "Walmac") and Hardeman, LLC. (hereafter "Hardeman") (collectively the "Parties") relative to the thoroughbred mares: GRAND JOURNEY, and LIL IRENE (hereafter collectively the "Mares"), the Parties agree as follows:

Whereas, Hardeman owns the Mares and desires to sell a 50% interest in the Mares (hereinafter the "Purchased Interest") and Walmac desires to buy the Purchased Interest the Parties agree that:

1) Walmac shall pay Hardeman $3,000 USD payable May 1, 2012 for each mare that is in foal as of that date.

2) The Purchased Interest shall entitle Walmac to the First $4,000 USD of gross proceeds received from the sale of the production of each mare.

3) Walmac shall not be liable for any expenses related to the Purchased Interest.

4) All proceeds for future sale of the production from a Mare or the Mares shall be to the account of Hardeman, LLC.

Agreed by the Parties:
Hardeman, LLC.

Walmac Stud Managmenet, LLC.

**brisnet.com**
Information is our business

GRAND JOURNEY, 2001, Grand Slam- Journey North by Northern Jove.

|  | | YRS | ST | WN | PL | SH | EARNED | SR | SSI |
|---|---|---|---|---|---|---|---|---|---|
| 2006 Peanutbusternjelly, Ch, g, Newfoundland | | | | | | | | | |
| In North America | | 2 | 6 | 0 | 1 | 2 | 3,262 | ( 66) | 0.15 |
| North America 2 YO Record | | | 3 | 0 | 1 | 1 | 2,022 | ( 66) | |
| North America Dirt Sprints | | | 6 | 0 | 1 | 2 | 3,262 | ( 66) | |
| North America Muddy/Sloppy | | | 1 | 0 | 0 | 1 | 580 | ( 57) | |

DP = 6-1-5-0-0       DI = 3.80            CD = 1.08

| Sale | Hip # | Sales Price | Sire Avg | Rank | Stud Fee |
|---|---|---|---|---|---|
| KEESEP  2007 | 3425 | $21,000 | $20,568 ylg | (14/38) | $10,000 |
| 2007 Connie Marie, B, f, Songandaprayer | | | | | Unraced |

DP = 6-4-6-0-0       DI = 4.33            CD = 1.00

| Sale | Hip # | Sales Price | Sire Avg | Rank | Stud Fee |
|---|---|---|---|---|---|
| KEESEP  2008 | 1197 | $20,000 RNA | $89,933 ylg | | $35,000 |

| 2008 Tunesmith, Dkbbr, c, Successful Appeal | | | | | | |
|---|---|---|---|---|---|---|
| In North America | 1 | 1 | 0 | 0 | 0 | 75 ( 24) |
| North America 2 YO Record | | 1 | 0 | 0 | 0 | 75 ( 24) |
| North America Dirt Routes | | 1 | 0 | 0 | 0 | 75 ( 24) |

DP = 7-1-4-0-0       DI = 5.00            CD = 1.25

*SIRE:* 1.90 Spi, 267str, 50%2yo, 17%1st, 18%Mud/356sts, 10%Tf/414sts, AWD 6.66
*DAM:* (unraced) 0.15 Dpi, 2 2yostr/0wnr, 0%Mud/1sts, 0 Tfstr/0wnr, 1 Rtestr/0wnr, AWD 0.00

| Sale | Hip # | Sales Price | Sire Avg | Rank | Stud Fee |
|---|---|---|---|---|---|
| KEESEP  2009 | 3538 | $16,000 RNA | $49,790 ylg | | $40,000 |
| 2009 Unnamed, B, c, Tale Of The Cat | | | | | |

DP = 9-1-6-0-0       DI = 4.33            CD = 1.19

*SIRE:* 1.60 Spi, 787str, 43%2yo, 16%1st, 16%Mud/822sts, 12%Tf/2083sts, AWD 6.72
*DAM:* (unraced) 0.15 Dpi, 2 2yostr/0wnr, 0%Mud/1sts, 0 Tfstr/0wnr, 1 Rtestr/0wnr, AWD 0.00

| Sale | Hip # | Sales Price | Sire Avg | Rank | Stud Fee |
|---|---|---|---|---|---|
| KEENOV  2009 | 2026 | $40,000 | $57,125 wlg | (4/8) | $37,500 |
| 2010 Unnamed, Dk B/, f, Ready's Image | | | | | |

DP = 6-0-4-0-0       DI = 4.00            CD = 1.20

**Copyright 2011, Bloodstock Research Information Services**

## Dan Rapp

**From:**     "Sarah Clark" <sclark@walmac.com>
**To:**        <cmartin@walmac.com>
**Cc:**        <drapp@walmac.com>; "Marcia Skiles" <mskiles@walmac.com>
**Sent:**      Friday, June 03, 2011 2:00 PM
**Attach:**    Hardeman Agreement dated June 3, 2011.doc
**Subject:**   Grand Journey & Lil Irene

Connie,
Please have JTLJ, JR. sign the attached agreement.


Marcia,
These mares are to be placed on WSM, LLC. breeding rights to Ready's Image for the 2011 season.


Please reply with questions.
Sarah

Date: _6/3/11_                                    Contract #____19____

# SEASON REQUEST FORM

Mare: _GRAND JOURNEY_          Stallion: _Brady's Image._

☐
Entered
In HFM

Sire: _GRAND SLAM_            Contract Price: _____
Dam: _JOURNEY NORTH_          Contract Terms: _____
Dam Sire: _NORTHERN LOVE_     Year Born: _2001_   Color: _____
In Foal To: _FOALING._        Last Date Bred: _____
20   Foal: _____     20   Foal: _____

Mare Owner: _JTL JONES JR._

☐
Entered
In HFM

Address: _____
_____
_____ email: _____
Phone: _____ Cell: _____ Fax: _____

Pay Commission: _None_   Percent: _____   Dollar Amount: _____

☐
Entered
In HFM

Agent: _____
Address: _____
_____
_____ email: _____
Phone: _____ Cell: _____ Fax: _____

☑ Approved By _JTL 6/3_ pm.        ☐ Needs boarding farm contract
☐ Denied                            ☐ Send Brochure

Special notes: _2 MARES. LiL IRENE & GRAND JOURNEY._
_____
_____

Walmac R 11450

# STALLION SERVICE AGREEMENT

THIS AGREEMENT made and entered into by and between the Seller and Buyer with respective mailing addresses as follows:

**BUYER:**

Hardeman, LLC - Attn: Connie
3395 Paris Pike
Lexington, Kentucky 40511

Stallion *Ready's Image*
Mare *Lil Irene*
Mare No. *20*
Contract Returned/Entered:
✓ Access ✗ M/S
Comment _____

**Seller:**

Walmac Farm, LLC
3395 Paris Pike
Lexington, KY 40511
PHONE: (859) 299-0473
FAX:     (859) 299-1259

1. Seller is the owner of and agrees to sell to Buyer a nomination for the 2011 breeding season to the Thoroughbred Stallion, **Ready's Image.**

2. Buyer agrees to breed **Lil Irene,** by **Lil E. Tee,** out of **Classy Irene,** a Thoroughbred mare to the stallion during the breeding season. The Purchaser agrees to present the Mare for breeding to the Stallion during the breeding season on as many heat periods as may be necessary for the Mare to become pregnant. If the Mare dies or becomes unfit or unable to be bred, Purchaser shall notify the Seller in writing and provide a copy of a certificate from the attending veterinarian within ten days. Purchaser agrees not to breed Mare to any other stallion during the breeding season.

3. Buyer hereby agrees to pay Seller as follows for the aforesaid nomination:
   a. The sum of U.S. $ **3,180.00** on a Stand And Nurse basis, payable when the foal stands and nurses. Unless otherwise noted below, all payments on a Live-Foal basis are refundable if the mare bred does not produce as a result of the aforesaid breeding a single live foal that is able to stand and nurse in the year following breeding, provided that the Buyer furnishes Seller with a satisfactory veterinary certificate to that effect within 60 days of the date and said mare foals, dies, aborts or is determined to not be in foal. Buyer agrees to pay 1.5% per month interest charges on any delinquent fees required herein. Any amount payable on a Live-Foal basis which is more than 30 days delinquent shall thereafter be payable on a No-Guarantee basis. All payments on a No-Guarantee basis are not refundable in any case except as specifically herein provided. Payments and refunds must be made directly to principals named in this contract.

4. Buyer agrees that said mare shall be healthy and in sound breeding condition, this fact to be certified by a qualified veterinarian before the mare is bred. It is further agreed that the Syndicate Manager of said stallion reserves the right to refuse to permit the breeding of any mare to said stallion. It is further agreed that neither party shall be liable or responsible to either party for any disease, accident or injury to said mare or said stallion.

5. This contract shall not be assigned or transferred by Buyer. Further, if the Mare, or any interest therein, is sold, transported to a public sale (regardless of whether a sale is completed) or exported from the United States (with the exception of Canada), the Total Fee, if unpaid, shall immediately become due and payable and NO REFUND of said Total Fee shall be due from Walmac Farm LLC to the Purchaser, or to any subsequent purchaser, under any circumstances.

6. In the event said stallion should die, be sold, or become unfit for service before servicing said mare, any payment received on a live-foal basis shall be refunded to Buyer. Further, should said mare die or become unfit to breed, any payments made by Buyer other than on a No-Guarantee basis shall be refunded.

7. In the event this contract is executed by an agent on behalf of Buyer, the undersigned agent warrants full disclosure to Buyer of the terms of this contract and any commission paid by Seller to agent in connection with this contract. Such agent hereby unconditionally guarantees the full and prompt payment of the Total Fee as well as the full and prompt performance by the Purchaser of any and all other obligations hereunder.

8. It is agreed that payment in full is a condition of delivery of the service certificate by the Seller. Buyer grants Seller a security interest in such service certificate and any foal, in utero or born alive, as a result of aforesaid breeding in order to secure payment of amounts due or to become due hereunder or for boarding any horse owned by Buyer.

9. This agreement shall be binding upon the parties hereto, their heirs, personal representatives and successors, and shall be construed and governed in accordance with the laws of the state of Kentucky.

10. The parties hereto further acknowledge that this contains the entire agreement of the parties and that neither of the parties hereto is relying upon any verbal assurances of whatever nature that are not contained and expressed in this Agreement. Except as specifically set forth herein, there are NO REPRESENTATIONS OR WARRANTIES AND NO IMPLIED WARRANTY AS TO THE MERCHANTABILITY OR FITNESS OF THE STALLION OR HIS SEMEN FOR ANY PURPOSE SHALL ARISE BY VIRTUE OF THIS TRANSACTION.

11. BINDING. This contract shall be Voidable at the sellers option unless postmarked within twenty (20) days from the date entered below. Facsimile signature has full force and effect of the original signature.

ADDENDUMS:   None

IN TESTIMONY WHEREOF, the parties hereto have set their hands to duplicate copies of this Agreement on this date, June 06,2011

**BUYER:**

Signature _____  Date 6-6-11

**SELLER: Walmac Farm, LLC, By:**

Signature _____  Date 6/6/2011

**Void After Sunday, June 26, 2011**

PLEASE RETURN ORIGINAL, KEEPING ONE COPY.

WalmacRER 13515

This Agreement dated June 3, 2011 by and between Walmac Stud Management, LLC. (hereafter "Walmac") and Hardeman, LLC. (hereafter "Hardeman") (collectively the "Parties") relative to the thoroughbred mares: GRAND JOURNEY, and LIL IRENE (hereafter collectively the "Mares"), the Parties agree as follows:

Whereas, Hardeman owns the Mares and desires to sell a 50% interest in the Mares (hereinafter the "Purchased Interest") and Walmac desires to buy the Purchased Interest the Parties agree that:

1) Walmac shall pay Hardeman $3,000 USD payable May 1, 2012 for each mare that is in foal as of that date.

2) The Purchased Interest shall entitle Walmac to the First $4,000 USD of gross proceeds received from the sale of the production of each mare.

3) Walmac shall not be liable for any expenses related to the Purchased Interest.

4) All proceeds for future sale of the production from a Mare or the Mares shall be to the account of Hardeman, LLC.

Agreed by the Parties:
Hardeman, LLC.                                        Walmac Stud Managmenet, LLC.

**brisnet.com**

*Information is our business*

LIL IRENE, 1996, Lil E. Tee- Classy Irene by El Baba.

| | YRS | ST | WN | PL | SH | EARNED | SR | SSI |
|---|---|---|---|---|---|---|---|---|
| 2002 Kathy's Lil Cat, B, f, Catienus | | | | | | | | |
| In North America | 5 | 35 | 8 | 6 | 3 | 176,580 | ( 95) | 1.96 |
| North America 2 YO Record | | 5 | 1 | 1 | 0 | 29,639 | ( 88) | |
| North America Dirt Sprints | | 20 | 4 | 4 | 3 | 91,233 | ( 95) | |
| North America Dirt Routes | | 7 | 2 | 1 | 0 | 44,883 | ( 91) | |
| North America Muddy/Sloppy | | 6 | 2 | 0 | 0 | 10,798 | ( 85) | |
| North America All Weather Sprints | | 7 | 2 | 1 | 0 | 40,306 | ( 86) | |
| North America All Weather Routes | | 1 | 0 | 0 | 0 | 158 | ( 81) | |
| DP =6-2-4-0-0     DI = 5.00 | | CD =1.17 | | | | AWD = 6.63 | | |
| 2004 Oscar's Wife, Dk B/, f, Catienus | | | | | | | | |
| In North America | 2 | 6 | 0 | 0 | 0 | 1,260 | ( 54) | 0.06 |
| North America 2 YO Record | | 1 | 0 | 0 | 0 | 0 | ( 30) | |
| North America Dirt Sprints | | 4 | 0 | 0 | 0 | 1,000 | ( 44) | |
| North America Dirt Routes | | 2 | 0 | 0 | 0 | 260 | ( 54) | |
| North America Muddy/Sloppy | | 1 | 0 | 0 | 0 | 500 | ( 37) | |
| DP = 6-2-4-0-0     DI = 5.00 | | CD =1.17 | | | | | | |

| Sale | | Hip # | Sales Price | Sire Avg | | Rank | Stud Fee |
|---|---|---|---|---|---|---|---|
| FTMOCT 2005 | | 476 | $3,500 | $10,850 ylg | | (33/44) | $3,500 |

| | YRS | ST | WN | PL | SH | EARNED | SR | SSI |
|---|---|---|---|---|---|---|---|---|
| 2005 One Little Secret, Ch, g, Catienus | | | | | | | | |
| In North America | 4 | 53 | 6 | 8 | 7 | 83,737 | ( 85) | 0.51 |
| North America 2 YO Record | | 8 | 1 | 2 | 2 | 32,800 | ( 83) | |
| North America Dirt Sprints | | 47 | 5 | 7 | 7 | 69,611 | ( 85) | |
| North America Dirt Routes | | 6 | 1 | 1 | 0 | 14,126 | ( 79) | |
| North America Muddy/Sloppy | | 10 | 3 | 1 | 0 | 24,631 | ( 85) | |
| DP =6-2-4-0-0     DI = 5.00 | | CD =1.17 | | | | AWD = 6.11 | | |
| 2006 Dapper Gene, Dkbbr, g, Catienus | | | | | | | | |
| In North America | 3 | 22 | 4 | 2 | 5 | 152,760 | ( 96) | 2.61 |
| North America 2 YO Record | | 1 | 0 | 0 | 0 | 1,920 | ( 79) | |
| North America Turf Record | | 10 | 3 | 1 | 0 | 76,560 | ( 96) | |
| North America Dirt Sprints | | 1 | 0 | 0 | 1 | 3,960 | ( 93) | |
| North America All Weather Sprints | | 10 | 1 | 1 | 4 | 69,120 | ( 94) | |
| North America All Weather Routes | | 1 | 0 | 0 | 0 | 3,120 | ( 88) | |
| DP =6-2-4-0-0     DI = 5.00 | | CD =1.17 | | | | AWD = 6.25 | | |

| Sale | | Hip # | Sales Price | Sire Avg | | Rank | Stud Fee |
|---|---|---|---|---|---|---|---|
| KEEJAN 2007 | | 1163 | $33,000 | $13,103 ylg | | (4/26) | $3,500 |
| KEESEP 2007 | | 4250 | $45,000 | $13,103 ylg | | (1/26) | $3,500 |

2007 Dead Foal
2008 Slipped
2009 Unnamed, Ch, f, Songandaprayer

DP = 2-4-4-0-0          DI = 4.00          CD = 0.80

*SIRE:* 1.21 Spi, 388str, 40%2yo, 11%1st, 15%Mud/424sts, 10%Tf/649sts, AWD 6.00
*DAM:* (w) 1.28 Dpi, 4 2yostr/2wnr, 29%Mud/17sts, 1 Tfstr/1wnr, 4 Rtestr/2wnr, AWD 6.37

| Sale | | Hip # | Sales Price | Sire Avg | | Rank | Stud Fee |
|---|---|---|---|---|---|---|---|
| KEENOV 2009 | | 1283 | $17,000 RNA | $9,942 wlg | | | $25,000 |

2010 Slipped

Copyright 2011, Bloodstock Research Information Services

## Dan Rapp

| | |
|---|---|
| **From:** | "Sarah Clark" <sclark@walmac.com> |
| **To:** | <cmartin@walmac.com> |
| **Cc:** | <drapp@walmac.com>; "Marcia Skiles" <mskiles@walmac.com> |
| **Sent:** | Friday, June 03, 2011 2:00 PM |
| **Attach:** | Hardeman Agreement dated June 3, 2011.doc |
| **Subject:** | Grand Journey & Lil Irene |

Connie,

Please have JTLJ, JR. sign the attached agreement.


Marcia,

These mares are to be placed on WSM, LLC. breeding rights to Ready's Image for the 2011 season.


Please reply with questions.

Sarah

6/3/2011

Date: 6/3/11                                                    Contract # 2C

## SEASON REQUEST FORM

Mare: _Lil Irene_            Stallion: _Ready's Image._

☐ Entered In HFM

Sire: _Lil E Tee_           Contract Price: _____

Dam: _Classy Irene_         Contract Terms: _____

Dam Sire: _El Baba_         Year Born: _96._   Color: _____

In Foal To: _foaling._      Last Date Bred: _____

20   Foal: _____   20   Foal: _____

---

Mare Owner: _JR Jones JR._

☐ Entered In HFM

Address: _____

_____

_____ email: _____

Phone: _____ Cell: _____ Fax: _____

---

Pay Commission: _None._   Percent: _____ Dollar Amount: _____

Agent: _____

☐ Entered In HFM

Address: _____

_____

_____ email: _____

Phone: _____ Cell: _____ Fax: _____

---

☑ Approved By _JH  6/3_             ☐ Needs boarding farm contract
             _2PM_

☐ Denied                            ☐ Send Brochure

---

Special notes: _2 MARES. Eil Irene & Grand Journey_
_Seasons from Stud Management._

Walmac R 11455