UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES T. SCATUORCHIO RACING STABLE, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5: 11-374-DCR |
| V. | ) ) | |
| WALMAC STUD MANAGEMENT, LLC, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of Defendants Walmac Farm, LLC ("Walmac Farm"), and Walmac Stud Management, LLC's ("Walmac Stud") motion for summary judgment regarding claims of breach of contract and the duty of good faith and fair dealing asserted by Plaintiff Bryan Sullivan. [Record No. 165] The defendants contend that Sullivan's claims pertaining to the Mare Agreement are subject to summary judgment because he did not perform the required obligations set out by that contract. For the reasons discussed below, the Court will deny the defendants' motion.

**I.**

This action arises from a series of contracts and agreements. Plaintiff James Scatuorchio has been involved in the thoroughbred industry for over a dozen years and is also the sole member of James T. Scatuorchio, LLC. [Record No. 72 ¶¶ 17, 18] Scatuorchio, LLC, and James Scatuorchio's children, Kevin Scatuorchio and Courtney Sullivan, own interest in the

stallion Ready's Image. [*Id.* ¶ 19] Walmac Farm is a stud farm located in Lexington, Kentucky. It is in the business of boarding, breeding, selling, and marketing the breeding potential of stallions. [*Id.* ¶ 24] John T.L. Jones is a member, officer, and employee of Walmac Farm and Walmac Stud. [*Id.* ¶ 10]

In 2008, Walmac Farm, Walmac Stud, and John T.L. Jones ("Walmacs") discussed with James Scatuorchio the purchase of an interest in Ready's Image and managing its career as a stud. [*Id.* ¶ 20] The Walmacs represented that they could "do everything that was necessary to maximize the likelihood of Ready's Image's success." [*Id.* ¶ 27] The Walmacs also claimed that they would expose Ready's Image to a large number of mares in its first breeding season. [*Id.* ¶ 28] In response, Scatuorchio, LLC, Kevin Scatuorchio, and Courtney Sullivan sold a two-thirds undivided interest in Ready's Image to Walmac Stud for $2.4 million. [*Id.* ¶¶ 32, 47]

In 2010, James Scatuorchio, Kevin Scatuorchio, and Bryan Sullivan (the "Mare Plaintiffs") became concerned that not enough had been done to promote Ready's Image. [*Id.* ¶ 69] As a result, they entered into a Mare Agreement with Walmac Farm. [*Id.* ¶¶ 68-70] Under the agreement, the Mare Plaintiffs would receive the proceeds of any contract for mares they delivered to Walmac Farm for breeding with Ready's Image. [Record No. 72-1] To be entitled to the proceeds, the Mare Plaintiffs had to pay shipping expenses, boarding expenses, and veterinary charges for each mare. [*Id.*] The Mare Plaintiffs delivered at least ten mares to the Walmacs. [Record No. 72 ¶ 83]

The Mare Plaintiffs have asserted claims of breach of the Mare Agreement and of the duty of good faith and fair dealing. [*Id.* ¶¶ 97-99, 110-14] They claim that the defendants failed

to meet their obligations as set forth in the contract. Additionally, they contend that they have not received any funds from Walmac Farm or Walmac Stud under to the Mare Agreement. [*Id.* ¶¶ 73, 76] The defendants have moved for summary judgment regarding the claims asserted by Sullivan under the Mare Agreement. [Record No. 165] They claim that, because Sullivan did not individually pay for the shipping expenses, board expenses, and veterinary charges for any mares, he cannot seek to recover under the Mare Agreement. [*See* Record No. 162-1.]

**II.**

Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, the nonmoving party must present

"significant probative evidence" of a genuine dispute . . . to defeat the motion for summary judgment. *Chao*, 285 F.3d at 424. The nonmoving party cannot simply rely upon the assertions in its pleadings; rather, it must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

### III.

Defendants Walmac Farm and Walmac Stud argue that they are entitled to summary judgment regarding Bryan Sullivan's breach of contract claims because he did not perform the required duties set by the Mare Agreement. [Record No. 165-1, pp. 1-4] However, the Sullivan responds that there are genuine issues of material fact that render summary judgment inappropriate.[1] [Record No. 174, pp. 8-19]

The Mare Agreement contains the following relevant terms[2]:

1) The "Original Ready's Image Owners" pay shipping costs from another state to and from Kentucky for a mare . . . shipped in 2010 to breed to Ready's Image and pay to the board and routine veterinary charges for the Mare while boarded in Kentucky for the 2010 breeding . . .

---

[1] The plaintiffs also argue that Sullivan's claims under the Mare Agreement must be viewed in light of the defendants' actions concerning other claims and contracts. They assert that viewing the defendants' actions collectively demonstrates genuine issues of material fact concerning Sullivan's claims for breach of contract and of the duty of good faith and fair dealing under the Mare Agreement. [Record No. 174, pp. 12-19] However, these other assertions are largely irrelevant regarding whether Sullivan can assert his claims, even though he did not make the payments required by the Mare Agreement; the sole issue presented by the defendants' motion.

[2] Under the Mare Agreement, the Mare Plaintiffs are collectively defined as "the Original Ready's Image Owners." [Record No. 72-1]

> Then the Ready's Image Syndicate shall remit all proceeds from the sale of each contract executed for such mare to the Original Ready's Image Owners.

[Record No. 72-1, p. 1]

Sullivan admits that he did not pay the shipping expenses, boarding expenses, or veterinary charges for any mare. [Record No. 165-2, pp. 61-62] Rather, James Scatuorchio claims that he has paid all of the costs required by the Mare Agreement. [Record No. 174-8, pp. 225-26] Defendants Walmac Stud and Walmac Farm contend that because Sullivan did not pay the costs himself, he cannot assert claims of breach of the contract or good faith and fair dealing, as he has no right to recover under the Mare Agreement. Sullivan responds that the Mare Plaintiffs collectively satisfied all of the Mare Agreement's requirements and, therefore, are entitled to enforce the contract.

The defendants cite no legal authority to support their argument other than defining the standard for summary judgment. [*See* Record No. 165-1.] Therefore, the Court construes their argument to be that Sullivan's nonperformance of a condition precedent prevents him asserting the claims under the Mare Agreement. Kentucky law states that if a condition precedent is not satisfied, the contract is not enforceable and the parties are not liable for damages. *See Collings v. Scheen*, 415 S.W.2d 589 (Ky. 1967). A condition precedent is a condition which must be fulfilled before the duty to perform arises. *Summit Petroleum Corp. of Indiana v. Ingersoll-Rand Fin. Corp.*, 909 F.2d 862, 866 (6th Cir. 1990) (citations omitted). According to the Mare Agreement, the remittance of the proceeds is conditioned upon the payment of the required costs. [Record No. 72-1] Therefore, performance by the Mare Plaintiffs is a condition precedent to performance by the defendants. If that condition was not performed, then the duty to perform

would not arise for the defendants. *Breckinridge Cnty. v. Beard*, 27 S.W.2d 427, 429 (Ky. 1930). James Scatuorchio alleges that he did pay all of the required costs, but Bryan Sullivan admits that he did not. [Record No. 174-8, pp. 225-26; Record No. 165-2, pp. 61-62] Thus, the issue becomes whether Bryan Sullivan had an individual obligation to make the required payments under the Mare Agreement. To determine if Sullivan had an individual obligation under the Mare Agreement, the Court must analyze whether the contract created joint, several, or joint and several obligations for the Mare Plaintiffs.

Parties to a contract can bind themselves to joint, several, or joint and several obligations. 12 Williston on Contracts § 36:1 (4th ed.). A joint obligation means that each promisor is responsible for the whole performance jointly assumed. *Id.* A several obligation has the effect of creating separate contracts. *Id.* Each party to a several obligation is bound to perform that obligation individually. If a contract is joint and several, each party is bound together as one party and also separate parties simultaneously. *Id.* Here, if the contract was joint, the alleged payment of the required fees by James Scatuorchio would also satisfy the other Mare Plaintiff's obligation. If the Mare Agreement created a several obligation, Sullivan would not have satisfied his obligation to pay the required costs and, therefore, would not be able to assert a claim under the contract. If a promisor in a contract with a joint and several obligation performs the required obligation, he discharges the duties regarding his co-promisors. 17A C.J.S. Contracts § 473. The defendants argue that because Bryan Sullivan did not personally pay the obligated fees, he did not satisfy the requirements of the contract and cannot recover. Therefore, the defendants claim that the Mare Agreement imposed a several obligation rather than a joint

or joint and several one. If the obligation is joint or joint and several, then the alleged payment made by James Scatuorchio would satisfy the other parties' obligations.

An obligation given to two or more persons is usually assumed to be a joint obligation, unless there are distinct words of severance that make the obligation several or joint and several. 17A Am. Jur. 2d Contracts § 421. When there are two or more parties to a contract that make promises to the same promisee, the intention of the parties determines if they promise the same or separate performance. *Warning v. Institutional Distributors, Inc.*, No. 2003-CA-000506-MR, 2004 WL 2071407, at *2 (Ky. Ct. App. Sept. 17, 2004) (citing Restatement (Second) of Contracts § 288 (1981)). If a contrary intent is not demonstrated in the contract, the promise will be construed as promising the same performance. Restatement (Second) of Contracts § 288 (1981). Thus, unless the parties to the Mare Agreement intended to make the obligation concerning the required payments several, the alleged performance of James Scatuorchio would satisfy the requirements of all of the Mare Plaintiffs and Sullivan would not have and individual obligation to make the payments. Thus, the Court must examine the Mare Agreement to determine the intent of the parties regarding the type of obligation it created for the Mare Plaintiffs.

An unambiguous written contract must be strictly enforced according to the plain meaning of its express terms and without resort to extrinsic evidence. *Allen v. Lawyers Mut. Ins. Co. of Kentucky*, 216 S.W.3d 657, 659 (Ky. Ct. App. 2007). A contract is not ambiguous if a reasonable person would find its terms susceptible to only one meaning; however, if the provisions in controversy are reasonably susceptible to different or inconsistent interpretations,

the contract is ambiguous. *Cadleway Properties, Inc. v. Bayview Loan Servicing, LLC* 338 S.W.3d 280, 286 (Ky. Ct. App. 2010). Summary judgment is appropriate when a court is interpreting the legal effect of unambiguous contract language. *Zetter v. Griffith Aviation, Inc.*, 435 F. Supp. 2d 622, 628-29 (E.D. Ky. 2006). Whether the language of a contract is ambiguous is a question of law that may be resolved *via* summary judgment, but summary judgment is only appropriate when there are no questions of fact concerning the intention of the parties. *International Union, United Mine Workers of America v. Apogee Coal Co.*, 330 F.3d 740, 744 (6th Cir. 2003).

To determine the intention of the parties to a written contract the intent must be construed from the four corners of the document. However, if the document is ambiguous, the question of the parties' intent is factual and inappropriate for summary judgment. *Clark v. Hectus & Strause PLLC*, 345 S.W.3d 857, 859 (Ky. Ct. App. 2011). Here, if the parties' intent to create a several obligation for the Mare Plaintiffs is unambiguous from the four corners of the contract, then Sullivan's claims would be subject to summary judgment as he did not perform the required obligations. However, if the intent to create a several obligation cannot be discerned, the parties' intent is ambiguous and a question of fact still exists, making summary judgment inappropriate.

The Mare Agreement is silent regarding the required method of performance for the payment of shipping expenses, board expenses, and veterinary costs. [*See* Record No. 72-1.] Concerning payment, the Mare Agreement states that "'[t]he "Original Ready's Image Owners' pay [the shipping, board, and veterinary costs]."[3] [*Id.*] While Walmac Farm and Walmac Stud

---

3     The defendants take issue with the fact that Sullivan signed the contract as an "original owner" of Ready's Image, even though he did not have an ownership interest in the horse. [Record No. 165-1, p. 2]

-8-

argue that Sullivan was required to individually pay for these costs, as a several obligation, they do not state the manner in which the Mare Agreement required him to pay. For example, Sullivan could have paid a pro-rata share of the costs or a nominal amount for each mare. The Mare Agreement is silent on what would constitute sufficient performance.

Further, throughout the Mare Agreement, the Mare Plaintiffs are referred to collectively as the "Original Ready's Image Owners." [*See* Record No. 72-1.] Nothing in the Mare Agreement explicitly mentions that the Mare Plaintiffs must individually perform the required obligation. [*Id*.] The Mare Agreement does not mention the individuals at all, except when defining them as the "Original Ready's Image Owners." The only reasonable interpretation of the Mare Agreement is that any duties set out in the contract must be performed collectively by the Mare Plaintiffs. The Mare Agreement uses the collective title throughout its entirety, does not mention individual duties, and does not lay out the methodology of performance concerning the contracting individuals. [*Id*.] Further, the Mare Agreement states that remittance of the proceeds will be made to the entirety of the Mare Plaintiffs.[4]

Thus, there is ample evidence that the contracting parties did not intend to create a scheme of individual or several obligations. In fact, no reasonable interpretation of the contract could find that it created several obligations. There is an absence of any language requiring the obligations to be undertaken severally, demonstrating that the duty was joint or joint and several.

---

However, this argument is not developed and no claims of fraud have been asserted against Bryan Sullivan. Thus, the Court will not consider this allegation regarding the pending motion.

4 The Mare Agreement states that if the requisite obligations are satisfied "the Ready's Syndicate shall remit all proceeds from the sale of each contract executed for such mare to the Original Ready's Image Owners." [Record No. 72-1] There is no language limiting this remittance to the individual parties.

17A Am. Jur. 2d Contracts § 421. Further, even if the intent of the parties setting out the obligations could not be ascertained by analyzing the contract, summary judgment would be inappropriate, as the intent of the parties would be a question of fact. *Clark*, 345 S.W.3d at 859. As there is no mention of individual duties within the contract, the most that could be argued from the defendants' position is that the Mare Agreement is ambiguous. The alleged payments made by James Scatuorchio would be sufficient to satisfy the Original Ready's Image Owners' obligations. The Mare Agreement set out an obligation that could be satisfied by any of the Mare Plaintiffs. As a result, Sullivan's required performance according was not individual or several and he can seek action under it. Accordingly, it is hereby

**ORDERED** that Defendants Walmac Farm, LLC and Walmac Stud Management, LLC's motion for summary judgment [Record No. 165] is **DENIED**.

This 19th day of March, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge