UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES T. SCATUORCHIO RACING STABLE, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5: 11-374-DCR |
| V. | ) ) | |
| WALMAC STUD MANAGEMENT, LLC, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Walmac Stud Management, LLC ("Walmac Stud"); Walmac Farm, LLC ("Walmac Farm"); Lincoln-Walmac Associated Farm Pty Ltd. ("Lincoln-Walmac"); John T.L. Jones III ("Jones"); and Saybrook Advertising, LLC's ("Saybrook") have moved the Court to compel arbitration and reconsider and amend an earlier Amended Memorandum Opinion and Order.[1]  [Record No. 131]  They contend that findings made during discovery require that the claims against Walmac Farm and Saybrook be subject to arbitration.  Specifically, the defendants seek to compel arbitration of the accounting and fraud claims against Walmac Farm (Counts Nine and Ten of the Second Amended Complaint) as well as the fraud claim against Saybrook, (Count Nine).

---

1    Although this motion was filed by a number of defendants, the claims that are the subject of the motion and which are argued to be subject to arbitration concern only Defendants Walmac Farm and Saybrook.  Defendant Lincoln-Walmac did not request that the plaintiffs' accounting claim (Count Nine) against it be sent to arbitration.

Plaintiffs James T. Scatuorchio, LLC ("Scatuorchio, LLC"), Kevin Scatuorchio, and Courtney Sullivan have also moved the Court for leave to file a Third Amended Complaint for the purpose of adding claims against Defendants Walmac Farm, Lincoln-Walmac, and Saybrook.[2] [Record No. 133] For the reasons discussed below, the Court will grant the defendants' motion to reconsider and compel arbitration, but will deny the plaintiffs' motion to amend.

## I.

The factual and procedural history of this matter is lengthy and complicated. [*See* Record Nos. 103, 127.] In pertinent part, this action arises from a series of contracts relating to the purchase and breeding of the thoroughbred stallion Ready's Image which is currently co-owned by Plaintiffs Scatuorchio, LLC, James T. Scatuorchio, Kevin Scatuorchio, Courtney Sullivan, and Bryan Sullivan, and a number of the defendants. The plaintiffs' Complaint is predicated upon the alleged "dishonest and fraudulent" manner in which the defendants managed the stud career of Ready's Image and breach of a number of written contracts between the plaintiffs, Walmac Stud, Walmac Farm, and other defendants.

In October 2008, Scatuorchio, LLC, Kevin Scatuorchio, and Courtney Sullivan sold a two-thirds undivided interest in Ready's Image to Walmac Stud for $2.4 million. The transaction was memorialized in a "Sale Agreement." [Record No. 72, ¶¶ 32, 47] In addition to the Sale Agreement, the co-owners of Ready's Image, including Defendant Walmac Stud and

---

2    Although Plaintiffs James T. Scatuorchio, individually, and Bryan Sullivan remain plaintiffs on various claims asserted in the Second Amended Complaint, they are not parties to those asserted in the proposed Third Amended Complaint.

Plaintiffs Kevin Scatuorchio, Courtney Sullivan, and James T. Scatuorchio, LLC, by its member James Scatuorchio, executed a Stallion Co-Ownership Agreement ("COA").

One purpose of the COA was to establish the terms and conditions of the parties' relationship as co-owners of Ready's Image.[3]  Under the COA, Walmac Stud was named as the "Stallion Manager" and would be responsible for the day-to-day management of Ready's Image and "procuring business for the syndicate in the form of mare owners paying to breed their mares to Ready's Image." [Record No. 109, p. 5; Record No. 72 ¶ 39]  As Stallion Manager, Walmac Stud had broad responsibilities for the supervision and management of the stallion, including setting the stallion service fee; determining the number of times the stallion was to be bred; marketing and selling all nominations; collecting the proceeds from the sales; paying expenses; and distributing net income or billing for net expenses to the owners. [Record No. 72-1, pp. 8-20; *see also* Record No. 133-1, p. 3.]  The plaintiffs contend that as the Stallion Manager, not only was Walmac Stud a co-owner, but also an agent of the co-owners. [*See, e.g.*, Record No. 133-1, p. 3.]

The COA contains an arbitration provision that states, in pertinent part:

> **7.16 Arbitration.** If a disagreement exists among the Co-Owners or between one or more of the Co-Owners and the Stallion Manager concerning **READY'S IMAGE** or relating to the relationships, rights, duties, or obligations hereunder (a "Dispute"), any one of the disputants may require the other parties to submit the Dispute to arbitration if good faith negotiations among the parties do not resolve the Dispute.

---

3       Following the execution of the COA, the parties entered into a number of other written agreements further defining their interests, rights, and obligations regarding the ownership and stud career of Ready's Image, including the Installment Agreement, Southern Hemisphere Co-Ownership Agreement, Southern Hemisphere Lease Agreement, and the Mare Agreement.

[Record No. 72-1, p. 33] The scope of this provision has been a hotly contested issue throughout the course of this litigation.

The plaintiffs initiated this action in New Jersey state court whereupon the defendants removed the case to the District Court of New Jersey. [*See* Record No. 1] Once in a federal forum, the defendants renewed their motion to dismiss, arguing that all of the plaintiffs' claims are subject to the arbitration provision of the COA, as well as other alternative dispute resolution provisions outlined in a number of the parties' other contracts. [Record No. 19] However, before ruling on the merits of the defendants' motion, this matter was transferred to the United States District Court for the Eastern District of Kentucky and assigned to (now retired) United States District Court Judge Jennifer Coffman. [Record Nos. 28, 29, 30]

Following transfer, the defendants moved to again renew their motion to dismiss in favor of arbitration (a motion which had not yet been addressed on its merits).[4] [Record No. 31] Following oral arguments and briefing, Judge Coffman concluded that the COA contains a legally binding arbitration provision. She next addressed the scope of the COA's arbitration provision finding that, given the "expansive arbitration provision as well as the policy favoring arbitration as to doubts regarding the scope of an arbitration provision, all of the plaintiffs' claims except counts 3, 6, and parts of 8 and 14 will be submitted to arbitration." [Record No. 86, p. 10] However, Judge Coffman further concluded that the defendants failed to demonstrate that the non-signatory parties, including, in part, Bryan Sullivan, Saybrook, Walmac Farm, and Lincoln-Walamc are bound by the arbitration provision of the COA. [*Id.*, p. 15 (noting that

---

4       The plaintiffs' attempt to color the defendants' motion to reconsider and compel arbitration as a "fourth[] bite at the apple" is disingenuous and misconstrues the actual facts of this matter. [Record No. 140, p. 2] Moreover, this is the type of bickering that has plagued this litigation leading to its protracted nature.

although non-signatories may be bound to an arbitration provision of a contract, it must be demonstrated that the non-signatories were "third party direct beneficiaries" to the contract) (citing *Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. Ct. App. 2009)] Thus, Judge Coffman determined that only James T. Scatuorchio, LLC, Walmac Stud, John T.L. Jones, III, James Scatuorchio, Kevin Scatuorchio, and Courtney Sullivan "are bound to arbitrate the claims brought against them which fall under the scope of the COA arbitration provision." [*Id.*, p. 16]

Notwithstanding the above ruling, the parties disagreed regarding the extent to which claims remained before the Court and which were sent to arbitration. [Record No. 96] The parties each filed Position Statements which the Court treated as a joint motion to clarify. [Record Nos. 98, 99, 102] On January 2, 2013, the Court issued an Amended Memorandum Opinion and Order clarifying that, although the certain claims against Jones and Walmac Stud were subject to arbitration, the same claims against Walmac Farm and Saybrook were not arbitrable because they were not a signatory to the agreements. [Record No. 103] Specifically, the Court concluded that, despite being based on the same allegations, the plaintiffs' accounting claim against Walmac Stud and Jones would be sent to arbitration, while the accounting claim against Walmac Farm, Lincoln-Walmac, and Saybrook would remain before the Court.[5] Likewise, the plaintiffs' fraud claim (again, based on the same allegations) was ordered to arbitration against Walmac Stud and Jones, but remained before the Court as it pertained to Walmac Farm and Saybrook.

---

[5] On April 19, 2013, the defendants' motion to dismiss Count Nine against Saybrook was granted. [Record No. 127]

Following Judge Coffman's retirement, this matter was reassigned to the undersigned on January 9, 2013. Upon reassignment, the Court entered a Scheduling Order and discovery progressed. It should come as no surprise that the defendants now request the Court to reconsider Judge Coffman's prior decision regarding the arbitrability of their claims. [Record No. 131]

## II.

The defendants contend that recent discovery responses have made it clear for the first time that the claims against Walmac Farm and Saybrook are being asserted on the basis that they "are agents of, conspirators with, and alter-egos of" Walmac Stud and Jones "for wrongdoing under the [COA]." [Record No. 131-1, pp. 1-2] Thus, they maintain that arbitration of the fraud claim against Saybrook (Count Ten) and the accounting and fraud claims against Walmac Farm (Count Nine and Ten, respectively) are necessary. The plaintiffs argue that, because defendants have failed to demonstrate that their motion to reconsider is warranted, the Court need not reach the substance of their claims. [Record No. 140, pp. 1-2] Further, they contend that even if the Court reconsiders the merits of the defendants' arguments, both the plain language of the arbitration clause of the COA and the defendants' alleged wrongful conduct preclude a different result. [*Id.*]

## A.      Motion to Reconsider

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008); *see also Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) [of the Federal Rules of Civil Procedure] to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment.").  "A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*,  922 F.2d 1273, 1282 (6th Cir. 1991); *Leelanau Wine Cellars Ltd. v. Black & Red, Inc.*,  118 F. App'x 942, 946 (6th Cir.2004).  The Court has "significant discretion" in considering a motion to reconsider an interlocutory order and, "[t]raditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x. at 959.

The plaintiffs argue that the merits of the defendants' motion should not be considered because "nothing has changed," either in the law or facts, to warrant a different outcome. [Record No. 140, pp. 1-2]  They contend that the defendants' motion amounts only to re-argument of evidence that was already available to the defendants at the time of the Court's prior ruling which would have allowed them to conclude that the claims against Saybrook and Walmac Farm were based upon theories of agency, concert of action, aiding and abetting, and conspiracy.  [*See* Record No. 140, p. 6 ("Having lost on their argument the first time, perhaps Defendants wish they would have better articulated why it was that they were entitled to relief, or expanded upon certain arguments and left others by the wayside.").]

In support, the plaintiffs cite to a number of paragraphs from the Second Amended Complaint; however, each is devoid of any claim of such derivative status. Even in their attempt to support their argument that the basis for the alleged liability of Saybrook and Walmac Farm was apparent, the plaintiffs acknowledge the imprecise nature of their prior pleadings. [*Id.*, p. 6 (stating that this information was previously alleged, but noting that "the mere fact that it is now stated with more specificity in the discovery responses does not meant that it was unknown or not available . . . .")] Notwithstanding this concession, it is within the Court's discretion to reconsider prior, non-final orders.

Despite the plaintiffs' arguments to the contrary, the defendants have sufficiently demonstrated the necessity of their motion. The defendants have presented evidence obtained during discovery which establishes that the basis of liability of Walmac Farm and Saybrook is predicated on their derivative status of co-conspirators, agents, and aiders-and-abettors of Walmac Stud under the COA, as well as claims of concert of action. Based upon this new information, reconsideration is appropriate.

**B.      Scope of the Arbitration Provision**

The plaintiffs argue that the scope of the COA's arbitration provision is constrained by the language of the agreement and that the fraud claims asserted against Walmac Farm and Saybrook, as well as the accounting claim against Walmac Farm, fall beyond the reach of the provision. Specifically, they contend that the language of the agreement limits arbitration of only disputes between the co-owners as identified in the COA (Scatuorchio, LLC, Kevin Scatuorchio, Courtney Sullivan, and Walmac Stud) as well as disputes between any of the co-

owners and the stallion manager (Walmac Stud), and that the provision's plain language does not allow non-signatories to compel arbitration. [Record No. 140, pp. 7-8]

It is well-settled that "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Federal courts should look to state contract law to determine the validity of an arbitration clause and, in this case, whether a non-signatory may invoke the provision and compel arbitration. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003). However, courts must keep in mind when determining the scope of an arbitration agreement, that the Federal Arbitration Act ("FAA") "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Beyt, Rish, Robbins Grp. v. Appalachian Reg'l Healthcare, Inc.*, 854 S.W.2d 784, 786 (Ky. Ct. App. 1993) (noting that Kentucky law expresses a strong public policy in favor of enforcing arbitration agreements).

The Court's prior ruling correctly determined that a valid arbitration agreement exists. [*See* Record No. 103, pp. 9-10; *see generally* Record No. 103 (applying the four-pronged test of *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).] Additionally, it concluded that "considering the expansive arbitration provision as well as the policy favoring arbitration as to doubts regarding the scope of an arbitration provision," the plaintiffs' accounting claim (Count Nine) and fraud claim (Count Ten) should be submitted to arbitration. [Record No. 103, p. 10

(noting that to determine whether the plaintiffs' claims fall within the scope of the arbitration agreement hinges on whether "an action [for each claim] could be maintained without reference to the contract or relationship at issue") (quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003)]  The parties do not dispute these rulings.  Instead, the current issue centers on whether Walmac Farm and Saybrook may be able to avail themselves of COA's arbitration provision as non-signatories to that agreement.[6]

The Sixth Circuit has recognized five theories binding non-signatories to arbitration agreements: (i) incorporation by reference, (ii) assumption, (iii) agency, (iv) veil-piercing/alter ego, and (v) equitable estoppel.  *Javitch*, 315 F.3d at 629; *see also Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (holding that non-signatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles).  Underpinning this rationale is the understanding that if a signatory to an arbitration agreement "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as defendants in his complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified." *Arnold*, 920 F.2d at 1281 (quotation marks and citations omitted) (alterations omitted).

Walmac Farm and Saybrook argue that they are entitled to enforce the COA's arbitration agreement because the plaintiffs' fraud and accounting claims are based upon the their relationship as co-conspirators, agents, and alter-egos of Walmac Stud and Jones, and because

---

6    The Court's review of the January 2, 2013 Amended Memorandum Opinion and Order is limited to this narrow issue raised by the parties in connection with the defendants' motion to reconsider.  As such, the Court adopts and incorporates the analysis and all other conclusions contained in the January 2, 2013 Amended Memorandum Opinion and Order.  [Record No. 103]

those claims are based on obligations under the COA. Indeed, in *Arthur Anderson LLP v. Carlisle,* 556 U.S.624 (2009), the Supreme Court held that a non-signatory to an arbitration agreement can compel parties to arbitrate under the FAA where "the relevant state contract law allows him to enforce the agreement." *Id.* at 632. In reaching this conclusion, the Court explained "because traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel," prior holdings that non-parties to a contract are categorically barred from invoking the arbitration agreement are in error. *Id.* at 631.

Likewise, in *Kruse v. AFLAC International, Inc.*, 458 F. Supp. 375 (E.D. Ky. 2006), the Sixth Circuit determined that a non-signatory agent may enforce an arbitration agreement executed by its principal when the agent was sued for actions taken in its capacity as an employee or agent. *Id.* at 382-84. More specifically, Kruse filed suit against Defendant AFLAC, three related entities of AFLAC, and an individual employee of one of the entities. The defendants moved to dismiss the case, arguing that Kruse's claims were subject to the arbitration agreement between Kruse, AFLAC, and one of the entities. The court explicitly rejected Kruse's argument that she could not be forced to arbitrate her claims and that there was not a valid arbitration agreement because two of the other entities and the individual defendant were not signatories to the arbitration agreement. The court held that while Kruse correctly pointed out that three of the defendants were non-signatories to the agreement, "their status as non-signatories is not dispositive on the question of whether plaintiff is bound by the arbitration provision of the Agreement." *Id.* at 382. Rather, "a party does not have to personally sign an

agreement to be bound, but may stand in the shoes of the entity that signed the agreement." *Id.* at 383.

The *Kruse* court concluded that the non-signatory entity defendants were permitted to enforce the agreement and arbitrate the claims asserted against them because they "are all related entities and stand in the shoes of the party that actually signed the Agreement." *Id.* Turning to the non-signatory individual defendant, the court noted that he was being sued "in his capacity as an employee or agent of AFLAC" and that the claims against him originate from his alleged wrongful conduct in that capacity. The court found that "[w]here a party alleges that a nonsignatory engaged in a conspiracy with a signatory, the nonsignatory may compel arbitration." *Id.* at 383-84 (citing *Am. Reliable Ins. Co. v. Arrington*, 269 F.Supp. 2d 758, 762 (S.D. Miss. 2003) (non-signatory may compel arbitration where plaintiff alleges conspiracy with signatory) (citing *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 526 (5th Cir. 2000)); *Roberson v. Money Tree of Ala., Inc.*, 954 F.Supp. 1519, 1529 n.11 (M.D. Ala. 1997) (allegation of a civil conspiracy between signatory and non-signatory allows non-signatory to compel arbitration under laws of agency)); *see also Arnold*, 920 F.2d at 1281-82.

Further, in *Palazzo v. Fifth Third Bank*, the Kentucky Court of Appeals, applying the holdings of *Kruse* and *Arnold*, affirmed the trial court's decision that two non-signatories (an affiliated bank and individual employee named Mitchell) were able to enforce an arbitration agreement based upon the non-signatories' agency relationship with the a signatory to the agreement. *Id.*, No. 2011-CA34-MR, 2012 Ky. App. Unpub. LEXIS 585, at *6-10 (Ky. Ct. App. Aug. 17, 2012). The *Palazzo* court noted that the plaintiff treated the defendant entities as one in her complaint and concluded that "[a]s in *Kruse*, [the entity defendants] are related entities,"

and that because they "stand in each other's shoes with regard to their employment of [the plaintiff]; therefore, they stand in each other's shoes with regard to the arbitration agreement." *Id.* at 7. In addressing the arbitrability of the claims against the individual defendant, the court reasoned that, "as in *Arnold*, the clear intent of the [arbitration provision][7] is to provide a single arbitral forum to resolve all disputes, including those related to Mitchell," and that "[b]ecause the intent is clear and any wrongful activity by Mitchell took place during and in the course of her employment . . . we discern no error in the trial court's determination that the plaintiff's claims against Mitchell are subject to arbitration." *Id.* at 10.

Applying these principles, Walmac Farm and Saybrook may enforce the arbitration agreement of the COA as non-signatories. It is clear that the parties intended to provide a single arbitral forum to resolve their disputes regarding the obligations under the COA. Additionally, through their pleadings, discovery responses, and other filings, it has become clear that the plaintiffs' theories of liability regarding Saybrook and Walmac Farm are based on the alleged interrelationship, agency, and the co-conspirator relationship of Saybrook and Walmac Farm with Walmac Stud and Jones. Throughout the Second Amended Complaint, and specifically under their fraud claim (Count Ten), the plaintiffs refer to Walmac Stud, Walmac Farm, and Jones as one (referring to these defendants as "the Walmacs"). Indeed, in response to

---

7     The arbitration provision at issue in *Palazzo* provides that the plaintiff agreed:

> [T]o arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the RROs indicated in Section 4 (SRO REGISTRATION) as may be amended from time [10] to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

Palazzo, 2012 Ky. App. Unpub. LEXIS 585, at *9-10 (emphasis in original).

Interrogatories requesting a factual basis for the allegation of their fraud claims against Walmac Farm and Saybrook, the plaintiffs provides almost identical responses, seemingly "cutting-and-pasting" their answers to the separate interrogatories of Saybrook and Walmac Farm.[8] [*See* Record Nos. 131-2, 131-3.] The Court agrees with the defendants that these responses are indicative of the plaintiffs' reliance on the alleged interrelationship and agency status of these entities regarding their obligations under the COA as the basis for the fraud claim against each entity.

Moreover, the plaintiffs themselves argue (quite emphatically) that Walmac Farm and Saybrook are agents or sub-agents of Walmac Stud and that they are, therefore, liable to the plaintiffs under the terms of the COA. [*See, e.g.,* Record Nos. 133, 148.] For instance, in their proposed third amended complaint, the plaintiffs allege that they are third-party beneficiaries to agreements made between Walmac Farm and Walmac Stud regarding Ready's Image, and that Walmac Farm is not only an agent to Walmac Stud, but also an agent of the plaintiffs regarding any action or inaction connected to the management of Ready's Image as Stallion Manager and the terms of the COA. [Record No. 148, pp. 6-7, 8-12] Thus, it is apparent from the plaintiffs' own filings that they believe an agency relationship exists between Walmac Farm and Saybrook with, not only Jones and Walmac Stud, but themselves. And certainly the plaintiffs would not base their theories of liability on claims that they do not have a good faith basis to believe exist

---

[8] Regarding Saybrook, the plaintiffs add: "As such, Saybrook's conduct is part and parcel to a larger scheme by the Walmac entities set forth herein, and it is liable beyond merely that part in which it directly participated." [Record No. 131-3, p. 3] This assertion is indicative of a traditional claim of agency, conspiracy, or concert of action.

and would not in turn waste the judiciary's resources advancing arguments that do not have such support.

Finally, recognizing that collusion, interrelatedness, or agency is not, by itself, enough to warrant Walmac Farm and Saybrook, as non-signatories, to invoke the arbitration agreement of the COA, examination of the alleged misconduct is necessary. Here, the perceived wrongs that are the basis for the plaintiffs' claims against Walmac Farm and Saybrook are based upon obligations under the COA and the defendants' actions or inactions thereunder. *See Kruse*, 458 F. Supp. 2d at 382-84. Additionally, the plaintiffs continue to argue that the defendants acted in concert and conspired to defraud and breach the terms of the parties' agreements (which includes the COA), as well as claims that each party aided and abetted the other to harm the plaintiffs.

As noted above, the Court previously found that the plaintiffs' accounting claim falls under the scope of the COA's arbitration provision because it alleges failure to perform accountings under the "relevant agreements," including "all but the Mare Agreements;" and, therefore, touches on matters discussed in the COA. [Record No. 103, p. 12] Likewise, the Court concluded that because the plaintiffs' fraud claim states that the defendants breached their duties to provide accurate statements of information required under the contractual and common law, which included the record-keeping and reporting duties under the COA, the duties and rights were sufficiently implicated to warrant the arbitration of this claim. [*Id.*, p. 12-13] These conclusions are equally applicable to Walmac Farm and Saybrook. Therefore, given the significant relationship between the claims levied against the defendants, as agents, co-conspirators, etc., and the COA, allowing Walmac Farm and Saybrook to enforce the arbitration

provision is appropriate. In short, because the plaintiffs' fraud claim and accounting claim sufficiently relate to the defendants' alleged actions taken on behalf of, or in concert with, Walmac Stud and Jones, the defendants may invoke the arbitration provision of the COA.

The Court is not persuaded by the plaintiffs' argument that the COA arbitration provision explicitly forecloses non-signatories from enforcing that contract clause. [Record No. 140, pp. 7-8] In *Detroit Edison Company v. Burlington Northern & Santa Fe Railway Company*, 442 F. Supp. 2d 387 (E.D. Mich. 2006), the district court explicitly rejected essentially the same argument the plaintiffs now raise. There, the arbitration provision provided:

> If a question or controversy arises *between the parties* concerning the observance, performance, interpretation, administration or implementation *of any of the terms, provisions, or conditions contained herein* or the rights or obligations of either *party under this Agreement*, such question or controversy shall in the first instance be the subject of a meeting between the parties to negotiate a resolution of such dispute. If, within thirty (30) days after the meeting, the parties have not negotiated a resolution or mutually extended the period of negotiation, either party may seek resolution of the question or controversy pursuant to binding arbitration.

*Id.* at 389 (emphasis added). Citing two state cases from Idaho,[9] the plaintiffs argued that two of the affiliated corporate plaintiffs were not bound by the arbitration agreement because they were not signatories and, therefore, were not considered to be a "party" as defined by the agreement. *Id.* at 392-93. The court, however, disagreed, noting that the Sixth Circuit recognizes "several exceptions to the general rule that only contract signatories are bound by the contract's arbitration provision." *Id.* at 393 (citing *Javitch*, 315 F.3d at 629). Ultimately, the court concluded that, despite the plaintiffs' argument that the language of the arbitration

---

9       The Idaho cases predate the Sixth Circuit's *Javitch* decision.

provision limited its application to only signatories, because the non-signatories were third-party beneficiaries the plaintiffs were estopped from arguing that the contract's arbitration provision does not apply. Thus, the defendants were permitted to enforce the arbitration provision against the non-signatory plaintiffs. *Id.*

Similar to *Detroit Edison*, the plaintiffs' arguments concerning this issue are unconvincing. As set out above, the plaintiffs' claims of fraud and accounting are based upon the perceived agency and conspirator relationship between Walmac Farm and Saybrook with Walmac Stud and Jones. Thus, under *Javitch*, *Kruse* and their progeny, the defendants may enforce the arbitration provision.[10]

Finally, the plaintiffs argue that Walmac Farm and Saybrook should be precluded from invoking the arbitration provision of the COA based on the equitable doctrine of unclean hands. [Record No. 140, pp. 8-12] However, to reach this conclusion, the Court would be required to rule on the merits of the plaintiffs' fraud and accounting claims, since each claim is based upon allegations that Walmac Farm and Saybrook violated the contract. Whether the defendants violated the terms of the contract – either by impermissibly assigning rights and duties under the

---

10    Despite the Court having previously found that the COA's arbitration provision to be highly inclusive, to the extent the plaintiffs argue that the modifier "hereunder" limits the scope of the arbitration provision, this argument is also unconvincing. [*See* Record No. 103, pp. 10-11.] The phrase that "hereunder" modifies in the agreement states: "or relating to the relationship, rights, duties, or obligations hereunder (a "Dispute"), any one of the disputants may require the other parties to submit the Dispute to arbitration." [Record No. 72-1, p. 33] Nonetheless, the Court has already determined that the alleged wrongful actions of Saybrook and Walmac Farm fall within  and relate to the terms of the COA. Indeed, the plaintiffs' spend a great deal of time arguing that Walmac Farm became the *de facto* Stallion Manager, and that both parties necessarily stepped into the shoes of Walmac Stud by impermissibly undertaking its obligations and duties under the COA as Stallion Manager. The duties which Saybrook and Walmac Farm allegedly abused are those "relating to the relationship, rights, duties, or obligations" as provided in the COA.

COA or by other means – is not for the Court to decide at this juncture.[11]   Therefore, the

plaintiffs claims do not address the validity of the arbitration agreement itself, but instead are

based upon the merits of their claims.  When "'deciding whether the parties have agreed to

submit a particular grievance to arbitration, a court is not to rule on the potential merits of the

underlying claims . . .'" *Air Line Pilots Ass'n v. Fed. Express Corp.*, 402 F.3d 1245, 1248 (D.C.

Cir. 2005) (quoting *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (U.S. 1986)).

As a result, the plaintiffs' argument on this point fails.  Put another way, the plaintiffs may not

attempt to invoke the benefits of the COA as the basis for their claims against Walmac Farm and

Saybrook while "disavow the arbitration provisions that [is] part of the [COA]."  *Scott v.

Louisville Bedding Co.*, 404 S.W.3d 870, 875 (Ky. Ct. App. 2013) (citations omitted).

### III.

The plaintiffs seek leave to file a Third Amended Complaint to add five new counts.

[Record No. 133]  Specifically, they request leave to add the additional claims of: (i) breach of

contract by Walmac Farm (Count Fifteen); (ii) trespass to chattels or conversion by Walmac

Farm (Count Sixteen); (iii) breach of fiduciary or agency duty by Walmac Farm (Count

Seventeen); (iv) aiding and abetting and concerted action to breach fiduciary duty by Walmac

Farm, Saybrook, and Lincoln-Walmac (Count Eighteen); and (v) racketeering, conspiracy, and

mail and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act

---

11      For the same reasons as stated above, the plaintiffs' argument that COA prohibited the assignment
of the Stallion Manager's duties and, therefore, should preclude the defendants' from being able to enforce
the arbitration provision is not a proper consideration for the Court to undertake.  Their argument that this
theory is supported by *Kruse* and *Palazzo* because those cases "failed to note the existence of a prohibition
in [their] analysis of the non-signatory issue" is overstated.  [*See* Record No. 140, p. 11.]  In essence, the
plaintiffs attempt to prove a positive with a negative.

("RICO"), 18 U.S.C. § 1961 *et seq.*, by Walmac Farm, Lincoln-Walmac, and Saybrook (Count Nineteen).[12] The defendants oppose the motion. [Record No. 141]

Because the plaintiffs' newly alleged claims are subject to arbitration provision of the COA, their motion to amend will be denied.

## A.     Rule 15 and Futility

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend pleadings should be granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant a motion for leave to amend lies within the sound discretion of the district court; however, the United States Supreme Court has instructed that Rule 15's permissive language "is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, a plaintiff's motion for leave to amend should be granted absent a justifiable reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182.

Futility has been found to exist where the new claims a party seeks to add through amendment are subject to a binding arbitration agreement. *See, e.g.*, *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985) (affirming lower court's denial of appellant's motion to amend complaint to include new claims where the court concluded that those claims were subject to arbitration); *Detroit Edison Co.*, 442 F. Supp 2d at 394 (holding that where new or revised claims that a party seeks to add by amendment are subject to a binding

---

12      Plaintiffs James T. Scatuorchio, LLC, Courtney Sullivan, and Kevin Scatuorchio are the only plaintiffs alleging claims in the proposed Third Amended Complaint.

arbitration agreement, the proposed amendment is futile); *Adkins v. Labor Ready Inc.*, 205 F.R.D. 460, 465 (S.D. W. Va. 2001) (same). In the present case, because the plaintiffs' proposed new claims would touch on matters covered by the COA, they are subject to arbitration and the plaintiffs' motion to amend will be denied as futile.[13]

### 1. Breach of Contract by Walmac Farm (Count Fifteen); Trespass to Chattels or Conversion by Walmac Farm (Count Sixteen); and Breach of Fiduciary Duty by Walmac Farm (Count Seventeen)

The proposed Third Amended Complaint alleges that Walmac Farm wrongly acquired nominations to Ready's Image at a price below the advertised stud fee and, therefore, is liable for breach of contract. This claim (Count Fifteen) is is subject to arbitration because it is predicated on the COA and the plaintiffs' alleged entitlement to profits from Ready Image's breeding career and Walmac Farm's alleged improper behavior as Stallion Manager.

The plaintiffs allege in Count Sixteen that Walmac Farm exercised dominion or control over property in the form of nominations to Ready's Image to which it did not have authority to exercise because it was not the Stallion Manager. Again, this claim is based on the COA. And as the plaintiffs indicate, it is pleaded as an alternative theory to the breach of contract claim. Therefore, it would be subject to arbitration.

_____

13 Arguably, the plaintiffs' proposed Third Amended Complaint is a thinly-veiled attempt to side-step the Court's prior rulings regarding the arbitrability of their claims by attempting to re-cast the claims against parties which were not previously ordered to arbitration. *See Federated Rural Elec. Ins. Co. v. Int'l Ins. Co.*, No. 94-2460-JWL, 1995 U.S. Dist. LEXIS 9607, at *2 (D. Kan. June 21, 1995) (denying plaintiff's motion to amend where proposed amendment was found to be a "direct attempt to avoid application of the arbitration provisions" and proposed claims would be subject to arbitration).

In Count Seventeen, the plaintiffs allege that Walmac Farm, "*via* some mechanism that has never been explained, but that was not authorized" by the plaintiffs or allowed by the COA, undertook Walmac Stud's duties as the managing co-owner and Stallion Manager of Ready's Image. [Record No. 133, p. 4] The plaintiffs contend that, by virtue of this action, Walmac Farm assumed duties to the plaintiffs, including duties that were co-extensive with Walmac Stud's fiducial and contractual duties. Walmac Farm allegedly breached those duties by engaging in insider transfers of nominations to Ready's Image at below market rates, which necessarily benefitted those insiders and harmed the plaintiffs. Similarly, the plaintiffs assert that Walmac Farm paid advertising fees on behalf of the co-owners to Saybrook, "an affiliated Walmac entity, at prices far in excess of those which were reasonable, once again impermissibly shifting Plaintiff's money to a Walmac entity." Much like the plaintiffs' claims in Count Fifteen and Sixteen, Count Seventeen relates and is intertwined with obligations allegedly owed and provided for under the COA. Thus, this claim would be subject to the COA's arbitration provision.

2. **Aiding and Abetting and Concerted Action to Breach of Fiduciary Duty by Walmac Farm, Saybrook, and Lincoln-Walmac (Count Eighteen)**

The plaintiffs allege that Walmac Stud owed the plaintiffs fiduciary duties, and that Walmac Farm, Saybrook, and Lincoln-Walmac were aware of Walmac Stud's relationship with the plaintiffs, acted in concert with each other with the specific intent of diverting income from the plaintiffs to "Walmac entities" and used co-owned property solely for the benefit of those Walmac entities and to the plaintiffs' detriment. The plaintiffs contend that by acting in this manner, Walmac Farm, Saybrook, and Lincoln-Walmac aided in Walmac Stud's breach of its

fiduciary duties to the plaintiffs. Again, because this claim touches on the terms of the COA and Walmac Stud's relationship with the plaintiffs as a co-owner, and alleged agent and fiduciary as the Stallion Manager, the claim would be subject to the arbitration provision. Additionally, in accordance with the rationale set out above, this claim against Lincoln-Walmac would be subject to arbitration as well. *See Kruse*, 458 F. Supp. at 382 ("Where a party alleges that a nonsignatory engaged in a conspiracy with a signatory, the nonsignatory may compel arbitration.").

### 3. RICO Against Walmac Farm, Lincoln-Walmac, and Saybrook (Count Nineteen)

The plaintiffs allege in Count Nineteen that an enterprise, largely made up of the defendants, existed under 18 U.S.C. § 1961 and that Walmac Farm, Lincoln-Walmac, and Saybrook are each employed or associated with the enterprise and participated in its interstate affairs through a pattern of racketeering activity. The plaintiffs assert that each of the defendants engaged in mail and wire fraud by sending correspondence misrepresenting the nature of Ready's Image expenses and falsely and fraudulently overbilling for expenses, all designed to defraud the plaintiffs.

The COA provides for the distribution and allocation of money associated with the stud career of Ready's Image. The COA is inherently a part of this alleged scheme to defraud the plaintiffs. Therefore, much like the RICO claim the plaintiffs asserted in the Second Amended Complaint and in accordance with the Court's analysis as set out above and in prior orders, this claim would be subject to arbitration as it pertains to all three named defendants.

## IV.

For the reasons discussed above, it is hereby

**ORDERED** as follows:

1.      The defendants' motion to reconsider and to compel arbitration of Count Nine and Ten against Defendants Walmac Farm and Walmac Stud [Record No. 131] is **GRANTED**.

2.      The plaintiffs' accounting claim in Count Nine of the Second Amended Complaint against Walmac Farm shall be submitted to arbitration in accordance with the arbitration provision in the COA.

3.      The plaintiffs' fraud claim in Count Ten of the Second Amended Complaint against Walmac Farm and Saybrook shall be submitted to arbitration in accordance with the arbitration provision in the COA.

4.      Because Plaintiff Bryan Sullivan is only a party to the Mare Agreement, his accounting and fraud claims (Counts Nine and Ten of the Second Amended Complaint, respectively) remain pending before the Court.  Likewise, the fraud claim contained in Count 10 of the Second Amended Complain against Lincoln-Walmac remains pending before the Court.

5.      The plaintiffs' motion for leave to file a third amended complaint [Record No. 133] is **DENIED**.

This 27th day of March, 2014.



Signed By:

*Danny C. Reeves* DCR

**United States District Judge**