UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES T. SCATUORCHIO RACING STABLE, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5: 11-374-DCR |
| V. | ) ) | |
| WALMAC STUD MANAGEMENT, LLC, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of Defendant Saybrook Advertising, LLC's ("Saybrook") motion for summary judgment regarding the plaintiffs' fraud claims as set out in Count Ten of the Second Verified Amended Complaint (the "Complaint"). [Record No. 165] After Saybrook filed this motion, the Court granted its motion to compel arbitration, ordering Plaintiffs James T. Scatuorchio, LLC ("Scatuorchio, LLC"), James T. Scatuorchio ("JTS"), Kevin Scatuorchio, and Courtney Sullivan's fraud claims against Saybrook to be arbitration. [Record No. 268] Thus, the sole remaining claim against Saybrook is Plaintiff Bryan Sullivan's ("Sullivan") fraud claim. For the reasons discussed below, the Court will grant Saybrook's motion for summary judgment.

**I.**

The factual and procedural history of this matter is lengthy; however, in relevant part, this action arises from a series of contracts regarding the ownership and stud career of the thoroughbred stallion Ready's Image. These contracts include the Purchase Agreement, Stallion Co-Ownership Agreement ("COA"), Installment Agreement (a/k/a Southern Hemisphere Sale Agreement), Southern Hemisphere Co-Ownership Agreement ("SHCOA"), Southern Hemisphere Lease Agreement ("SHLA"), and Mare Agreement. The plaintiffs claim wrongful conduct by the defendants during the transfer of ownership and management rights of Ready's Image. They allege that the defendants fraudulently transferred ownership interests in Ready's Image to other parties and that after the ownership and management interests were transferred, the defendants violated the relevant agreements, resulting in breach of contract, good faith and fair dealing, and fiduciary duties. The plaintiffs also assert claims of fraud and conspiracy.

**A.     The Parties' Agreements**

On October 2, 2008, Plaintiffs Scatuorchio, LLC, and JTS' children, Kevin Scatuorchio and Courtney Sullivan, sold a two-thirds undivided interest in Ready's Image to Defendant Walmac Stud Management ("Walmac Stud"). This agreement was memorialized in the Sale Agreement. These parties also entered into the COA which established the terms and conditions of the parties' relationship as co-owners of Ready's Image. Pursuant to the COA, Walmac Stud was named as the "Stallion Manager" and was responsible for the day-to-day management of Ready's Image, as well as procuring mares

to breed with Ready's Image. The COA provides that the "Stallion Manager's affiliate, or the Stallion Manager" is entitled to receive "commercially reasonable fees" for expenses related to the boarding, transportation, advertising and promotion, veterinary care and maintenance of Ready's Image, along with other expenses incurred regarding reasonable postage, printing, banking, legal, accounting and bookkeeping expenses. [Record No. 72-1, p. 26 ¶ 2.12; *Id.*, pp. 30-31 ¶ 6] Each co-owner is responsible for their *pro rata* share of these expenses. Sullivan is not a signatory to the COA and does not have any ownership interest in Ready's Image. [Record No. 216-6, p. 79-80]

Walmac Stud has a management agreement with Defendant Walmac Farm, LLC ("Walmac Farm") where Ready's Image stood at stud in Lexington, Kentucky. As part of this management agreement, Walmac Farm handled a majority of the daily operations of managing Ready's Image, as well as other thoroughbred stallions. [*See* Record No. 205.] Defendant John T.L. Jones, III ("Jones") is the Managing Director of both Walmac Farm and Walmac Stud. [*Id.*, p. 1 ¶¶ 3-4.]

On April 23, 2009, the parties entered into three additional agreements vesting other entities with ownership interest and responsibilities regarding the management of Ready's Image in the Southern Hemisphere. These agreements included the: (i) Southern Hemisphere Sale Agreement; (ii) SHCOA; and (iii) SHLA, (collectively, the "Southern Hemisphere Agreements"). Under these agreements, Defendant Lincoln-Walmac Associated Farms Pty., Ltd. ("Lincoln-Walmac") became a co-owner of Ready's Image in the Southern Hemisphere,

and the SHCOA designated Walmac Stud as the Stallion Manager for all Southern Hemisphere operations.[1] Sullivan is not a party to the Southern Hemisphere Agreements.

By early 2010, after a somewhat disappointing first year at stud, the parties became concerned that not enough was being done to promote Ready's Image to potential mare-owners. As a result, on January 20, 2010, Plaintiffs JTS, Kevin Scatuorchio, and Bryan Sullivan (collectively, the "Mare Plaintiffs") entered into the Mare Agreement with Defendant Jones, who signed as the Managing Director of Walmac Farm. Notably, the Mare Plaintiffs were represented by their attorney Richard Schibell when they entered into the Mare Agreement. [*See id.* (noting that Schibell is "cc'd" on the Mare Agreement); *see also* Deposition of Plaintiff Sullivan, Record No. 216-6, p. 56 (stating that Schibell represented the Mare Plaintiffs in connection with the Mare Agreement).] Saybrook is not a party to the Mare Agreement.

Under the Mare Agreement, the Mare Plaintiffs would receive the proceeds of any contracts associated with mares delivered by the Mare Plaintiffs to Walmac Farm for breeding with Ready's Image, up to a limit of twenty mares during the 2010 season. [*See* Record No. 72-1, pp. 80-81.] More specifically, the Mare Agreement states, in part, that it is agreed that if:

---

1  Pursuant to the SHLA, Lincoln-Walmac was also designated as a lessee of the "use, purpose and attributes" for the purpose of Ready's Image's breeding in the Southern Hemisphere for the 2009-2012 Southern Hemisphere breeding seasons. According to the SHLA, Lincoln-Walmac also assumed the responsibility for the care, upkeep, and marketing of Ready's Image in the Southern Hemisphere and was responsible for remitting to the co-owners any revenue generated by Ready's Image in the Southern Hemisphere in the form of "Stallion Rent." [*See* SHLA, Record No. 72-1, p. 68 (defining "Stallion Rent").]

> 1) The "Original Ready's Image Owners" pay shipping costs from another state to and from Kentucky for a mare (hereinafter "Mare") shipped in 2010 to breed to Ready's Image and pay the board and routine veterinary charges for the Mare while boarded in Kentucky for the 2010 breeding and
>
> 2) Have a third party owner sign a breeding contract to breed the Mare, the same mare for which they paid the shipping, board, and veterinary expenses noted above, to Ready's Image, and said breeding contract shall be standard Walmac Farm breeding contract form and shall be for the full advertised stud fee payable when the foal stands and nurses or earlier,
>
> Then the Ready's Image Syndiate shall remit all proceeds from the sale of each contract executed for such mare to the Original Ready's Image Owners.

[Record No. 72-1, p. 80]

According to the Mare Agreement, the Mare Plaintiffs delivered fourteen mares to Ready's Image for breeding. [Record No. 209-3, p. 20] However, they contend that they have not received any distribution of the proceeds generated for eleven of the fourteen mares delivered from either Walmac Stud or Walmac Farm in breach of the Mare Agreement. [*Id.*] Sullivan has alleged claims of breach of the Mare Agreement, and breach of the covenant of good faith and fair dealing as it relates to that agreement against Walmac Farm and Walmac Stud, as well as fraud claims.

### B.  Saybrook

The marketing and advertising of Ready's Image is one of the duties of the Stallion Manager. Defendant Saybrook was contracted to perform these responsibilities for Ready's Image. Saybrook is a full-service advertising agency and has worked within the thoroughbred industry for over thirty years. In 2009, it was dissolved as a corporation and

reestablished as a limited liability company. Its sole member is the Ledbetter Trust.[2] In 2010, Saybrook reduced its staff to only Margaret Claus, who is also Saybrook's CEO. Due in part to the effects of 2009 nationwide economic downturn, in January 2010, Saybrook moved its offices to Walmac Farm to use empty office space that was not being utilized.

Saybrook's only contractual relationship regarding Ready's Image is with Walmac Farm. Further, it has not engaged with any of the plaintiffs regarding advertising services for Ready's Image. Pursuant to its agreements with Walmac Farm, Saybrook performed advertising in both the Northern and Southern Hemispheres. However, after 2009, Saybrook ceased providing advertising services in the Southern Hemisphere for Ready's Image. While Saybrook performed marketing services for Ready's Image, it billed and invoiced Walmac Farm for its expenses and services rendered. As Stallion Manager, Walmac Farm would incorporate these advertising fees along with other expenses and fees (*e.g.*, boarding, feed, transportation, feed, veterinary costs) and would then bill the co-owners pursuant to the parties' contracts.

The claims asserted against Saybrook are primarily predicated on its billing practices. The plaintiffs contend that Saybrook over-billed for expenses incurred in the marketing of Ready's Image, impermissibly marked-up bills, double billed, and "churned" Ready's Image's account. They argue that these actions constitute fraud. Saybrook does not deny

---

2    The Ledbetter Trust also owns Walmac Farm and 50% of Walmac Stud. Jones is the only known beneficiary of the Ledbetter Trust.

that it marked-up bills; however, it argues that this is customary practice in the advertising and marketing industry. The plaintiffs disagree.

The plaintiffs also maintain that, due to the common ownership and control of Walmac Farm, Lincoln-Walmac, Saybrook, and Walmac Stud by the Ledbetter Trust and Jones, the Court must disregard the "fictional" independence of the defendants. [Record No. 229, p. 5] They contend that the defendants acted with concerted action and a common plan or scheme to defraud and damage the plaintiffs and breach the relevant agreements. Notwithstanding the above, the parties agree that Saybrook and Sullivan never entered into any contract, never communicated with each other, and that Saybrook never sent Sullivan or any other plaintiff any invoices or bills. Instead, these materials were sent directly to Walmac Farm.

### C. Bryan Sullivan's Abandonment of his Fraud Claim Against Saybrook

As previously noted, the sole, remaining claim against Saybrook is Plaintiff Bryan Sullivan's fraud claim (Count Ten). However, based on the Court's review of the lengthy record, it does not appear that Sullivan continues to actively pursue this claim. Although Count Ten of the Complaint identifies the "Plaintiffs"[3] as the alleging parties, numerous affirmative statements and filings made by Sullivan and his attorneys throug the course of this litigation demonstrate that he has abandoned his fraud claim against Saybrook. For

---

3     The Complaint identifies "Plaintiffs" to include Scatuorchio, LLC; James T. Scatuorchio; Kevin Scatuorchio; Courtney Sullivan; and Bryan Sullivan. [Record No. 72, p. 1]

instance, Sullivan was questioned during his deposition about all of the claims asserted in the Complaint by the plaintiffs, as well as which specific claims he was personally asserting:

> Q: . . . And you're not asserting a claim against Saybrook Advertising, are you?
>
> A: Correct.
>
> Q: All right. With respect to Saybrook, you mentioned a minute ago — well, let me ask this: What is your understanding of the nature of the plaintiffs' claims against Saybrook?
>
> A: When we entered into the agreement with [Jones], we had spoken about advertising, and we were all under the assumption that we were going to do what was reasonable — reasonable and customary. And I think we all felt that it was an exorbitant amount of money that he spent.
>
> Q: Okay. Now, when you say we, you don't mean you personally, though, you mean the other people who actually are in the [COA], correct?
>
> A: Correct.

[Record No. 216-6, p. 80]

Sullivan's position that he was not asserting a claim against Saybrook was reaffirmed by his attorney later in the deposition when Saybrook's attorney questioned him regarding the alleged damages against Saybrook:

> Q: . . . . What do you think the total, I'll call them, you know, damages are for this alleged high advertising?
>
> > [Sullivan's Attorney]: And he's already stated he doesn't have a claim. Are you talking about others' claims[?]
> >
> > [Saybrook's Attorney]: That's correct.

[*Id.*, p. 95]

Finally, in the plaintiffs' Third Supplemental Responses to Saybrook's First Set of Discovery Demands, the plaintiffs were requested to provide the facts that support their allegations of fraud against Saybrook. [Record No. 209-3, p. 2] In response, the plaintiffs indicate, in part, that:

> [Scatuorchio], LLC, Courtney [Sullivan] and Kevin [Scatuorchio] are collectively referred to below as "co-owners" or "Plaintiffs." The Claims asserted in the Second Amended Complaint against Saybrook are asserted by these Plaintiffs and not by [James T. Scatuorchio] and Bryan [Sullivan], who are not co-owners of READY'S IMAGE, and are parties to the Mare Agreement. Therefore, the Answer to the Interrogatories and Documents Requests propounded by Saybrook herein is that there are no such claims or allegations.

[*Id.*, p. 2 n. 1] Thus, although Sullivan is identified in the Complaint as alleging a fraud claim against Saybrook, based on his statements to the contrary the Court concludes that he has abandoned this claim.

Notwithstanding the above, in response to Defendants Walmac Stud, Walmac Farm, Lincoln-Walmac, and Jones' motion for summary judgment, the plaintiffs represent that Sullivan is in fact asserting a fraud claim against Saybrook. [Record No. 238, p. 3] Additionally, Sullivan is identified as a responding party in the plaintiffs' combined response to Saybrook's motion for summary judgment and two of its motions to exclude. [Record No. 229, p. 1] Regardless, Saybrook has demonstrated that there is no genuine dispute of any material fact regarding Sullivan's fraud claim and that it is entitled to judgment as a matter of law.

**II.**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, the nonmoving party must present "significant probative evidence" of a genuine dispute . . . to defeat the motion for summary judgment. *Chao*, 285 F.3d at 424. The nonmoving party cannot simply rely upon the assertions in its pleadings; rather, it must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from

the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

**III.**

Saybrook argues that Sullivan's fraud claim fails as a matter of law.[4] Specifically, it contends that the fraud claim as alleged in the Complaint and in the plaintiffs' discovery responses: (i) fails to allege fraud with the requisite degree of particularity as required Rule 9 of the Federal Rules of Civil Procedure; and (ii) does not create an issue of fact with respect to all six elements of fraud. Additionally, Saybrook argues that summary judgment is appropriate because Sullivan: (i) opposes its motion under the wrong summary judgment standard; (ii) fails to produce clear and convincing evidence to create any genuine issue of fact on each and every element of his fraud claim; and (iii) fails to allege fraud with particularity after extensive discovery justifying dismissal under Rule 9(b), as well as under Rule 56. [Record Nos. 209, 255] Sullivan disagrees, arguing that there remain genuine issues of material fact regarding this claims. [Record No. 22 9]

Although the parties spill a great deal of ink arguing over the applicable legal standard at the summary judgment stage regarding claims of fraud, the appropriate question is "whether the evidence presented is such that a jury applying that [clear and convincing] standard could reasonably find for either the plaintiff or the defendant." *Anderson*, 477 U.S. at 255. Additionally, *Anderson* stressed that its ruling does not denigrate the role of the jury

---

4 Saybrook's motion for summary judgement only refers to the plaintiffs as a group and addresses their fraud claims collectively. [*See* Record No. 209.]

-11-

and that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," whether the motion is for a summary judgment or a directed verdict. *Id*. Thus, the plaintiff does not have to show clear and convincing evidence at this stage, only evidence that could support a reasonable factfinder in their determination of fraud by the clear and convincing standard. *See Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 275 (5th Cir. 1987). This requires the court to determine, as a matter of substantive law, whether the evidence could sustain a verdict for the plaintiff.

Under Kentucky law, to prove fraud a plaintiff must show six elements by clear and convincing evidence: (i) a material representation; (ii) which is false; (iii) known to be false or made recklessly; (iv) made with inducement to be acted upon; (v) acted in reliance thereon; and (vi) causing injury. *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999); *see also PCR Contractors, Inc., v. Danial*, 354 S.W.3d 610, 613 (Ky. Ct. App. 2011) (citing *Bear, Inc., v. Smith*, 303 S.W.3d 137, 142 (Ky. Ct. App. 2010)).[5] The material misrepresentation must usually concern an existing or past fact, unless the defendant falsely represents his opinion of a future happening. "One may commit 'fraud in the inducement' by making representations as to his future intentions when in fact he knew at the time the representations were made he had no intention of carrying them out[.]" *PCR, Inc.*, 354 S.W.3d at 614 (citing *Major v. Christian Cnty Livestock Market*, 300 S.W.2d 246, 249 (Ky.

---

5 The requirement for fraud in Kentucky is a statement either known to be false or made recklessly. *UPS v. Rickert*, 996 S.W.2d 464, 468 (Ky.1999) The plaintiff only has to demonstrate recklessness in making the false representation of the material fact at issue.

1957)). Additionally, because fraud is usually proven circumstantially, evidence is usually inferential and derived from the facts of the case. "[I]t is not necessary that direct evidence of fraud be adduced and that the fraud may be established by evidence which is wholly circumstantial . . . . Further, even though each bit of circumstantial evidence in and of itself may seem trivial and unconvincing, the combination of all the circumstances considered together may be decisive in a given case of fraudulent design." *PCR, Inc.*, 354 S.W.3d at 616 (citing *Johnson v. Cormney*, 596 S.W.2d 23, 27 (Ky. Ct. App. 1979)).

In addressing each of the plaintiffs' fraud claims collectively, Saybrook contends that the plaintiffs have failed to produce evidence to create a genuine issue of fact on any of the six elements of fraud. Even if the Court were to accept the plaintiffs' argument that Saybrook's billing methods constitute false statements of material facts, the record is devoid of any evidence that any communication from Saybrook (either directly or indirectly) was made to Sullivan with the intent to induce him to enter into the Mare Agreement or take any other action.[6] Likewise, there is no evidence that Sullivan performed under the agreement in reliance on any alleged false statement made by Saybrook or that he was damaged.

Because Sullivan does not have any ownership interest in Ready's Image and because he is only a signatory to the Mare Agreement, his claims and any alleged damages are limited

---

6   Sullivan argues that Kentucky law does not require strict privity between the defendant and the defrauded party and that as long as a third party is injured by the defendant's deceit, he should be allowed to recover against the one who made possible the damages to him by practicing the deceit in the first place. [Record No. 229, p. 52 (quoting *Clark v. Danek Med., Inc.,* 64 F. Supp. 2d 652, 655-56 (W.D. Ky. 1999); *Highland Motor Transfer Co. v. Heyburn Bldg. Co.*, 35 S.W.2d 521 (1931)] The Court, however, need not reach this argument, because Sullivan is unable to demonstrate that he relied on any representations (or omissions) from Saybrook or that there was resulting injury.

to those arising out of the Mare Agreement. [*See*, *e.g.*, Record No. 216-6, pp. 61-64 (identifying Sullivan's claims as unpaid proceeds from mares bred with Ready's Image pursuant to the Mare Agreement)] And, as outlined above, the Mare Agreement neither involves issues of advertisement and marketing or fees for such services, nor Saybrook, as it is not a party to that agreement. [*See* Record No. 72-1, pp. 80-81.] Instead, pursuant to the Mare Agreement, the signatories are only responsible for the shipping, board, and veterinary expenses for the mare they bring to breed with Ready's Image. [*Id.*] They are not liable for any advertising or marketing fees under the terms of the Mare Agreement.

In short, the claims of fraud asserted against Saybrook essentially involve issues of alleged improper billing practices. These are not issues that involve Sullivan or the terms of the Mare Agreement. It is not alleged – nor is there any evidence – that Saybrook itself or through any other entity, provided any communications, whether in the form of improper bills or otherwise, to Sullivan with the intent to induce Sullivan to either enter into the Mare Agreement or to perform under its terms.[7] Likewise, there is no evidence (or even argument) that Sullivan was actually induced to enter into the Mare Agreement or take any action because of any improper billing practice of Saybrook regarding the advertisement fees of Ready's Image (*i.e.* that Sullivan acted in reliance on any alleged false communication from Saybrook).

---

7     In fact, Sullivan also testified during his deposition that since October 2008 he has never talked to anyone from Saybrook. [Record No. 216-6, p. 102] Additionally, he stated that he never had any personal conversation with Jones regarding the substance of the Mare Agreement. [*Id.*, p. 62]

In summary, Sullivan has failed to identify any evidence (or specific arguments) to support each element of his fraud claim. There is no evidence that Saybrook induced or attempted to induce Sullivan to take (or refrain from taking) any action or that Sullivan relied upon any representation by Saybrook. These based on these deficiencies and Sullivan's unequivocal statements that he is no longer pursuing a fraud claim against Saybrook, judgment in Saybrook's favor on Sullivan's fraud claim is warranted.

## IV.

For the reasons discussed above, it is hereby

**ORDERED** as follows:

1. Defendant Saybrook Advertising, LLC's Motion for Summary Judgment on Plaintiffs' Fraud Claim (Count Ten) [Record No. 209] is **GRANTED**, in part, and **DENIED**, in part as moot. Specifically, Defendant Saybrook's motion for summary judgment on Plaintiff Bryan Sullivan's fraud claim [Record No. 209] is **GRANTED**. Because Plaintiffs James T. Scatuorchio, LLC, James T. Scatuorchio, Kevin Scatuorchio, and Courtney Sullivan's fraud claims have been ordered to arbitration, Saybrook's motion for summary judgment on these claims [Record No. 209] is **DENIED**, as moot.

2. Defendant Saybrook's remaining motions [Record Nos. 210, 211, 212, 214, 215, 216, 217, 218, 265] are **DENIED**, as moot.

This 17th day of April, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge