UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES T. SCATUORCHIO RACING STABLE, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5: 11-374-DCR |
| V. | ) ) | |
| WALMAC STUD MANAGEMENT, LLC, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Walmac Stud Management, LLC ("Walmac Stud"), Lincoln-Walmac Associated Farm Pty Ltd. ("Lincoln-Walmac"), John T.L. Jones III ("Jones"), and Walmac Farm, LLC's ("Walmac Farm") have moved to exclude the opinion testimony of Roy H. Kvalo. [Record No. 191] The defendants argue that Kvalo December 30, 2013 report was untimely and that his October 1, 2013 report does not comply Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure and is deficient under the Federal Rules of Evidence. [*Id.*] For the reasons discussed below, the defendants' the motion will be granted, in part, and denied, in part. The defendants have also filed several motions seeking to exclude expert testimony. [Record Nos. 197, 201, 206, 219] To the extent these motions pertain to Kvalo, these motions will be granted, in part, and denied, in part.

# I.

As discussed in prior orders, this action arises from a series of contracts relating to the purchase and breeding of the thoroughbred stallion Ready's Image which is currently co-owned by Plaintiffs Scatuorchio, LLC, Kevin Scatuorchio, Courtney Sullivan, and a number of the defendants. [*See* Record Nos. 103, 127.] The plaintiffs' Complaint is predicated upon the defendants' alleged dishonest and fraudulent management of Ready's Image's stud career and breach of a number of written contracts involving Plaintiffs Walmac Stud, Walmac Farm, and other defendants.

In 2008, John T.L. Jones discussed with James Scatuorchio the purchasing an interest in Ready's Image and managing its career as a stud. In response, Scatuorchio, LLC, Kevin Scatuorchio, and Courtney Sullivan sold a two-thirds undivided interest in the thoroughbred to Walmac Stud for $2.4 million. The parties also entered into a Stallion Co-Ownership Agreement ("COA") which established terms and conditions of the parties' relationship as co-owners of Ready's Image. Under the COA, Walmac Stud was named as the "Stallion Manager" and was responsible for the day-to-day management of Ready's Image. However, Walmac Farm handled most of the Ready's Image's daily operations and management. Defendant Saybrook Advertising, LLC ("Saybrook"), was contracted by Walmac Farm to perform advertising and marketing for Ready's Image. The parties also entered into three other agreements giving other entities an ownership interest and management responsibilities for Ready's Image as it stood for stud in the Southern Hemisphere. Under these agreements, Lincoln-Walmac became a co-owner of Ready's Image in the Southern Hemisphere.

In 2010, Plaintiffs James Scatuorchio, Kevin Scatuorchio, and Bryan Sullivan (the "Mare Plaintiffs") entered into a Mare Agreement to help increase the number of mares bred to Ready's Image. Under this agreement, the Mare Plaintiffs would receive the proceeds of any contract for mares delivered by the Mare Plaintiffs to Walmac Farm for breeding with Ready's Image. [Record No. 72-1] According to the Mare Agreement, the Mare Plaintiffs delivered at least ten mares to the Walmacs. Based on allegations of mismanagement and improper allocation of funds, the plaintiffs have asserted several claims against the defendants. These claims are based on theories of breach of contract, breach of the covenants of good faith and fair dealing, breach of fiduciary duties, and fraud.

The Court's Scheduling Order set October 1, 2013 as the deadline to identify expert witnesses and produce their reports. [Record No. 124, p. 1] The disclosure of rebuttal expert witnesses deadline was scheduled for November 15, 2013 and the deadline for supplementing expert reports was December 3, 2013. [*Id*., pp. 1-2] On October 1, 2013, the plaintiffs timely identified Kvalo, a certified public accountant, to provide testimony and address issues of lost profits and the mismanagement of the accounts related to Ready's Image. [Record No. 191-1, p. 1] Kvalo's October 1, 2013 report states that it is "a preliminary report discussing [the plaintiffs'] concerns regarding lost profits and mismanagement." [Record No. 191-1, p. 1] It also opines that a full and complete accounting is needed because not all necessary documents have been provided. [*Id*.] The October 1, 2013 report goes on to claim that the records kept by the defendants are erroneous and possibly reveal fraud. [*Id*., p. 2] Importantly, Kvalo never indicates that he is a purported expert on damages nor does he

provide any analysis concerning damages. [*See Id*.]  The October 1, 2013 report also states that the plaintiffs reserve the right to supplement as more information may come to light through discovery.  [*Id*., p. 2]

The defendants obtained rebuttal testimony from their own experts and, on November 19, 2013, deposed Kvalo in New Jersey.  [*See* Record Nos. 193-1, 193-2.]  During this deposition, Kvalo claimed that his report did not reflect all of the testimony he intended to express at trial as discovery was still ongoing.  [Record No. 220-4, pp. 43-45]  He also stated that his report was not final.  [*Id*. p. 45]  On November 27, 2013, the defendants served the plaintiffs with discovery requests seeking the plaintiffs' damages calculations.

After all relevant deadlines had passed, the plaintiffs produced another report from Kvalo dated December 30, 2013.  [Record No. 220, p. 10]  The plaintiffs allege that this report was provided in response to the defendants' November 27, 2013 discovery requests. [*Id*.]  The December 30, 2013 report adds to its subject matter, stating that Kvalo will also discuss "economic damages . . . resulting from lost profits relating to the mismanagement of [Ready's Image]."  Kvalo concludes that the plaintiffs have suffered at least $2,055,046.00 in damages.  [Record No. 191-2, p. 2]  Notably, the October 1, 2013 report contains no calculation of damages and does not state that it was to be used as a basis for estimating damages.

The defendants seek to exclude the opinion testimony of Kvalo, arguing that: (i) the December 30, 2013 report is untimely; (ii) neither report meets the requirements of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure; (iii) neither report is inadmissible under

the Federal Rules of Evidence. Finally, they assert that Kvalo is not qualified to express the opinions outlined in the reports. [*See* Record No. 191.] The plaintiffs claim that Kvalo's December 30, 2013 report is timely because: (i) it was submitted in response to discovery requests; (ii) the defendants had not produced all of the relevant discovery; (iii) they reserved the ability to amend the report; and (iv) any delay was substantially justified and harmless. [Record No. 220, pp. 10-15] The plaintiffs also argue that both reports are reliable, demonstrate Kvalo's methodology in reaching his conclusions, are based on sufficient facts and data. Further, they contend that Kvalo is sufficiently qualified. [*Id*. pp. 18-28]

The defendants have also filed several motions seeking to exclude expert testimony concerning evidence related to Ready's Image in the Southern Hemisphere, advertising expenses, the commercial reasonableness of fees, and testimony that on ultimate issues or legal conclusions. [Record Nos. 197, 201, 206, 219] To the extent these arguments apply to Kvalo's testimony, they will be addressed below.

## II.

For an expert's opinion to be admissible, it must satisfy three requirements. "First, the witness must be qualified by knowledge, skill, experience, training, or education. Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Third, the testimony must be reliable." *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529-30 (6th Cir. 2006). When a party's expert witness is challenged, the Court assumes the role of a gatekeeper to determine whether the proposed testimony is reliable and relevant. *Daubert v. Merrell Dow*

*Pharm., Inc.*, 509 U.S. 579, 587 (1993). Under Rule 702 and *Daubert*, an expert may be qualified through "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

If qualified, an expert may testify if his knowledge will aid the trier of fact provided his opinions are based on sufficient data, reliable methods, and the facts of the case. *Id.* Rejecting expert testimony under *Daubert* is the exception rather than the rule. *In re Scrap Metal,* 527 F.3d at 530 (quoting Fed. R. Evid. 702 advisory committee notes); *see also Andler v. Clear Channel Broadcasting, Inc*., 670 F.3d 717, 729 (6th Cir. 2012) (reversing district court in excluding an economic expert as unreliable, noting that the testimony would be helpful to the jury and the weaknesses in the expert's testimony would be subject to vigorous cross examination); *Dilts v. United Group Servs*., LLC, 500 F. App'x 400, 444 (reversing the district court's exclusion of an accident reconstruction expert's testimony as unreliable where the expert performed calculations and relied on methods generally employed in accident reconstruction); *Palatka v. Savage Arms, Inc.*, 535 F. App'x 448, 455 (6th Cir. 2013) (reversing a district court's exclusion of expert testimony as unhelpful, noting that factors he failed to consider in his opinion could be highlighted on cross-examination).

Rule 26(a)(2)(A) directs a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). These disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Rule 26(a)(2)(B) requires a written report be disclosed that "contain[s] a complete statement of all opinions to be expressed and the basis and reason therefor." Fed. R. Civ. P. 26(a)(2)(B). Rule 26(e)

requires that a party who has made a disclosure under Rule 26(a) supplement that expert report in a timely manner if the party learns that a material part of the disclosure is incomplete or incorrect and if the information has not been known to the other party during discovery. Fed. R. Civ. P. 26(e). Under Rule 37(c)(1), a court may exclude a witness if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . , unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

## III.

### A. The October 1, 2013 Report

The defendants claim that Kvalo's October 1, 2013 report is deficient under Rule 26(a)(2)(B), unreliable, and not based on sufficient facts and data. They also assert that Kvalo is not qualified to express opinions regarding some of the subjects identified. [Record No. 191, pp. 19-27] Rule 26(a) requires that an expert's written report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). "[A]n expert opinion must 'set forth facts and, in doing so, outline a line of reasoning arising from a logical foundation.'" *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005) (citation omitted). Further, "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n. 6 (7th Cir.1998) (citing *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.1995)). Preliminary reports do not satisfy the requirements of Rule 26(a). *Salgado*, 150 F.3d at 741 n. 6 (7th Cir.1998) ("Expert reports must not be . . . preliminary in nature.");

*In re TMI Litigation Cases*, 922 F.Supp. 997, 1005 n. 9 (M.D.Pa.1996); *Smith v. State Farm Fire & Cas. Co.*, 164 F.R.D. 49, 53-54 (S.D.W. Va. 1995) (finding that a "preliminary report" is not contemplated by Rule 26).

The defendants argue that Kvalo's October 1, 2013 report must be excluded because it is preliminary. [Record No. 191, p. 8; Record No. 197, p. 10] However, the purpose of Rule 26(a) is to prevent "ambush at trial" and to "shorten or decrease the need for expert depositions." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010). When a deposition has already been taken, these concerns become moot. *United States v. Roberts*, 830 F. Supp. 2d 372, 387 (M.D. Tenn. 2011). Generally, it is not appropriate to consider depositions as means to cure the deficiencies in an expert's report. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008). This is because allowing a party to remedy a deficient report through a later deposition would counter the goals of Rule 26(a). *Id*. In this case, the defendants submitted their motion to exclude Kvalo's opinion testimony after they had deposed him, removing the concern of reducing the length or need for expert depositions. *E.E.O.C. v. Freemen*, 626 F. Supp. 2d 811, 822 (M.D. Tenn. 2009). Thus, the preliminary nature of Kvalo's report does not require its exclusion and any risk of "unfair surprise" or "ambush at trial" has been mooted by the later deposition.

The defendants also claim that Kvalo's October 1, 2013 report provides improper opinions, constituting legal conclusions and ultimate issues that should be determined at trial. [Record No. 191, p. 28] Additionally, the defendants have moved to exclude opinion

testimony which concerns ultimate issues or offers legal conclusions. [Record No. 219] The Court will address this argument as it relates to Kvalo.

As opposed to opinions on fact issues which are resolved by the jury, issues of law are resolved by the Court. *See Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657 (1935) ("issues of law are to be resolved by the court and issues of fact are to be determined by the jury under appropriate instructions by the court"). Indeed, Kvalo's first report contains inappropriate legal conclusions. For example, in analyzing the 2010 Mare Link Program (as delineated by the Mare Agreement) Kvalo states that Plaintiff James Scatuorchio was to pay the expenses of procuring mares out of the revenues from the Mare Link Program. [Record No. 191-1, p. 5] Kvalo's report also states that Walmac improperly gave free nominations to others which resulted in a failure to collect stud fees. [*Id.*, p. 7] The report does not show any analysis or rationale for these opinions. Kvalo further states that Walmac incorrectly calculated the stallion manager compensation under the COA. [*Id.*, p. 4] It is undisputed that Kvalo is not qualified to express legal opinions; his qualifications are solely related to matters of accounting. However, it appears that Kvalo is attempting to express improper legal opinions concerning the interpretation and effect of several contracts. *Hayes v. MTD Products, Inc.*, 518 F. Supp. 2d 898, 901 (W.D. Ky. 2007); *see also Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969) ("The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony."). Thus, any opinion Kvalo may have concerning the effect or interpretation of any contract will not be allowed.

The defendants also seek to exclude Kvalo's testimony concerning certain conduct that was not in the best interest of the syndicate, possible fraud, and various references to conduct as "improper" or "schemes." [Record No. 219-1, p. 5] An expert's opinion may embrace the ultimate issue to be determined by the trier of fact. Fed. R. Evid. 704(a). However, the ultimate issue must be a factual one. *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). Additionally, the issue may not answer the final question of liability. *Id*. ("It would have been easy enough for the drafters of the Federal Rules of Evidence to have said that a properly qualified expert may opine on the ultimate question of liability. They did not do so."). If an expert's opinion tells the jury what result to reach it usurps the role of the jury and is inadmissible. *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994). Also, if a term has a "separate, distinct and specialized meaning in the law different from that present in the vernacular[,]" exclusion is proper. *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985).

Here, Kvalo's testimony concerning intent or possible fraud of the defendants will be excluded. Fraud and intent are legal terms that have special significance within the law. This type of testimony does not provide facts or opinions from which a jury could find that the defendants acted intentionally and fraudulently. Rather, it requires that the jury conclude that the defendants committed fraud. Under *Torres*, testimony concerning the intentional behavior or acts of fraud is inadmissible. However, testimony classifying behavior as not in the best interest of the syndicate and potential improper conduct or schemes will not be excluded as improper legal conclusions or issues embracing an ultimate issue. This

testimony will not determine the outcome of the case and does not tell the jury what result to reach. Additionally, these terms are merely vernacular that do not have any particular legal significance and the defendants present no authority to the contrary.

Next, the defendants assert that Kvalo is unqualified to express opinions regarding advertising matters and the thoroughbred stallion industry. According to the defendants, Kvalo improperly relies on the testimony of other experts regarding these matters. [Record No. 191, p. 6; Record No. 201, pp. 10-11] In rendering an opinion that the mark-ups made to Saybrook's advertising charges were not consistent with industry practice, Kvalo relies upon the testimony of Stephen Johnson and James LaMonica (the plaintiffs' proposed experts on the thoroughbred industry). [Record No. 191-1, p. 6] The plaintiffs claim that reliance on another expert's opinion is appropriate in the context of an expert report. [Record No. 220, p. 25] "[A]n expert's testimony may be formulated by the use of the facts, data and conclusions of other experts." *Ohio Envt'l Dev. Ltd. P'ship v. Envirotest Sys. Corp.*, 478 F.Supp.2d 963, 976 (N.D.Ohio 2007) (internal citation omitted). However, an expert cannot merely adopt another expert's opinion completely. *Siegel v. Fisher & Paykel Appliances Holdings Ltd.*, 3:08-CV-429-JDM, 2010 WL 4174629, at *2 (W.D. Ky. Oct. 19, 2010). Rather, an "expert is free to give his opinion relying upon the types of data an expert would normally use in forming an opinion in his area of expertise." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981).

Kvalo's October 1, 2013 report states that Saybrook's practice of marking-up charges for their expenses is not consistent with industry practice. [Record No. 191-1, p. 6] While

Kvalo is qualified as an expert to render an opinion on matters of accounting, he does not have any experience in advertising or the thoroughbred industry. [*See* Record No. 191-1.] In reaching this conclusion, Kvalo merely adopts the opinions of LaMonica and Johnson. *See TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993) (opining that an expert who adopted the opinions of another expert did not reasonably rely on those opinions when he knew little about the opinions he was adopting and did not demonstrate any evidence of an effort to independently corroborate those findings). Kvalo's testimony concerning the appropriateness of any mark-up will not be admissible. Additionally, any testimony Kvalo may seek to offer that merely adopts the reports of other experts will be excluded.

The defendants have also moved to exclude expert testimony relating to advertising costs. [Record No. 201] Again, the defendants argue that Kvalo is an expert in accounting but is not qualified to offer opinions on the reasonableness of thoroughbred advertising charges. [Record No. 201-1, p. 13] The plaintiffs admit that Kvalo is an accounting expert utilizing the opinions of other experts in reaching an opinion on standard practices regarding thoroughbred advertising. [Record No. 220, p. 25] Nothing in Kvalo's *curriculum vitae* demonstrates any experience or knowledge of those fields that would qualify him to offer expert opinions. As previously discussed, Kvalo's adoption of other expert reports is an inappropriate reason to form opinions regarding thoroughbred advertising. Therefore, he may not express opinions on matters concerning the standard practice in the thoroughbred industry regarding the reasonableness of the advertising charges.

The defendants argue that any opinion testimony concerning the Southern Hemisphere should be excluded because none of the experts are qualified to offer such opinions and the plaintiffs did not disclose any opinions in the reports concerning the Southern Hemisphere. [Record No. 197]  To the extent this motion pertains Kvalo, the defendants assert that he does not have any knowledge, training, experience, or education that qualifies him as an expert on matters concerning the Southern Hemisphere.  [Record No. 197-1, p. 14]  The defendants also claim that, because Kvalo's reports did not specifically address the Southern Hemisphere, these opinions should be excluded.  [*Id.*, p. 11]  However, Kvalo's report does not directly address either hemisphere with specificity, but instead discusses the issues surrounding the accounts of the defendants as a whole.  [*See* Record No. 191-1.]

Kvalo's testimony regarding the Southern Hemisphere will not be excluded.  It is true that Kvalo has no experience, training, or education concerning the Southern Hemisphere. [*See* Record No. 191-1.]  However, this does not require the exclusion of his testimony because such specialization is not required under the Federal Rules of Evidence.  *Doe v. Cutter Biological, Inc., a Div. of Miles Labs., Inc.*, 971 F.2d 375, 385 (9th Cir. 1992) (holding that courts do not require that an expert be a specialist in any field); *see also Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996) (stating that a court should not exclude expert testimony "simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate."); *DaSilva v. Am. Brands, Inc.*, 845 F.2d 356, 361 (1st Cir. 1988) (rejecting the contention that a mechanical engineer was not

qualified to render an opinion concerning the safety design of a machine because he did not design it).

While Kvalo may not be familiar with accounting practices in the Southern Hemisphere, he is qualified to offer opinions on accounting. Requiring an accounting expert to be a specialist in Southern Hemisphere accounting to offer testimony regarding the billing practices of the defendants is not necessary. Excluding his testimony on those grounds is not appropriate. Additionally, any issue with Kvalo's experience with the Southern Hemisphere may be addressed through cross-examination where questionable but admissible evidence should be attacked. *See Daubert*, 509 U.S. at 596.

Additionally, the defendants have moved to exclude testimony regarding evidence that fees and costs are not "commercially reasonable." [Record No. 206] The defendants claim that the COA allowed for commercially reasonable fees, and because none of the experts expressed opinions regarding whether the mark-ups render the fees unreasonable, any testimony concerning this issue should be excluded. [Record No. 206-1, p. 9] The motion will be granted as this pertains to Kvalo.

Kvalo is not an expert in the thoroughbred stallion industry and is not qualified to discuss the reasonability of fees relating to that industry. In discussing the appropriateness of mark-ups, Kvalo improperly adopts the opinions of the other experts. [Record No. 191-1, p. 6] Additionally, his reports contain no assertion that the fees were commercially unreasonable. Fed. R. Civ. P. 26(a)(2)(B). Further, the defendants seem to indicate that no evidence will be offered at trial concerning commercial reasonability, even though their

response to the motion only addresses the arguments as asserted against Johnson and LaMonica. [Record No. 228, p. 68]

Kvalo's October 1, 2013 report also analyzes the overall costs for advertising and concludes that the total amount is high in light of the amount Saybrook has billed for advertising for all of Walmac's stallions. His report states that a spreadsheet provided by Saybrook demonstrates that Saybrook over-billed on 63% of their bills. This conclusion is based on an analysis of an eleven job sample taken from Saybrook.[1] [Record No. 191-1, p. 7] The rationale underlying this conclusion is sufficiently explained through the expert report. While Kvalo may not offer an opinion concerning the reasonableness of advertising fees as determined by standard industry practice, he may testify concerning these specific fees. His testimony concerning the billing practices of Saybrook will be allowed as it is based on sufficient facts and data supported by a clear methodology.

### B.        December 30, 2013 Report

The defendants argue that the December 30, 2013 report is untimely and testimony based on the report would be prejudicial. [Record No. 191, p. 16; Record No. 191, p. 8] The plaintiffs maintain that this report and corresponding testimony should not be excluded because they did not have all of necessary discovery responses to calculate damages at an earlier time. [Record No. 220, p. 10] Further, they assert that this report was submitted in response to the November 27, 2013 discovery requests that asked the plaintiffs to show their

---

1        The defendants' argument that this sample size is too small goes towards the weight of the evidence and not its admissibility.

damages calculations. [*Id*.] The plaintiffs claim that if the defendants did not want Kvalo to opine on damages, they should not have requested that the plaintiffs describe the amount of damages alleged and how the calculations were made. [*Id*.]

Kvalo's December 30, 2013 report and October 1, 2013 report state that they are relying on the same sources of data. [Record No. 191-1, p. 8; Record No. 191-2, p. 6] Indeed, several of the calculations in the December 30, 2013 report were performed with information that was available prior to the October 1, 2013 report. For example, in calculating the "Improper or Misuse of Free Nominations," the plaintiffs state that the report is based on the deposition of John T.L. Jones, III. [Record No. 220, p. 16] However, this deposition was taken before the October 1, 2013 report was filed. [Record No. 153] Additionally, Kvalo's December 30, 2013 report states that the calculation of "Stallion Manager Compensation" is based on the spreadsheets provided by Walmac, the deposition of Sarah Clarke, and the COA. [Record No. 191-2, p. 3] This information also was available before the October 1, 2013 report was disclosed. [Record No. 226, pp. 12-13] Further, the two sections are virtually verbatim. The December 30, 2013 report only adds that Kvalo adjusted the stallion manager compensation to determine damages. [Record No. 191-2, p. 4] Therefore, there is no legitimate explanation for Kvalo failing to include this opinion in his first report.

While the plaintiffs claim that they made good faith efforts to calculate damages in response to the defendants' discovery requests with the information they had available, they could have included some calculations in the October 1, 2013 report. Additionally, the

plaintiffs offer no explanation regarding why these calculations were not included in Kvalo's initial report. The argument that they were trying to report damages as soon as the information became available is undermined by the fact that the data Kvalo relied on in his December 30, 2013 report was available prior to his October 1, 2013 report.

The plaintiffs also argues that Kvalo's December 30, 2013 report was merely a supplementation of his earlier report. [Record No. 220, p. 10] Kvalo's first report offers no opinion on damages and contains no dollar amounts. The untimely December 30, 2013 report addresses a completely different subject matter — damages. Thus, it cannot be considered a supplementation under Rule 26(e). *See Keener v. United States*, 181 F.R.D. 639, 641 (D. Mont. 1998) (holding that a untimely disclosure that contains new opinions not contained in the expert's timely filed report did not qualify as a supplemental report under 26(e)). Further, even if the report was considered a supplement, it was still filed outside of the deadline as set by the Scheduling Order.

As provided by the Scheduling Order, the deadline to provide any expert report was October 1, 2013 and the deadline for supplementation was December 3, 2013. [Record No. 124, pp. 1-2] The plaintiffs did not request an extension of time to file an expert report or supplement outside the date set by the Scheduling Order. They waited until three days before the close of discovery (past the deadline to depose experts) to make an expert witness disclosure containing entirely new assertions and new subject matter. Moreover, some of these opinions were based on evidence that existed before the initial deadline.

If the plaintiffs believed that they did not have sufficient information for their expert report, they should have moved the Court to modify the Scheduling Order. Instead, they argue that the October 1, 2013 report stated that it reserved the right to amend as more information was discovered. [Record No. 220, p. 2] However, the plaintiffs do not have the ability to independently alter an Order of this Court. The plaintiffs completely ignored the Scheduling Order and now posit the December 30, 2013 report to be a response to discovery requests and a supplementation to a timely disclosed report. In short, the December 30, 2013 report was filed after all pertinent deadlines and relied on information that was available before the filing of the initial report. Rule 26(e) imposes a duty to correct or supplement incorrect or incomplete information that was not available at the time of the initial disclosure. *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 109 (D.D.C. 2005) (citing *Keener*, 181 F.R.D. at 640). Here, some of the information contained in the December 30, 2013 report was available to the plaintiffs before the disclosure of the October 1, 2013 report. Additionally, Rule 26(e) does not give a party the unlimited ability to supplement a report after a court-ordered deadline, even if the rule's pretrial deadline is met. *Id.* (citing *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D.Ga. 2001)). Therefore, even if the December 30, 2013 report was construed as a supplementation, it failed to comply with Rule 26(e).

## C.     Harmlessness and/or Substantial Justification

When a party does not comply with Rule 26(a) or (e), it is "not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure

was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  The test for exclusion under 37(c) is "very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010).

The plaintiffs argue that the delay in submitting the December 30, 2013 report is substantially justified because the defendants withheld required financial documents. [Record No. 220, p. 12]  As discussed above, several of the opinions espoused in the December 30, 2013 report relied on data that was available prior to the October 1, 2013 report.  Further, even if discovery had not provided plaintiffs sufficient information to submit a report, they knew (or should have known) about this deficiency before the passing of the deadlines and filed a motion for an extension of time.  Instead, the plaintiffs ignored the Scheduling Order and now claim that, because the report stated it was preliminary, they had the unilateral ability to add completely new subject matter concerning damages.

The plaintiffs also claim that any delay in submitting the December 30, 2013 report is harmless.  [Record No. 220, p. 13]  They assert that the December 30, 2013 report was made because the defendants specifically requested damages calculations.  [*Id.*]  The plaintiffs also argue that the defendants were fully aware that the plaintiffs would continue to supplement the expert of opinion of Kvalo as discovery continued.  A harmless violation is one that involves an honest mistake, combined with sufficient knowledge by the adversary. *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 783 (6th Cir. 2003).  When the December 30, 2013 report was disclosed the deadline for supplementation had passed.

Nothing suggests that the decision to disclose the December 30, 2013 report past the deadlines (containing the entirely subject matter of damages) was an honest mistake. As discussed above, before the disclosure of the October 1, 2013 report, the plaintiffs had information that would have allow them to make at least some of the damages calculations contained in the December 30, 2013, report. Even if the evidence was so deficient that no calculations could have been made, the plaintiffs could have sought an extension of the discovery deadlines. This report – with its entirely new damages calculations – was filed after the deadlines for rebuttal testimony and depositions, preventing the defendants from adequately responding to this new testimony.

Additional factors weigh in favor of excluding the testimony. If Kvalo's December 30, 2013 report is allowed, it would require the re-opening of discovery, force the defendants to acquire rebuttal testimony, and allow Kvalo to be re-deposed. This is the precise result that Rule 26 was intended to prevent. *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 700 (D.N.M. 2003). Therefore, Kvalo's opinion testimony concerning damages will be excluded.

## IV.

Based on the above discussion and analysis, it is hereby **ORDERED** as follows:

1.  Defendants Walmac Stud Management, LLC; Lincoln-Walmac Associated Farm Pty Ltd.; John T.L. Jones III; and Walmac Farm, LLC's motion to exclude the opinion testimony of Roy H. Kvalo [Record No. 191] is **GRANTED**, in part, and **DENIED**, in part.

2.     Defendants Walmac Stud Management, LLC; Lincoln-Walmac Associated Farm Pty Ltd.; John T.L. Jones III; and Walmac Farm, LLC's motion to exclude expert testimony concerning evidence related to the Southern Hemisphere [Record No. 197] as it pertains to Kvalo is **GRANTED**, in part, and **DENIED**, in part.

3.     Defendants Walmac Stud Management, LLC; Lincoln-Walmac Associated Farm Pty Ltd.; John T.L. Jones III; and Walmac Farm, LLC's motion to exclude expert testimony concerning evidence related to advertising expenses [Record No. 201] as it pertains to Kvalo is **GRANTED**.

4.     Defendants Walmac Stud Management, LLC; Lincoln-Walmac Associated Farm Pty Ltd.; John T.L. Jones III; and Walmac Farm, LLC's motion to exclude expert testimony concerning evidence relating to the commercial reasonableness of fees [Record No. 206] as it pertains to Kvalo will be **GRANTED**.

5.     Defendants Walmac Stud Management, LLC; Lincoln-Walmac Associated Farm Pty Ltd.; John T.L. Jones III; and Walmac Farm, LLC's motion to exclude expert testimony concerning testimony that opines on ultimate issues or legal conclusions [Record No. 219] as it pertains to Kvalo is **GRANTED**, in part, and **DENIED**, in part.

This 25th day of April, 2014.



Signed By:

_Danny C. Reeves_

United States District Judge