UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES T. SCATUORCHIO RACING STABLE, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5: 11-374-DCR |
| V. | ) ) | |
| WALMAC STUD MANAGEMENT, LLC, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Lincoln-Walmac Associated Farms, Pty Ltd.'s ("Lincoln-Walmac") has moved the Court to compel arbitration and reconsider and amend an earlier Amended Memorandum Opinion and Order. [Record No. 270] It contends that information obtained during discovery require that all remaining claims against it – as well as its counterclaim – be submitted to arbitration. [*Id.*] Having reviewed the motion, the Court concludes that a response is not needed. The motion will be denied.

**I.**

The thoroughbred stallion Ready's Image is currently co-owned by Plaintiffs James T. Scatuorchio, LLC ("Scatuorchio, LLC"), Kevin Scatuorchio, and Courtney Sullivan and a number of the defendants, including Defendant Lincoln-Walmac. The plaintiffs' Second Amended Complaint ("Complaint") is based upon the alleged "dishonest and fraudulent" manner in which Defendants Walmac Stud Management, LLC ("Walmac Stud"), Walmac Farm, LLC

("Walmac Farm"), John T.L. Jones III ("Jones"); Saybrook Advertising, LLC ("Saybrook"), and Lincoln-Walmac managed the stud career of Ready's Image. The plaintiffs also allege that the defendants breach of a number of written contracts. One of the contracts in issue is the Stallion Co-Ownership Agreement ("COA"). The COA is signed by Defendant Walmac Stud and Plaintiffs Kevin Scatuorchio, Courtney Sullivan, and Scatuorchio, LLC, by its member Co-Plaintiff James T. Scatuorchio. [Record No. 72-1, pp. 22-35] Lincoln-Walmac is not a signatory to the COA.

One purpose of the COA was to establish the terms and conditions of the parties' relationship as co-owners of Ready's Image. The COA contains an arbitration provision that states, in part:

> **7.16 Arbitration.** If a disagreement exists among the Co-Owners or between one or more of the Co-Owners and the Stallion Manager concerning **READY'S IMAGE** or relating to the relationships, rights, duties, or obligations hereunder (a "Dispute"), any one of the disputants may require the other parties to submit the Dispute to arbitration if good faith negotiations among the parties do not resolve the Dispute.

[Record No. 72-1, p. 33] The scope of this provision has been a point of contention throughout this litigation.

After the COA was executed, the parties entered into three additional agreements vesting other entities with ownership interest and responsibilities concerning the management of Ready's Image in the Southern Hemisphere. These agreements included the: (i) Installment Agreement (a/k/a Southern Hemisphere Sale Agreement); (ii) Southern Hemisphere Co-Ownership Agreement ("SHCOA"); and (iii) Southern Hemisphere Lease Agreement ("SHLA"), (collectively, the "Southern Hemisphere Agreements"). Under these agreements, Lincoln-

Walmac became a co-owner of Ready's Image in the Southern Hemisphere, and the SHCOA designated Walmac Stud as the Stallion Manager for all Southern Hemisphere operations.

The underlying purpose of the SHCOA was to govern the rights and obligations of the parties having an ownership interest in Ready's Image in the Southern Hemisphere during the stallion's breeding time in Australia. Additionally, under the SHLA, Lincoln-Walmac was also designated as a lessee of the "use, purpose and attributes" for the purpose of Ready's Image's breeding in the Southern Hemisphere for the 2009-2012 Southern Hemisphere breeding seasons. [Record No. 72-1, p. 67] In accordance with the SHLA, Lincoln-Walmac also assumed responsibility for the care, upkeep, and marketing of Ready's Image in the Southern Hemisphere, and thus arguably became the *de facto* Stallion Manager of Ready's Image in the Southern Hemisphere for the duration of the lease. Lincoln-Walmac was responsible for remitting to the co-owners any revenue generated by Ready's Image in the Southern Hemisphere in the form of "Stallion Rent." [*See* Record No. 72-1, p. 68 (defining "Stallion Rent" and the fee and payment structure and formula under the SHLA).]

The procedural posture of this matter in its entirety, as well as the issues specifically relating to the parties' disagreements over the scope of the COA's arbitration provision, have been previously detailed in several orders. [*See* Record No. 263; *see also* Record No. 103] In pertinent part, the defendants previously filed a motion to dismiss, arguing that all of the plaintiffs' claims are subject to the arbitration provision of the COA, as well as other alternative dispute resolution provisions outlined in a number of the parties' other contracts. [Record Nos. 19, 31]

Following oral arguments and briefing, United States District Judge Jennifer Coffman (now retired) concluded that the COA contains a legally binding arbitration provision. [*See* Record Nos. 86, 103.] Judge Coffman next addressed the scope of the COA's arbitration provision finding that, given the "expansive arbitration provision as well as the policy favoring arbitration as to doubts regarding the scope of an arbitration provision, all of the plaintiffs' claims except counts 3, 6, and parts of 8 and 14 will be submitted to arbitration." [Record No. 86, p. 10] However, she further concluded that the defendants failed to demonstrate that the non-signatory parties, including, in part, Co-Plaintiff Bryan Sullivan, Saybrook, Walmac Farm, and Lincoln-Walmac are bound by the arbitration provision of the COA. [*Id.*, p. 15 (noting that although non-signatories may be bound to an arbitration provision of a contract, it must be demonstrated that the non-signatories were "third party direct beneficiaries" to the contract) (citing *Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. Ct. App. 2009)] Thus, Judge Coffman determined that only Scatuorchio, LLC, Walmac Stud, Jones, James Scatuorchio, Kevin Scatuorchio, and Courtney Sullivan "are bound to arbitrate the claims brought against them which fall under the scope of the COA arbitration provision." [*Id.*, p. 16]

Notwithstanding this determination, the parties disagreed regarding the extent to which claims remained before the Court and over those which were sent to arbitration. [Record No. 96; *see also* Record Nos. 98, 99, 102.] On January 2, 2013, the Court issued an Amended Memorandum Opinion and Order clarifying that, although the certain claims against Jones and Walmac Stud were subject to arbitration, the same claims against Walmac Farm, Saybrook, and Lincoln-Walmac were not arbitrable because they were not a signatory to the COA. [Record No.

103] Thus, with respect to Lincoln-Walmac, it was determined that all of the plaintiffs' claims against it, as well as its counterclaim, remained before the Court. Specifically, this includes[1]:

> (1) Count 2 for Breach of the Southern Hemisphere Agreements, by the plaintiffs against Lincoln-Walmac;
>
> (2) Count 5 for breach of the Covenants of Good Faith and Fair dealing as to the Southern Hemisphere Agreements, by the plaintiffs against Lincoln-Walmac;
>
> (3) Count 7 for Breach of Fiduciary Duties relating to Ready's Image standing in the Southern Hemisphere, by the plaintiffs against Lincoln-Walmac;
>
> (4) Count 9 for an Accounting by the plaintiffs and Bryan Sullivan against Lincoln-Walmac;
>
> (5) Count 14 for Rescission/Reformation by the plaintiffs against Lincoln-Walmac relating to the Southern Hemisphere Agreements.

[*Id.*]

This matter was reassigned to the undersigned following Judge Coffman's retirement. After reassignment, the Court entered a Scheduling Order and discovery progressed. On May 24, 2013, the defendants asked the Court to reconsider Judge Coffman's prior decisions regarding the arbitrability of their claims. [Record No. 131] Specifically, the defendants claimed that recent discovery responses made it clear for the first time that the claims against Walmac Farm and Saybrook were being asserted on the basis that they "are agents of, conspirators with, and alter-egos of" Walmac Stud and Jones "for wrongdoing under the [COA]." [Record No. 131-1, pp. 1-2] Thus, they argued that arbitration of the fraud claim

---

1   On April 19, 2013, the Court granted the Lincoln Walmac's motion to dismiss the plaintiffs' conversion claim against it in its entirety. [Record No. 127 (as amended by Record No. 144)]

against Saybrook (Count Ten) and the accounting and fraud claims against Walmac Farm (Count Nine and Ten, respectively) was necessary.

Reviewing only the narrow issue of whether Saybrook and Walmac Stud, as non-signatories, could enforce the COA's arbitration provision regarding the plaintiffs' fraud and accounting claims, the Court agreed and granted the defendants' motion to reconsider and to compel arbitration.[2] [Record No. 268] As a threshold matter, the Court concluded that the defendants sufficiently demonstrated the necessity of their motion to reconsider by presenting newly-obtained evidence which established that the basis of liability of Walmac Farm and Saybrook was predicated on their derivative status as co-conspirators, agents, aiders-and-abettors of Walmac Stud and Jones under the COA, as well as claims of concert of action.

In light of the new evidence, the Court reexamined the propriety of Saybrook and Walmac Farm enforcing the arbitration provision of the COA as non-signatories. The Court determined that because: (i) it was clear that the parties intended to provide a single arbitral forum to resolve their disputes regarding the obligations under the COA; (ii) the claims against Saybrook and Walmac Stud arose out of obligations and duties under the COA and that the COA was the basis of the plaintiffs' claims; and (iii) the plaintiffs' theory of liability was predicated on the alleged agency, interrelationship, alter-ego, and co-conspirator status of Saybrook and Walmac Farm with Walmac Stud and Jones, enforcement of the arbitration provision was appropriate. [Record No. 268] In the same Memorandum Opinion and Order and applying the

---

2   Specifically, the plaintiffs' accounting claim (Count 9) against Walmac Farm and the plaintiffs' fraud claim (Count 10) against Walmac Farm and Saybrook was ordered to arbitration. It was further ordered that because Plaintiff Bryan Sullivan is only a party to the Mare Agreement, his accounting and fraud claims (Counts Nine and Ten, respectively) remained pending before the Court. [Record No. 268, p. 23]

same rationale, the Court denied the plaintiffs' motion to file a third amended complaint since the plaintiffs' proposed new claims were subject to arbitration. [*Id.*, pp. 18-23]

Not surprisingly, more than 10 and one-half months after the defendants filed their initial motion to reconsider and compel arbitration, Lincoln-Walmac now seeks to have the Court reconsider Judge Coffman's Amended Memorandum Opinion and Order and to compel arbitration of all of claims by and against it that remain pending before the Court.[3] [Record No. 270; *see also* Record No. 131.]

**II.**

It is true that "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008); *see also Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) [of the Federal Rules of Civil Procedure] to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."). "A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991); *Leelanau Wine Cellars Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 946 (6th Cir.2004). The Court has "significant discretion" in considering a motion to reconsider an interlocutory order and,

> "[t]raditionally, courts will find justification for reconsidering interlocutory orders when

---

3  It is entirely unclear what remedy Lincoln-Walmac seeks through its motion. At one point it asserts that it seeks to compel arbitration of all of the claims by, and against it, including Counts 2, 5, 7, 9, and 14, and its counterclaim. [Record No. 270, p. 1] Next, it argues that "all counts against [it], with the exception of Bryan Sullivan's accounting claim against it, should be referred to arbitration." [Record No. 270-1, p. 1] Then, it claims that all the claims against it should be referred to arbitration. [*Id.*, p. 4] Finally, Lincoln-Walmac states that the Court should compel all claims against it, "except the accounting claim asserted by Bryan Sullivan, and [its] counterclaim to arbitration." [*Id.*, p. 6]

there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x. at 959.

### III.

Relying on essentially the same arguments that Saybrook and Walmac Farm raised in their May 24, 2013 motion to reconsider, Lincoln-Walmac now contends that reconsideration of Judge Coffman's prior Amended Memorandum Opinion and Order concerning all claims against or by it is warranted. It argues that the claims asserted against it are identical to the claims being arbitrated against other defendants. Further, because the plaintiffs take the position that this defendant acted as an agent, co-conspirator, or alter ego of other defendants, and that Lincoln-Walmac is part of the plaintiffs' global conspiracy theory, its liability is co-extensive with its co-defendants. Finally, because the perceived wrongs that are the basis for the plaintiffs' claims against it are grounded upon obligations under the COA, Lincoln-Walmac argues that it meets the standard for compelling arbitration by a non-signatory to the COA's arbitration provision. [Record No. 270-1, pp. 4-6]

Additionally, Lincoln-Walmac contends that because the Southern Hemisphere Sale Agreement and the SHCOA to which it is a signatory incorporates the COA by reference, it technically is a signatory to the agreement to arbitrate with the plaintiffs. [*Id.*, p. 5] It also maintains that allowing it to arbitrate the claims by and against it will avoid duplicative testimony and evidence of claims already in arbitration and thereby promote judicial efficiency and reduce litigation expenses. [*Id.*, pp. 5-6] However, because Lincoln-Walmac has failed to meet its threshold burden of demonstrating that its motion to reconsider is warranted or, more

specifically, why it did not join its co-defendants' motion to reconsider, the Court need not address the merits of its arguments.

Lincoln-Walmac argues that it did not join Saybrook and Walmac Farms' previous motion to reconsider and compel arbitration because it did not anticipate that the plaintiffs' would base their theory of liability against it on an alleged agency relationship with its co-defendants since it was not a party to the plaintiffs' fraud claim. Lincoln-Walmac contends that it did not foresee the plaintiffs attempting to hold it liable for events corresponding to breeding activities of Ready's Image in the Norther Hemisphere since it is an Australian entity and had no involvement in the management of Ready's Image in the Northern Hemisphere. [Record No. 270-1, pp. 2-4] It maintains that it was unaware of this information until the plaintiffs provided their Third Supplemental Responses to its First Set of Discovery Demands. Lincoln-Walmac argues that this information can be qualified as newly-discovered evidence that can be fairly consider as the grounds necessitating its motions to reconsider. [*Id.*, pp. 3-4] This argument is unpersuasive.

Even if the Court were to accept Lincoln-Walmac's position that it was unaware of this information at the time Saybrook and Walmac Farm filed their motion to reconsider,[4] the plaintiffs' Third Supplemental Responses (which it characterizes as newly discovered evidence)

---

4   Scatuorchio, LLC and Courtney Sullivan's responses to Walmac Farm and Walmac Stud's interrogatory, requesting the information that supports the plaintiffs' fraud clam clearly sets out the plaintiffs' global conspiracy theory and specifically identifies Lincoln-Walmac's perceived role as an agent or co-conspirators of its co-defendants. [*See* Scatuorchio, LLC and Courtney Sullivan's Responses to Walmac Farm and Walmac Stud's First Set of Discovery Demands, Record No. 131-2.] Although Lincoln-Walmac correctly points out that the plaintiffs do not assert a fraud claim against it, it certainly could glean from these representations along with other affirmative representations of the plaintiffs that they were advancing, at least in part, this global conspiracy theory as an alleged basis of liability.

was served on Lincoln-Walmac on November 11, 2013. [*See* Record No. 270-2, p. 114] Lincoln-Walmac does not attempt to explain why it waited until April 11, 2014, to file its motion to reconsider and compel arbitration.

This motion comes over three years after this litigation was initiated in New Jersey state court, over ten months after its co-defendants filed their motion to reconsider, five months after it allegedly first became aware of this "new" evidence, less than two months before the trial date, and well past the dispositive motions deadline. The parties have engaged in extensive pretrial preparation, including the taking of multiple depositions, engaging numerous experts, the filing of an array of pre-trial, dispositive, and evidentiary motions (including the roughly thirty-five motions filed on the February 3, 2013 motion deadline).[5] In short, Lincoln-Walmac's argument that it could not have filed this motion at earlier time is unpersuasive. And its attempt to characterize the plaintiffs' discovery responses as "new evidence" which it has possessed for at least five months is even more unconvincing. Thus, the Court declines to reconsider the earlier Amended Memorandum Opinion and Order.

Notwithstanding the above, it appears that the global conspiracy theory which Lincoln-Walmac contends acts as the basis of all of the plaintiffs' claims against it (and is also the basis of Lincoln Walmac's belief that it can properly enforce the arbitration provision of the COA as a non-signatory) is no longer being pursued by the plaintiffs. The plaintiffs' pretrial

---

5   Lincoln-Walmac's judicial economy argument is also untenable. Further, the plaintiffs now represent that they no longer plan to call two of their expert witnesses or offer a large portion of evidence which they have determined is no longer relevant to the claims left before the Court. [*See* Record No. 273; *see also* Record Nos. 268, 284, 286.] Additionally, Lincoln-Walmac's desire to allow its counterclaim (which seeks to recover under the same contracts the plaintiffs base their claims upon) to remain before the Court belies its judicial economy argument.

memorandum clarifies that their claims advancing theories of a global conspiracy to defraud the plaintiffs is now in arbitration. [Record No. 273, p. 2] As a result, they represent that this matter will be tried on simple claims of breach of the SHLA and breach of fiduciary duty by Lincoln-Walmac. [*Id.*] Specifically, the plaintiffs state:

> The claims against Lincoln-Walmac are for breach of fiduciary duty and breach of contract, including the implied covenant of good faith and fair dealing, rooted in it allowing its parent corporation, Lincoln Farm, to use approximately $257,000[.00] in nominations to breed to READY'S IMAGE, charging it only $118,500[.00] for them, and then not collecting even this amount to remit to the Co-Owners, and setting an advertised stud fee that was out of line with amounts it actually charged for the nominations, thereby artificially and without good faith increasing the compensation it would receive under the "lease" agreement.

[*Id.*, p. 5] Based on these representations, it appears that the plaintiffs no longer plan to pursue their alleged global conspiracy theory regarding the claims which remain pending before the Court. Instead, they intend to pursue theories of individual liability under the specific Southern Hemisphere Agreements.[6] Thus, the derivative status argument that underlies Lincoln-Walmac's position regarding enforcement of the arbitration provision is negated.

Finally, Lincoln-Walmac's argument that it can be considered a signatory to the COA because the Southern Hemisphere Sale Agreement and the SHLA incorporate by reference the COA is unpersuasive. Lincoln-Walmac not cite any authority to support this contention. Further, this same argument was addressed by Judge Coffman in the Court's initial

---

6   As noted above, the plaintiffs' motion to amend and file a Third Amended Complaint was denied as futile because the new claims it wished to assert would be subject to the COA's arbitration provision. [Record No. 268, pp. 18-23] Two the plaintiffs' proposed claims against Lincoln-Walmac for aiding and abetting and concerted action to breach fiduciary duty, and for RICO violations were determined to be subject to the COA's arbitration provision because the underlying theory of liability was based on allegations of agency, concert of action, and conspiracy. It would seem that if the plaintiffs intended to proceed on their global conspiracy theory against Lincoln-Walmac, they would not have attempted to assert these new, independent claims.

Memorandum Opinion and Order. [*See* Record No. 86, pp. 6-7 (concluding, in part, that due to the conflicting mediation and litigation provisions contained in the Souther Hemisphere Agreements compared to the arbitration provision of the COA, there was no clear agreement to arbitrate); *see also* Record No. 72-1, pp. 48-49, 60-61, 74-75.]

**IV.**

For the reasons discussed above, it is hereby

**ORDERED** that Defendant Lincoln-Walmac Associated Farms, Pty Ltd.'s motion to reconsider and to compel arbitration of all claims by it and against it [Record No. 270] is **DENIED**.

This 29th day of April, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge