UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES T. SCATUORCHIO RACING STABLE, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5: 11-374-DCR |
| V. | ) ) | |
| WALMAC STUD MANAGEMENT, LLC, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiffs James T. Scatuorcho, LLC, James T. Scatuorchio, Kevin Scatuorchio, Courtney Sullivan, and Bryan Sullivan have moved for an order granting an adverse inference jury instruction. The plaintiffs contend this instruction is necessitated by Defendants Walmac Farm, LLC ("Walmac Farm"), Walmac Stud Management, LLC ("Walmac Stud"), and John T.L Jones' alleged failure to provide certain discovery. [Record No. 207] For the reasons discussed below, the motion will be denied.

**I.**

On October, 30, 2013, a hearing was held before United States Magistrate Judge Robert E. Wier to address several discovery disputes. [Record No. 177] The defendants argued that the plaintiffs had not complied with the Court's previous order regarding the supplementation of discovery. [*Id*., p. 1] Likewise, the plaintiffs alleged numerous discovery deficiencies by the defendants. The magistrate judge that the plaintiffs were to have access to all bank records

-1-

directly relating to Ready's Image connected to deposit or disbursement. However, he also indicated that the plaintiffs were not entitled to trace assets from the Walmac general accounts unless they reflected payments and disbursement directly concerning Ready's Image. [*Id*., p. 2]

Magistrate Judge Wier further directed that, if the defendants did not have such records, they must make a diligent effort to secure them from the bank. The defendants were also ordered to produce any and all documents that "reflect, relate to, and/or corroborate co-owner payment of Ready's Image syndicate billing and/or receipt of syndicate disbursements." [*Id*.] Magistrate Judge Wier went on to state that the defendants must "produce the Haldeman [sic] debt forgiveness records. It is relevant, at least in this instance, for Plaintiffs to test whether Walmac provided debt relief to an insider at the same time that insider was a syndicate debtor." [*Id*., p. 3]

Following the hearing, the plaintiffs made several requests regarding the defendant's alleged discovery deficiencies . [Record Nos. 207-4, 207-5, 207-6, 207-7] Through these letters and other correspondence, the plaintiffs identified various documents they believed were missing from discovery and required by the Court's prior orders. These items included: (i) general ledgers for Walmac Farm and Walmac Stud; (ii) documents evidencing payments by Walmac Stud to Walmac Farm for the Walmac syndicate bills; (iii) cancelled checks; (iv) properly redacted bank statements; (v) documents evidencing the Hardeman debt forgiveness; and (vi) Ledbetter Trust payments. [Record No. 207-1, pp. 3-7]

The plaintiffs argue that, because the defendants have failed to produce these documents, they are entitled to an adverse inference jury instruction concerning the information this evidence

may have included. They assert that the defendants have withheld the various records despite Court orders and various discovery requests, that this was done with a "culpable state of mind," and that all of the records were relevant to their claims. [*Id*., pp. 9-11]

The defendants have produced over 871 megabytes of data constituting approximately 20,000 pages of material relevant to Ready's Image. This does not include documents produced by non-parties in response to subpoenas. The defendants represent that they have produced evidence including, but not limited to: (i) copies of all invoices to co-owners up to April, 2013; (ii) copies of payments from all the co-owners; (iii) bank records for payments to the Walmac Farm operating account for expenses relevant to Ready's Image; (iv) A Walmac Farm disbursement journal showing payments made to vendors; (v) invoices from all vendors; (vi) documents showing all income generated by Ready's Image; (vii) spreadsheets from 2009 to 2013 documenting the breeding seasons showing all mares bred to Ready's Image and the conditions of the breeding; and (viii) copies of all nominations contracts, mare share contracts, and letters of nomination allocation to the co-owners between 2009 to 2013. [Record No. 242, p. 4] They assert that this material contains all information relevant to Ready's Image. [Record No. 226 ¶ 21]

## II.

Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Forest Labs., Inc. v. Caraco Pharm. Labs., Ltd.*, No. 06-CV-13143, 2009 WL 998402, at *1 (E.D. Mich. Apr.14, 2009). "An adverse inference for spoliation of evidence, or

a spoliation inference, permits a [factfinder] to infer that destroyed evidence might or would have been unfavorable to the position of the offending party." *Bankcorpsouth Bank v. Herter*, No. 04-2420, 2009 WL 1596654 at \*14 (W.D.Tenn.2009) (quoting *Kounelis v. Sherrer*, 529 F.Supp .2d 503, 520 (D.N.J.2008)). Additionally, an adverse inference instruction may be appropriate if a party does not produce evidence peculiarly within its control. *In re U.S. Truck Co. Holdings, Inc.*, 341 B.R. 596, 607 (E.D. Mich. 2006); *Provience v. City of Detroit*, 10-11719, 2011 WL 7445088, at \*6 (E.D. Mich. Nov. 28, 2011).

A party seeking an adverse inference instruction based on the destruction or loss of evidence must show that: (i) the party controlling the evidence was obligated to preserve it when it was destroyed; (ii) the evidence was destroyed "with a culpable state of mind;" and (iii) the destroyed evidence was "relevant" to a party's claim or defense such that a reasonable trier of fact could find that it would support a claim or defense. *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (citations omitted). Further, "it must have been reasonably foreseeable to the spoliating party that the evidence would be subject to discovery." *Kounelis*, 529 F. Supp. 2d at 520. "The burden is on the party seeking to use the evidence to show . . . each criterion." *Forest Labs., Inc. v. Caraco Pharm. Labs., Ltd.*, No. CIV.A.06-CV-13143, 2009 WL 998402, at \*1 (E.D. Mich. Apr. 14, 2009). However, a party is not automatically entitled to an adverse inference instruction simply because all elements are met. *Kounelis*, 529 F. Supp. 2d at 520-21 ( "[A court] may, despite a finding that all of the elements entitling a party to an adverse inference have been met, exercise [its] discretion and decide not to grant a request for an adverse inference.").

**III.**

The plaintiffs argue that the defendants failed to produce discovery in violation of the October 30, 2013 Order. [Record No. 207-1, p. 1] They claim that they have suffered prejudiced and are entitled to an adverse inference instruction concerning the evidence not produced. The defendants argue that all discoverable information concerning Ready's Image has been disclosed and any further discovery would be unnecessarily duplicative or irrelevant. [Record No. 242, p. 1] They claim that responding to the plaintiffs' motion is difficult because it requires speculation concerning what the plaintiffs think the defendants have not produced, how or why it was withheld, and how it relates to the plaintiffs' claims. Additionally, the defendants assert that the plaintiffs failed to comply with Local Rule 37.1, requiring parties to participate in a discovery conference in good faith before filing any discovery motion. [*Id*., pp. 1-2]

### A.   Local Rule 37.1

The defendants claim that while the plaintiffs have met the technical requirements of Local Rule 37.1, they did not attempt to participate in a discovery conference in good faith. [Record No. 242, p. 2] In support, they contend that the plaintiffs did not respond to their offer for a telephonic conference until the day before the dispositive motion deadline. The defendants argue that, once they followed up on this response from the plaintiffs' counsel, the plaintiffs indicated that a conference was no longer necessary as the current motion seeking an adverse inference instruction had been filed. [*Id*.] The defendants maintain that had the plaintiffs been

more receptive to a discovery conference, the issues presented in the current motion would have been significantly limited.

Local Rule 37.1 states that "all counsel must make a good faith effort to resolve extrajudicially any dispute relating to discovery," prior to the filing of a discovery motion. L.R. 37.1. The dispute surrounding the current motion was first raised and addressed by the magistrate judge during the October 20, 2013 discovery conference where he ordered that the defendants produce the discovery that is discussed in the pending motion. [Record No. 177] When a party's discovery-related motion follows a prior dispute on the same issues and attempts to enforce a prior order, compliance with Local Rule 37.1 is not necessary. *In re 1995 Dupont Litig.*, No. CIV.A. 04-191-DLB, 2007 WL 2316911, at *2 (E.D. Ky. May 11, 2007). While, the plaintiffs' actions are not commendable, compliance with Local Rule 37.1 is not necessary for the present motion.

**B.  General Ledger**

The plaintiffs assert that the defendants were required keep books and records that reflect all of the receipts and disbursements related to Ready's Image. They claim that the defendants use of double-entry accounting indicates that they should have a general ledger reflecting all of the receipts and transactions relating to the thoroughbred. [Record No. 207-1, p. 3] However, the defendants respond that a general ledger for Ready's Image in the Northern Hemisphere does not exist. [Record No. 242, p. 12] Additionally, they argue that any information that a general ledger would contain was produced on March 31, 2012, in Discovery Set RI and then supplemented to be current through April 30, 2013. [*Id.*, p. 13] The defendants also maintain

that while it is possible to run something similar to a general ledger through their accounting software, it is unnecessary and impractical because it would produce irrelevant information concerning other horses and information related to Ready's Image that has already been produced. [*Id.*, p. 14]

While the alleged general ledger may be relevant to the defendants' proposed set-off defense, an adverse inference instruction concerning this document is not appropriate. The defendants support their assertions with the affidavit of their attorney Michael Galasso. In his sworn statement, Galasso states that a general ledger, as described by the plaintiffs, does not exist. [Record No. 226 ¶ 22] He goes on state under oath that the defendants have produced all documents relating to transactions relevant to Ready's Image and any information produced from a general ledger-type document from their accounting software would be duplicative or irrelevant. [*Id.* ¶¶ 27, 30] Thus, while the plaintiffs assert that the ledger would have even more information related to Ready's Image, the defendants have offered a sworn statement that such a document does not exist.

Under the facts presented, the Court is reluctant to give an adverse inference instruction against the sworn testimony of the defendants' counsel. There appears to be no duty to create or maintain a document like the plaintiffs describe. Further, there cannot be any culpable state of mind or bad faith in failing to produce or preserve a document that does not exist. Certainly, there is no prejudice to the plaintiffs if any relevant information that a general ledger would contain is already in their possession. Additionally, the Court finds the reasons for not producing an entire report from the accounting software persuasive.

When there is a lack of fault, a sanction for spoliation will not be appropriate. *Adkins*, 554 F.3d at 652. And giving an adverse inference instruction for the non-production of non-existent general ledger would not serve the "prophlyactic, punitive, and remedial rationales underlying the spoliation doctrine." *W. v. Goodyear Tire*, 167 F.3d at 779. Therefore, the motion as it pertains to the general ledger will be denied.

        **C.**        **Documents Evidencing Payment from Walmac Farm to Walmac Stud**

The plaintiffs also request an adverse inference instruction concerning documents evidencing payments from Walmac Farm to Walmac Stud. [Record No. 207-1, p. 4] They assert that these documents are relevant because they would assist in proving that the defendants favored insiders to the detriment of the plaintiffs. [*Id*., p. 10] The defendants argue that these documents are not relevant because the payments made from Walmac Farm to Walmac Stud were not made on the level of a single horse. [Record No. 242, p. 18] Thus, they claim, there is not adequate relevance as these payments would not sufficiently relate to Ready's Image and all evidence showing payments related to the horse has been previously disclosed. [*Id*.]

Notwithstanding the possible relevancy of the requested evidence at the time the motion was filed, it appears that the alleged documents do not help support any claim or defense currently pending. While the payments may have assisted the plaintiffs in their claims of breach of the COA and fraud, these transactions allegedly demonstrating a pattern of preference to insiders to the detriment of the plaintiffs have no relevance to the claims asserted against Lincoln-Walmac regarding their behavior in the Southern Hemisphere. Further, these alleged documents do not support the claims asserted for breach of the Mare Agreement concerning non-

payment. Since the proposed evidence is no longer relevant to any of the pending claims, an adverse inference instruction for their non-production would not be proper. *Beaven*, 622 F.3d at 553.

   D.   **Cancelled Checks**

The plaintiffs argue that defendants produced a series of redacted bank statements for Walmac Farm's operating account that showed payments of expenses relevant to Ready's Image. [Record No. 207-1, p. 5] They claim that in this disclosure none of the information concerning the checks was redacted, implying that they were all relevant to Ready's Image. However, they assert that the defendants did not produce the cancelled checks from this account making it impossible to determine to whom the checks were written and to what expenses they relate. The plaintiffs maintain that the defendants have failed to produce the cancelled checks from this account. [*Id*.] In response, the defendants contend that all the cancelled checks relating to Ready's Image have been produced and that the it was not necessary to redact the check numbers and amounts from those particular bank statements because that information did not divulge any sensitive financial information regarding other horses. [Record No. 242, pp. 14-15]

The plaintiffs express incredulity with the fact that the defendants actually checked to see if the cancelled checks did not relate to Ready's Image and urge the Court not to rely on the defendants' unsworn statements. [Record No. 261, p. 10] However, the plaintiffs' skepticism concerning the veracity of the defendants' statements is insufficient to warrant an adverse inference instruction. The plaintiffs; doubt is insufficient to show that the defendants withheld

or destroyed evidence they had a duty to preserve. Further, the plaintiffs have not provided any examples of cancelled checks that may have been related to Ready's Image's expenses.

Further, the relevancy of this evidence to the pending claims is questionable. The plaintiffs assert that these alleged cancelled checks that were not produced will demonstrate that the defendants favored insiders, inflated expenses, and provided kickbacks. [Record No. 207-1, p. 10] However, these assertions all pertain to claims that have been either referred to arbitration, dismissed, or abandoned. Because the plaintiffs have not demonstrated that the defendants withheld relevant evidence they had a duty to disclose, with a culpable state of mind, an adverse inference instruction concerning cancelled checks would be improper. *Beaven*, 622 F.3d at 553.

### E. Redacted Bank Statements

The plaintiffs assert that the bank statements produced by the defendants contain inconsistent and improper redactions, making verification of certain transactions and performing an accurate accounting impossible. [Record No. 207-1, p. 5] As an example, the plaintiffs claim that some bank statements reflect a withdrawal or transfer from one account to another, but the statement on the other account was redacted and does not reflect the deposit. [*Id.*] The defendants maintain that they have produced all relevant bank records relating to Ready's Image. [Record No. 242, pp. 18-19] The defendants also argue that even if the records had been destroyed, it is irrelevant. [*Id.*]

This evidence has no relevance to the claims currently pending against Lincoln-Walmac. The bank records that were allegedly improperly redacted pertain to the operating accounts of

Walmac Farm, a distinct entity in a different hemisphere, subject to separate claims. Similarly, the alleged evidence has no relevance to the remaining claims under the Mare Agreement. The plaintiffs argue that properly redacted bank statements would support their claim that the defendants mismanaged Ready's Image by providing insider deals, improperly inflating their expenses, and providing kickbacks to certain parties. [Record No. 207-1, p. 10] These alleged bad acts would be relevant to the plaintiffs' claims of breach of contract, the covenant of good faith and fair dealing, and fiduciary duties under the COA and fraud, but these claims are no longer before this court.

Further, the plaintiffs' argue that statements reflect transfers or withdrawals to other accounts that are not shown in the corresponding account. [Record No. 207-1, p. 5] As the defendants correctly assert, even if all of the bank records had been destroyed, it would not harm the plaintiffs' claims. The defendants have produced numerous sources of data concerning the expenses and disbursements related to Ready's Image. [*See* Record No. 226, pp. 2-10] The plaintiffs do not argue that there is any expense or payment evidenced in any of these other sources (like the expense or disbursement journals) that does not appear in the bank records. Further, Galasso states in his affidavit that all information relevant to Ready's Image in the Northern Hemisphere has been produced. [Record No. 226 ¶¶ 11, 12] Thus, considering the lack of relevancy and lack of potential prejudice to the plaintiffs, an adverse inference instruction is not appropriate relating to bank statements.

  **F.**  **Hardeman Debt Forgiveness**

The defendants were directed to produce the Hardeman debt forgiveness records because they were relevant to determine whether the defendants were providing debt forgiveness to an insider at the same time he was a debtor to the syndicate in contravention to the interests of the plaintiffs. [Record No. 177, p. 3] Following this Court's Order, on November 19, 2013, the defendants represented that they had searched the records at Walmac Farm and Walmac Stud and determined that neither had any records of the debt forgiveness. [Record No. 207-17, p. 2] The defendants also represented that the Ledbetter Trust would have the record and that counsel for the trust would provide the record separately. [*Id.*] The Ledbetter Trust has not produced any of these records to date.

On November 27, 2013, the plaintiffs served a subpoena *duces tecum* on counsel for Hardeman, LLC for documents related to mares owned by Hardeman that were bred to Ready's Image. [Record No. 207-20] Counsel for Hardeman, LLC responded that any of the documents that were requested by the subpoena would be in possession of Walmac Farm. [Record No. 207-21] The plaintiffs served the defendants with this response on December 11, 2013, and requested that they review their files to ensure that the relevant documents would be in the upcoming supplemental discovery production. [Record No. 207-22] The plaintiffs represent that the defendants never responded to this request. [Record No. 207-1, p. 7]

The defendants argue that all of the records pertaining to Hardeman's debt forgiveness have been produced. [Record No. 242] They claim that all documents concerning the mares bred to Ready's Image and the conditions under which they were bred were given to the plaintiffs which include any mares owned by Hardeman. [*Id.*] The defendants also assert that

any debt forgiveness provided to Hardeman is not relevant to determine if they provided an insider debt relief while he was a syndicate debtor. They claim that the debt forgiveness occurred in 2009 and the payments owed for breeding in 2009 were not due until the Spring of 2010 and that he has paid all amounts owed to the syndicate. Thus, they maintain that there was no contemporaneous debt forgiveness while Hardeman owed money to Ready's Image.

While the magistrate judge found that the Hardeman debt forgiveness records may be relevant to the plaintiffs' then pending claims, that determination is no longer accurate. Because the plaintiffs' claims are now limited to allegations of Lincoln-Walmac's actions in the Southern Hemisphere and lack of payment under the Mare Agreement, the possible debt forgiveness of Hardeman is of little relevance. While this evidence may have been relevant to the plaintiffs' claims of fraud, those claims are no longer pending before the Court. The claims asserted under the Mare Agreement relate to the non-payment of the defendants and the possible application of set-offs. The possibility that Walmac Farm and Walmac Stud may have been offering debt forgiveness to an insider at the time they were a syndicate debtor does not support these claims.

### G. Ledbetter Trust Documentation

The plaintiffs learned through the deposition of Louis Fister, the defendants' accounting expert, that Walmac Farm pays the Ledbetter Trust $300,000.00 a year as a "management fee." [Record No. 207-1, p. 7] Defendant Jones is the sole beneficiary of the Trust. The plaintiffs argue any record of this payment should have been disclosed because it relates to their claims. The plaintiffs assert that if the Ledbetter Trust was providing management services for Walmac Farm, it was providing services for Ready's Image.

However, the plaintiffs do not demonstrate how this discovery would be relevant to their existing claims outside of a vague assertion that it would indicate that the defendants were "moving money around." This type of inquiry is not directly related to Ready's Image. The fact that Ready's Image stands at Walmac Farm does not open the door to discovery of the Ledbetter Trust's records. Further, the plaintiffs' assertions concerning the relevancy of this evidence are in relation to their fraud claims which are no longer before the Court. Further, the defendants have produced the three documents from the Trust that directly relate to Ready's Image in Discovery Set WF 844-866. [Record No. 242, p. 20] Without more, this evidence is not relevant to their pending claims. If the subject evidence is not relevant to a claim or defense, an adverse inference instruction is not appropriate. *Beaven*, 622 F.3d at 553.

**IV.**

Of the evidence allegedly not produced by the defendants, most would not be relevant because the claims have been substantially reduced since the plaintiffs' motion was filed. And while the production of a general ledger may be relevant to challenge the proposed defense of set-off concerning the Mare Agreement, defendants' counsel has sworn under penalty of perjury that no such document exists. Accordingly, it is hereby

**ORDERED** that Plaintiffs James T. Scatuorcho, LLC, James T. Scatuorchio, Kevin Scatuorchio, Courtney Sullivan, and Bryan Sullivan's motion for an adverse inference instruction [Record No. 207] is **DENIED**.

This 27th day of May, 2014.



Signed By:
Danny C. Reeves
United States District Judge